UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

v.

CASE NO.: 2:13-cr-72-FtM-99SPC

DAVID LEON FREDRICK, and
PATRICIA LYNN HOUGH

18 U.S.C. § 371
26 U.S.C. § 7206(1)

## INDICTMENT

The Grand Jury charges:

### Introduction

At times material to this Indictment:

### Parties and Persons

1.    DAVID LEON FREDRICK, Ph.D., was a resident of Englewood,

Florida and was married to PATRICIA LYNN HOUGH.

2.    PATRICIA LYNN HOUGH, M.D., Ph.D., was a resident of

Englewood, Florida and was married to DAVID LEON FREDRICK.

3.    Beda Singenberger, a co-conspirator not charged in this Indictment,

was a citizen and resident of Switzerland and a Certified Public Accountant.

Singenberger owned, operated and controlled Sinco Treuhand AG ("Sinco") in

Zurich, Switzerland.  Acting directly and indirectly through Sinco and its

employees, Singenberger provided wealth management and tax advice to

individuals around the world.  From in or around 2005 to in or around 2011,

FREDRICK and HOUGH utilized the services of Singenberger and Sinco.

4.     "UBS Banker D.L.", an unindicted co-conspirator, was a banker at UBS who serviced the undeclared accounts FREDRICK and HOUGH from in or around 2001 to in or around 2008.

5.     L.W., C.V., M.C., P.G., S.M., S.B., and B.C. were United States citizens who were relatives of FREDRICK and HOUGH.

### Tax Obligations

6.     The Internal Revenue Service ("IRS") was an agency of the United States Department of Treasury.  The IRS had responsibility for the assessment, ascertainment, computation and collection of federal income taxes, including individual income taxes.

7.     United States citizens, resident aliens, and legal permanent residents of the United States had an obligation to report to the IRS on the Schedule B of a U.S. Individual Income Tax Return, Form 1040, whether that individual had a financial interest in, or signature authority over, a financial account in a foreign country in a particular year by checking "Yes" or "No" in the appropriate box and identifying the country where the account was maintained. United States citizens and residents had an obligation to report all income earned from foreign bank accounts on their tax returns.

8.     United States citizens, resident aliens, and legal permanent residents of the United States who had a financial interest in, or signature

authority over, one or more financial accounts in a foreign country with an aggregate value of more than $10,000 at any time during a particular year were required to file, with the Department of the Treasury, a Report of Foreign Bank and Financial Accounts, Form TD F 90-22.1 (the "FBAR"). The FBAR for the applicable year was due by June 30 of the following year.

9.      An "undeclared account" was a financial account owned by individuals subject to United States tax and maintained in a foreign country that was not reported to the United States government on a tax return and an FBAR.

### Bank Entities

10.      UBS AG ("UBS"), a corporation organized under the laws of Switzerland, directly and through its subsidiaries, operated a global financial services business. As one of the biggest banks in Switzerland and largest wealth managers in the world, UBS provided banking, wealth management, asset management and investment banking services, among other services, around the globe, which included branches located in the United States and the Bahamas.

11.      Swiss Bank No. 1 was a Geneva, Switzerland-based bank that provided private banking services, including banking, investment, wealth management, and other financial services to U.S. taxpayers.

12. Swiss-Liechtenstein Bank No. 1 was the Swiss subsidiary of a bank with its headquarters in Liechtenstein. Swiss-Liechtenstein Bank No. 1 provided private banking services, including banking, investment, wealth management, and other financial services to U.S. taxpayers.

13. Liechtenstein Bank No. 1 was an independent private bank founded in 2000 with its headquarters in Vaduz, Lichtenstein. Lichtenstein Bank No. 1 provided banking services, including banking, wealth management, and other financial services to U.S. taxpayers.

14. Swiss Cantonal Bank No. 1 was a bank organized under the laws of Switzerland with its headquarters in Zurich, Switzerland. Swiss Cantonal Bank No. 1 was one of approximately 24 banks that are either entirely or majority owned by one of the cantons (member states) of Switzerland. Swiss Cantonal Bank No. 1 provided private banking services, including banking, investment, wealth management and other financial services to U.S. taxpayers.

15. UK Private Bank No. 1 was a United Kingdom private bank that provided private banking services including investment management, wealth planning and fiduciary services to U.S. taxpayers.

### Medical School Entities

16. Caribbean Medical School Foundation No. 1 (" Caribbean Foundation No. 1"), dba Caribbean Medical School No. 1, was a foreign

4

foundation that FREDRICK and HOUGH caused to be established and incorporated under the laws of the Netherlands Antilles on October 31, 1988, to provide for the education and training of healthcare professionals, as well as promoting the general well-being of the residents of the Island of Saba. Caribbean Medical School No. 1 was located on the Island of Saba, Netherlands Antilles. FREDRICK served as the President and a Director of the Caribbean Foundation No. 1 and HOUGH served on the Board of Directors and the Board of Trustees and was an Associate Dean for Clinical Medicine.

17.     Caribbean Medical School No. 2 was a corporation established and incorporated under the laws of St. Christopher-Nevis, West Indies, on or about April 29, 1999, to provide medical education and related services. Caribbean Medical School No. 2 was located on Nevis, West Indies. FREDRICK owned 1750 shares of the 22,000 outstanding shares of Caribbean Medical School No. 2 until FREDRICK and HOUGH sold Caribbean Medical School No. 2 in April 2007. FREDRICK and HOUGH served as Directors and HOUGH also served as Director of Accreditation.

## Nominee Entities

18.     Medical Technology Associates Limited ("MTA") was incorporated in the British Virgin Islands on or about December 10, 1997. FREDRICK and HOUGH were the Directors and HOUGH was the Secretary. FREDRICK and

5

HOUGH were the beneficial owners of MTA.

19.     Apex Consultants Limited ("Apex Consultants") was incorporated in the British Virgin Islands on or about October 26, 1999.  FREDRICK was the Director and HOUGH was the Secretary.  FREDRICK and HOUGH were the beneficial owners of Apex Consultants

20.     Ample Dynamic Trading Ltd. ("Ample Dynamic") was incorporated in Hong Kong on or about February 4, 2003.  FREDRICK and HOUGH were the beneficial owners of Ample Dynamic.

21.     New Vanguard Holdings Limited ("New Vanguard") was incorporated in Hong Kong on or about April 8, 2005.  FREDRICK and HOUGH were the beneficial owners of New Vanguard.

22.     Top Fast Finance Ltd. ("Top Fast") was incorporated in Hong Kong on or about October 8, 2005.  FREDRICK and HOUGH were the beneficial owners of Top Fast.

23.     Round Hill Project Holding Company, NV, ("Round Hill Project Holding Company") was a limited liability company incorporated under the laws of the Netherlands Antilles on or about September 11, 2000.  Round Hill Project Holding Company held 10 acres of land on which Caribbean Medical School No. 1 was located.  FREDRICK and HOUGH each owned 50 of the 100 outstanding shares of Round Hill Project Holding Company.  FREDRICK, HOUGH and

6

Singenberger were Directors of Round Hill Project Holding Company.

24.     Lynn, Leon & Lyon Group, LLC, ("LL&L Group") was a Florida limited liability company incorporated in or about July 2003.  FREDRICK and HOUGH were both managing members and each owned 50 of the outstanding 100 shares of LL&L Group.  Real estate and other assets were titled in the name of LL&L Group.

## COUNT ONE
### (18 U.S.C. § 371 B Conspiracy)

25.     From in or about February 24, 1999 and continuing until on or about April 15, 2011, the exact dates being unknown to the Grand Jury, within the Middle District of Florida and elsewhere,

DAVID LEON FREDRICK, and
PATRICIA LYNN HOUGH,

the defendants herein, and individuals known and unknown to the Grand Jury, did unlawfully, voluntarily, intentionally and knowingly conspire, combine, confederate, and agree together and with each other to defraud the United States for the purpose of impeding, impairing, obstructing, and defeating the lawful government functions of the Internal Revenue Service of the Treasury Department in the ascertainment, computation, assessment, and collection of revenue: to wit, income taxes.

7

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the unlawful object of the conspiracy was sought to be accomplished included, among other things, the following:

26.     It was a part of the conspiracy that FREDRICK and HOUGH would and did create or cause to be created and used and caused to be used nominee entities to conceal assets and income from the IRS.

27.     It was further a part of the conspiracy that FREDRICK and HOUGH would and did open and maintain undeclared accounts at UBS and other foreign banks in their individual names and in the names of the nominee entities to conceal assets and income from the IRS.

28.     It was further a part of the conspiracy that FREDRICK and HOUGH, would and did execute documents when opening and maintaining undeclared accounts at UBS and other foreign banks that:

   a)     identified themselves as the beneficial owners of the assets in their undeclared accounts;

   b)     identified themselves as having signature authority over their undeclared accounts;

   c)     granted Singenberger and Sinco powers of attorney over their undeclared accounts; and

   d)     identified themselves as liable to tax in the U.S. as a U.S.

8

person and waiving their right to invest in U.S. securities.

29.    It was further a part of the conspiracy that FREDRICK and HOUGH would and did use emails, the telephone and in-person meetings to instruct Swiss bankers and asset managers to make investments and transfer funds from their undeclared accounts at UBS.

30.    It was further a part of the conspiracy that FREDRICK and HOUGH would and did use the funds from their undeclared accounts at UBS and other foreign banks to purchase assets in the name of the nominee entities.

31.    It was further a part of the conspiracy that FREDRICK and HOUGH would and did provide false information to their accountant for preparation of their individual income tax returns and failed to inform their accountant of the undeclared accounts at UBS and at other foreign banks in which they had a financial interest or over which they had signature authority.

32.    It was further a part of the conspiracy that FREDRICK and HOUGH would and did prepare and file with the IRS, and cause to be prepared and filed with the IRS, false and fraudulent individual income tax returns that concealed their ownership and control of the nominee entities, assets and income from the IRS, as well as omitted income earned from their undeclared accounts.

## OVERT ACTS

33.    In furtherance of the conspiracy, and to effect the objects thereof,

9

the following overt acts were committed in the Middle District of Florida and elsewhere, including but not limited to:

### Creation of Entities

a)     On or about September 11, 2000, FREDRICK and HOUGH incorporated Round Hill Project Holding Company in the Netherlands, Antilles.

b)     In or about July 2003, FREDRICK and HOUGH caused LL&L Group to be incorporated in the state of Florida.

c)     On or about April 8, 2005, FREDRICK and HOUGH caused New Vanguard to be incorporated in Hong Kong.

d)     In or about October 2005, FREDRICK and HOUGH caused Top Fast to be incorporated in Hong Kong.

### Opening of Undeclared Accounts at UBS

e)     On or about October 17, 2001, FREDRICK and HOUGH caused to be opened an undeclared account numbered xxx-xx5268 in their joint names at UBS and in the process executed documents in which they identified themselves as the beneficial owners of the assets in the undeclared account. FREDRICK and HOUGH had signature authority over the undeclared account.

f)     On or about July 14, 2003, FREDRICK and HOUGH caused to be opened an undeclared account numbered xxx-xx7840 in the name of Apex Consultants at UBS and in the process executed documents in which they

10

identified themselves as the beneficial owners of the assets in the undeclared account. FREDRICK and HOUGH had signature authority over the undeclared account.

g)     On or about August 13, 2003, FREDRICK and HOUGH caused to be opened an undeclared account numbered xxx-xx1472 in the name of MTA at UBS and in the process executed documents in which they identified themselves as the beneficial owners of the assets in the undeclared account. FREDRICK and HOUGH had signature authority over the undeclared account.

h)     On or about March 23, 2004, FREDRICK caused to be opened an undeclared account numbered xxx-xx2263 in his individual name at UBS and in the process executed documents in which he identified himself as the beneficial owner of the assets in the undeclared account. FREDRICK had signature authority over the undeclared account.

i)     On or about April 7, 2004, HOUGH caused to be opened an undeclared account numbered xxx-xx2267 in her name at UBS and in the process executed documents in which she identified herself as the beneficial owner of the assets in the undeclared account. HOUGH had signature authority over the undeclared account.

j)     On or about September 1, 2004, FREDRICK and HOUGH caused to be opened an undeclared account numbered xxx-xx2245 in the name

11

of the Caribbean Foundation No. 1 at UBS and in the process executed documents in which they identified themselves as the beneficial owners of the assets in the undeclared account. FREDRICK and HOUGH had signature authority over the undeclared account.

k)      On or about June 28, 2005, FREDRICK and HOUGH caused Singenberger to open an undeclared account numbered xxx-xx8833 in the name of New Vanguard at UBS and in the process Singenberger executed documents in which he identified FREDRICK and HOUGH as the beneficial owners of the assets in the undeclared account.

l)       On or about September 9, 2005, FREDRICK and HOUGH caused to be opened an undeclared account numbered xxx-xx3428 in the name of Caribbean Medical School No. 2 at UBS and in the process executed documents in which they identified themselves as the beneficial owners of the assets in the undeclared account. FREDRICK and HOUGH had signature authority over the undeclared account.

m)     On or about December 15, 2005, FREDRICK and HOUGH caused Singenberger to open an undeclared account numbered xxx-xx3443 in the name of Top Fast at UBS and in the process Singenberger executed documents in which he identified FREDRICK and HOUGH as the beneficial owners of the assets in the undeclared account.

n)      On or about January 17, 2007, FREDRICK and HOUGH caused Singenberger to open an undeclared account numbered xxxx-xx7617 in the name of Ample Dynamic at UBS and in the process Singenberger executed documents in which he identified FREDRICK and HOUGH as the beneficial owners of the assets in the undeclared account.

**Opening of Undeclared Accounts at Other Foreign Banks**

o)      On or about February 2, 2006, FREDRICK and HOUGH opened and caused Singenberger to open an undeclared account numbered xxx.x08.59 in the name of the Caribbean Foundation No. 1 at Swiss-Liechtenstein Bank No. 1 and in the process FREDRICK, HOUGH and Singenberger executed documents in which they identified the Caribbean Foundation No. 1 as the beneficial owner of the assets in the undeclared account.  Initially, FREDRICK and HOUGH had signature authority over this undeclared account.

p)      On or about August 18, 2006, FREDRICK and HOUGH caused Singenberger to open an undeclared account numbered xx0.291 in the name of the Caribbean Foundation No. 1 at Swiss Bank No. 1 and in the process Singenberger executed documents in which he identified the Caribbean Foundation No. 1 as the beneficial owner of the assets in the undeclared account.

13

q)      On or about August 30, 2006, FREDRICK and HOUGH opened an undeclared account numbered xx0404 in the name of Caribbean Medical School No. 2 at Swiss Bank No. 1 and in the process executed documents in which they identified Caribbean Medical School No. 2 as the beneficial owner of the assets in the undeclared account.

r)      On or about November 29, 2006, FREDRICK and HOUGH caused Singenberger to open an undeclared account numbered xx0438 in the name of New Vanguard at Swiss Bank No. 1 and in the process Singenberger executed documents in which he identified FREDRICK and HOUGH as the beneficial owners of the assets in the undeclared account.

s)      On or about November 29, 2006, FREDRICK and HOUGH caused Singenberger to open an undeclared account numbered xx0439 in the name of Top Fast at Swiss Bank No. 1 and in the process Singenberger executed documents in which he identified FREDRICK and HOUGH as the beneficial owners of the assets in the undeclared account.

t)      On or about November 30, 2006, FREDRICK and HOUGH caused Singenberger to open an undeclared account numbered xxx.x90.97 in the name of New Vanguard at Swiss-Liechtenstein Bank No. 1.

u)      On or about November 30, 2006, FREDRICK and HOUGH caused Singenberger to open an undeclared account numbered xxx.xx90.89 in

14

the name of Top Fast at Swiss-Liechtenstein Bank No. 1 and in the process Singenberger executed documents in which he identified FREDRICK and HOUGH as the beneficial owners of the assets in the undeclared account.

   v) On or about January 24, 2007, FREDRICK and HOUGH caused Singenberger to open an undeclared account numbered xxxx-xxx4.741 in the name of Ample Dynamic at Swiss Cantonal Bank No. 1 and in the process Singenberger executed documents in which he identified FREDRICK and HOUGH as the beneficial owners of the assets in the undeclared account.

   w) On or about June 15, 2009, FREDRICK and HOUGH caused Singenberger to open an undeclared account numbered xx0.984 in the name of Ample Dynamic at Liechtenstein Bank No. 1 and in the process Singenberger executed documents in which he identified FREDRICK and HOUGH as the beneficial owners of the assets in the undeclared account.

   x) On or about June 15, 2009, FREDRICK and HOUGH caused Singenberger to open an undeclared account numbered xx0.983 in the name of Top Fast at Liechtenstein Bank No. 1 and in the process Singenberger executed documents in which he identified FREDRICK and HOUGH as the beneficial owner of the assets in the undeclared account.

### The Use and Operation of the Undeclared Accounts

   y) In or about 2001 and 2002, FREDRICK and HOUGH caused

15

$8,787,685 to be transferred from UK Private Bank No.1 to their undeclared account in their joint names at UBS.

z)     On or about December 11, 2002, UBS Banker D.L. emailed HOUGH regarding Relative C.V. becoming the power of attorney on their undeclared account in their joint names. HOUGH responded to UBS Banker D.L. by email that he could mail the form to their U.S. address in Gardner, MA.

aa)    On or about December 12, 2003, FREDRICK emailed UBS Banker D.L. inquiring "about the status of SZ with regard to U.S. account holders, etc. What can we do to protect ourselves from open disclosure. We still have some funds in [UK Private Bank No. 1] in Nassau, but know that we need to pull them out and close our account before Jan 1st. What's your advice? Thanks.....DR & PH."

bb)    On or about December 15, 2003, FREDRICK and HOUGH instructed UK Private Bank No. 1 to close their accounts because "the changes in U.S. & Bahamas banking policies that take effect in January 2004, put us at a disadvantage." FREDRICK and HOUGH instructed UK Private Bank No. 1 to wire transfer all remaining assets in their account to their undeclared account in the name of Apex Consultants at UBS.

cc)    On or about December 15, 2003, FREDRICK and HOUGH instructed UBS by telephone to wire transfer $487,000 from their undeclared

16

account in the name of MTA to their undeclared account in their joint names.

      dd)    On or about January 5, 2004, FREDRICK and HOUGH caused $1,306,045 to be transferred from UK Private Bank No. 1 to their undeclared account in the name of Apex Consultants at UBS.

      ee)    On or about January 5, 2004, FREDRICK and HOUGH caused UBS to transfer $1,306,045 from their undeclared account in the name of Apex Consultants to their undeclared account in their joint names.

      ff)    On or about January 21, 2004, FREDRICK and HOUGH instructed UBS how to manage $3 million in their undeclared account in their joint names.

      gg)    On or about February 6, 2004, FREDRICK and HOUGH instructed UBS Banker D.L. to create "two separate numbered accounts, one for [FREDRICK] and one for [HOUGH]...with the funds equally divided" from their undeclared account in their joint names.

      hh)    On or about February 17, 2004, FREDRICK and HOUGH executed a document granting Relative C.V. power of attorney over their undeclared account in their joint names at UBS.

      ii)    On or about March 18, 2004, HOUGH emailed UBS Banker D.L. and FREDRICK concerning the decision to divide up their account equally into two accounts.  HOUGH informed UBS Banker D.L. that "Dave and I have

17

discussed this arrangement and I am in full agreement.  Please let us know how we can split best [sic] the accounts and what new paperwork is needed.  Have you received the signed form from my sister?  Sincerely, Patricia Hough."

jj)  On or about March 23, 2004, FREDRICK and HOUGH instructed UBS to transfer half of all the assets in their undeclared account in their joint names to the new undeclared account opened in the name of FREDRICK.

kk)  On or about March 23, 2004, FREDRICK and HOUGH instructed UBS to remove the name of FREDRICK from their undeclared account in their joint names and to keep HOUGH'S sole name on the undeclared account.  FREDRICK and HOUGH further instructed UBS to keep one half of all of the existing assets in this account.

ll)  On or about February 8, 2005, FREDRICK emailed UBS Banker D.L. stating "Pat said you wanted to tell me about a plan that she was in that I was not...you are not going to let her make more money than me, are you?!"  UBS Banker D.L. responded to FREDRICK that "I think the plan that she [HOUGH] was referring to is the double currency (DOCU) which you were in before she was.  I will do my best to keep you both moving along at a good pace."

mm)  On or about June 23, 2005, FREDRICK and HOUGH, by

18

letter, instructed UBS Banker D.L. to transfer all assets from the undeclared account in FREDRICK'S name to their undeclared account in the name of New Vanguard.

nn)     On or about January 3, 2006, FREDRICK emailed UBS Banker D.L. informing D.L. that he was "in the process of speaking to Beda regarding a wire of 5m from the UBS (Caribbean Foundation No. 1) account to the HK account recently established.  When we speak I will give you more details."

oo)     On or about January 6, 2006, FREDRICK emailed UBS Banker D.L. instructions to transfer $5 million from their undeclared account in the name of Caribbean Foundation to their undeclared account in the name of Top Fast.

pp)     On or about March 5, 2006, FREDRICK had a telephone conversation with UBS about their undeclared account in the name of New Vanguard informing UBS that the transfer of $500,000 B $250,000 to Caribbean Medical School No. 1 and $250,000 to HOUGH "represents purchase of land on Saba previously held by a company named Roundhill.  It is ok to name New Vanguard as sender, as discussed with D.F."

qq)     On or about April 21, 2006, FREDRICK and HOUGH caused UBS to transfer $250,000 from their undeclared account in the name of New

19

Vanguard to FREDRICK and HOUGH'S joint bank account at Wachovia Bank numbered xxxxxxxxx8764 at Wachovia Bank.

rr) On or about July 31, 2006, FREDRICK and HOUGH caused $150,000 to be transferred from their joint bank account at Wachovia Bank numbered xxxxxxxxx8764 to their joint High Performance Money Market account at Wachovia Bank numbered xxxxxxxxx8357.

ss) On or about November 7, 2006, FREDRICK and HOUGH caused UBS to close their undeclared accounts in the names of MTA and Apex Consultants.

tt) On or about November 10, 2006, FREDRICK and HOUGH caused $21,032.89 to be transferred from their joint bank account at Wachovia bank numbered xxxxxxxxx8764 to pay their Sarasota County property taxes.

uu) On or about February 10, 2007, FREDRICK emailed UBS Banker D.L. that "Pat and I have been watching closely the financial markets in the U.S. and implications abroad. We are concerned that the future looks bad for managed funds in general. We feel that our funds would yield a better return if kept in a simple interest bearing account. Please move all our managed funds and put 50% in a 1 month interest account and 50% in a 6 month interest account. This will give us at least a 5% annual return on all our funds, without having to follow the market. Regard, [sic] DF."

20

vv)     On or about March 5, 2007, UBS emailed FREDRICK with a list of their undeclared accounts and their balances, including Ample Dynamic ($151,725), Caribbean Medical School No. 1 ($7,327,991), New Vanguard ($9,378,867), Caribbean Medical School No. 2 ($6,298,210), and Top Fast ($3,437,472).

ww)     On or about March 6, 2007, FREDRICK and HOUGH caused UBS to wire transfer $2,122,000 from their undeclared account in the name of Caribbean Medical School No. 2 to their undeclared account in the name of New Vanguard.

xx)     On or about March 6, 2007, FREDRICK and HOUGH caused UBS to wire transfer $1,280,000 from their undeclared account in the name of Caribbean Foundation No. 1 to their undeclared account in the name of New Vanguard.

yy)     On or about March 13, 2007, FREDRICK and HOUGH caused UBS to wire transfer a total of $3,171,836 from their undeclared account in the name of Caribbean Medical School No. 2 to their undeclared account in the name of Top Fast.

zz)     On or about April 2, 2007, FREDRICK and HOUGH caused UBS to transfer $174,000 from their undeclared account in the name of Caribbean Medical School No. 2 to their undeclared account in the name of New

21

Vanguard.

aaa)   On or about April 5, 2007, FREDRICK and HOUGH caused
UBS to transfer $725,522 from their undeclared account in the name of
Caribbean Foundation No. 1 to their undeclared account in the name of New
Vanguard.

bbb)   On or about May 19, 2008, FREDRICK and HOUGH caused
UBS to transfer a total of $5,656,000 from their undeclared account in the name
of Top Fast to their undeclared account in the name of Top Fast at Swiss-
Liechtenstein Bank No. 1.

ccc)   On or about May 23, 2008, FREDRICK and HOUGH caused
UBS to transfer $13.5 million from their undeclared account in the name of New
Vanguard to their undeclared account in the name of New Vanguard at Swiss
Bank No. 1.

ddd)   On or about August 29, 2008, UBS Banker D.L. spoke by
phone with FREDRICK "about the situation with UBS and also informed him that
in case of any transactions planned, I would need his instructions...FREDRICK
will think about everything and is going to contact us as soon as he knows where
to go."

eee)   On or about October 5, 2008, FREDRICK, by letter,
instructed UBS Banker D.L. to "cancel any mandate, liquidate all assets of

22

[Caribbean Foundation No. 1] (xx-xx2-245) and transfer the proceeds to an undeclared account in the name of Caribbean Foundation No. 1 at Swiss-Liechtenstein Bank No. 1.

fff)     On or about October 22, 2008, FREDRICK and HOUGH caused UBS to transfer $3,940,951 from the undeclared account in the name of Caribbean Foundation No. 1 to an undeclared account in the name of Caribbean Foundation No. 1 at Swiss-Liechtenstein Bank No. 1.

**Payment of Fees to Sinco from the Undeclared Accounts**

ggg)     On or about June 29, 2005, FREDRICK and HOUGH caused fees for, among other services, nominee shareholders and directors, to be paid from their undeclared account in the name of New Vanguard for the benefit of Sinco.

hhh)     On or about January 16, 2006, FREDRICK and HOUGH caused fees for, among other services, nominee shareholders and directors, to be paid from their undeclared account in the name of Top Fast for the benefit of Sinco.

iii)     On or about July 11, 2006, FREDRICK and HOUGH caused fees for, among other services, nominee shareholders and directors, to be paid from their undeclared account in the name of New Vanguard for the benefit of Sinco.

jjj)     On or about March 16, 2007, FREDRICK and HOUGH caused fees for nominee shareholders to be paid from their undeclared account in the name of Top Fast for the benefit of Sinco.

kkk)     On or about January 10, 2008, FREDRICK and HOUGH caused fees for, among other services, nominee shareholders and directors, to be paid from their undeclared account in the name of Top Fast for the benefit of Sinco.

### Transfers from the Undeclared Accounts to FREDRICK'S Relatives and Other US Persons

lll)     On or about April 5, 2004, FREDRICK, emailed UBS Banker D.L. instructions to send a bank check to Relative M.C. for $50,000. The funds were drawn on FREDRICK'S undeclared account in his individual name.

mmm)  On or about December 6, 2004, FREDRICK emailed UBS Banker D.L. instructions to send two wires: one for $75,000 to a bank account in the name of Relative P.G. and one for $75,000 to a bank account in the name of Relative S.M. The wires were sent from FREDRICK'S undeclared account in his individual name.

nnn)    On or about December 8, 2004, FREDRICK caused UBS to send two wires from his undeclared account in his individual name; one wire for $75,000 to a bank account in the name of Relative P.G. and one wire for $75,000

24

to a bank account in the name of Relative S.M.

ooo)   On or about April 5, 2005, FREDRICK emailed UBS Banker D.L. with instructions to send a bank check to Relative M.C. for $50,000. The funds were drawn on FREDRICK'S undeclared account in his individual name.

ppp)   On or about April 20, 2005, FREDRICK, emailed UBS Banker D.L. with instructions to send a bank check to Relative S.B. for $40,000. The funds were drawn on FREDRICK'S undeclared account in his individual name.

qqq)   On or about November 24, 2005, FREDRICK emailed UBS Banker D.L. and requested that UBS "send a bank check for $5,000 to" US person D.H.  FREDRICK stated that "[w]e do not want to send a wire because we do not want our name listed anywhere."

rrr)   On or about November 25, 2005, FREDRICK caused UBS to transfer $5,000 to U.S. person D.H.  The funds were drawn on FREDRICK and HOUGH'S undeclared account in the name of New Vangaurd.

sss)   On or about April 12, 2007, FREDRICK emailed UBS Banker D.L.  "Would you please do two wire transfers from New Vanguard UBS account, to the following: 1) $72,700 to a bank account in the name of Relative B.C. for mortgage payoff and 2) $177,300 to a bank account in the names of Relatives M.C. & B.C."

ttt)   On or about April 13, 2007, FREDRICK emailed UBS Banker D.L. instructions to wire transfer $250,000 from FREDRICK and HOUGH'S undeclared account in the name of New Vanguard to a bank account in the name of Relative P.G.

uuu)   On or about April 13, 2007, FREDRICK caused UBS to make the following wire transfers from their undeclared bank account in the name of New Vanguard: 1) $72,700 to a bank account in the name of Relative B.C.; 2) $177,300 to a bank account in the names of Relatives M.C. & B.C.; 3) $250,000 to a bank account in the name of Relative P.G.; 4) $165,850.32 to a bank account in the names of Relatives J.M. & S.M; 5) $84,150 to a bank account in the name of Relative S.M. and 6) $250,000 to a bank account in the names of Relatives R.P. & M. P.

### Purchase of Real Estate and Other Assets
### with Funds from the Undeclared Accounts

vvv)   On or about March 15, 2006, FREDRICK emailed UBS Banker D.L. and Singenberger with instructions to wire transfer $282,580 from FREDRICK and HOUGH'S undeclared account in the name of New Vanguard to a bank account in Nevis, West Indies, for New Vanguard's purchase of land on Nevis.

www)   On or about March 16, 2006, FREDRICK caused UBS to

26

transfer $282,580 from FREDRICK and HOUGH'S undeclared account in the name of New Vanguard to a bank account in Nevis, West Indies.

xxx)    On or about July 31, 2007, FREDRICK and HOUGH caused UBS to transfer $50,000 from their undeclared account in the name of Top Fast to Cirrus Design Corp. in Bloomington, Minnesota, for the purchase of an airplane.

yyy)    On or about May 14, 2008, FREDRICK and HOUGH caused UBS to transfer $850,000 from their undeclared account in the name of Top Fast to an escrow account at Englewood Bank in Englewood, Florida, for the purchase of a condominium in Sarasota, Florida, in the name of LL&L Group.

### Purchase and Sales of Round Hill Property and
### Sale of Caribbean Medical School No. 1 and No. 2

zzz)    On or about February 24, 1999, FREDRICK and HOUGH caused 10 acres of land in The Bottom, Saba, locally known as Round Hill, to be purchased in the name of Relative L.W.

aaaa) On or about June 5, 1999, FREDRICK informed the Caribbean Foundation No. 1 Board of Trustees that the 10 acres of land known as Round Hill had been purchased for $250,000 and that the funds did not come from Caribbean Medical School No. 1.

bbbb) On or about September 11, 2000, FREDRICK and HOUGH

27

incorporated Round Hill Project Holding Company in the Netherlands, Antilles.

cccc) On or about February 2, 2001, FREDRICK and HOUGH caused documents to be executed that showed that Relative L.W. granted Round Hill Project Holding Company the right of superficies on the 10 acres of land known as Round Hill.

dddd) On or about June 22, 2004, FREDRICK and HOUGH caused documents to be executed that showed that Relative L.W. sold the 10 acres of land known as Round Hill to Roundhill Project Holding Company for $17,000.

eeee) On or about April 15, 2005, FREDRICK and HOUGH sold their 100 shares in Round Hill Project Holding Company for $500,000 to their Hong Kong company New Vangaurd.

ffff)     In or about 2006, FREDRICK and HOUGH caused New Vanguard to purchase 20,000 shares of Caribbean Medical School No. 2's stock.

gggg) On or about April 3, 2007, FREDRICK and HOUGH caused New Vanguard to sell its shares in Caribbean Medical School No. 2 to Caribbean Medical School Management Company for $1,519,691.16.

hhhh) On or about April 3, 2007, FREDRICK and HOUGH caused New Vanguard to sell its ownership of Nevis real estate to Caribbean Medical School Management Company for $410,000.

28

iiii)    On or about April 3, 2007, FREDRICK and HOUGH caused New Vanguard to sell its shares in Roundhill Project Holding Company to Caribbean Medical School University Management Company BV for $33,944,000.

### Purchase and Sale of Asheville, North Carolina Property

jjjj)    On or about June 6, 2005, FREDRICK emailed UBS Banker D.L. to explain that he was thinking of purchasing another home in North Carolina "in the name of our companies (APEX or MTA)."  FREDRICK inquired "[i]f I have the funds moved from my personal account to MTA or APEX, then have you wire the money to the U.S., will you still need to have my name listed on the wire transmittal sheet?"

kkkk)  On or about June 6, 2005, UBS Banker D.L. emailed FREDRICK and explained that "[w]e need to mention the name of the account holder.  If that is a corporation, that's the name that goes on the transfer."

llll)    On or about July 18, 2005, FREDRICK emailed HOUGH, UBS Banker D.L., and Singenberger and stated: "[UBS Banker D.L.]/Beda: I am still a little unfamiliar with the procedure we need to take to get a wire from Beda...so I will send this to you with a copy to Sinco Trust.  I believe when we spoke with Beda, we determined that the wire for the house we are buying should come from our Hong Kong company (New Vanguard).  The amount and

29

wire instructions are listed below."

mmmm) On or about July 18, 2005, FREDRICK and HOUGH instructed UBS to wire $1,140,000 to a trust account in Hendersonville, North Carolina.

nnnn) On or about July 19, 2005, FREDRICK and HOUGH caused UBS to transfer $1,140,000 from their undeclared account in the name of New Vanguard to a trust account in Hendersonville, North Carolina for the purchase of a house in Asheville, North Carolina.

oooo) On or about July 25, 2005, FREDRICK and HOUGH caused LL&L Group to purchase a house in Asheville, North Carolina using the funds transferred from their undeclared account in the name of New Vanguard to the trust account in Hendersonville, North Carolina.

pppp) On or about April 17, 2006, FREDRICK emailed Singeberger and UBS Banker D.L. and instructed Singenberger to wire transfer $50,000 to the LL&L Group bank account in Asheville, North Carolina.

qqqq) On or about April 18, 2006, FREDRICK caused UBS to transfer $50,000 from their undeclared account in the name of New Vanguard to a bank account in the name of LL & L Group in Asheville, North Carolina.

rrrr)   On or about February 28, 2008, FREDRICK and HOUGH caused a North Carolina Deed of Trust to be filed with the Buncombe County

Registry recording the transfer of the Deed of Trust for the Asheville, North Carolina house from LL&L Group to Top Fast Finance for $1.5 million.

ssss)  On or about November 14, 2008, HOUGH emailed M.R. and FREDRICK that "[w]e have put down an offer on some land next to our home...in the name of our LLC."

tttt)    On or about November 18, 2008, FREDRICK emailed S.F. and HOUGH that he has "instructed our overseas bank to wire transfer funds to your account" for the purchase of the lot.

uuuu)  On or about November 18, 2008, FREDRICK and HOUGH caused Swiss Bank No. 1 to transfer $200,000 from their undeclared account in the name of New Vanguard to a trust account in Asheville, North Carolina.

vvvv)  On or about November 21, 2008, FREDRICK and HOUGH caused LL&L Group to purchase three acres of land adjacent to the house in Asheville, North Carolina for approximately $200,000 using the funds transferred from their undeclared account in the name of New Vanguard at Swiss Bank No. 1 to a trust account in Asheville, North Carolina.

wwww)  On or about February 2, 2010, FREDRICK and HOUGH caused a North Carolina General Warranty Deed to be filed with the Buncombe County Registry recording the sale of the Asheville, North Carolina house and three acres of land adjacent to the home from LL&L Group to Aldunatec, S.A., an

31

Ecuador entity. Aldunatec, S.A. purchased the property by assuming the existing mortgage to Top Fast Finance in the amount of $1.2 million.

### Purchase and Sales of Greenville, North Carolina Property

xxxx)  On or about May 9, 2007, at FREDRICK'S direction, Relative L.W. made an offer to purchase a house in Greenville, North Carolina. The Purchase Offer listed Relative L.W. as the purchaser.

yyyy)  On or about June 11, 2007, FREDRICK and HOUGH caused UBS to transfer $590,016.42 from their undeclared account in the name of Top Fast to their undeclared account in the name of Ample Dynamic.

zzzz)  On or about June 11, 2007, at FREDRICK'S direction Relative L.W. attended the closing for the purchase of a house in Greenville, North Carolina. The Settlement Statement listed the borrower as Ample Dynamic and the house was purchased for $590,000 in cash. At FREDRICK'S direction Relative L.W. signed the Settlement Statement on behalf of Ample Dynamic.

aaaaa)  On or about April 15, 2011, FREDRICK caused Singenberger to appoint Relative L.W. as Assistant Vice President of Ample Dynamic in order to sign documents on behalf of Ample Dynamic for the sale of a house in Greenville, North Carolina.

bbbbb)  On or about April 15, 2011, at FREDRICK'S direction,

32

Relative L.W. signed documents for the sale of a house in Greenville, North
Carolina, including the General Warranty Deed and Owner Affidavit and
Indemnity Agreement.

### Purchase and Sale of Piper Meridian Airplane

ccccc)   On or about November 15, 2007, FREDRICK purchased a
2007 Piper Meridian airplane for $1.6 million in the name of FREDRICK and
LL&L Group.

ddddd)   On or November 15, 2007, FREDRICK and HOUGH
caused UBS to transfer $1,601,000 from their undeclared account in the name of
New Vanguard to their undeclared account in the name of Ample Dynamic.

eeeee)   On or about November 15, 2007, FREDRICK and HOUGH
caused UBS to wire transfer $1,601,000 from their undeclared account in the
name of Ample Dynamic to the seller of the airplane.

fffff)    On or about June 8, 2010, FREDRICK caused the 2007
Piper Meridian airplane to be sold for $1,255,000 and caused the proceeds to be
wired to FREDRICK and HOUGH's undeclared account in the name of
Caribbean Foundation No. 1 at Swiss-Liechtenstein Bank No. 1.

ggggg)   On or about June 8, 2010, FREDRICK, listed as CEO of
Ample Dynamic, caused the sale documents to list Ample Dynamic as the owner
of the airplane and caused an agent to sign the sale documents on behalf of

Ample Dynamic.

## Filing of False Tax Returns

hhhhh)   On or about the dates listed below, FREDRICK filed with the IRS false U.S. Individual Income Tax Returns, Forms 1040, for the years listed below, which failed to report substantial income from or that he had an interest in or signature or other authority over bank, securities and other financial accounts in foreign countries:

| Calendar Year | Date of Filing |
|---|---|
| 2001 | October 15, 2002 |
| 2002 | August 15, 2003 |
| 2003 | April 15, 2004 |
| 2004 | August 8, 2005 |
| 2005 | September 15, 2006 |
| 2006 | June 21, 2007 |
| 2007 | April 15, 2008 |
| 2008 | April 15, 2009 |

iiiii)      On or about the dates listed below, HOUGH filed with the IRS false U.S. Individual Income Tax Returns, Forms 1040, for the years listed below, which failed to report substantial income from or that she had an interest in or signature or other authority over bank, securities and other financial accounts in foreign countries:

| Calendar Year | Date of Filing |
|---|---|
| 2001 | October 21, 2002 |
| 2002 | July 15, 2003 |
| 2003 | April 15, 2004 |
| 2004 | April 15, 2005 |
| 2005 | September 15, 2006 |
| 2006 | June 21, 2007 |
| 2007 | April 15, 2008 |
| 2008 | April 15, 2009 |

In violation of Title 18, United States Code, Section 371.

## COUNTS TWO THROUGH FIVE
### (26 U.S.C. § 7206(1) B Filing A False Tax Return)

The allegations of paragraphs 1 through 24 are restated as if fully alleged herein.

On or about the dates set forth below, within the Middle District of Florida and elsewhere,

### DAVID LEON FREDRICK,

the defendant herein, did willfully make and subscribe married filing separate

U.S. Individual Income Tax Returns, IRS Forms 1040 for the calendar years set

forth below and filed with the Internal Revenue Service on or about the dates

indicated below, which returns contained and were verified by a written

declaration that they were made under the penalties of perjury, and which he did

35

not believe to be true and correct as to every material matter, in that FREDRICK:
(a) reported that total income on Line 22 was the amount indicated below,
whereas, as he then and there knew and believed, the amount of total income on
Line 22 was substantially greater; and (b) failed, on Schedule B, Parts I and III, to
report that he had an interest in or a signature or other authority over bank,
securities and other financial accounts located in foreign countries, whereas, as
he then and there knew and believed, he had an interest in or a signature or
other authority over, bank, securities, and other financial accounts located in
foreign countries:

| Count | Calendar Year | Total Income on Line 22 | Approximate Date of Filing |
|-------|---------------|-------------------------|----------------------------|
| Two | 2005 | $412,324 | September 14, 2006 |
| Three | 2006 | $256,666 | June 25, 2007 |
| Four | 2007 | $688,534 | April 15, 2008 |
| Five | 2008 | $167,734 | April 15, 2009 |

In violation of Title 26, United States Code, Section 7206(1).

## COUNTS SIX THROUGH NINE
### (26 U.S.C. § 7206(1) B Filing A False Tax Return)

The allegations of paragraphs 1 through 24 are restated as if fully alleged

herein.

On or about the dates set forth below, within the Middle District of Florida

36

and elsewhere,

PATRICIA LYNN HOUGH,

the defendant herein, did willfully make and subscribe married filing separate

U.S. Individual Income Tax Returns, IRS Forms 1040 for the calendar years set

forth below and filed with the Internal Revenue Service on or about the dates

indicated below, which returns contained and were verified by a written

declaration that they were made under the penalties of perjury, and which she

did not believe to be true and correct as to every material matter, in that HOUGH:

(a) reported that total income on Line 22 was the amount indicated below,

whereas, as she then and there knew and believed, the amount of total income

on Line 22 was substantially greater; and (b) failed, on Schedule B, Parts I and

III, lines 7a and 7b, to report that she had an interest in or signature or other

authority over bank, securities and other financial accounts located in foreign

countries, whereas, as she then and there knew and believed, she had an

interest in or a signature or other authority over, bank, securities, and other

financial accounts located in foreign countries:

37

| Count | Calendar Year | Total Income on Line 22 | Approximate Date of Filing |
|-------|---------------|-------------------------|----------------------------|
| Six | 2005 | $183,167 | September 15, 2006 |
| Seven | 2006 | $46,245 | June 21, 2007 |
| Eight | 2007 | $133,069 | April 15, 2008 |
| Nine | 2008 | $171,565 | April 15, 2009 |

In violation of Title 26, United States Code, Section 7206(1).

A TRUE BILL,

_5 -/5- /3_
Date

Foreperson

ROBERT E. O'NEILL
United States Attorney

By: 

CARYN D. FINLEY
Trial Attorney
United States Department of Justice
Tax Division

By: 

NICOLE H. WAID
Assistant United States Attorney
Chief, Fort Myers Division

FORM OBD-34
APR 1991

## UNITED STATES DISTRICT COURT

Middle District of Florida
Fort Myers Division

THE UNITED STATES OF AMERICA

vs.

DAVID LEON FREDRICK, and
PATRICIA LYNN HOUGH

## INDICTMENT

Violations:

18 USC § 371
26 USC § 7206(1)

A true bill,

_Foreperson_

Filed in open court this 15th day

of May, 2013.

_____
Clerk

Bail $_____

No. 2:13-cr-      -FtM-

L:\ Criminal Cases\F\Fredrick, David L_ 200902583_DLM\Indictment Back.wpd

GPO 863 525