UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

Case No.  2:13-cr-00072-JES-UAM

UNITED STATES OF AMERICA,

      Plaintiff

v.

DAVID LEON FREDERICK, and
PATRICIA LYNN HOUGH

      Defendants.

_____/

**DEFENDANT PATRICIA LYNN HOUGH'S MOTION TO DISMISS COUNT ONE OF
INDICTMENT AND INCORPORATED MEMORANDUM OF LAW**

      COMES NOW, Defendant Patricia Lynn Hough, by and through the undersigned counsel, and hereby submits this Motion to Dismiss Count One of the Indictment, and in support thereof states that on the ground that the charge fails to state an offense under United States law.  This motion is based on the incorporated memorandum of law, the files and records in this case, and such further evidence and argument as may be presented at any hearing on this motion and in support thereof states as follows:

**MEMORANDUM OF LAW**

## I.      INTRODUCTION

      Defendant Patricia Lynn Hough ("Dr. Hough") is charged in this case with one count of conspiracy, in violation of Title 18, United States Code, Section 371, and four counts of

subscribing to a false tax return, in violation of Title 26, United States Code, Section 7206(1).[1] The conspiracy charge identifies, as the sole object of the conspiracy, "to defraud the United States for the purpose of impeding, impairing, obstructing, and defeating the lawful government functions of the Internal Revenue Service of the Treasury Department in the ascertainment, computation, assessment, and collection of revenue: to wit, income taxes." (Indictment ¶ 25). Thus, the conspiracy charge is based exclusively on the so-called "*Klein* conspiracy" doctrine, which makes it a crime "to interfere with or obstruct one of [the United States'] lawful governmental functions by deceit, craft or trickery, or at least by means that are dishonest." *United States v. Klein*, 247 F.2d 908, 916 (2d Cir. 1957) (internal quotation marks omitted). Under this doctrine, a defendant may be found guilty under § 371 not only for conspiring to deprive the government of money or property – the settled common-law meaning of "defraud" – but also for merely conspiring to *interfere with a government function by dishonest means*.

In support of the *Klein* theory, the indictment alleges a number of overt acts that involve seemingly lawful conduct. For example, the indictment alleges that Dr. Hough and her husband: created various corporate entities; opened various foreign bank accounts; transferred money between their bank accounts; caused fees to be paid to Sinco Treuhand AG, a Swiss financial advice firm; and used funds from their bank accounts to purchase real estate and other assets. The government's theory is that these acts violated § 371 because they were aimed at concealing assets from the IRS and thereby impeding or impairing the IRS's government functions. (*See*, *e.g*., Indictment ¶¶ 26-27).

---

[1] Dr. Hough's husband, David Leon Fredrick, is jointly charged in the conspiracy count and separately charged in four § 7206(1) counts.

*Bruce L. Udolf, PA*
*500 East Broward Blvd., Suite 1400, Fort Lauderdale, Florida 33394 (954) 858-8831/ budolf@udolflaw.com*

The *Klein* conspiracy doctrine is wholly unmoored from the text and history of § 371. The language of the statute is as plain as can be: it prohibits any conspiracy to "defraud" the United States. Because the word "defraud" is undefined, it is presumed to have its longstanding common-law meaning of taking the property of another through deceitful or dishonest means. But through a remarkable accumulation of dicta beginning in the late 1800s, this straightforward anti-fraud provision morphed into a sweeping criminal prohibition on any conspiracy to make the government's job more difficult. The *Klein* conspiracy doctrine has now been recognized by every circuit, including the Eleventh Circuit, see, e.g., *United States v. Adkinson*, 158 F.3d 1147, 1154 (11th Cir. 1998), and is a powerful tool that prosecutors routinely deploy in criminal tax cases.

Recently, however, in *Skilling v. United States*, 130 S. Ct. 2896, 2928 (2010), the Supreme Court found it necessary to "pare" the doctrine of honest services fraud "down to its core" in order to avoid serious constitutional concerns regarding vagueness and fair notice. The Court's reasoning in *Skilling* applies with equal or greater force to the judicially created *Klein* doctrine, which provides little notice about the scope of the offense and reaches broad swaths of conduct that do not remotely constitute "fraud." The Second Circuit, while concluding that it was compelled by *stare decisis* to uphold the *Klein* doctrine, recently recognized that the *Klein* conspiracy "is a common law crime, created by the courts rather than by Congress," is not based on anything "recognizable as statutory interpretation," and warrants "considerable judicial skepticism." *United States v. Coplan*, 703 F.3d 46, 61 (2d Cir. 2012).

Dr. Hough recognizes that this Court cannot overrule circuit precedent and that the Eleventh Circuit has (albeit apparently without analysis) recognized the judicially created *Klein* conspiracy doctrine. However, this Court is equally bound to follow *Skilling* and other recent Supreme Court authority that, as discussed herein, renders that doctrine invalid. Dr. Hough

*Bruce L. Udolf, PA*
*500 East Broward Blvd., Suite 1400, Fort Lauderdale, Florida 33394 (954) 858-8831/ budolf@udolflaw.com*

respectfully submits that this Court may, consistent with principles of *stare decisis*, find that the *Klein* doctrine is inconsistent with *Skilling* and that the constitutional concerns articulated by the Supreme Court necessitate rejecting a comparable fraud doctrine that is equally lacking in textual or historical support.  Should this Court find that it is precluded from so holding by *stare decisis*, Dr. Hough nevertheless makes this motion in order to preserve her challenge to count one of the indictment in the event that the Supreme Court rejects the *Klein* doctrine.[2]

## II.    ARGUMENT

### A.  The *Klein* Conspiracy Doctrine Has No Basis in the Text or History of Section 371.

The text of Section 371 is clear and straightforward:  "If two or more persons conspire to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both."  18 U.S.C. § 371 (emphasis added).  The statute does not define the term "defraud," which means that it should be "presumed to have its common-law meaning."  *Evans v. United States*, 504 U.S. 255, 260 (1992).  When Congress "borrows a legal term of art that has gained a meaning through years of legal practice, Congress presumably intends to adopt that meaning."  *Morissette v. United States*, 342 U.S. 246, 263 (1952).  The word "defraud" is a common-law term of art that "commonly refer[s] 'to wronging one *in his property rights* by dishonest methods or

---

[2]  A petition for writ of certiorari has been filed with the Supreme Court in *Coplan*, asking the Court to find that the *Klein* doctrine is no longer viable in light of modern principles of statutory interpretation and serious constitutional concerns about vague and expansive federal criminal statutes.  *Coplan v. United States*, 2013 WL 1819823 (April 26, 2013).  The majority of this memorandum of law is taken *verbatim* from the certiorari petition in *Coplan*, authored by Ted Sampsell-Jones, Paul D. Clement, Jeffrey M. Harris, and Dennis P. Riordan.

*Bruce L. Udolf, PA*
*500 East Broward Blvd., Suite 1400, Fort Lauderdale, Florida 33394 (954) 858-8831/ budolf@udolflaw.com*

schemes.'" *McNally v. United States*, 483 U.S. 350, 358 (1987) (quoting *Hammerschmidt v. United States*, 265 U.S. 182, 188 (1924)) (emphasis added); *See, Coplan*, 703 F.3d at 59-60. Section 371 thus means what it says:  one "defrauds" the government by cheating the government out of money or property.

Nothing in the history of the statute suggests that Congress intended to depart from the settled, common-law meaning of "defraud."  Section 371 was originally enacted in 1867 as part of a multi-provisioned tax statute, *see* Act of March 2, 1867, ch. 169, § 30, 14 Stat. 484, and the conspiracy provision received little attention at the time.  As Professor Goldstein explained, "[n]ot a single explanatory reference to [the conspiracy provision] appears in the entire body of hearings and reports."  Abraham S. Goldstein, *Conspiracy to Defraud the United States*, 68 Yale L.J. 405, 418 (1959).  "All that can be said with certainty . . . is that it was enacted at a time and in a setting which strongly suggest that it was aimed at conspiracies either to commit offenses against the internal revenue or to defraud the United States of internal revenue."  *Id*.  In short, Congress assumed that the words "to defraud the United States" would be given their customary, common-law meaning and nothing more.

Despite this seemingly clear text and history, the *Klein* doctrine arose through a series of analytically unsound lower court rulings in the late 1800s and early 1900s.  When the Supreme Court first applied the federal conspiracy statute, it assumed the ordinary meaning of "defraud" would apply – *i.e.,* that a fraud against the government "may be against the coin, or consist in cheating the government of its land or other property."  *United States v. Hirsch*, 100 U.S. 33, 35 (1879).  But lower courts made much more expansive statements about the statute's reach, and – to put it gently – did not always confine themselves to accepted principles of statutory interpretation.  Shortly after the conspiracy statute was enacted, lower courts began suggesting that

*Bruce L. Udolf, PA*
*500 East Broward Blvd., Suite 1400, Fort Lauderdale, Florida 33394 (954) 858-8831/ budolf@udolflaw.com*

"in this statute the word has a more comprehensive meaning [than at common law], because it includes defrauding the United States in any manner whatever." *United States v. Whalan*, 28 Fed. Cas. 531, 532 (D. Mass. 1868).  Those courts reasoned that the statute should be given its "broadest and most comprehensive signification" to protect the public good, and they adopted an "equitable construction" that went far beyond the common-law definition of fraud.  *Tyner v. United States,* 23 App. D.C. 324, 362 (1904).  Under that "equitable" interpretation, the word fraud was construed to mean "all acts, omissions, and concealments which involve a breach of legal or equitable duty, trust, or confidence justly reposed."  *Id*. (citation omitted).

Perhaps the most important case in the development of the doctrine was *Curley v. United States*, 130 F. 1 (1st Cir. 1904).  The *Curley* court reasoned that the government is inherently entitled to protect itself from any interference, and thus that "fraud" against the government was different in kind from other types of fraud against private parties.  It held that "defrauding the government of its right and its facilities for rendering a proper service to the people" was a "moral offense."  *Id*. at 9-10.  This so-called "moral offense" was, after *Curley*, punishable as a federal crime.

By their own terms, the lower court opinions from which the *Klein* doctrine was derived were based on "moral" and "equitable" rationales rather than legal reasoning.  They contained little analysis that would today be recognized as statutory interpretation.  And they reflect archaic notions of conspiracy law that agreements to pursue noncriminal objectives – such as "corrupting public morals" – can constitute criminal conspiracy.  *See*, *Musser v. Utah*, 333 U.S. 95 (1948).

In the early twentieth century, the Supreme Court made statements in dicta that appeared to endorse the lower courts' expansive interpretations of § 371.  In *Haas v. Henkel*, 216 U.S. 462, 479 (1910), the Court stated that "it is not essential that such a conspiracy shall contemplate a

*Bruce L. Udolf, PA*
*500 East Broward Blvd., Suite 1400, Fort Lauderdale, Florida 33394 (954) 858-8831/ budolf@udolflaw.com*

financial loss or that one shall result," as the statute "is broad enough in its terms to include any conspiracy for the purpose of impairing, obstructing, or defeating the lawful function of any department of government."  That statement was entirely unnecessary to the Court's holding, as there was also evidence that the defendant's scheme resulted in a "real financial loss" to the government.  *Id*.  Similarly, in *Hammerschmidt v. United States*, 265 U.S. 182, 188 (1924), the Court stated that defrauding the government "means primarily to cheat the government out of property or money, but it also means to interfere with or obstruct one of its lawful governmental functions by deceit, craft or trickery, or at least by means that are dishonest."  But in that case the Court actually reversed the defendants' conspiracy convictions under § 371 and only reiterated the *Haas* language as an unnecessary aside.

Nonetheless, in the wake of *Haas* and *Hammerschmidt*, lower courts seized upon the Court's dicta to dramatically expand the scope of liability under § 371.  That process culminated in the *Klein* decision, in which the Second Circuit held that § 371 covers "not only . . . the cheating of the government out of property or money, but 'also means to interfere with or obstruct one of its lawful governmental functions by deceit, craft or trickery, or at least by means that are dishonest.'"  *Klein*, 247 F.2d at 916 (quoting *Hammerschmidt*, 265 U.S. at 188).  The *Klein* conspiracy doctrine, or some version thereof, has now been adopted by every circuit.

In sum, the *Klein* doctrine was not based on a textual or historical analysis of the language of § 371, nor was it derived from any actual *holding* of the Supreme Court.  Instead, the doctrine morphed, almost accidentally, from loose language in nineteenth-century lower court opinions into an expansive criminal prohibition that is now a staple of federal prosecutions.

*Bruce L. Udolf, PA*
*500 East Broward Blvd., Suite 1400, Fort Lauderdale, Florida 33394 (954) 858-8831/ budolf@udolflaw.com*

**B. The *Klein* Conspiracy Doctrine Should Be Reconsidered in Light of the Supreme Court's Decision in *Skilling*.**

In the years following the *Klein* decision, the Supreme Court never squarely addressed whether that doctrine was consistent with the text of § 371. In *United States v. Tanner*, 483 U.S. 107 (1987), the Court rejected the government's argument that § 371 must be read broadly to reach conspiracies to defraud government contractors as well as government agencies. The Court reasoned that "[e]ven if the Government's interpretation of § 371 could be pegged to some language in that section, the Government has presented us with nothing to overcome our rule that ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *Id*. at 131. And that same year, in *McNally*, 483 U.S. 350, the Court suggested that its narrow construction of the mail fraud statute might not necessarily extend to § 371. But the Court had no occasion to "reconsider" whether the broad language from *Haas* and *Hammerschmidt* was a proper interpretation of § 371. *Tanner*, 483 U.S. at 128.

Recent case law, however, has called into serious question whether the Court will continue to recognize the *Klein* conspiracy doctrine. In addition to its dubious origins and lack of textual support, the doctrine raises all of the vagueness and due process concerns that recently led the Court to "pare" the doctrine of honest services fraud "down to its core" in *Skilling v. United States*, 130 S. Ct. at 2928.

In *Skilling*, the former CEO of Enron was prosecuted for "honest services fraud" under 18 U.S.C. § 1346. That statute provides that the term "scheme or artifice to defraud" under the federal mail and wire fraud statutes includes any "scheme or artifice to deprive another of the intangible right of honest services." Skilling argued that the entire statute was unconstitutional because it was hopelessly vague and provided no guidance to defendants about the conduct that was prohibited. A majority of the Court rejected Skilling's constitutional argument but nonetheless

*Bruce L. Udolf, PA*
*500 East Broward Blvd., Suite 1400, Fort Lauderdale, Florida 33394 (954) 858-8831/ budolf@udolflaw.com*

adopted a "limiting construction" of the statute to address vagueness and fair notice concerns. *Id*. at 2929-31. As the Court explained, the "solid core" of the honest services fraud doctrine involved just two types of misconduct: "offenders who, in violation of a fiduciary duty, participated in bribery or kickback schemes." *Id*. at 2930. Reading the statute to encompass "a wider range of offensive conduct" would "raise the due process concerns underlying the vagueness doctrine." *Id*. at 2931. If Congress desired to "go further" than the core types of fraudulent conduct, the Court emphasized that it "must speak more clearly than it has." *Id*. at 2933 (citation omitted). Justices Scalia, Thomas, and Kennedy concurred in the judgment, arguing that a limiting construction was inappropriate because the statute "provides no clear indication of what constitutes a denial of the right of honest services." *Id*. at 2938. They concluded that even if the statute were limited to bribery and kickbacks, this "would not suffice to eliminate the vagueness of the statute." *Id*. The concurring Justices thus would have reversed Skilling's conviction on the sole basis that the honest services fraud statute, as written, "provides no 'ascertainable standard' for the conduct it condemns." *Id*. at 2940 (citation omitted).

*Skilling* was not an outlier. For years before that decision, the Court had been cautioning against overly expansive interpretations of federal criminal laws in general and fraud statutes in particular. In *McNally*, the Court held that the "mail fraud statute clearly protects property rights, but does not refer to the intangible right of the citizenry to good government." 483 U.S. at 356. The Court explained that the unmodified term "to defraud" is most commonly read as referring to "'wronging one *in his property rights* by dishonest methods or schemes.'" *Id*. at 358 (quoting *Hammerschmidt*, 265 U.S. at 188) (emphasis added). That term "usually signif[ies] the deprivation of something of value by trick, deceit, chicane or overreaching." *Id*. The Court further emphasized

*Bruce L. Udolf, PA*
*500 East Broward Blvd., Suite 1400, Fort Lauderdale, Florida 33394 (954) 858-8831/ budolf@udolflaw.com*

that, in light of the rule of lenity, it would be inappropriate to construe a federal criminal statute in a manner that left its "outer boundaries ambiguous." *Id*. at 360.[3]

Similarly, in *Cleveland v. United States*, 531 U.S. 12, 27 (2000), the Court unanimously held that the word "property" in the mail fraud statute only encompassed property "in the victim's hands," and did not extend to regulatory licenses.  The government had asserted that a scheme to obtain state-issued video poker licenses was covered by the mail fraud statute.  But the Court squarely rejected that argument, noting that the government's reading of the mail fraud statute "invites us to approve a sweeping expansion of federal criminal jurisdiction in the absence of a clear statement by Congress." *Id*. at 24.  And the Court once again invoked the rule of lenity to hold that any ambiguity over the meaning of "property" must be resolved in favor of the defendant. *Id*. at 25.

The Supreme Court's decision in *Skilling*, as well as its earlier decisions in *Cleveland* and *McNally*, severely undermines any potential justification for the ongoing validity of the *Klein* conspiracy doctrine.  Both the *Klein* conspiracy doctrine and the honest services doctrine were initially created by lower courts as expansive interpretations of anti-fraud provisions.  Compare *Skilling*, 130 S. Ct. at 2926-27 (describing creation and development of the honest services doctrine) *with* Goldstein, *supra*, 68 Yale L.J. at 420-28 (describing creation and development of the *Klein* doctrine).  And both doctrines relied on definitions of "fraud" that went far beyond the ordinary common-law meaning of that term.

---

[3] Congress subsequently abrogated the holding of *McNally* by statute and reintroduced the concept of honest services fraud.  *See* 18 U.S.C. § 1346.  But, as explained above, the Court later held in *Skilling* that even the honest services fraud statute must be limited to its "core" in order to avoid vagueness and due process concerns.

*Bruce L. Udolf, PA*
*500 East Broward Blvd., Suite 1400, Fort Lauderdale, Florida 33394 (954) 858-8831/ budolf@udolflaw.com*

Moreover, the *Klein* doctrine and the honest services fraud doctrine shared common roots and justifications. Indeed, many of the leading cases that helped create the honest services fraud doctrine relied on *Klein* conspiracy cases. *See, e.g., United States v. Dixon*, 536 F.2d 1388, 1400-01 (2d Cir. 1976) (noting the similarities between the two doctrines and their rationales); *See also, McNally*, 483 U.S. at 368-70 (Stevens, J., dissenting) (arguing that acceptance of the *Klein* doctrine under § 371 also proved the validity of the honest services doctrine under § 1341). Both doctrines also rested on policy arguments that fraud statutes *should* protect not only property rights but also the integrity of governmental functions.

And the *Klein* doctrine, like the honest services fraud doctrine, is both vague and overbroad. *See, Skilling*, 130 S. Ct. at 2929-31 (identifying serious vagueness concerns with honest services doctrine). The Ninth Circuit has explained some of the absurd situations that could be deemed a *Klein* conspiracy:

> Under the government's theory, a husband who asks his wife to buy him a radar detector would be a felon – punishable by up to five years in prison and a fine of $10,000 – because their actions would obstruct the government function of catching speeders. So would a person who witnesses a crime and suggests to another witness (with no hint of threat) that they not tell the police anything unless specifically asked about it. So would the executives of a business that competes with a government-run enterprise and lowers its prices to siphon off the government's customers. So would co-owners of land who refuse to sell it for use as a military base, forcing the government to go to the extra trouble of condemning it. So would have Elliot Richardson and William Ruckelshaus, had they agreed with each other to quit if asked by President Nixon to fire Archibald Cox.

*United States v. Caldwell*, 989 F.2d 1056, 1058-60 (9th Cir. 1993). The First Circuit has similarly explained that "[i]f section 371 embraced every foreseeable consequence of a conspiracy, many joint financial crimes having no other federal nexus – and perhaps many non-criminal acts as well – would automatically become federal conspiracies to defraud the IRS." *United States v. Goldberg*, 105 F.3d 770, 773 (1st Cir. 1997).

In tax prosecutions such as this one, the *Klein* doctrine allows prosecutors to obtain a criminal conviction even when they cannot prove any actual tax evasion.  Given the complexity of tax law and the hazy line between legal and illegal tax shelters, Congress intended that prosecutors must clear a high hurdle before imposing criminal sanctions.  Recognizing Congress' intent to grant "special treatment of criminal tax offenses . . . due to the complexity of the tax laws," the Supreme Court has held that prosecutors must prove knowledge of illegality in criminal tax cases. *Cheek v. United States*, 498 U.S. 192, 200-01 (1991).  In the absence of such proof, only civil penalties are warranted.  But under the *Klein* doctrine, prosecutors can easily avoid those hurdles. Rather than proving actual tax evasion, and its essential element of knowledge of illegality, prosecutors can simply prove that the defendant interfered with the lawful function of the IRS.  In fact, that is precisely the much easier path that the government has chosen to take in this case by instead charging Dr. Hough with the "moral offense" of a *Klein* conspiracy.  The *Klein* doctrine thus undermines the statutory scheme enacted by Congress, which was intended to limit *criminal* tax prosecutions to only the most egregious cases, and facilitates evasion of the Court's decision in *Cheek*.

The *Skilling* Court held that the inherent vagueness and indeterminacy of the honest services fraud statute required a limiting construction that "pare[d]" the doctrine down to its "solid core" of bribery and kickbacks.  130 S. Ct. at 2930-31.  The *Klein* conspiracy doctrine is entitled to no greater deference.  Like expansive applications of honest services fraud, the *Klein* doctrine is a textually unfounded judicial expansion of a federal criminal statute.  The mere fact that the doctrine is old does not justify its ongoing existence, especially in light of its dubious origins. *Cf. Kirtsaeng v. John Wiley & Sons, Inc.*, No. 11-697, ___ U.S. ___ (March 19, 2013) ("Is the Court

having once written dicta calling a tomato a vegetable bound to deny that it is a fruit forever after?").

### C. The Rule of Lenity and Prohibition Against Common-Law Crimes Compel Elimination of the *Klein* Conspiracy Doctrine.

The *Klein* conspiracy doctrine also runs afoul of two related limitations on federal criminal law: the rule of lenity and the prohibition against common-law crimes.

Federal crimes are "solely creatures of statute," *Liparota v. United States*, 471 U.S. 419, 424 (1985), because "the power of punishment is vested in the legislative, not in the judicial department," *United States v. Wiltberger*, 5 Wheat. 76, 95 (1820) (Marshall, C.J.). As a result, "the notion of a common-law crime is utterly anathema" in modern law. *Rogers v. Tennessee*, 532 U.S. 451, 476 (2001) (Scalia, J., dissenting).

The rule of lenity bookends the prohibition on common-law crimes by ensuring that courts do not effectively create new crimes through expansive interpretations of criminal statutes. That rule "requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them." *United States v. Santos*, 553 U.S. 507, 514 (2008). In other words, "the tie must go to the defendant." *Id*. This "venerable rule" vindicates "the fundamental principle that no citizen should be held accountable for a violation of a statute whose commands are uncertain." *Id*. It also "places the weight of inertia upon the party that can best induce Congress to speak more clearly and keeps courts from making criminal law in Congress's stead." *Id*.

Even if the text and history of § 371 did not unambiguously limit the word "defraud" to common-law fraud, the rule of lenity would compel that interpretation. Perhaps the concept of "fraud" could be stretched beyond its traditional meaning to encompass interference with a government function. But that is surely not an obvious reading of the statute, or even a natural

reading.  And Congress is perfectly capable of enacting a definition of fraud that goes beyond the common-law term; indeed, that was the precise purpose of the honest services fraud statute.  *See*, 18 U.S.C. § 1346.  But when a statute simply uses the undefined term "defraud," courts have no license to err on the side of an expansive interpretation.  For example, in *McNally*, the Supreme Court invoked the rule of lenity to hold that the unmodified word "defraud" in the mail fraud statute should be construed as only referring to "the protection of property rights" rather than an amorphous standard of "good government."  483 U.S. at 360; *See also, Cleveland*, 531 U.S. at 25 (relying on rule of lenity in construing the meaning of "property" under the mail fraud statute).

The Court has also relied upon the rule of lenity to prevent atextual and overbroad interpretations of § 371.  In *Tanner*, the government argued that § 371 should be construed to reach fraud against government contractors, even though the text only refers to "the United States or any agency thereof."  The Court rejected the government's attempt to "expand the reach of a criminal provision by reading new language into it."  483 U.S. at 131.  The Court further noted that even if the government's interpretation could be "pegged to some language in the statute," this would be insufficient "to overcome our rule that ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity."  *Id*.

\*     \*     \*

What Justice Scalia said about honest services fraud prosecutions a year before *Skilling* is equally applicable to the *Klein* doctrine.  There is a "serious argument that [§ 371] is nothing more than an invitation for federal courts to develop a common-law crime of unethical conduct."  *Sorich v. United States*, 555 U.S. 1204 (2009) (Scalia, J., dissenting from denial of certiorari).  Even if § 371 were subject to two plausible interpretations – one based on the ordinary definition of "defraud" and one based on a more expansive definition – a court applying the statute is bound by

the rule of lenity to adopt the narrower interpretation.  If the government is dissatisfied with that interpretation, it bears the burden of asking Congress to "speak more clearly" in defining federal crimes.  *Santos,* 553 U.S. at 514.  Indeed, the Supreme Court's holdings in *Skilling*, *Cleveland,* and *McNally* make clear that Congress must both:  (1) clearly indicate that it is departing from the ordinary common-law meaning of "fraud"; and (2) clearly delineate the types of conduct that will fall within the new "fraud-plus" offense in order to avoid vagueness and due process concerns. The *Klein* conspiracy doctrine – and thus count one of the indictment – fails on both counts.

## III.      CONCLUSION

The *Klein* conspiracy doctrine was the product of an unsound and archaic body of lower court precedent that has never been closely examined by any court.  That doctrine would be textually and historically dubious under any circumstances, but has become entirely untenable after the Supreme Court's decision in *Skilling*.  Accordingly, count one of the indictment, which rests solely on a *Klein* conspiracy theory and fails to allege a conspiracy to "defraud" the United States within the textual meaning of § 371, should be dismissed.

Dated: June 21, 2013

<div style="margin-left:40%">

Respectfully submitted,

**BRUCE L. UDOLF, P.A**.
*Counsel for Defendant Hough*
Broward Financial Centre
500 East Broward Blvd., Suite 1400
Fort Lauderdale, Florida 33394
Tel: (954) 858-8831/ Fax (954) 525-2134
budolf@udolflaw.com
Fla. Bar No. 0899933

By: /s/ Bruce L. Udolf

</div>

**BINGHAM MCCUTCHEN LLP**
*Counsel for Defendant Hough*
The Water Garden, Suite 2050 North
1601 Cloverfield Boulevard
Santa Monica, CA 90404-4082
Telephone: (310) 255-9087
Facsimile: (310) 907-2087


By: /s/ Nathan J. Hochman
       Nathan J. Hochman
       nathan.hochman@bingham.com

       Daniel A. Saunders
       daniel.saunders@bingham.com


## CERTIFICATE OF COMPLIANCE

WE HEREBY CERTIFY that the undersigned has conferred with opposing counsel prior to the filing of this motion, that counsel has been unable to resolve the issues by agreement, and that the motion concerns matters which are not covered by the scheduling order, as directed in the Court's Criminal Scheduling Order [DE 22], at ¶ II (D).

By: /s/ Bruce L. Udolf


## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing was filed electronically using the Court's CM/ECF system, on this 21st day of June, 2013.

By: /s/ Bruce L. Udolf

*Bruce L. Udolf, PA*
*500 East Broward Blvd., Suite 1400, Fort Lauderdale, Florida 33394 (954) 858-8831/ budolf@udolflaw.com*