IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Case No. 2:13-cr-00072-FtM-JES-UAM |
| ) | |
| DAVID LEON FREDRICK and ) | |
| PATRICIA LYNN HOUGH, ) | |

### MOTION TO DISQUALIFY COUNSEL

COMES NOW, the United States of America, by and through its undersigned attorney, and hereby moves this Court to disqualify Nathan Hochman, Esq. and the firm, Bingham McCutchen LLP ("the Firm"), from representing defendant Patricia Hough due to Defendant David Fredrick's unavailability for the court to conduct a *Garcia* Hearing.[1]

### I.   BACKGROUND

During the investigation of this case, Attorney Nathan Hochman represented Defendant David Fredrick and Attorney Charles Falk represented Patricia Hough; this representation began in March 2011. *See* Response of Defendant Patricia Hough to Motion to Determine Conflict of Interest, Dkt. #19 at p.2 ("Dkt. #19"). During the past two years, Mr. Hochman and Mr. Falk made numerous presentations to the government and counsel for the government has had significant correspondence and discussion with each counsel concerning their individual clients. *Id*. The grand jury returned an indictment on May 15, 2013, charging Defendants Fredrick and Hough with one count of Conspiracy to Defraud the Internal Revenue Service (IRS) in violation

---

[1] Pursuant to the Court's Scheduling Order ¶¶ (I)(K) and (II)(D) (Dkt. #22), the government certifies that on June 17, 2013, the government conferred with defense counsel concerning this motion and that counsel have been unable to resolve the motion by agreement.

1

of 18 USC § 371 and four counts each of Filing False Tax Returns for 2005 through 2008 in violation of 26 USC § 7206(1).  *See* Indictment, Dkt. #1.  On June 3, 2013, the Clerk issued a summons to Defendants Fredrick and Hough ordering them to appear on June 13, 2013 for arraignment.  Dkt. #10.  On June 13, 2013, Defendant Hough appeared before Magistrate Judge Frazier for arraignment; Defendant Fredrick failed to appear and an arrest warrant was issued. Dkt. #24.

According to documents filed by Defendant Hough, on May 28, 2013, Defendant Fredrick requested that Mr. Hochman "withdraw as the attorney, (sic) representing me in the case of David Fredrick vs. Department of Justice, effective this date."  Dkt. #19-1, Exhibit A. On that same date, Mr. Hochman responded to Defendant Fredrick's request by emailing him a letter "Re: Termination of Service, Waiver of Conflict of Interest, and Agreement to Allow Information to Be Used on behalf of Dr. Patricia Hough's Defense to Indictment."  Dkt. #19-2, Exhibit B, p. 1.  The letter confirmed Mr. Hochman's receipt of Defendant Fredrick's termination letter and informed Defendant Fredrick that Defendant Hough has requested that the Firm represent her in connection with the Indictment.  Mr. Hochman advised Defendant Fredrick that "there is a potential for a conflict of interest in the Firm representing Dr. Hough in the indictment" and described some of the implications of this potential conflict, including that "[t[he Firm would be able to cross-examine you should you take the stand in your own defense using the Information" obtained during the Firm's representation of you and "cross-examine any witnesses you may present using the Information.".  Dkt. #19-2 at p. 2.  Mr. Hochman also encouraged Defendant Fredrick to consult with separate and independent counsel to evaluate the waiver.  *Id*.  The letter was "acknowledged and agree[d] to" by Defendant Fredrick and his signature is undated.  *Id*.

2

On May 28, 2013, the same date as both the termination letter and Defendant Fredrick's waiver, Defendant Hough engaged Mr. Hochman and the Firm and signed a retention agreement which included a waiver of conflict of interests. Dkt. #19-3, Exhibit C. Mr. Hochman also advised Defendant Hough of the implications of the potential conflict and that she should feel free to consult with separate counsel before executing the waiver. The letter was "acknowledged and agree[d]" to by Defendant Hough. Her signature is also not dated, though based on the date of the letter and Mr. Hochman's subsequent notification to undersigned counsel on May 29, 2013, that he and others would now be representing Defendant Hough, it appears she signed the letter on May 28, 2013.

On June 7, 2013, the government filed a Motion to Determine Conflict of Interest (Dkt. #14), moving the court to conduct a hearing pursuant to *United States v. Garcia*, 517 F.2d 272 (5th Cir. 1975). On June 12, 2013, Defendant Hough filed a response to the government's motion arguing that the Court should deny the motion because Defendants Hough and Fredrick signed written waivers. *See* Dkt. #19, Response of Defendant Patricia Hough to Motion to Determine Conflict of Interest. On June 13, 2013, Defendant Hough was arraigned on the Indictment and released on bail. Defendant Fredrick failed to appear and an arrest warrant was issued. Magistrate Judge Frazier ruled that the government's Motion to Determine Conflict of Interest was moot. Dkt. #21. In response to the court's ruling, the government argued that it believed the conflict issue was still ripe because Defendant Fredrick was not present to waive the conflict in court.

## II. LAW

### A. Sixth Amendment Right to Conflict-Free Counsel

It is well established that a defendant's Sixth Amendment right to "reasonably effective assistance" from counsel includes the right to representation free from conflict of interest. U.S. Const. Amend. VI; *e.g., Strickland v. Washington*, 466 U.S. 668, 687 (1987); *Wood v. Georgia*, 450 U.S. 261, 269-71 (1981).

Although the Sixth Amendment right to counsel generally includes the ability to choose one's counsel, this right is "[c]ircumscribed in a number of respects" and must be balanced against other interests in the judicial system such as the right to conflict-free counsel, the ethical standards of the profession, and the appearance of fairness to the public. *Wheat v. United States*, 486 U.S. 153, 159-60 (1987); *United States v. McCutcheon*, 86 F.3d 187, 189 (11th Cir. 1996) (there is no absolute right to a choice of counsel); *United States v. Padilla-Martinez*, 792 F.2d 942, 946 (11th Cir.) *cert. denied*, 474 U.S. 952 (1985) (the right to a choice of counsel is "subordinate to the requirements of the efficient and orderly administration of justice"). As such, the presumption in favor of granting a defendant his desired counsel may be overcome by actual conflicts of interest created by that counsel under the Sixth Amendment and applicable ethical rules. *Id*. at 163-64. Moreover, the mere potential for a conflict of interest is sufficient to require disqualification. *Id*; *see also Smith v. White*, 815 F.2d 1401, 1405 (11th Cir. 1987); *United States v. Ross*, 33 F.3d 1507, 1523 (11th Cir. 1994).

### B. Waiver of Conflicts

In certain circumstances, courts may allow an attorney to proceed despite an actual or potential conflict of interest if the defendant makes a voluntary, knowing and intelligent waiver.

*Garcia*, 517 F.2d at 277.[2]  However, a defendant may not "[d]emand that a court honor his waiver of conflict-free representation."  *United States v. Gonzalez-Lopez*, 548 U.S. 140, 152 (2006).  The Supreme Court has stated that:

> [D]istrict court[s] must be allowed substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses.

*Wheat*, 486 U.S. at 163.  The trial court "has an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them . . . Not only the interest of a criminal defendant but the institutional interest in the rendition of just verdicts in criminal cases may be jeopardized by unregulated multiple representation." *Ross*, 33 F.3d at 1524 (internal quotations and citation omitted).

In *Garcia*, the Fifth Circuit directed the procedure that the Court must undertake when evaluating a proffered waiver.  The Court must, at a minimum, address the defendant personally, forthrightly advise him of the potential dangers of conflicted representation, and elicit a narrative response from the defendant that he understands the details of his attorney's possible conflict of interest and has discussed the matter with his attorney or outside counsel, if applicable.  *Garcia*,

---

[2] Model Rules of Professional Conduct Rule 1.9 pertains to "Duties to Former Clients" and states that "(a) a lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same…matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." *Model Rules of Professional Conduct Rule 1.9*. Rule 1.9 also states that the lawyer shall not "use information relating to the representation to the disadvantage of the former client" or "reveal information relating to the representation except as these Rules would permit or require with respect to a client." *Id.*  The government believes that there is a potential conflict of interest in Mr. Hochman's successive representation of Defendant Hough.  Given the allegations in the indictment, the government anticipates that Defendants Fredrick and Hough may have adverse defenses and that Mr. Hochman would need to take a position that is materially adverse to his former client, Defendant Fredrick.  *See* Dkt. #19-2, p. 2 and 19-3, p. 4.  Additionally, the government is concerned that if either or both Defendants were to testify at trial that Attorney Hochman could use information relating to his representation of Fredrick to Fredrick's disadvantage or be forced to forgo a line of cross-examination because of his prior representation.  *Id.*

517 F.2d at 277-78; *see also* The Benchbook for U.S. District Court Judges, Sixth Edition, § 1.08 Joint representation of codefedants  ("If the defendant wants to waive the right to separate counsel, get a clear, on-the-record oral waiver by him or her of the right to separate counsel.  **In addition**, you may want the defendant to sign a written waiver.") (emphasis added).

The waiver must be knowing and voluntary, the defendant must understand and have awareness of the circumstances and consequences of his waiver, and he should do so with advice from independent counsel.  *Garcia*, 517 F.2d at 276-78; *United States v. Rodriguez*, 982, F.2d 474, 477 (11th Cir. 1993) ("[t]he record should show, in some way, that the defendant was aware of the conflict of interest; realized the conflict could affect the defense; and knew of the right to obtain other counsel.").  The waiver colloquy not only protects the defendant's constitutional rights but "also serves the government's interest by assisting in shielding any potential conviction from collateral attack, either on Sixth Amendment grounds or on a Fifth or Fourteenth Amendment "fundamental fairness" basis." *Garcia*, 517 F.2d at 278.  "Nonetheless, a court need not accept a waiver of the right." *Ross*, 33 F.3d  at 1524; *Wheat*, 486 U.S. at 163 (upholding disqualification of attorney despite waiver not only "in those rare cases where an actual conflict may be demonstrated before trial, but [also] in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses.")

### III.    DISCUSSION

A universal requirement to all of the Eleventh Circuit cases on point is that the court should conduct an on-the-record inquiry to aid in the determination that both defendants' waivers are knowing, intelligent and voluntary. *See Garcia*, 571 F.2d at 277-78; *Rodriguez*, 982 F.2d at 477; *United States v. Petz*, 764 F.2d 1390, 1393 (11th Cir. 1985); and *United State v. Zajax*, 677 F.2d 61, 63 (11th Cir. 1982).   The Judges Benchbook also advises that an oral inquiry is the

6

proper protocol to make a clean record of a defendant's waiver of conflict-free counsel and that a written waiver is a secondary consideration only after the court has conducted an oral, on-the-record inquiry.

While Defendant Hough is available for the Court to question on the record, Defendant Fredrick is not and it is presently uncertain if and when he will become available. Defendant Hough will likely argue that Defendant Fredrick's absence is irrelevant because his written waiver is sufficient. S*ee* Dkt. # 19-2. However, the case law is clear that Defendant Fredrick's written waiver is not sufficient and a *Garcia* hearing should be conducted.

The *Garcia* hearing serves the purpose of addressing both defendants whose constitutional right to conflict-free counsel is implicated. It is not just Defendant Hough's rights that deserve protection, but also Defendant Fredrick's rights. *McCutcheon*, 86 F.3d at 189. Since Defendant Fredrick is not presently before this Court, the Court cannot address Defendant Fredrick personally to determine what he understood when he executed the written waiver, nor can the Court "elicit a statement in narrative form from the defendant indicating that he fully understands the nature of the situation and has knowingly and intelligently made the decision to proceed . . ." *United States v. Martinez*, 630 F.3d 361,363 (5th Cir. 1980); *Garcia*, 517 F.2d at 278 ("A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered."). The record is devoid of sufficient evidence to establish that Defendant Fredrick has made a knowing, intelligent and voluntary waiver of conflict-free counsel.

IV.     **CONCLUSION**

Pursuant to *Wheat* and *Garcia*, the government respectfully submits that the Court must conduct an on-the-record colloquy to determine that both Defendant Hough and Defendant Fredrick knowingly and intelligently waive the potential conflict.  Defendant Fredrick is presently unavailable.  Therefore, the court is unable to conduct the requisite inquiry and has insufficient evidence to determine if Defendant Fredrick knowingly and voluntarily waives the potential conflict in Mr. Hochman and his Firm's subsequent representation of Defendant Hough.  *Rodriguez*, 982 F.2d at 477.  Therefore, the United States respectfully requests that this Court grant the government's Motion to Disqualify Mr. Hochman and the Firm.

ROBERT E. O'NEILL
United States Attorney


By:     /s/ Caryn D. Finley
        CARYN D. FINLEY
        Trial Attorney, Department of Justice, Tax Division
        New York Bar No. 3953882
        2110 First Street, Suite 3-137
        Fort Myers, Florida  33901
        Telephone:  (239) 461-2200
        Telephone:  (202) 514-5051
        Facsimile:  (239) 461-2219
        E-mail: caryn.finley@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on June 26, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of that electronic filing (NEF) to the following:

Bruce L. Udolf
Bruce L. Udolf, P.A.
500 E. Broward Blvd.
Suite 1400
Ft. Lauderdale, FL 33394
Budolf@udolflaw.com

Brianna L. Abrams
Bingham McCutchen, LLP
The Water Garden
1601 Cloverfield Blvd., Suite 2050 North
Santa Monica, CA 90404-4082

In addition, I have served copies of this filing on the following parties using email:

Nathan J. Hochman
Daniel Saunders
Bingham McCutchen, LLP
The Water Garden
1601 Cloverfield Blvd., Suite 2050 North
Santa Monica, CA 90404-4082

Charles Edward Falk
Law Office of Charles Edward Falk
25 Devonshire Lane
Mendham, NJ 07945

/s/ Caryn D. Finley
CARYN D. FINLEY
Trial Attorney, Department of Justice, Tax Division
New York Bar No. 3953882
2110 First Street, Suite 3-137
Fort Myers, Florida  33901
Telephone:  (239) 461-2200
Telephone:  (202) 514-5051
Facsimile:  (239) 461-2219
E-mail: caryn.finley@usdoj.gov