# EXHIBIT A

No. 12-1299

# In the Supreme Court of the United States

ROBERT COPLAN, PETITIONER

*v.*

UNITED STATES OF AMERICA

*ON PETITION FOR A WRIT OF CERTIORARI
TO THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT*

**BRIEF FOR THE UNITED STATES IN OPPOSITION**

DONALD B. VERRILLI, JR.
  *Solicitor General*
    *Counsel of Record*
KATHRYN KENEALLY
  *Assistant Attorney General*
FRANK P. CIHLAR
S. ROBERT LYONS
ALEXANDER P. ROBBINS
  *Attorneys*

  *Department of Justice
  Washington, D.C. 20530-0001
  SupremeCtBriefs@usdoj.gov
  (202) 514-2217*

## QUESTION PRESENTED

Whether petitioner was properly convicted of conspiring "to defraud the United States," in violation of 18 U.S.C. 371, based on evidence that he conspired to impede the lawful functions of the Internal Revenue Service through dishonest means.

(I)

# TABLE OF CONTENTS

Page

Opinions below ......................................................................... 1
Jurisdiction .............................................................................. 1
Statement ................................................................................. 1
Argument ................................................................................. 6
Conclusion ............................................................................. 19

# TABLE OF AUTHORITIES

Cases:

*CSX Transp., Inc.* v. *McBride*, 131 S. Ct. 2630 (2011) ............ 10

*Cleveland* v. *United States*, 531 U.S. 12 (2000) ................. 11, 14

*Curley* v. *United States*, 130 F. 1 (1st Cir.), cert. denied,
195 U.S. 628 (1904) ............................................... 8, 14

*Dennis* v. *United States*, 384 U.S. 855 (1966) ...................... 6, 9

*Forest Grove Sch. Dist.* v. *T.A.*, 557 U.S. 230
(2009) ...................................................................... 11

*Glasser* v. *United States*, 315 U.S. 60 (1942) ...................... 9, 11

*Griffin* v. *United States*, 502 U.S. 46 (1991) .......................... 17

*Haas* v. *Henckel*, 216 U.S. 462 (1910) ............... 6, 7, 8, 10, 11, 12

*Hammerschmidt* v. *United States*, 265 U.S. 182
(1924) ................................................................ *passim*

*Hilton* v. *South Carolina Pub. Rys. Comm'n*, 502 U.S.
197 (1991) ................................................................ 10

*Hyde* v. *Shine*, 199 U.S. 62 (1905) ......................................... 8

*John R. Sand & Gravel Co.* v. *United States*, 552 U.S.
130 (2008) ................................................................ 10

*Kolender* v. *Lawson*, 461 U.S. 352 (1983) ............................. 15

*Lorillard* v. *Pons*, 434 U.S. 575 (1978) ................................ 11

*McGregor* v. *United States*, 134 F. 195 (4th Cir. 1904) ............. 8

*McNally* v. *United States*, 483 U.S. 350 (1987) ............ 10, 13, 14

*Muscarello* v. *United States*, 524 U.S. 125 (1998) ................... 12

(III)

IV

Cases: Page

*Pasquantino* v. *United States*, 544 U.S. 349 (2005)................18

*Patterson* v. *McLean Credit Union*, 491 U.S. 164 (1989).......10

*Puckett* v. *United States*, 556 U.S. 129 (2009) ..........................17

*Skilling* v. *United States*, 130 S. Ct. 2896 (2010) .........14, 15, 18

*United States* v. *Caldwell*, 989 F.2d 1056 (9th Cir. 1993) .......16

*United States* v. *Goldberg*, 105 F.3d 770 (1st Cir. 1993) .........16

*United States* v. *Keitel*, 211 U.S. 370 (1908)8 .............................8

*United States* v. *Klein*, 247 F.2d 908 (2d Cir. 1957),
   cert. denied, 355 U.S. 924 (1958) ............................................10

*United States* v. *Marcus*, 130 S. Ct. 2159 (2010)......................17

Statutes and rule:

Act of Mar. 2, 1867, ch. 169, § 30, 14 Stat. 484 ........................12

Act of June 24, 1948, ch. 645, 62 Stat. 701 ................................11

Rev. Stat. § 5440 (1878)...................................................7, 11, 13

18 U.S.C. 371 ..............................................................*passim*

18 U.S.C. 1001 ...................................................................2, 5, 18

18 U.S.C. 1341 ...................................................................11, 13

18 U.S.C. 1343 ...................................................................19

18 U.S.C. 1346 ...................................................................14

26 U.S.C. 7201 ...................................................................1, 5, 18

26 U.S.C. 7212 ...................................................................5

26 U.S.C. 7212(a) .............................................................1

Fed. R. Crim. P. 52(b).....................................................16

Miscellaneous:

Tax Div., U.S. Dep't of Justice, *Criminal Tax Manual*
   (2012) .....................................................................................16

Noah Webster, *American Dictionary of the English
Language* (1864) ...................................................................12

# In the Supreme Court of the United States

No. 12-1299

ROBERT COPLAN, PETITIONER

*v.*

UNITED STATES OF AMERICA

*ON PETITION FOR A WRIT OF CERTIORARI*
*TO THE UNITED STATES COURT OF APPEALS*
*FOR THE SECOND CIRCUIT*

**BRIEF FOR THE UNITED STATES IN OPPOSITION**

### OPINION BELOW

The opinion of the court of appeals (Pet. App. 1-138) is reported at 703 F.3d 46.

### JURISDICTION

The judgment of the court of appeals was entered on November 29, 2012.  On February 15, 2013, Justice Ginsburg extended the time within which to file a petition for a writ of certiorari to and including April 26, 2013, and the petition was filed on that date.  The jurisdiction of this Court is invoked under 28 U.S.C. 1254(1).

### STATEMENT

Following a ten-week jury trial, petitioner was convicted on two counts of attempted tax evasion, in violation of 26 U.S.C. 7201; one count of obstructing the Internal Revenue Service (IRS), in violation of 26 U.S.C. 7212(a); one count of making a false statement to the

(1)

2

IRS, in violation of 18 U.S.C. 1001; and one count of
conspiring to defraud the United States, evade taxes,
and make false statements to the IRS, in violation of 18
U.S.C. 371. Pet. App. 12-14, 106-107. Petitioner was
sentenced to 36 months of imprisonment, to be followed
by three years of supervised release. *Id.* at 14. The
court of appeals affirmed. *Id.* at 1-138.

1. Petitioner was a tax lawyer and a partner at the
accounting firm of Ernst & Young, LLP (E&Y), who
participated in a scheme to defraud the IRS, evade tax-
es, and make false statements in connection with the
design, marketing, and defense of five tax shelters for
wealthy clients. Pet. App. 4; Gov't C.A. Br. 4. Each tax
shelter purported to reduce or eliminate tax liability
through a series of transactions that lacked economic
substance. Pet. App. 6-9; see Gov't C.A. Br. 12-52.
When the IRS audited the shelters, petitioner and his
co-conspirators attempted to conceal the shelters' true
purpose and nature. Pet. App. 6.

One of the shelters, the CDS shelter, was designed to
defer payment of taxes and to convert ordinary income
into long-term capital gains (which are taxed at a lower
rate) through the formation of a securities-trading part-
nership and the execution of a carefully scripted set of
transactions, which would culminate in the abrupt ter-
mination of the partnership. Pet. App. 6-7; see Gov't
C.A. Br. 12-31. Although petitioner and his colleagues
marketed the shelter as a method of tax avoidance, see
Gov't C.A. Br. 22, and charged clients based on how
much tax liability the clients avoided, see *id.* at 18, they
tried to conceal this from the IRS and make it appear as
if the transactions were instead motivated by legitimate
business purposes, *id.* at 20-31. Petitioner, for example,
instructed an E&Y employee not to provide a client with

3

a written description of the strategy because "[b]usiness purpose is a critical element to prove for these solutions, and the less evidence there is that the client responded to a tax-saving promotion, the better for his argument that there were non-tax motivations guiding his actions." *Id.* at 22-23. Petitioner also approved of an E&Y employee's attempt to "paper[] the file" in one of the transactions, observing that it "seems like a good idea" to "show that the client considered [a particular transaction] from an investment perspective." *Id.* at 26. At one point, petitioner even drafted a letter in which CDS clients were supposed to falsely attribute the abrupt termination of their securities-trading partnerships not to the culmination of their tax shelters, but to the terrorist attacks of September 11, 2001. *Id.* at 31.

Another one of the tax shelters, the COBRA shelter, "involved creating an asset with a high 'basis' for tax purposes, which the taxpayer could then sell and generate a deductible loss." Pet. App. 7; see *id.* at 7-8; Gov't C.A. Br. 31-39. Although the sole purpose of the scheme was to generate a tax loss, Gov't C.A. Br. 38 & n.*, petitioner and his co-conspirators worked to hide that fact from the IRS and to make the various transactions that were part of the shelter appear to have legitimate business purposes, *id.* at 37-39. Petitioner, for example, suggested in an e-mail that clients should download information about foreign-currency trading from a website, because such material could be useful "as file material to evidence investigation into currency trading." *Id.* at 39. Petitioner and his co-conspirators continued to defend their scheme, including by lying to the IRS in audits and encouraging clients to do likewise, even after E&Y management had decided to stop marketing CO-BRA, following an IRS notice identifying these types of

4

inflated-basis tax shelters as invalid and abusive. *Id.* at 32.

A third tax shelter, the Add-On shelter, was a COBRA-like scheme to eliminate the capital gains that a client was left with after executing a CDS shelter. Pet. App. 8-9; Gov't C.A. Br. 39-52. Petitioner and his co-conspirators attempted to hide the true nature of the Add-On shelter and distance it as much as possible from the discontinued COBRA shelter. Gov't C.A. Br 43-52. In particular, they created documents falsely stating that various component transactions of the Add-On shelter had legitimate business purposes. Pet. App. 35; Gov't C.A. Br. 44-48. They also agreed that, in order to avoid confusing clients, they would discuss the Add-On shelter's actual tax-avoidance purpose by phone in advance of providing paper documentation falsely asserting that the scheme was an "investment" opportunity. *Id.* at 48. Petitioner made repeated efforts to prevent distribution to clients of materials revealing the true nature of the Add-On scheme. *Id.* at 49-51. Petitioner cautioned, for example, about the danger of PowerPoint slides describing the steps of the scheme, observing in an e-mail that "[i]f these slides ever made their way to the IRS . . . , the entire business purpose argument that gives us the ability to distinguish this [Add-On shelter] from COBRA would be out the window." *Id.* at 50.

2. A grand jury returned a seven-count indictment against petitioner and three co-conspirators. Pet. App. 12-14; see *id.* at 106-107. Count 1 charged that they had participated in a conspiracy, in violation of 18 U.S.C. 371, with three objectives: (1) to defraud the United States by impairing the lawful governmental functions of the IRS; (2) to commit tax evasion in connection with

5

the Add-On shelter, in violation of 26 U.S.C. 7201; and (3) to make false statements to the IRS, in violation of 18 U.S.C. 1001. Pet. App. 12-13. Counts 2 and 3 charged them with substantive tax evasion, in violation of 26 U.S.C. 7201, in connection with the Add-On shelter. Pet. App. 13. Counts 4 and 5 separately charged petitioner and one other co-conspirator with obstructing the IRS, in violation of 26 U.S.C. 7212. *Ibid.* Counts 6 and 7 separately charged petitioner and a different co-conspirator with making false statements to the IRS, in violation of 18 U.S.C. 1001. Pet. App. 14.

At the conclusion of a ten-week trial, the jury rendered a general verdict of guilty on all counts. Pet. App. 4, 14. The district court sentenced petitioner to 36 months of imprisonment, to be followed by three years of supervised release. *Id.* at 14.

3. The court of appeals affirmed petitioner's convictions. Pet. App. 1-138. As relevant here, petitioner contended on appeal that one of the three objectives of the charged conspiracy was legally invalid. Pet. C.A. Br. 19-49. In his view, the prohibition in 18 U.S.C. 371 against conspiring to "defraud the United States, or any agency thereof in any manner or for any purpose" prohibits only conspiracies to deceitfully deprive the government of money or property and does not prohibit conspiracies to deceitfully impair or obstruct the lawful functions of a federal agency. *Ibid.* The government pointed out that neither petitioner nor any of his co-defendants had raised this issue in the district court. Gov't C.A. Br. 86.

The court of appeals rejected petitioner's argument on the merits. Pet. App. 16-24. The court found it "well established" that Section 371 "reaches 'any conspiracy for the purpose of impairing, obstructing or defeating

6

the lawful function of any department of Government.'"
*Id.* at 23 (quoting *Dennis* v. *United States*, 384 U.S. 855,
861 (1966)). It traced that understanding to "two semi-
nal Supreme Court cases" from the early 1900s, *Haas* v.
*Henckel*, 216 U.S. 462 (1910), and *Hammerschmidt* v.
*United States*, 265 U.S. 182 (1924), both of which had
interpreted the relevant language in that manner. Pet.
App. 19-20.[1]

## ARGUMENT

Petitioner contends (Pet. 9-29) that the prohibition in
18 U.S.C. 371 against conspiring "'to defraud the United
States, or any agency thereof in any manner or for any
purpose'" is limited to conspiracies that involve "cheat-
ing the government out of money or property." The
court of appeals correctly rejected that contention,
which is inconsistent with over a century of precedent in
this Court and in the courts of appeals. Petitioner
acknowledges (Pet. 28) that "the circuits are in agree-
ment" on the issue, and he offers no sound reason for
the Court to revisit it. In any event, this case would be
an unsuitable vehicle for doing so, both because the
issue arises in a plain-error posture and because peti-
tioner's conspiracy conviction would be valid even if his
interpretation of Section 371's defraud clause were cor-
rect. No further review is warranted.

1. The general conspiracy statute, 18 U.S.C. 371,
prohibits not only any conspiracy "to commit any offense
against the United States" but also any conspiracy "to
defraud the United States, or any agency thereof in any

---

[1] The court of appeals reversed certain convictions of two of peti-
tioner's co-defendants on sufficiency grounds. Pet. App. 104. Judge
Kearse dissented in part from those reversals, but did not disagree
with the court's rejection of petitioner's Section 371 argument. *Id.* at
111-138.

7

manner or for any purpose." In *Haas* v. *Henckel*, 216 U.S. 462 (1910), this Court squarely rejected the proposition that the government must "charge or prove an actual financial or property loss" in order to establish a conspiracy to defraud the United States. *Id.* at 479-480. The indictment at issue in *Haas* charged that the defendants had conspired to obtain a crop report from the Department of Agriculture "in advance of general publicity" and to "use such information in speculating upon the cotton market, and thereby defraud the United States by defeating, obstructing and impairing it in the exercise of its governmental function in the regular and official duty of publicly promulgating fair, impartial and accurate reports concerning the cotton crop." *Id.* at 478; see *id.* at 478-479 (noting an additional allegation that the defendant conspired to produce a false report). The Court determined that the indictment properly alleged a violation of a predecessor of the modern Section 371, which, like the current statute, prohibited conspiracies to "defraud the United States in any manner or for any purpose." *Id.* át 479 (quoting Rev. Stat. § 5440 (1878)). The indictment was valid, the court concluded, even though it did not "expressly charge that the conspiracy included any direct pecuniary loss to the United States." *Ibid.*

The Court explained that "it is not essential that such a conspiracy shall contemplate a financial loss or that one shall result." *Haas*, 216 U.S. at 479. Rather, the statute was "broad enough in its terms to include any conspiracy for the purpose of impairing, obstructing or defeating the lawful function of any department of Government." *Ibid.* "That it is not essential to charge or prove an actual financial property loss to make a case under the statute," the Court added, "has been more

8

than once ruled." *Id.* at 480 (citing *Hyde* v. *Shine*, 199 U.S. 62, 81 (1905); *United States* v. *Keitel*, 211 U.S. 370, 394 (1908); *Curley* v. *United States*, 130 F. 1 (1st Cir. 1904), cert. denied, 195 U.S. 628 (1904); *McGregor* v. *United States*, 134 F. 195 (4th Cir. 1904)).

Petitioner errs in asserting (Pet. 13) that *Haas*'s interpretation of the statutory language was "dicta." The Court did note in passing that interference with the proper dissemination of crop reports could be considered to cause "real financial loss," in light of the "great expense" involved in preparing the reports. 216 U.S. at 479. But that sort of "financial loss"—namely, the "loss" of money spent to fund an effort that a defendant's scheme would frustrate in part or in whole—is distinct from a "direct pecuniary loss," *ibid.*, and would be an expected result of any conspiracy to obstruct government-funded operations. In any event, the next sentence of the decision expressly stated that "it is *not* essential that such a conspiracy shall contemplate a financial loss or that one shall result." *Ibid.* (emphasis added). The Court also explained that, assuming the preparation of the crop reports was within the government's constitutional authority, "it must follow that *any* conspiracy which is calculated to obstruct or impair its efficiency and destroy the value of its operations and reports as fair, impartial and reasonably accurate, would be to defraud the United States by depriving it of its lawful right and duty of promulgating or diffusing the information so officially acquired in the way and at the time required by law or departmental regulation." *Id.* at 479-480 (emphasis added).

As this Court later explained in *Hammerschmidt* v. *United States*, 265 U.S. 182 (1924), the "sole question" in *Haas* "was whether the fraud there practised must have

9

inflicted upon the government a pecuniary loss, or whether its purpose and effect to defeat a lawful function of the government and injure others thereby was enough." *Id.* at 187. The Court in *Hammerschmidt* adhered to the conclusion "that financial loss of the government is not necessary to violate the section," but clarified that *Haas* did not eliminate the traditional requirement that the fraudulent scheme be deceitful. *Id.* at 187-188. "To conspire to defraud the United States," the Court explained, "means primarily to cheat the Government out of property or money, but it also means to interfere with or obstruct one of its lawful governmental functions by deceit, craft or trickery, or at least by means that are dishonest." *Id.* at 188. "It is not necessary," the Court continued, "that the Government shall be subjected to property or pecuniary loss by the fraud, but only that its legitimate official action and purpose shall be defeated by misrepresentation, chicane or the overreaching of those charged with carrying out the governmental intention." *Ibid.*

Subsequent decisions of this Court have repeatedly recognized and reaffirmed the construction of the conspiracy statute's defraud clause adopted in *Haas* and *Hammerschmidt*. See, *e.g.*, *Glasser* v. *United States*, 315 U.S. 60, 66 (1942) ("The indictment charges that the United States was defrauded by depriving it of its lawful governmental functions by dishonest means; it is settled that this is a 'defrauding' within the meaning of Section 37 of the Criminal Code."); *Dennis* v. *United States*, 384 U.S. 855, 861 (1966) ("It has long been established that this statutory language [in the defraud clause of Section 371] * * * reaches 'any conspiracy for the purpose of impairing, obstructing or defeating the lawful function of any department of Government'") (quoting *Haas*, 216,

10

U.S. at 479); *McNally* v. *United States*, 483 U.S. 350, 359 n.8 (1987) (explaining that *Haas* and *Glasser* "held that § 371 reaches conspiracies other than those directed at property interests"). Although petitioner refers to that construction as the "*Klein* doctrine," the Second Circuit's decision in *United States* v. *Klein*, 247 F.2d 908 (1957), cert. denied, 355 U.S. 924 (1958), simply quotes and applies the rule adopted by this Court in *Hammerschmidt. Id.* at 916; see Pet. App. 20 n.18 (noting that "the appellation '*Klein* conspiracy' is in some sense a misnomer, since the primary holding of *Klein* is a quote from *Hammerschmidt*.").

2. Petitioner does not dispute that his conviction was valid under the rule set forth in *Haas, Hammerschmidt,* and other precedents of this Court. Nor does he contend that the outcome of his case would have been different in any other circuit. He nevertheless suggests that this Court should grant certiorari and overturn over a century of well-established law, contending (*e.g.*, Pet. 9-14) that the Court's longstanding construction of the defraud clause is incorrect as a matter of first principles. That suggestion lacks merit.

As a threshold matter, revisiting the issue at this point "would ill serve the goals of 'stability' and 'predictability' that the doctrine of statutory *stare decisis* aims to ensure." *CSX Transp., Inc.* v. *McBride*, 131 S. Ct. 2630, 2641 (2011) (quoting *Hilton* v. *South Carolina Pub. Rys. Comm'n*, 502 U.S. 197, 202 (1991)). As this Court has frequently recognized, "*stare decisis* in respect to statutory interpretation has 'special force,' for 'Congress remains free to alter what [the Court has] done.'" *John R. Sand & Gravel Co.* v. *United States*, 552 U.S. 130, 139 (2008) (quoting *Patterson* v. *McLean Credit Union*, 491 U.S. 164, 172-173 (1989)); see, *e.g.*,

11

*Cleveland* v. *United States*, 531 U.S. 12, 26 (2000) (applying *stare decisis* in construing the mail-fraud statute, 18 U.S.C. 1341).

Even putting statutory *stare decisis* to one side, however, petitioner's attempt to re-litigate this Court's early twentieth-century precedents is misplaced, because Congress long ago adopted for itself the definition that those precedents provided.  In 1948, when Congress codified the current conspiracy statute, see Act of June 24, 1948, ch. 645, 62 Stat. 701 (enacting 18 U.S.C. 371), this Court's interpretation of the phrase "defraud the United States in any manner or for any purpose" was already well established. See *Haas*, 216 U.S. at 479-480; *Hammerschmidt*, 265 U.S. at 187-188; *Glasser*, 315 U.S. at 66.  By deciding to incorporate that language into Section 371, Congress manifested its intent also to incorporate the preexisting definition provided by this Court's decisions.  As this Court has repeatedly explained, "Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change."  *Forest Grove Sch. Dist.* v. *T.A.*, 557 U.S. 230, 239-240 (2009) (quoting *Lorillard* v. *Pons*, 434 U.S. 575, 580 (1978)).  Congress made no relevant change here.  If anything, the language of Section 371— which prohibits conspiring "to defraud the United States, *or any agency thereof* in any manner or for any purpose," 18 U.S.C. 371 (emphasis added)—is even broader than the language of the conspiracy statute when *Haas* was decided, which did not specifically mention agencies, see *Haas*, 216 U.S. at 479 (quoting Rev. Stat. § 5440). Congress's adoption of this Court's definition of the defraud clause refutes petitioner's contentions that the current understanding of Section 371 is

12

"wholly unmoored" from its "text and history," Pet. 2; that the "text and history * * * unambiguously limit" the statute's application to conspiracies involving governmental money or property, Pet. 23; and that the statutory language is so ambiguous as to call for application of the rule of lenity, Pet. 23-25; see *Muscarello* v. *United States*, 524 U.S. 125, 139 (1998) (rule of lenity applies only when court finds a "grievous ambiguity or uncertainty in the statute") (internal quotation marks and citations omitted).

Moreover, even assuming for argument's sake that the correctness of *Haas* as an original matter, rather than Congress's subsequent adoption of its holding, were the relevant issue, petitioner's statutory construction arguments would still lack merit. When the initial version of the conspiracy statute—which prohibited conspiring "to defraud the United States in any manner whatever," Act of Mar. 2, 1867, ch. 169, § 30, 14 Stat. 484—was enacted, the primary definition of "defraud" listed in Noah Webster's leading contemporary dictionary was "[t]o deprive *of right* by fraud, deception, or artifice." Noah Webster, *American Dictionary of the English Language* 347 (1864) (Webster) (emphasis added); see Pet. App. 18 n.17. Deprivation of a "right"—such as the government's "lawful right and duty of promulgating or diffusing [crop] information acquired in the way and at the time required by law," *Haas*, 216 U.S. at 480—is not necessarily the same thing as deprivation of money or property. Other alternative definitions of "defraud" that appeared in Webster's—"[t]o cheat; to cozen; to deceive; to frustrate," Webster 347—were potentially even more expansive. And Congress's inclusion in the conspiracy statute of the modifier "in any manner whatever" (which was later expanded to "in

13

any manner or for any purpose," Rev. Stat. § 5440; 18 U.S.C. 371) demonstrated its intention that the term "defraud" be given its broadest possible meaning.

Petitioner's narrowing construction of the term "defraud" (Pet. 10) rests on this Court's statement in *McNally* v. *United States*, *supra*, that "the words 'to defraud' *commonly* refer 'to wronging one in his property rights by dishonest methods or schemes.'" 483 U.S. at 358 (quoting *Hammerschmidt*, 265 U.S. at 188) (emphasis added). But that statement simply quotes from *Hammerschmidt*, which itself makes clear that the words "to defraud" are not *always* limited to circumstances involving deprivation of property rights—and, in fact, are not so limited when they appear in the context of a statute prohibiting a conspiracy "to defraud the United States in any manner or for any purpose." 265 U.S. at 185; see *id.* at 188 ("To conspire to defraud the United States means primarily to cheat the government out of property or money, but it also means to interfere with or obstruct one of its lawful governmental functions by deceit, craft or trickery, or at least by means that are dishonest.").

3. Petitioner errs in suggesting (Pet. 14-22) that more recent decisions of this Court have undermined the longstanding, congressionally adopted construction of the defraud clause. The Court's decision in *McNally* (cited at Pet. 16-17), for example, interpreted the federal mail-fraud statute (18 U.S.C. 1341) to prohibit only fraud relating to money or property, but it expressly recognized that the Court had construed Section 371 more broadly to "reach[] conspiracies other than those directed at property interests." 483 U.S. at 358 n.2 (citing *Haas* and *Glasser*). The Court observed that the mail-fraud statute "had its origin in the desire to protect

14

individual property rights" and was different from a statute like Section 371, which "'has for its object the protection of and welfare of the government alone, which exists for the purpose of administering itself in the interests of the public.'" *Ibid.* (quoting *Curley*, 130 F. at 7). The Court's later decision in *Cleveland* v. *United States*, *supra* (cited at Pet. 17), likewise addressed the mail-fraud statute—in particular, the interpretation of the word "property," which appeared in the mail-fraud statute but does not appear in Section 371—and has no bearing here. *Id.* at 15.

Finally, this Court's decision in *Skilling* v. *United States*, 130 S. Ct. 2896 (2010) (cited at, *e.g.*, Pet. 15-16), also addressed a different statute, namely, 18 U.S.C. 1346, which expanded the scope of certain substantive fraud offenses to include schemes "to deprive another of the intangible right to honest services." To avoid vagueness concerns with that phrase—not the term "to defraud," or any other term that appears in the defraud clause of Section 371—the Court construed Section 1346 to cover "only bribery and kickback schemes." 130 S. Ct. at 2907; see *id.* at 2925-2934. The Court reasoned that Congress had intended, in enacting Section 1346, to codify the courts of appeals' pre-*McNally* understanding of the relevant fraud statutes and that bribes and kickbacks were the "core" conduct clearly prohibited by the pre-*McNally* cases. *Id.* at 2925-2934.

Petitioner does not contend that *Skilling* has any direct application to Section 371. He instead merely posits a thematic connection, contending (Pet. 19) that the longstanding interpretation of Section 371's defraud clause, "like the honest services fraud doctrine, is both vague and overbroad." That contention is misplaced. First, as petitioner recognizes, the Court in *Skilling*

15

"*rejected* Skilling's constitutional argument" that Section 1346 was unconstitutionally vague. Pet. 15 (emphasis added). Second, *Skilling*'s vagueness concerns about a congressional attempt to resurrect a set of circuit decisions that "were not models of clarity or consistency," 130 S. Ct. at 2929, do not apply here, where Congress has adopted longstanding and clear statutory-interpretation decisions of this Court. Petitioner offers no substantial argument that this Court's construction of the defraud clause—to mean, in essence, "deceptively obstruct governmental operations"—is beyond the ability of "ordinary people [to] understand," *id.* at 2927-2928 (quoting *Kolender* v. *Lawson*, 461 U.S. 352, 357 (1983)). Petitioner also identifies no decision in which this Court has found its *own* interpretation of a statute to create vagueness concerns. Nor does he cite any authority for the proposition that the potential existence of circuit conflicts in certain applications (Pet. 26-29), which are not at issue here, renders the interpretation of a statute unconstitutionally vague.

Petitioner's argument also disregards important limitations inherent in the defraud clause. His assertion (Pet. 2) that the clause has "morphed into a sweeping criminal prohibition on any conspiracy to make the government's job more difficult" overlooks that a conspiracy under the defraud clause must be deceptive or deceitful. *Hammerschmidt*, 265 U.S. at 187-188.[2] His conten-

---

[2] Petitioner erroneously contends (Pet. 27-28) that the government is attempting to undermine *Hammerschmidt* by applying the defraud clause to conspiracies contemplating no deceit or dishonesty. The manual on which petitioner relies expressly acknowledges that the government must prove an agreement "to interfere with or obstruct one of the government's lawful functions 'by deceit, craft or trickery, or at least by means that are dishonest.'" Tax Div., U.S. Dep't of Jus-

16

tion (Pet. 20-22) that the defraud clause of Section 371
provides an end-around to the holding in *Skilling* over-
looks that the defraud clause applies only to conspiracies
against the United States and its agencies, and does not
include the sorts of private fraud to which Section 1346
applies.   Finally, petitioner's quotations (Pet. 19-20)
from circuit decisions purportedly criticizing the current
scope of the defraud clause are in fact taken from dis-
cussions about why the clause's scope should not be
enlarged.  See *United States* v. *Caldwell*, 989 F.2d 1056,
1058-1060 (9th Cir. 1993) (discussing problems that
would arise from eliminating the requirement that the
agreed-upon obstruction be accomplished "by deceitful
or dishonest means"); *United States* v. *Goldberg*, 105
F.3d 770, 773 (1st Cir. 1993) (discussing problems that
would arise from eliminating the requirement that the
fraud be a "purpose," rather than just a "foreseeable
consequence," of the conspiracy).

4.  Even assuming it were appropriate to revisit this
Court's longstanding construction of the defraud clause,
this case would be an unsuitable vehicle for doing so, for
three reasons.

The first obstacle to further review in this case is that
petitioner's claim can be reviewed only for plain error,
because he did not challenge the interpretation of the
defraud clause in district court.  See Gov't C.A. Br. 86;
see also Fed. R. Crim. P. 52(b).  To prevail on plain-

---

tice, *Criminal Tax Manual* § 23.07[1][b] (2012 ed.) (quoting
*Hammerschmidt*, 265 U.S. at 188).  In any event, petitioner identifies
no circuit that has dispensed with the deceitfulness requirement, and
the government is aware of none.  And the requirement was applied
in petitioner's own case: the jury instructions here required deceit or
dishonesty, see Pet. App. 88 n.38, and the government reiterated that
requirement in its closing argument, see Pet. 7.

17

error review, petitioner would have to show (1) an error (2) that is "clear or obvious, rather than subject to reasonable dispute"; (3) that the error "affected [his] substantial rights, which in the ordinary case means" it "affected the outcome of the district court proceedings"; and (4) that "the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States* v. *Marcus*, 130 S. Ct. 2159, 2164 (2010) (quoting *Puckett* v. *United States*, 556 U.S. 129, 135 (2009)) (original brackets omitted).  Petitioner cannot make that showing.  He cannot demonstrate, for example, that application of longstanding precedent of this Court was "clear or obvious" error.

The arguments that petitioner advanced in the court of appeals to avoid plain-error review lack merit.  He first contended (Pet. C.A. Reply Br. 4) that he preserved his argument in the district court by challenging the sufficiency of the evidence, but the claim of factual insufficiency that he raised in district court is different from the claim of legal error that he raises now.  See, *e.g.*, *Griffin* v. *United States*, 502 U.S. 46, 58-59 (1991).  He next contended (Pet. C.A. Reply Br. 5) that he preserved his argument by requesting jury instructions with examples of conduct that might violate the defraud clause, but that request did not put either the district court or the government on notice of the legal challenge he would later press.  Petitioner further contended (*id.* at 5-6) that the argument became available only because of this Court's intervening decision in *Skilling*, but that contention merely repeats petitioner's erroneous reliance on *Skilling* (see pp. 14-15, *supra*).  Petitioner finally contended (Pet. C.A. Reply Br. 6) that any objection would have been futile.  But notification of petitioner's intent to challenge the legal sufficiency of the theory

18

that he conspired to defraud the United States—which was one of only three objects of a charged multi-object conspiracy—would have allowed for the government to request a special verdict form with specific jury findings as to each object. A particularized finding by the jury as to one or both of the alternative objects, instead of or in addition to the one petitioner challenges, would have forestalled completely petitioner's current challenge to the result of the ten-week trial in this case.

The second obstacle to further review in this case is that, even under harmless-error review, petitioner would not be entitled to relief even assuming his interpretation of the defraud clause were correct. The record indicates beyond a reasonable doubt that the jury *did* find both of the other objects of the conspiracy—namely, to commit tax evasion in connection with the Add-On shelter, in violation of 26 U.S.C. 7201, and to make false statements to the IRS, in violation of 18 U.S.C. 1001. Pet. App. 12-13; see *Skilling*, 130 S. Ct. at 2934 (reaffirming that legal invalidity of one charged object of a multi-object conspiracy is subject to harmless-error review). The jury found petitioner and three co-conspirators guilty of a substantive violation of Section 7201 in connection with the Add-On shelter, and it found petitioner and one co-conspirator guilty of making false statements to the IRS. Pet. App. 12-14. A jury that made those findings would necessarily also have found that petitioner conspired to commit those offenses.

The third obstacle to further review is that a scheme to defraud the IRS, which administers the collection of tax revenue, inherently defrauds the United States of money or property. In *Pasquantino* v. *United States*, 544 U.S. 349, 355 (2005), for example, this Court concluded that "Canada's right to uncollected excise taxes"

19

was "property" for purposes of the federal wire-fraud statute, 18 U.S.C. 1343.  The same would be true of the United States' right to assess and collect its own taxes, which petitioner conspired to obstruct.  No further review of petitioner's conspiracy conviction is warranted.

## CONCLUSION

The petition for a writ of certiorari should be denied.

Respectfully submitted.

DONALD B. VERRILLI, JR.
  *Solicitor General*
KATHRYN KENEALLY
  *Assistant Attorney General*
FRANK P. CIHLAR
S. ROBERT LYONS
ALEXANDER P. ROBBINS
  *Attorneys*

JULY 2013