# EXHIBIT A



# DEPARTMENT OF THE TREASURY
### Internal Revenue Service
### Criminal Investigation

## Memorandum of Interview

| | | | |
|---|---|---|---|
| **Investigation #:** | 1000225431 | **Location:** | **Marks, Paneth & Shron**<br>**88 Froehlich Farm Boulevard**<br>**Woodbury, NY 11797-2921**<br>**(516)992-5900** |
| **Investigation Name:** | Fredrick and Hough | | |
| **Date:** | March 18, 2013 | | |
| **Time:** | 3:10pm | | |
| **Participant(s):** | Jerry Schneider, Accountant/Witness<br>Gregory J. Bautista, Attorney for Jerry Schneider<br>Erin S. Mellen, Attorney for the Department of Justice<br>Kimberly Shartar, Attorney for the Department of Justice<br>Stephen Zuckerbrot, Internal Revenue Special Agent | | |

On the above mentioned date and time, Erin Mellen, Kimberly Shartar and Stephen Zuckerbrot identified themselves to Jerry Schneider (Schneider), with Gregory Bautista present and explained the purpose for the interview. Schneider provided the following information:

1. Schneider stated that he is currently retired and used to work as a Certified Public Accountant at Schneider & Associates LLP located in Jericho, NY. Schneider explained that Dean Hiltzik was his partner.

2. Schneider stated that he was familiar with David Minchenberg (Minchenberg), David Fredrick (Fredrick), and Patricia Hough (Hough).

3. Schneider explained that Fredrick and Hough were affiliated with certain not-for-profit schools and that Fredrick and Hough hired Schneider to audit the financial position of those schools. Schneider explained that his task was to audit the school's financials in order to comply with the Department of Education.

4. Schneider stated that Minchenberg prepared Forms 5471 for Fredrick and Hough. Schneider stated that he did not prepare or file Forms 5471, but that he transcribed and reviewed the forms on his computer.

5. Schneider explained that he dealt primarily with Minchenberg while being hired by Fredrick and Hough. Minchenberg is a Certified Public Accountant and Chief Financial Officer for the schools.

6. Schneider stated that he never prepared any personal tax returns for Minchenberg, Fredrick or Hough.

7. Schneider explained that he was referred to Fredrick possibly through a friend of Fredrick's, but that he was unsure exactly how the business relationship began. Schneider stated that he had a referral meeting with Fredrick that was later followed by a formal proposal by email to begin business (Documents MP&S 2843 – MP&S 2844). Schneider explained that once an agreement had been reached between the two parties, the work to be done was transferred to Schneider's partner, Dean Hiltzik. Schneider explained that it was very unusual and not in the normal course of business to have the attorney's name on the engagement letters. Schneider continued that the client would have made the request to have their attorneys named on the engagement letters (MP&S 1087-1089, MP&S 5450-5451, MP&S 5120-5121, and MP&S 5449).

8. Schneider explained that Minchenberg proposed a business plan for restructuring entities. This, according to Schneider, was apart from his duties to perform an audit of the schools.

9. Schneider stated that he never spoke about Title 26 violations with Minchenberg. Schneider was shown documents MPS5207, MPS5208, MPS5215, and MPS5216. He recognized his handwriting on those documents.

10. Shartar displayed document #5218 for Schneider's observation. Schneider stated that this document was not created by him or his firm.

11. Schneider was shown document #5156. Schneider recognized his partner's (Dean) handwriting, but was unfamiliar as to the content of the document.

12. Schneider explained that his audit notes to the schools included tax notes because he felt that certain tax liabilities might impact the audit.

13. Schneider stated that he requested the assistance of an attorney by the name of Peter Glicklick to advise him on the tax liabilities concerning the schools audit.

14. Schneider stated that he never dealt with the Board of Directors of either school.

15. Schneider stated that he has dealt previously with clients while under a Kovel Agreement. He explained that while under a Kovel Agreement, a client would hire an attorney from the very start of the engagement to represent the client when dealing with Schneider. Schneider explained that the attorney in essence is the client.

16. Schneider stated that he does not consider this engagement with Fredrick and Hough as falling under a Kovel Agreement. There weren't any attorneys present when he was hired to audit the schools. All of Schneider's emails were

sent directly to Fredrick and there wasn't any involvement from attorneys. Schneider stated that he never spoke to any of the attorneys mentioned in the engagement letters.

17. Schneider reiterated that he was hired only to conduct an audit of the schools and transcribe and review Forms 5471. Schneider explained that he then sent Minchenberg questions pertaining to Forms 5471. He received answers back from Minchenberg and Fredrick that is referenced in documents MPS5225 – MPS5232).

18. Schneider stated that he never spoke to any attorney concerning impending litigation.

19. Schneider explained that the only purpose, for which he was hired, was to conduct an audit for the schools in order for them to be in compliance with the Department of Education. Schneider stated that there were no comments or conversations leading him to believe that his audit was for any other purposes.

20. Schneider stated that he did not deal with any of the client's personal matters while conducting the audit.

21. The interview concluded at approximately 4:00pm.


I prepared this memorandum on March 21, 2013, after refreshing my memory from notes made during and immediately after the interview with Jerry Schneider    .


*Stephen Zuckerbrot*
Stephen Zuckerbrot
Special Agent