UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

Case No.  2:13-cr-00072-JES-UAM

UNITED STATES OF AMERICA,

    Plaintiff

v.

DAVID LEON FREDERICK, and
PATRICIA LYNN HOUGH

    Defendants.

_____/

## DEFENDANT PATRICIA LYNN HOUGH'S MOTION IN LIMINE NO. 2 TO PRECLUDE INTRODUCTION OR MENTION OF CO-CONSPIRATOR STATEMENTS BEFORE ALL REQUIREMENTS FOR ADMISSIBILITY HAVE BEEN MET AND INCORPORATED <u>MEMORANDUM OF LAW</u>

    COMES NOW, Defendant Patricia Lynn Hough, by and through her counsel of record, and hereby moves in limine to preclude the government from publishing or referring to inadmissible hearsay, specifically, statements of David Fredrick, Dieter Leutolf, and Beda Singenberger that the government may seek to introduce as co-conspirator statements, until all foundation requirements have been met and until the Court has had the opportunity to hear Dr. Hough's objections and rule upon them.  This motion is based on the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as may be presented at any hearing on this motion, and in support thereof states as follows:

**MEMORANDUM OF LAW**

**I.     BACKGROUND**

Dr. Patricia Hough ("Dr. Hough"), along with her now-estranged husband and co-defendant Dr. David Fredrick ("Dr. Fredrick"), founded and developed several medical schools in the Caribbean, including the Saba University School of Medicine and the Medical University of the Americas.  The schools were built and operated by a non-profit foundation, the Saba School of Medicine Foundation (the "Foundation"), organized under Netherlands-Antilles law.  The evidence at trial will show that Dr. Fredrick assumed responsibility for the financial and business aspects of the schools, while Dr. Hough, a licensed physician and experienced professor, was responsible for the academic and clinical programs of the schools and for securing accreditations from the United States Department of Education and the various state and international medical licensing boards.  Principally due to Dr. Hough's hard work and persistence, the Saba University School of Medicine grew from 22 students in 1993 to over 500 students in 2004, with its graduates enjoying a 94% first-time passage rate on the United States medical board exams and eligible to practice medicine in any of the 50 states.

Due to a hostile takeover attempt and a series of lawsuits against the schools and the Foundation beginning in the mid-1990s, as well as the ability under Netherlands-Antilles law for a plaintiff to freeze a defendant's assets during the pendency of litigation, the Foundation's Board of Directors tasked Dr. Fredrick with protecting the Foundation's assets (and the continued operation of the medical schools) by placing them in offshore accounts.  Dr. Fredrick placed the Foundation's assets in accounts in the Bahamas, and later in Switzerland and Liechtenstein.  Dr. Fredrick was advised and assisted in this process by Dieter Leutolf, a banker at UBS in Switzerland, and Beda Singenberger, a Swiss financial advisor who was recommended by Leutolf.

In a series of transactions over eight years, some directed by Dr. Fredrick and some by Singenberger (but none directed by Dr. Hough), the Foundation's assets moved between a series of accounts set up by Leutolf and Singenberger in the names of various entities and in the names of Dr. Fredrick and Dr. Hough.  Although Leutolf's and Singenberger's churning of these accounts generated substantial fees to UBS and Singenberger's company, the assets at all times remained those of the Foundation and not the personal assets of Dr. Hough or Dr. Fredrick.[1]

Swiss anti-money laundering regulations require that banks maintain a "Form A" identifying the individual responsible for the funds in an account.  Leutolf and Singenberger, without direction from Dr. Hough, completed those forms for some of the accounts in the names of Dr. Hough and Dr. Fredrick.  A small number of those forms were signed by Dr. Hough; on those, whoever filled out the form identified her as a beneficial owner; the majority of the Form A's were not signed by Dr. Hough.  As will be shown at trial, Form A has nothing to do with United States tax law, and Dr. Hough understood the form to mean simply that she would assume responsibility for administering the accounts should something happen to Dr. Fredrick.  The evidence will further show that:  (1) Dr. Hough did not initiate or direct a single transaction to or from any of the offshore accounts; (2) none of the communications between Dr. Fredrick and/or Dr. Hough and Leutolf or Singenberger, mentioned anything about taxes or the IRS; (3) Dr. Hough repeatedly told her accountants that she wanted to do whatever was required to be fully compliant with her tax obligations; (4) Dr. Hough never authorized the use of any of the funds in the offshore accounts for her own personal benefit; and (5) to the extent that Dr. Fredrick ever used any Foundation funds for personal expenses, Dr. Hough understood that to be pursuant to loans authorized by the

---

[1] Singenberger was indicted in 2011 in the Southern District of New York.  He has not appeared on that case.

Foundation's Board (and duly repaid) or as an offset to Dr. Fredrick's substantial deferred compensation.[2] Most importantly, the evidence will show that the assets in question, regardless of the names of the accounts or the names listed on the Forms A, at all times remained the assets of the Foundation, which continues to be active today in fulfilling its charitable mission by providing medical care and equipment to the needy throughout Central America.

The government, however, has secured an indictment charging Dr. Hough with conspiring with Dr. Fredrick, as well as with Singenberger and unindicted co-conspirator Leutolf, to defraud the United States by obstructing the functions of the IRS, and with four counts of tax evasion pertaining to the tax years 2005 through 2008. The charges are predicated on the flawed assumption that because Dr. Hough was identified (on a Swiss anti-money laundering Form A) as the beneficial owner of certain offshore accounts of the Foundation, the income from those accounts constituted income to her personally that she was required to declare on her individual United States tax returns. The government further contends that Dr. Hough was required to identify on her tax returns the offshore Foundation accounts for which she had signature authority; the evidence, however, will demonstrate that Dr. Hough's accountants never advised her when preparing the above referenced returns of that requirement, that she was unaware of it, and that she signed her returns in the good-faith belief that they were true, correct, and complete.

Dr. Hough does not believe that the government will call a single witness who will testify to the existence of a conspiracy between her, Dr. Fredrick, Leutolf, and/or Singenberger to defraud

---

[2] For example, in 2006, Dr. Fredrick paid $250,000 from a Foundation account to each of his four half-siblings. Those payments, according to the government's own witnesses, were kept secret from Dr. Hough. By way of contrast, Dr. Hough occasionally made gifts to her own sister; however, those gifts always came from Dr. Hough's personal domestic accounts, on which she dutifully paid all taxes owing, and not from any offshore Foundation account.

the United States.[3]   Nor will the government produce any witness to testify that Dr. Hough ever believed that the assets in the offshore accounts belonged to her personally.  Rather, Dr. Hough anticipates that the government's evidence – such as it is – will consist of UBS bank records reflecting correspondence and other statements by Dr. Fredrick, Leutolf, and/or Singenberger, which the government will seek to introduce as co-conspirator statements under Federal Rule of Evidence 801(d)(2)(E).[4]  Under controlling law, however, the government must produce, prior to the admission of any co-conspirator statements, substantial independent evidence – i.e., substantial evidence independent of the statements themselves – that a conspiracy existed, that the defendant and the declarant were members of that conspiracy at the time the statements were made, and that the statements were made in the course of and in furtherance of that conspiracy.  Moreover, although the Court has discretion to conditionally admit co-conspirator statements subject to the foundational facts being established at a later time, courts have held that the admission of such statements can be so prejudicial that a mistrial is often the only proper remedy if the government ultimately fails to prove up the foundational requirements.

---

[3] To the contrary, Dr. Hough anticipates that a number of government witnesses will testify, as they did before the grand jury, to her good-faith efforts to comply with the tax laws and her reliance on Dr. Fredrick and financial professionals to properly manage the Foundation's offshore accounts and prepare her tax returns.

[4] Dr. Fredrick had a habit of writing correspondence to Leutolf or Singenberger and signing it "Dave and Pat," although the use of the first-person singular and other content of the correspondence make clear that it was written by Dr. Fredrick only.  In the absence of Dr. Hough's signature or any other evidence that she personally made or adopted the statements in such correspondence, those statements must be evaluated and treated as co-conspirator statements rather than party admissions.

Here, given that the government's evidence of the charged conspiracy appears to be limited to co-conspirator statements and that its case against Dr. Hough is inferential at best[5], it would be highly improper and prejudicial to permit the jury to hear any alleged co-conspirator statement before the government has satisfied its burden to lay a proper foundation and otherwise meet the preliminary requirements for the admissibility of that statement under the Federal Rules of Evidence, and before the defense has had the opportunity to fully challenge the government's proffered foundation.  Until the admissibility of such statements has been determined by the Court, the jury should not be tainted by hearing evidence that has not been properly admitted, either in the government's opening statement or in its case-in-chief.  To do otherwise would risk a costly mistrial or reversal and possible retrial.[6]

## II.     ARGUMENT

### A.     Under Federal Rules of Evidence 801 and 802, Hearsay is Inadmissible, and the Foundation for any Claimed Exception Must Be Established by Substantial Independent Evidence Before an Alleged Co-Conspirator Statement Can Be Admitted or Published to the Jury

Before admitting any co-conspirator statement as non-hearsay under Federal Rule of Evidence 801(d)(2)(E), the party offering the statement must prove by a preponderance of the

---

[5] The evidence of Dr. Hough's involvement with the bank accounts at issue and of her knowing and willful failure to disclose those accounts on her individual tax returns is so meager that one wonders how a grand jury found even the existence of probable cause as to her.  Indeed, it appears likely that the government's purpose in indicting Dr. Hough was to exert leverage to secure a plea from Dr. Fredrick.  With Dr. Fredrick not a part of this trial, however, the government is left with its lack of evidence against Dr. Hough.

[6] Contemporaneously with this motion, Dr. Hough is filing a separate motion <u>in limine</u> to preclude the introduction of certain UBS file notes on a number of legal grounds, including the Confrontation Clause of the Sixth Amendment.  Because those notes constitute only one category of co-conspirator statements that Dr. Hough expects the government to seek to introduce, the instant motion is not mooted by the granting of Dr. Hough's other motion.

evidence that: (1) a conspiracy existed; (2) the conspiracy included the declarant and the defendant against whom the statement is offered; and (3) the particular statement to be introduced was made during the course of and in furtherance of that conspiracy. *United States v. Dickerson*, 248 F.3d 1036, 1049 (11th Cir. 2001); *See*, *United States v. Adkinson*, 158 F.3d 1147, 1153 (11th Cir. 1998); *United States v. McDonald*, 935 F.2d 1212, 1220 (11th Cir. 1991); *United States v. Byrom*, 910 F.2d 725, 734 (11th Cir. 1990). Simply naming Dr. Fredrick, Leutolf, and Singenberger as indicted or unindicted co-conspirators does not bring their extrajudicial statements within the ambit of Rule 801(d)(2)(E).

In *Bourjaily v. United States*, 483 U.S. 171 (1987), the Supreme Court held that the district court may consider the alleged hearsay statement ***along with*** independent external evidence, in determining whether the proper foundation has been laid. *Id.* at 179-81; *See*, *United States v. Hasner*, 340 F.3d 1261, 1274 (9th Cir. 2003). The Court in *Bourjaily* did not decide whether a district court can rely solely upon the hearsay statements to satisfy the preponderance standard for the foundational elements. *Id.* at 181. Following *Bourjaily*, however, the Eleventh Circuit has continued to require that the requisite foundational facts be established by "substantial independent evidence." *See, Adkinson*, 158 F.3d at 1153; *McDonald*, 935 F.2d at 1220. Indeed, every case to affirm admission of co-conspirator statements – including *Bourjaily* itself – has relied on evidence independent of any alleged co-conspirator statements in finding the requisite foundation to have been established.[7] *See*, *Bourjaily*, 483 U.S. at 180-81; *See also*, e.g., *Hasner*, 340 F.3d at 1275

---

[7] The Advisory Committee Notes to the 1997 Amendment to Rule 801(d)(2), which was enacted in response to Bourjaily, expressly states that "the contents of the declarant's statement do not alone suffice to establish a conspiracy in which the declarant and the defendant participated," and notes that "[e]very court of appeals that has resolved this issue requires some evidence in addition to the contents of the statement." Fed. R. Evid. 801, Advisory Committee Notes (1997 Amendment).

(detailing independent evidence that established existence of a conspiracy by a preponderance of the evidence, supporting introduction of co-conspirator statements); *Byrom*, 910 F.2d at 736-37 (affirming admission of co-conspirator statement where there was "abundant independent evidence" of the conspiracy); *United States v. Chestang*, 849 F.2d 528, 531 (11th Cir. 1988) (declining to decide whether district court could have relied solely on co-conspirator statements in making preliminary factual determinations because there was "sufficient independent evidence" of the foundational facts apart from the co-conspirator statements themselves).  The Eleventh Circuit has further reiterated, post-*Bourjaily*, that the independent evidence (*i.e.* non-co-conspirator hearsay statements) of the existence of the conspiracy must be at least sufficient enough to warrant submitting the existence of the conspiracy to the jury.  *McDonald*, 935 F.2d at 1220.  Of course, such independent evidence cannot consist simply of other alleged co-conspirator statements.  *See United States v. Grassi*, 616 F.2d 1295, 1300 (5th Cir. 1980) ("Evidence submitted . . . for the purpose of proving a conspiracy must, of course, be free from hearsay objection; otherwise, a co-conspirator's hearsay might bootstrap itself into admissible evidence.").[8]

      Nor is the need for a preliminary foundational showing obviated should the government claim that it is introducing a particular statement for a non-hearsay purpose, such as to show the declarant's state of mind.  The state of mind of Dr. Fredrick, Leutolf, or Singenberger only becomes of any relevance to this case if those individuals were in fact co-conspirators of Dr. Hough.  Similarly, the government cannot escape its obligation to make a preliminary showing of a conspiracy through substantial and independent evidence by labeling the co-conspirator statements

---

[8] The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

"verbal acts." *See, United States v. Caldwell*, 771 F.2d 1485, 1489 (11th Cir. 1985) ("Because the government's evidence of 'verbal acts' was contained in alleged co-conspirator's statements, it was inadmissible against all alleged co-conspirators in the absence of other substantial independent evidence of a conspiracy. A co-conspirator's statement is rendered no less a statement by calling it evidence of an act.").

> B. Under Federal Rule of Evidence 104, the Court Has a Duty to Act as the Gatekeeper of Evidence, Ensuring That the Jury Hears Only Admissible Evidence

Under Federal Rule of Evidence 104, the court acts as an evidentiary gatekeeper, ensuring that the jury only considers evidence that is admissible under the Federal Rules of Evidence and other applicable law. While co-conspirator statements may be conditionally admitted against a defendant subject to being connected up later in the trial, Fed. R. Evid. 104(b); *See*, *Hasner*, 340 F.3d at 1274; *United States v. Prows*, 728 F.2d 1398, 1401 (11th Cir. 1984), because co-conspirator statements can be particularly powerful and incriminating evidence, the Eleventh Circuit has made clear that the better practice is for the district court to require the proper foundational showing be made *before* allowing such statements to be published to the jury:

> To reveal to the jury what someone has said, out of court, incriminating the defendant is strong medicine. Should such a revelation be made and it then appears that no facts existed justifying the revelation, the defendant would have been unlawfully and most seriously prejudiced. The waste of mistrial would be likely; restoration of fairness through corrective instruction would be difficult if possible at all.

*United States v. Ricks*, 639 F.2d 1305, 1308 (11th Cir. 1981); *See Id*. at 1309 ("[T]he improper admission of hearsay to the prejudice of the defendant can rarely be eliminated by curative or cautionary instructions."); *Prows*, 728 F.2d at 1401 ("To preclude possible prejudice the government should introduce substantial independent evidence *before* the admission of the co-conspirator's statements.") (*emphasis added*); *United States v. Lippner*, 676 F.2d 456, 464 (11th

Cir. 1982) ("[T]he trial judge [should] become familiar with the evidence of the conspiracy prior to admitting the co-conspirators' statements, and therefore avoid a wasteful mistrial in the event inadequate evidence was produced.").

In this case, Dr. Hough submits it is highly doubtful that the government will be able to produce substantial independent evidence supporting the existence of any conspiracy between Dr. Hough and Dr. Fredrick, Leutolf, or Singenberger. Rather, Dr. Hough anticipates that the government will attempt to rely on the alleged co-conspirators' statements themselves to prove the conspiracy that is the essential foundation for their admission. As shown above, such bootstrapping is prohibited by the law of this Circuit, and will likely result in a mistrial should this Court conditionally admit the statements and the government subsequently prove unable to provide the requisite substantial independent evidence of each foundational element.

### III.     CONCLUSION

WHEREFORE, for the reasons set forth herein, defendant Patricia Lynn Hough respectfully asks this Court to preclude the government from introducing any alleged co-conspirator statements until it has offered substantial independent evidence sufficient to prove, by a preponderance of the evidence, each and every element of the foundation required under Federal Rule of Evidence 801(d)(2), and the defense has had the opportunity to argue the insufficiency of that foundational showing. The government should further be precluded from referencing any such statements in its opening statement to the jury.

Dated: September 27, 2013

Respectfully submitted,

**BRUCE L. UDOLF, P.A**.
*Counsel for Defendant Hough*
Broward Financial Centre
500 East Broward Blvd., Suite 1400
Fort Lauderdale, Florida 33394
Tel: (866) 951-9058/ Fax (954) 525-2134
budolf@udolflaw.com
Fla. Bar No. 0899933

By: /s/ Bruce L. Udolf

## CERTIFICATE OF COMPLIANCE

WE HEREBY CERTIFY that the undersigned has conferred with opposing counsel prior to the filing of this motion, that counsel has been unable to resolve the issues by agreement, and that the motion concerns matters which are not covered by the scheduling order, as directed in the Court's Criminal Scheduling Order [DE 22], at ¶ II (D).

By: /s/ Bruce L. Udolf

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing was filed electronically using the Court's CM/ECF system, on this 27th day of September, 2013.

By: /s/ Bruce L. Udolf