UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

Case No. 2:13-cr-00072-JES-UAM

UNITED STATES OF AMERICA,

    Plaintiff

v.

DAVID LEON FREDERICK, and
PATRICIA LYNN HOUGH

    Defendants.
_____/

**SUPPLEMENT TO DEFENDANT PATRICIA LYNN HOUGH'S MOTION IN LIMINE NO. 1 TO PRECLUDE INTRODUCTION OF UBS BANK CONTACT NOTES**

Defendant Patricia Lynn Hough, by and through her counsel of record, hereby supplements her previously filed Motion in Limine No. 1 to Preclude Introduction of UBS Bank Contact Notes [DE 63]. This supplement is warranted by the government's post-filing production of the Memorandum of Interview (MOI) of Jean Futterknecht, the UBS representative whom the government intends to call at trial and who will presumably serve as the only source of authentication and foundation for the foreign bank records in question.[1]

In her motion, Dr. Hough argues that the UBS contact notes are inadmissible under 18 U.S.C. § 3505(a)(1) because they lack trustworthiness, that their admission would violate her rights to confrontation and due process, and that they constitute inadmissible hearsay as to which the government cannot lay a proper foundation for application of the co-conspirator exception under Federal Rule of

---

[1] The Futterknect MOI, a copy of which is attached as Exhibit A hereto, was produced to the defense on October 1, 2013.

Evidence 801(d)(2)(E). The Futterknecht MOI fully demonstrates the government's inability to properly authenticate or lay the necessary foundation for the documents. To begin with, it is evident that Mr. Futterknecht has absolutely no idea what UBS client advisor Dieter Luetolf did or did not do with respect to the documents and accounts in question (indeed, it is unclear whether Mr. Futterknecht ever met Luetolf), but can say only what client advisors "should" do in particular circumstances. (*See, e.g.*, Exh. A at 2 ¶ 4 ("The client advisor should explain to the client this Form A. . . . The Client advisor should check and sign and then send for verification.")). Thus, it appears that Mr. Futterknecht lacks any personal knowledge related to this case and can testify *only* as a custodian of records.

With respect to the contact notes, the MOI makes clear that Mr. Futterknecht cannot testify as to who created them, their accuracy, their completeness, or any of the myriad other questions raised in Dr. Hough's motion. According to Mr. Futterknecht, the log intp which the notes are entered can be accessed by the individual responsible for the client (in this case, Luetolf), or by an assistant, or by upper management. (Exh. A at 2 ¶ 3). Without calling Luetolf (something the government has stated it has no intention to do) or otherwise establishing who created the particular entries at issue, the government simply cannot lay a proper business records foundation for the documents. Nor can the government provide the requisite "substantial and independent" evidence to invoke the co-conspirator foundation if it cannot even prove that the statements at issue are Luetolf's (let alone that Luetolf was a co-conspirator of Dr. Hough).

The MOI also reveals that the government will be unable to authenticate or lay the necessary hearsay foundation for the emails contained in the UBS files, most of which purport to be from Dr. Fredrick. According to Futterknecht, emails

are sent (presumably by the client advisor) to a department to archive, and are then kept through electronic storage by scanning the documents. (Exh. A at 2 ¶ 3). What Mr. Futterknecht cannot say, and what there will presumably be no witness to testify to, is that the emails in question were not cut, altered, or modified by Luetolf before being sent for archiving and scanned. Without testimony by either the sender or the recipient of a particular email, the government cannot authenticate the printout as a true and correct copy of the email as it was originally sent and received. *Compare*, *Saunders v. Ed Voyles Chrysler, Inc.*, 242 Fed. Appx. 653, 655 (11th Cir. 2007) (letter properly excluded for insufficient authentication where witness on stand did not recognize it); *Perryman v. Johnson Products Co.*, 698 F.2d 1138, 1146-47 (11th Cir. 1983) (affirming exclusion of handwritten letter where proponent did not attempt to establish letter's authenticity through handwriting expert or witness to testify to production of the letter) with *United States v. Siddiqui*, 235 F.3d 1318, 1322-23 (11th Cir. 2000) (email properly authenticated where both individuals who received it testified that they received it and circumstances sufficiently demonstrated that defendant had been the author); *Taleda v. City of Martinez*, 656 F. Supp. 2d 1147, 1157 (N.D. Cal. 2009) (finding certain emails properly authenticated where witness testified that she sent the emails, and other emails properly authenticated where witness testified that they were true and correct copies of emails she received); *see generally,* Mark D. Robins, Evidence at the Electronic Frontier: Introducing E-Mail at Trial in Commercial Litigation, 29 Rutgers Computer & Tech. L.J. 219, 226 (2003) ("Where a written communication such as an e-mail message is transmitted, only the author of the e-mail message or anyone who saw the author compose and transmit the message will truly 'know' the message's authorship, and be able to

authenticate it." (citing 2 John W. Strong, et al., McCormick on Evidence § 219(a), 687-88 (5th Cir. 1989))). Of course, these deficiencies are augmented by the fact that Luetolf is, according to the government's own position, an untrustworthy criminal.

Apart from authentication issues, the MOI makes clear that the government cannot lay a proper business records exception for the emails to overcome their obvious hearsay use. As noted above, all that Futterknecht can say is that UBS has a system whereby emails are sent to a department to archive and are kept through electronic storage by scanning the documents. (Exh. A at 2 ¶ 3). Printing a document and placing it in a business' file, however, does not make that document a business record absent testimony that the *document itself* (i.e., not just the printout) was made as a record of regularly conducted activity at or near the time by someone with knowledge. *See, United States v. Cone,* 714 F.3d 197, 220 (4th Cir. 2013) ("While properly authenticated e-mails may be admitted into evidence under the business records exception, it would be insufficient to survive a hearsay challenge simply to say that since a business keeps and receives e-mails, then *ergo* all those e-mails are business records falling within the ambit of Rule 803(6)(B). . . . The district court's observation that the e-mails were kept as a 'regular operation of the business' is simply insufficient on that basis alone to establish a foundation for admission under Rule 803(6)(B)."). Thus, the emails are not only unauthenticated, but are also inadmissible hearsay under the business records exception.[2]

As set forth in Dr. Hough's motion, the government is seeking to convict Dr. Hough of a Klein conspiracy without the testimony of a single alleged co-

---

[2] The government's inability to lay a proper foundation for the co-conspirator exception under Rule 801(d)(2)(E) is the subject of Dr. Hough's Motion in Limine No. 2.

conspirator or any other witness who will testify that she ever agreed with anyone to defraud the United States government. Instead of calling witnesses who can be cross-examined, the government will ask the Court to admit – and the jury to rely on – hearsay documents that are unreliable and cannot be properly authenticated. The Futterknecht MOI makes clear that a UBS custodian of records is simply incapable of authenticating the documents the government will seek to use to convict Dr. Hough or of laying the necessary foundation for their admission under any hearsay exception. Particularly in a criminal case in which a 67-year-old woman with no prior record is charged with serious felony offenses, the Federal Rules of Evidence demand more of the government than calling a non-percipient witness to say "I found these documents in our file."

Dated: October 2, 2013

                                                    Respectfully submitted,

                                                    **BRUCE L. UDOLF, P.A**.
                                                    *Counsel for Defendant Hough*
                                                    Broward Financial Centre
                                                    500 East Broward Blvd., Suite 1400
                                                    Fort Lauderdale, Florida 33394
                                                    Tel: (866) 951-9058/ Fax (954) 525-2134
                                                    budolf@udolflaw.com
                                                    Fla. Bar No. 0899933

                                                  By: /s/ Bruce L. Udolf


## CERTIFICATE OF COMPLIANCE

     WE HEREBY CERTIFY that the undersigned has conferred with opposing counsel prior to the filing of this motion, that counsel has been unable to resolve the issues by agreement, and that the motion concerns matters which are not covered by the scheduling order, as directed in the Court's Criminal Scheduling Order [DE 22], at ¶ II (D).

                                                                   By: /s/ Bruce L. Udolf

## CERTIFICATE OF SERVICE

  WE HEREBY CERTIFY that a true and correct copy of the foregoing was filed electronically using the Court's CM/ECF system, on this 2nd day of October, 2013.

                   By: /s/ Bruce L. Udolf