IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Case No. 2:13-cr-00072-FtM-JES-UAM |
| ) | |
| PATRICIA LYNN HOUGH, ) | |
| ) | |
| Defendant. ) | |

**GOVERNMENT TRIAL BRIEF**

I.   STATUS OF THE CASE

On May 15, 2013 defendants David Leon Fredrick ("Fredrick") and Patricia Lynn Hough ("Hough") were charged in a nine count indictment. Count one alleges a violation of 18 U.S.C. Section 371 (*Klein* conspiracy). Counts two through nine allege violations of 26 U.S.C. § 7206(1) (Filing False Tax Returns) (four counts each) against Fredrick and Hough.

On June 13, 2013, Hough appeared before this court and entered a plea of not guilty. Fredrick is a fugitive.

The trial of the case against Hough is scheduled to begin on October 8, 2013. The government anticipates that it will take approximately six days to present its case-in-chief, and expects to call approximately 22 witnesses in its case-in-chief based upon an agreement as to admissibility of some records that has been reached with the defense (Dkt. #76). The government intends to offer a large number of exhibits, copies of which will be provided to the defense prior to trial.

An exhibit list and set of pre-marked exhibits will be provided to the clerk of court on October 7, 2013. Substantially all of the exhibits have been previously provided to counsel during the discovery process. Drafts of summary exhibits have been provided to counsel and updated copies of summary exhibits will be provided as they are completed. The United States

1

reserves the right to supplement the exhibit list during trial. Any changes will be brought to the attention of counsel and the Court promptly, and any additional exhibits will be provided.

The government will be represented by Trial Attorneys Caryn D. Finley and Margaret Leigh Kessler of the United States Department of Justice, Tax Division.

## II. STATEMENT OF THE CASE

### A. INDIVIDUALS AND ENTITIES INVOLVED

#### 1. The Defendants

Defendant Hough and Fredrick are married. Hough has a BA in Sociology and Biology from Phillips University in Enid, Oklahoma, a Master of Social Work from University of Illinois, a Ph.D in Sociology from University of Illinois/Freie Universitat Berlin, West Germany, and an MD from Ross University School of Medicine located in Portsmouth, Dominica, British West Indies. She is believed to have completed her post graduate medical training at the Medical College of Georgia. She works as a Senior Physician for the Sarasota County Department of Health providing psychiatric medical services to low income individuals and families.

Defendant Fredrick is a fugitive.

#### 2. The Entities Involved

Saba University School of Medicine Foundation, dba Saba University School of Medicine ("The Foundation"), was a nonprofit foundation established and incorporated under the laws of the Netherlands Antilles on October 31, 1988 to provide for the education and training of healthcare professionals, and promote the general well-being of the residents of the Island of Saba. Saba University School of Medicine was located on the Island of Saba. Fredrick and Hough owned The Foundation, which owned Saba University School of Medicine. Hough and Fredrick funded the creation of Saba University School of Medicine with their own funds. The

school became operational in or around 1993. Fredrick served as the President and a Director of The Foundation. Hough served on the Board of Directors and Board of Trustees and was an Associate Dean for Clinical Medicine for the Saba University School of Medicine. The Foundation maintained an undeclared account at UBS numbered xxx-xx2245 and Fredrick and Hough had signature authority over the undeclared account. The Foundation also had an undeclared foreign account at Fortis Bank and Lichtenstein Landesbank.

Medical University of the Americas Limited ("MUA") was a corporation established and incorporated under the laws of St. Christopher-Nevis, West Indies, on April 29, 1999, to provide medical education and related services. MUA operated a for profit medical school on Nevis, West Indies. Fredrick owned 1,750 shares of MUA, and Fredrick and Hough served as Directors. Hough also served as Director of Accreditation. MUA maintained an undeclared account numbered xxx-xx5428 at UBS, and Fredrick and Hough had signature authority over the undeclared account. MUA also had an undeclared foreign account at Lichtenstein-Landesbank.

Educational Information Consultants, Inc. ("EIC") was a Massachusetts limited liability company located in Gardner, Massachusetts. EIC was wholly owned by Medical Education Group, LLC, a Massachusetts limited liability company owned by Fredrick. EIC managed the academic, administrative, and financial operations of Saba University School of Medicine and MUA in the United States.

Lynn, Leon & Lyon Group, LLC ("LL&L Group") was a Florida limited liability company incorporated in or about July 2003. Fredrick and Hough were both managing members and 50% shareholders of LL&L Group. LL&L Group owned real estate and other assets.

Medical Technology Associates Limited ("MTA") was incorporated in the British Virgin Islands on December 10, 1997. Fredrick and Hough were the Directors, and Hough was the

Secretary. Fredrick and Hough were the owners of MTA. MTA maintained an undeclared account at UBS numbered xxx-xx1472, and Fredrick and Hough had signature authority over the undeclared account.

Apex Consultants Limited ("Apex Consultants") was incorporated in the British Virgin Islands on October 26, 1999. Fredrick was the Director and Hough was the Secretary. Apex Consultants maintained an undeclared account at UBS numbered xxx-xx7840, and Fredrick and Hough had signature authority over the undeclared account. Fredrick and Hough were also listed as the beneficial owners of Apex Consultants' undeclared UBS account.

New Vanguard Holdings Limited ("New Vanguard") was incorporated in Hong Kong in or about April 2005. Hough and Fredrick owned and controlled New Vanguard. New Vanguard maintained an undeclared account at UBS numbered xxx-xx8833. Fredrick and Hough had signature authority over the undeclared account. New Vanguard also had undeclared accounts at Fortis Banque and Lichtenstein Landesbank. Fredrick and Hough were the beneficial owners of each of these undeclared New Vanguard accounts. New Vanguard owned 20,000 shares of MUA.

Top Fast Finance Ltd. ("Top Fast") was incorporated in Hong Kong in or about October 2005. Hough and Fredrick controlled Top Fast. Top Fast maintained an undeclared account at UBS numbered xxx-xx3343, and Fredrick and Hough had signature authority over the undeclared account. Top Fast also had undeclared accounts at Fortis Banque, Lichtenstein Landesbank and Bank Alpunim. Fredrick and Hough were the beneficial owners of each of these undeclared Top Fast accounts.

Ample Dynamic Trading Ltd. ("Ample Dynamic") was incorporated in Hong Kong in or about February 2003. Ample Dynamic maintained an undeclared account at UBS numbered

xxx-xx7617, and Fredrick and Hough had signature authority over the undeclared account. Ample Dynamic also had undeclared accounts at Lichtenstein Landesbank and Zurcher Kantonal Bank ("ZKB"). Fredrick and Hough were the beneficial owners of each of these undeclared accounts in the name of Ample Dynamic.

Round Hill Project Holding Company, NV ("Round Hill Project Holding Company") was a limited liability company created in Saba, Netherlands Antilles that held 10 acres of land on which Saba University School of Medicine was located. Fredrick and Hough, in September 2000, purchased 100 shares of Round Hill Project Holding Company. Fredrick and Hough and Singenberger were Directors of Round Hill Project Holding Company.

B. PROOF OF THE SCHEME

Fredrick and Hough, together with unindicted co-conspirators Beda Singenberger ("Singenberger") and their UBS, AG ("UBS") banker, Dieter Luetolf ("Luetolf"), conspired to use nominee entities, including foreign entities and a foreign foundation, to conceal from the IRS Fredrick and Hough's ownership and income derived from the operation and sale of Saba University School of Medicine, Medical University of the Americas ("MUA") and other assets. Fredrick and Hough opened and maintained undeclared accounts at UBS and other Swiss banks in their individual names, in the names of the schools, and in the names of nominee entities to conceal assets and income from the IRS. In fact, Hough and Fredrick owned and controlled all of these accounts, the assets therein and the income earned thereon. As part of the conspiracy, Fredrick and Hough filed false and fraudulent individual income tax returns, Forms 1040, that failed to report their interest in or signature authority over the various undeclared accounts and which also failed to report the receipt of significant interest and other income, predominately in 2007 from the sale of the schools. Fredrick and Hough communicated with Luetolf and Singenberger by email, telephone and during in-person meetings and provided them with written

and oral instructions for use of the undeclared accounts, including wiring and expenditure instructions.

Hough and Fredrick, both United States citizens, had an obligation to report to the IRS on Schedule B of their individual income tax returns, Forms 1040, whether they had a financial interest in, or signature authority over, a financial account in a foreign country where the account was maintained. They also had an obligation to report all income they earned from foreign bank accounts on their tax returns. Furthermore, they were required to report income from the sale of the schools.

Over the course of nearly a decade, Hough and Fredrick opened a host of undeclared offshore bank accounts in a variety of jurisdictions in their individual names, in the names of the schools, and in the names of nominee entities, including Apex, Top Fast, New Vanguard and MTA. Hough and Fredrick were the beneficial owners of and had signatory authority over all of these accounts and owned and controlled each of them.

In addition to the accounts at UBS, Fredrick and Hough opened bank accounts in the names of the nominee entities and the medical schools at other offshore banks, including Fortis Banque, Liechtenstein Landesbank, and Bank Alpunim. Fredrick and Hough were again identified as the beneficial owners of the nominee entities' undeclared accounts, though the schools themselves were identified as the owners of the accounts in the schools' names.

The evidence will show that Hough and Fredrick caused the undeclared accounts to be closed in jurisdictions when circumstances changed causing there to be an increased likelihood of IRS scrutiny of these accounts. Hough and Fredrick then moved the accounts to banks in other jurisdictions, with the purpose of maintaining the secrecy of these accounts from the IRS

10597654.1

and United States authorities.  In addition, between 2001 and 2011, Fredrick and Hough caused dozens of monetary transactions to be conducted using the undeclared accounts

In 2007, Fredrick and Hough sold Saba School of Medicine and MUA for more than $36 million after years of trying to entice a buyer.  The schools were purchased by Equinox Capital, a private equity investment firm.  The sale was personally guaranteed by Hough and Fredrick.  Singenberger had limited involvement with the sale of the schools and the assets; he signed some of the required sale documentation.  Fredrick directed and requested the proposed apportionment of funds from the sale of the schools among the nominee entities controlled by he and Hough.

One of the largest assets involved in the sale was the land on which the Saba University School of Medicine was located.  In the decade prior to the sale, Fredrick and Hough caused the purchase of this land in the name of a nominee, Fredrick's daughter, Laura Whitley.  Hough and Fredrick each owned 50% of the outstanding shares of Round Hill Project Holding Company.  Later, Hough and Fredrick caused Fredrick's daughter to sell the property to Round Hill Holding Company at a price drastically below the price originally paid for the land.  Hough and Fredrick then sold their shares in Round Hill Holding Company to New Vanguard, which they owned and controlled.  New Vanguard, as part of the sale of the schools to Equinox Capital, sold the Round Hill Holding Company shares for nearly $34 million.  Hough and Fredrick did not report the majority of the proceeds of this sale on either of their individual income tax returns.

In addition, Frederick and Hough caused transfers of funds amongst the various accounts, including causing funds to be distributed from the medical schools' undeclared accounts to undeclared accounts in the nominee entities' names.  The transfers were done to access funds in the undeclared accounts for their personal use, including to purchase real estate in Sarasota, Florida, Asheville, North Carolina and Greenville, North Carolina, to purchase planes, to make

7

gifts to family members, and to pay personal expenses.  In some correspondence with Luetolf related to these transactions, Fredrick expressed concern about their individual names being on wire transfers into the United States and instructed Luetolf to ensure that only the names of the nominee entities appeared on any wire transfers.  Hough and Fredrick also caused these assets to be purchased in the names of the nominee entities in order to conceal their ownership.

During the time in question, Hough and Fredrick did not report the existence of any of the foreign accounts they owned and controlled to their individual income tax return preparers.  Except for the accounts in the name of The Foundation and MUA, Hough and Fredrick did not report the existence of any of the foreign accounts to the in-house Chief Financial Officer of EIC, or the accountants preparing audits for purposes of Department of Education review.  The CFO of EIC and other professionals advised Fredrick and Hough of potential problems with the legal structure of the schools, potential legal consequences resulting therefrom, and suggested changes to the structure to come into compliance.  Evidence indicates that Fredrick and Hough followed through on little if any of the advice they were given on these issues.

III.    APPLICABLE STATUTES

   A.  CONSPIRACY

Title 18 U.S.C. §371 provides in pertinent part:

If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor.

10597654.1

B.     FILING A FALSE RETURN

Title 26 U.S.C. §7206(1) provides in pertinent part:

Any person who --

(1) Declaration under penalties of perjury. --

Willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter;

…

shall be guilty of a felony and, upon conviction thereof, shall be fined…or imprisoned not more than 3 years, or both, together with the costs of prosecution.

IV.     RELEVANT LAW

    A.     STATUTE OF LIMITATIONS

The statute of limitations for a *Klein* conspiracy under the defraud clause of Section 371 is six years. 26 U.S.C. §6531. The statute of limitations in a conspiracy begins to run from the last overt act proved. *Grunewald v. United States*, 353 U.S. 391, 396-97 (1957); *see also United States v. Anderson*, 319 F.3d 1218, 1218 (10th Cir. 2003); *United States v. Dandy*, 998 F.2d 1344, 1355 (6th Cir. 1993); *United States v. Fletcher*, 928 F.2d 495, 498 (2d Cir. 1991); *United States v. Vogt*, 910 F.2d 1184, 1201 (4th Cir. 1990).

The statute of limitations for Section 7206(1) offenses is six years. In the case of a return, the limitations period runs from the date of filing, unless the return is filed early, in which case the statute of limitations runs from the statutory due date for filing. 26 U.S.C. § 6531(5); *United States v. Habig*, 390 U.S. 222, 225 (1968); *United States v. Marrinson*, 832 F.2d 1465, 1475-76; *United States v. Samara*, 643 F.2d 701, 704 (10th Cir. 1981).

### B. ELEMENTS OF THE OFFENSES

#### 1. CONSPIRACY (COUNT ONE)

To establish a violation of this statute, the government must prove each of the following elements beyond a reasonable doubt:

    a) Two or more people in some way agreed to try to accomplish a shared and unlawful plan;

    b) The Defendant knew the unlawful purpose of the plan and willfully joined in it;

    c) During the conspiracy, one of the conspirators knowingly engaged in at least one overt act described in the indictment; and

    d) The overt act was knowingly committed at or about the time alleged and with the purpose of carrying out or accomplishing some object of the conspiracy.

#### 2. FILING A FALSE RETURN (COUNTS FIVE THROUGH NINE)

To establish a violation of this statute, the government must prove each of the following elements beyond a reasonable doubt:

    a) The defendant made and subscribed a return, statement, or other document which was false as to a material matter;

    b) The return, statement, or other document contained a written declaration that it was made under the penalties of perjury;

    c) The defendant did not believe the return, statement, or other document to be true and correct as to every material matter; and

    d) The defendant falsely subscribed to the return, statement, or other document willfully, with the specific intent to violate the law.

V.   LEGAL ISSUES

    A.   POTENTIAL HEARSAY STATEMENTS

*See* Government's Consolidated Response to Defendant's Motion in Limine No. 1 and Motion in Limine No. 2 (Dkt. #72).

    B.   CO-CONSPIRATOR STATEMENTS

*See* Government's Consolidated Response to Defendant's Motion in Limine No. 1 and Motion in Limine No. 2 (Dkt. #72).

    C.   SUMMARY/EXPERT WITNESS AND SUMMARY SCHEDULES

The government intends to offer the testimony of IRS Revenue Agent Sheila Maurer both as a summary witness and as an expert witness during the trial of this case. It is anticipated that after hearing the testimony of the witnesses and reviewing the admitted evidence, Ms. Maurer will be qualified to opine as to the tax consequences of the transactions engaged in by the defendant. She will offer her opinion about the transactions: namely that the sale of the medical schools should have been reported on Fredrick and Hough's individual income tax returns and that Fredrick and Hough should have reported as income any interest, dividends or capital gains earned on foreign bank accounts that were theirs. Because Revenue Agent Maurer must base her computations on the evidence admitted during the trial, the government requests that she be exempted from a Rule 615 request to exclude witnesses from the courtroom. Ms. Maurer is essential to the presentation of the government's case because her testimony is crucial to establishing the tax consequences of the defendants' conspiracy to defraud, and that defendant Hough's individual income tax returns were false.

Federal Rule of Evidence 702 permits experts to testify when specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue. Fed.R.Evid. 702.

An expert may testify "in the form of an opinion or inference" on ultimate issues to be decided by the trier of fact, except with respect to the defendant's mental state. Fed.R.Evid. 704.

Ms. Maurer's opinion concerning the tax consequences of the various transactions will necessarily have its basis in the Internal Revenue Code ("IRC") and its accompanying regulations. Her opinion will include her understanding of the relevant law and her application of the facts as she understands them. Ms. Maurer's testimony about the tax consequences of the defendants' transactions will aid the jury in understanding the facts in evidence.

Federal Rule of Evidence 1006 requires that summaries summarize information which is voluminous, admissible, and available for inspection. *United States v. Daniels*, 986 F.2d 451 (11th Cir. 1993). While the underlying documents must be admissible, they need not be admitted at trial. Such summaries are admissible evidence. *United States v. Gold*, 743 F2d 800 (11th Cir. 1984).

The summary schedules, because they will reflect only evidence that is admitted or admissible at trial, by necessity will not be finalized until shortly before Revenue Agent Maurer testifies. As such, final copies of her summary schedules will be provided to the defense shortly before she testifies. However, Revenue Agent Maurer has prepared draft schedules reflecting the evidence the government anticipates will be admitted. The government provided defendant Hough with copies of Revenue Agent Maurer's draft summary schedules as part of discovery on June 13, 2013 and June 20, 2013 and again on September 25, 2013 and September 30, 2013 in a form similar to what will be exhibited at trial. The government also provided notice to the defense of the substance of her anticipated testimony on June 21, 2013.

D.  BUSINESS RECORDS – DAVID MINCHENBERG

The government will offer a number of documents obtained by grand jury subpoena from David Minchenberg, a former employee of EIC. Rule 803(6) requires that with regard to

12

ordinary business records, the foundation for their admissibility must be laid by a custodian of records or "other qualified witness." The witness laying the foundation for the admission of business records must establish that (1) the records were made contemporaneously with the events and kept in the course of a regularly conducted business activity, and (2) it was the regular practice of that business activity to make the record. FRE 803(6); *United States v. Massey* 89 F.3d 1433 (11th Cir. 1996). The witness must establish that it was the business practice of the recording entity to obtain such information from persons who have personal knowledge and to maintain the records. *United States v. Bueno-Sierra*, 99 F.3d 375 (11th Cir. 1996). It is not necessary for the person who actually prepared the records to testify. *United States v. Garnett*, 122 F.3d 1016 (11th Cir. 1997). Mr. Minchenberg will testify concerning the types of records the government intends to offer, that they were kept in the ordinary course of a regularly conducted business, namely EIC, and that it was the practice of EIC to make the record. The Court has broad discretion to determine the admissibility of these records as long as the

////

////

////

10597654.1

circumstances indicate trustworthiness and reliability. *Massey*, *Id*.; *United States v. Arias-Izquierdo*, 449 F.3d 1168, 1183 (11th Cir. 2006).

        A. LEE BENTLEY
        Acting United States Attorney

By:   /s/ Caryn D. Finley
       CARYN D. FINLEY, ESQ.
       Trial Attorney, Department of Justice, Tax Division
       New York Bar No. 3953882
       2110 First Street, Suite 3-137
       Fort Myers, Florida 33901
       Telephone: (202) 514-5051
       Facsimile: (202) 514-0961
       E-mail: caryn.finley@usdoj.gov

By:   /s/ Margaret Leigh Kessler
       MARGARET LEIGH KESSLER, ESQ.
       Trial Attorney, Department of Justice, Tax Division
       2110 First Street, Suite 3-137
       Fort Myers, Florida 33901
       Telephone: (202) 514-5193
       Facsimile: (202) 514-9623
       Margaret.Leigh.Kessler@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on October 3, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of that electronic filing (NEF) to the following:

Bruce L. Udolf

Charles Edward Falk

Brianna L. Abrams

In addition, I have served copies of this filing on the following parties using email:

Nathan J. Hochman
Daniel Saunders
Bingham McCutchen, LLP
The Water Garden
1601 Cloverfield Blvd., Suite 2050 North
Santa Monica, CA 90404-4082

/s/ Caryn D. Finley
CARYN D. FINLEY
Trial Attorney, Department of Justice, Tax Division
New York Bar No. 3953882
2110 First Street, Suite 3-137
Fort Myers, Florida  33901
Telephone:  (239) 461-2200
Telephone:  (202) 514-5051
Facsimile:  (239) 461-2219
E-mail: caryn.finley@usdoj.gov