UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

Case No.  2:13-cr-00072-JES-UAM

UNITED STATES OF AMERICA,

     Plaintiff

v.

DAVID LEON FREDERICK, and
PATRICIA LYNN HOUGH

     Defendants.

_____/

### DEFENDANT PATRICIA LYNN HOUGH'S
### RENEWED MOTION TO STRIKE UBS RECORDS

COMES NOW, Defendant Patricia Lynn Hough, by and through her counsel of record, and hereby renews in writing her oral motion to strike, made *ore tenus* in open court on October 9, 2013, to strike certain foreign bank records of UBS that were admitted at trial on that date, pursuant to 18 U.S.C. § 3505.   Specifically, Dr. Hough moves to strike portions of admitted government exhibits 3-E, 3-L, 3-P, 3-S, 3-W, 3-AA, 3-EE, 3-HH, and 3-KK, as to which defense objections were raised at the time of admission.  The pages of those exhibits that are the subject of this motion are attached as exhibits hereto.[1] The grounds for this motion are as follows[2]:

---

[1] As previously stated to the Court, Dr. Hough's motion to strike is limited to those portions of the UBS records comprising e-mails, correspondence, and Client Advisor Work Bench (CAWB) contact notes (as to the latter of which Mr. Futterknecht was unable even to testify as to who prepared them).  While Dr. Hough believes that Mr. Futterknecht's testimony was inadequate to lay a business records foundation for *any* of the business records admitted pursuant to his certification and testimony, she objects here only to those that either (1) were not prepared by UBS (e.g., emails and correspondence from non-UBS parties), or (2) were prepared by Luetolf and therefore are both outside of Mr. Futterknecht's knowledge and lack trustworthiness as to their source and their method and circumstances of preparation.  Dr. Hough believes lesser foundational and hearsay concerns are raised by more traditional form bank documents such as statements and opening documents.

Title 18, United States Code, Section 3505 governs the admission at trial of foreign business records.  That section provides:

In a criminal proceeding in a court of the United States, a foreign record of regularly conducted activity, or a copy of such record, shall not be excluded as evidence by the hearsay rule if a foreign certification attests that –
(A) such record was made, at or near the time of the occurrence of the matters set forth, by (or from information transmitted by) a person with knowledge of those matters;
(B) such record was kept in the course of a regularly conducted business activity;
(C) the business activity made such a record as a regular practice; and
(D) if such record is not the original, such record is a duplicate of the original;
unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.
18 U.S.C. § 3505(a)(1).

The government introduced the subject exhibits exclusively through the testimony of UBS Custodian of Records Jean Marc Futterknecht, and no foundation was laid for admission of the records except for that contained in Mr. Futterknecht's testimony.   Upon prompting by government questioning, Mr. Futterknecht dutifully answered "yes" to all the standard questions regarding the elements of the business records exception, including affirming that the records were prepared at or near the time indicated on the document by, or from, information transmitted from a person with knowledge, and that the records were made and kept in the ordinary course of UBS' business.  (*See, e.g*., 10/9/13 RT at 17 (Exh. 3-S), 37-38 (Exh. 3-HH),  46-47 (Exh. 3-KK), 68-69 (Exh. 3-W), 75-76 (Exh. 3-AA), 82-83 (Exh. 3-E), 94 (Exh. 3-EE), 98-99 (Exh. 3-L), 103 (Exh. 3-P)).   On cross-examination, however, Mr. Futterknecht revealed that he in fact had no knowledge of any of the matters dealing with any of the accounts at issue, and that he had never even spoken to Dieter Luetolf, the UBS person with knowledge of how, when, and by whom certain of the admitted documents were prepared.  (10/9/13 RT 130-31).  Furthermore, although

---

[2] In addition to the grounds raised herein, Dr. Hough incorporates herein all arguments raised in her Motion in Limine No. 1 to Preclude Introduction of UBS Bank Contact Notes, filed on September 27, 2013 (Dkt #63).

*Bruce L. Udolf, PA*
*Broward Financial Centre, 500 East Broward Blvd., Suite 1400, Fort Lauderdale, Florida 33394*
*(866)951-9058/ budolf@udolflaw.com*

Mr. Futterknecht stated in his section 3505 certification (Exh. 3A) that "[t]he records are originals or duplicate copies of foreign (Switzerland) business records," he testified that he had no involvement in producing the documents to the government, never compared the documents that were produced (and introduced at trial) with the documents he reviewed, and never compared the documents that he reviewed with the original documents in UBS' files.  (10/9/13 RT 126-28, 130).

Most importantly, although Mr. Futterknecht attempted to compensate for his lack of personal knowledge by laying the necessary foundation based on testimony about UBS' procedures for preparing and retaining business records, he ultimately acknowledged, after being confronted with error after error that was evident on the face of documents prepared by Mr. Luetolf, that *Mr. Luetolf does not properly follow official UBS procedures*:

Q:  And we already dealt with Exhibit 3G, the Form A that

had the blank contracting party, so we know Mr. Luetolf doesn't

follow procedures as he should; correct?

A:   Seems to be the case.

(10/9/13 RT 174).

Q:  So you know he makes mistakes, and you have no idea

whether or not he followed all the policies that you've

outlined in general; correct?

A:  Correct.

Q:  And the only person who would really know that answer is

Dieter Luetolf, and you never spoke to him; correct?

A:  Correct.

(10/9/13 RT 214). Thus, Mr. Futterknecht knew what UBS' policies are, but also knew that Mr. Luetolf did not regularly follow certain policies, and had no idea whether Mr. Luetolf had followed other policies relating to the creation and retention of business records because he never spoke to Mr. Luetolf in preparing his certification or preparing for his testimony.

In addition, with respect to the emails and correspondence, Mr. Futterknecht's testimony did not – and could not – establish the requisite foundational elements for the business records exception, including whether the documents were prepared in the ordinary course of UBS' business (which, given that they were prepared outside of UBS, they clearly were not), whether they were prepared by a person with knowledge of the events, and whether they were prepared at or near the time of the events reflected in the documents. Such external documents are not transformed into UBS business records simply by the fact that a UBS employee printed them and/or placed them in a file:

> While properly authenticated e-mails may be admitted into evidence under the business records exception, it would be insufficient to survive a hearsay challenge simply to say that since a business keeps and receives e-mails, then ergo all those e-mails are business records falling within the ambit of Rule 803(6)(B). An e-mail created within a business entity does not, for that reason alone, satisfy the business records exception of the hearsay rule. The district court's observation that the e-mails were kept as a "regular operation of the business" is simply insufficient on that basis alone to establish a foundation for admission under Rule 803(6)(B). Accordingly, because the e-mails could not, on this record, be admitted under an exception to the hearsay rule, the district court's failure to give the limiting jury instruction was error.

*Bruce L. Udolf, PA*
*Broward Financial Centre, 500 East Broward Blvd., Suite 1400, Fort Lauderdale, Florida 33394*
*(866)951-9058/ budolf@udolflaw.com*

*United States v. Cone*, 714 F.3d 197, 220 (4th Cir. 2013) (internal quotations and citation omitted).[3] Here, because the emails at issue were not even "created within [the] business entity," the application of the business records hearsay exception is simply not appropriate. Mr. Futterknecht was unable to provide any testimony authenticating the emails as being true and correct copies, was unable to provide any testimony regarding the manner and circumstances of their creation, and was unable to lay the requisite foundation for their admission as business records of UBS. Thus, to the extent that those emails can overcome Dr. Hough's hearsay objection (and assuming that they can be properly authenticated), that must be as coconspirator statements rather than as business records.[4]

Finally, Dr. Hough submits that the Court can now rule as to whether there is sufficient evidence for the government to invoke the coconspirator exception as to hearsay statements of Dieter Luetolf, and that the answer to that question must be no. None of the government's remaining witnesses knows anything about, and will presumably have nothing to say about, Luetolf. The record at this point includes Mr. Futterknecht's testimony that based on his review of the 10 UBS accounts at issue, he has no reason to believe that Luetolf did anything wrong (10/9/13 RT 138); the stipulation that Luetolf continues to be employed by UBS (10/9/13 RT 215-16); and Jerry Schneider's testimony that Luetolf was completely cooperative with the 2005 audit of the Saba School of Medicine Foundation (10/10/RT 258). None of the UBS documents introduced by the government establishes, by the requisite preponderance of the evidence, that Dr. Hough was engaged in a conspiracy with Luetolf to defraud the United States, and no further

---

[3] Section 3505 tracks the domestic business records exception of Federal Rule of Evidence 803(6), and it should be interpreted in the same manner. *United States v. Ross*, 33 F.3d 1507, 1515 (11th Cir. 1994).

[4] Certain emails have been redacted by the government in such a way that the sender and/or recipient are unknown. As to those emails, there can be no foundation as to either the business records or the co-conspirator exception.

evidence on this aspect of the alleged conspiracy is anticipated.  Thus, the Court can now rule on the existing record that any exhibit containing a hearsay statement of Luetolf that was conditionally admitted subject to the government proving up the requisite foundational elements should be stricken.  Such exhibits include, at a minimum, the CAWB contact notes that were either prepared by Luetolf or some other individual who has not even been alleged to be a part of the conspiracy, as well as emails written by Luetolf that do not fall within any other hearsay exception (and as to which, for the reasons stated above, the business records exception is also inapplicable).

Accordingly, Dr. Hough moves to strike the attached documents on the grounds that:  (1) the section 3505 certification prepared by Mr. Futterknecht is inaccurate, or at best unreliable, in that the witness never took any steps to confirm that the records were in fact duplicate copies of UBS business records or that they were prepared at or near the time of the occurrence of the matters set forth, that they were made by or from information transmitted by a person with knowledge, that they were kept in the course of a regularly conducted business activity, or that they were made by the regularly conducted business activity as a regular practice[5]; (2) Mr. Futterknecht was not qualified to lay a proper business records foundation because he had taken no steps to determine whether the documents in question were in fact UBS business records that met all the foundational elements; (3) even if the certification were accurate and a proper business records foundation were laid, Mr. Futterknecht's acknowledgement of the multiple errors made by

---

[5] By way of example only, on at least one occasion, the CAWB notes entered by Luetolf or some unidentified other person regarding a "client visit" reflect that the notes were created more than two weeks after the occurrence set forth therein.  (Exh. 3S at 24; 10/9/13 RT 205-06).  As to that note, Mr. Futterknecht could only speculate as to the identity of the person who entered it, the identity of the client advisor who made the visit, the client(s) who were present at that visit (Dr. Fredrick, Dr. Hough, both, or neither), and every other circumstance surrounding its creation.

Bruce L. Udolf, PA
Broward Financial Centre, 500 East Broward Blvd., Suite 1400, Fort Lauderdale, Florida 33394
(866)951-9058/ budolf@udolflaw.com

Mr. Luetolf in preparing documents and of Mr. Luetolf's repeated violations of established UBS procedures, as well as all the circumstances previously identified in Dr. Hough's Motion in Limine No. 1 (particularly the government's characterization of Mr. Luetolf as a co-conspirator), render both the "source of information" and the "method or circumstances of preparation" of the subject documents untrustworthy under the final clause of section 3505(a)(1); (4) emails, correspondence, and other documents created outside UBS, as to which neither Mr. Futterknecht nor any other UBS custodian of records can testify to the circumstances of their creation, do not become non-hearsay UBS "business records" simply by virtue of being printed and placed in a file; and (5) with respect to Dieter Luetolf's out-of-court statements, the government has failed to establish by sufficient evidence the existence of a conspiracy between Luetolf and Dr. Hough to support application of the coconspirator exception.

Wherefore, for the reasons set forth herein, the undersigned respectfully requests this Honorable Court grant the foregoing Renewed Motion of Patricia Lynn Hough to Strike UBS Records, and for all such other and further relief deemed just and proper under the circumstances.

Dated: October 11, 2013.

Respectfully submitted,

**BRUCE L. UDOLF, P.A**.
*Counsel for Defendant Hough*
Broward Financial Centre
500 East Broward Blvd., Suite 1400
Fort Lauderdale, Florida 33394
Tel: (866) 951-9058/ Fax (954) 525-2134
budolf@udolflaw.com
Fla. Bar No. 0899933

By: /s/ Bruce L. Udolf

## <u>CERTIFICATE OF COMPLIANCE</u>

WE HEREBY CERTIFY that the undersigned has conferred with opposing counsel prior to the filing of this motion, that counsel has been unable to resolve the issues by agreement, and that the motion concerns matters which are not covered by the scheduling order, as directed in the Court's Criminal Scheduling Order [DE 22], at ¶ II (D).

By: <u>/s/ Bruce L. Udolf</u>

## <u>CERTIFICATE OF SERVICE</u>

WE HEREBY CERTIFY that a true and correct copy of the foregoing was filed electronically using the Court's CM/ECF system, on this 11th day of October, 2013.

By: <u>/s/ Bruce L. Udolf</u>

*Bruce L. Udolf, PA*
*Broward Financial Centre, 500 East Broward Blvd., Suite 1400, Fort Lauderdale, Florida 33394*
*(866)951-9058/ budolf@udolflaw.com*