UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

Case No.  2:13-cr-00072-JES-UAM

UNITED STATES OF AMERICA,

     Plaintiff

v.

DAVID LEON FREDRICK, and
PATRICIA LYNN HOUGH

     Defendants.

_____/

## DEFENDANT PATRICIA LYNN HOUGH'S
## MOTION FOR NEW TRIAL PURSUANT TO FED. R. CRIM. P. 33(a)

COMES NOW, Defendant Patricia Lynn Hough, by and through her counsel of record, and hereby submits her Motion for a New Trial in the interest of justice, pursuant to Federal Rule of Criminal Procedure 33(a), and in support thereof states as follows:

Dr. Hough contends that her right to a fair trial was violated by (1) the Court's allowance of improper cross-examination of two defense character witnesses that unconstitutionally reversed the presumption of innocence and as to which Dr. Hough's request for a curative instruction to the jury was wrongly denied; and (2) the improper admission of hearsay statements of Dr. Hough's alleged co-conspirator, David Fredrick, in the absence of substantial and independent evidence of Dr. Hough's participation in the charged conspiracy.  Dr. Hough further submits that a new trial is warranted because the evidence preponderated heavily against the jury's verdicts.[1]  This motion is based on the following Memorandum of Law, the files and records in this case, and such further evidence and argument as may be presented at any hearing on this motion.

---

[1] Contemporaneously with this motion, Dr. Hough has filed a separate motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29.  Should that motion be granted as to all counts, this motion for new trial would become moot.

# MEMORANDUM OF LAW

## I.   INTRODUCTION

Dr. Hough was convicted, following an 11-day jury trial, of one count of conspiracy to defraud the United States and four counts of filing false tax returns.  Over defense objection, the government was allowed to ask two of Dr. Hough's three character witnesses whether their opinion of Dr. Hough's honesty would change if the government proved her guilty of the charges. One witness, Dr. Alan Gruber, replied that his opinion would change; the other, Judge Thomas Walker, similarly conceded his opinion could change as well.  The day after the first witness had been asked to hypothetically assume Dr. Hough's guilt, the defense called the Court's and the government's attention to binding case authority holding such cross-examination of character witnesses to be violative of due process and the presumption of innocence.  The Court opined that that case was distinguishable because it involved reputation testimony rather than opinion testimony, and allowed the government to compound the constitutional error by posing a similar hypothetical to Judge Walker, the next character witness,   In fact, however, the Eleventh Circuit has expressly held that there is no difference between reputation and opinion character witnesses in this regard and that guilt-assuming hypotheticals are equally impermissible when posed to either type of witness.  *United States v. Guzman*, 167 F.3d 1350, 1352 (11th Cir. 1999).  Given the central importance of the issue of Dr. Hough's credibility and character in this entirely circumstantial case, and in accordance with consistent authority from this and other Circuits, Dr. Hough was denied her right to a fair trial and her convictions should be reversed.

Prior to trial, the defense moved *in limine* to preclude the government from introducing statements of alleged co-conspirators David Fredrick, Dieter Luetolf, and Beda Singenberger until the government had met its burden of proving, by substantial and independent evidence, the

existence of a conspiracy and Dr. Hough's participation in that conspiracy.  The Court denied the motion, but warned the prosecutors that "a failure to establish the proper predicate [for admission of the co-conspirator statements] by the conclusion of its case may result in a more drastic remedy than simply a corrective instruction."  (Doc. #73).  At the close of the government's case, the Court found that the government had failed to prove even by a preponderance of the evidence that Luetolf and Singenberger were members of the conspiracy charged in the indictment. (10/21/13 RT 26).[2]  The Court, however, found that sufficient evidence had been presented to support admission of Dr. Fredrick's hearsay e-mails and other statements as co-conspirator statements.  (*Id.*).  In this ruling, we respectfully submit the Court erred.  As demonstrated by the government's closing argument, in which it relied almost exclusively on Dr. Fredrick's out-of-court statements to prove the charged conspiracy, there was virtually no evidence independent of those statements that established the existence of a tax conspiracy or Dr. Hough's membership in such a conspiracy, and certainly not sufficient independent evidence to support admission of the hearsay statements.

The undersigned respectfully submit that the above rulings, individually and cumulatively, were error and prejudiced Dr. Hough's right to a fair trial.  We further submit that the evidence at trial preponderated so heavily against the jury's verdicts that it would be manifestly unjust to allow them to stand.  For all these reasons, a new trial should be granted in the interest of justice.

## II.   THE RULE 33 STANDARD

Rule 33 of the Federal Rules of Criminal Procedure provides that "upon the defendant's motion the court may vacate any judgment and grant a new trial if the interest of justice so

---

[2] The Reporter's Transcript of the trial proceedings is cited herein as "RT" and includes the applicable date and page numbers.  For the Court's convenience, Dr. Hough is filing an Appendix to this motion and her contemporaneously filed Motion for Judgment of Acquittal, which contains all cited transcript pages and trial exhibits.

requires." Fed. R. Crim. P. 33. "The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice." *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 1997). A district court's decision to grant a Rule 33 motion will be reversed only for an abuse of that discretion. *United States v. Campa*, 459 F.3d 1121, 1151 (11th Cir. 2006).

## III. A NEW TRIAL SHOULD BE GRANTED BECAUSE THE COURT ERRONEOUSLY ALLOWED IMPROPER CROSS-EXAMINATION OF DR. HOUGH'S CHARACTER WITNESSES, RESULTING IN PREJUDICE

### A. Background

Dr. Hough's knowledge and intent, crucial to satisfying the elements of the crimes for which she was charged, constituted the central focal point of the defense. To this end, in addition to Dr. Hough testifying in her own defense at trial, the defense preceded her testimony with three character witnesses who testified as to their high opinion of Dr. Hough's character for honesty and truthfulness. Dr. Hough's first character witness, Dr. Alan Gruber, testified to his positive opinion of Dr. Hough's character for honesty and truthfulness. Dr. Gruber testified that he believed Dr. Hough to be "extremely honest" and "very straightforward," that he had never known her even to exaggerate, that "it would make her extraordinarily uncomfortable to bend rules or cut corners," and that his opinion has been consistent throughout the 16 or 17 years that he has known her. (10/17/13 RT 149, 182). Dr. Gruber was asked on direct examination if his opinion would change if he were told that the government was alleging that Dr. Hough took millions of dollars from the Saba Foundation, hid the money for her own use in secret Swiss bank accounts, failed to declare income from those accounts on her tax returns, and conspired with her husband and others to defraud the United States; he replied that he "would be flabbergasted," that "it's just not who she is," and that he had "never known her not to play by the rules." (10/17/13 RT 182-83). The following questioning ensued on cross-examination by the government:

Q:      And I think Mr. Saunders asked you, if you heard the allegations that were in this indictment, that Dr. Fredrick and Dr. Hough conspired with each other and others to defraud the Internal Revenue Service, that would not change your opinion; is that correct?

A:      Yeah, the question still confuses me.  The allegation doesn't change my mind.  I would just be very surprised if the allegation were true.  I guess that's what I am trying to say.

Q:      And if that was proven, that Dr. Fredrick and Dr. Hough did conspire to defraud the Internal Revenue Service by not reporting the sale of the medical schools on their tax returns, because they would – would be required to do so, if that was proven, would that change your opinion?

MR. SAUNDERS:  Objection, Your Honor, " that were proven" is an improper question at this point.

THE COURT:  Overruled.

A:      Yeah, I would be very surprised.

Q:      Would it change your opinion about them?

A:      Yes.

MS. FINLEY:  Thank you, Your Honor.  No further questions.

(10/17/13 RT 196-97).

The following day, prior to calling its next character witness, the defense alerted the Court to the controlling case of *United States v. Candelaria-Gonzalez*, 547 F.2d 291 (5th Cir. 1977).[3]  In that opinion, copies of which were provided to the Court and to the government, the Fifth Circuit reversed the defendant's conviction because the prosecutor had been allowed to ask two of the defendant's three character witnesses whether the defendant's reputation for truth and veracity would be affected if he were convicted of the narcotics trafficking charges at issue in that trial.  *Id*. at 293.  The *Candelaria-Gonzalez* court explained:

> The district judge below abused [his] discretion when he permitted the prosecution to ask these hypothetical questions on cross-examination.  Once the defendant places his reputation in issue, the prosecution has wide latitude to pursue the reputation of the accused on cross-examination. . . .  The nature of the questions put to [the defendant's] witnesses by government counsel, however, was a far cry from any concept of formulated community opinion.

---

[3] The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

> Rather, the questions posed sought speculative responses resting upon an assumption of guilt. Government counsel asked if [the defendant's] reputation would be affected if he were convicted of the alleged crime. These hypothetical questions struck at the very heart of the presumption of innocence which is fundamental to Anglo-Saxon concepts of fair trial. We think that the risk of prejudice to defendant's basic rights from such questions requires reversal. The questions put have no place in a criminal trial.

Id. at 294 (citations omitted).[4]

When defense counsel raised *Candelaria-Gonzalez* with the Court in order to avoid compounding the error with the remaining character witnesses, the Court incorrectly stated that there had been no objection to the question and therefore there was no error. (10/18/13 RT 182). Defense counsel pointed out that there had in fact been an objection, discussed the holding of *Candelaria-Gonzalez*, and asked for a curative instruction regarding the prior day's improper questioning. The Court denied that request:

> THE COURT: It's a different situation. The question yesterday was the witness's personal opinion, not his reputation in the community. And he gave what his personal opinion was. That's different than the case you've just given me.
> MR. SAUNDERS: I think in both situations, Your Honor, it asks the witness to assume the defendant's guilt, and reverses the presumption of innocence; and I think that was what concerned the Candelaria-Gonzalez court, that the question itself requested a presumption of guilt, whether it's offered in the form of reputation or opinion testimony, that assumption in a criminal case before the case has been submitted to the jury is improper.
> THE COURT: I disagree.

(10/18/13 RT 183-84).

With no curative instruction given, the defense then proceeded to call its next character witness, retired Oklahoma District Judge Thomas Walker, who has known Dr. Hough for nearly

---

[4] Although the *Candelaria-Gonzalez* court found that the district court had also mistreated defense counsel and demonstrated bias, its language regarding the improper cross-examination makes clear that such questioning alone required reversal of the defendant's conviction. This reading has been confirmed by the Fifth Circuit. *See United States v. Smith-Bowman*, 76 F.3d 634, 637 (5th Cir. 1996) ("While the judge's misconduct was at issue in *Candelaria-Gonzalez*, . . . the repeated improper questioning was enough in and of itself to justify reversal.").

*Bruce L. Udolf, PA*
*Broward Financial Centre, 500 East Broward Blvd., Suite 1400, Fort Lauderdale, Florida 33394*
*(866)951-9058/ budolf@udolflaw.com*

50 years.  Like Dr. Gruber, Judge Walker expressed an overwhelmingly positive opinion of Dr. Hough's character for honesty and truthfulness.  He testified that Dr. Hough's character was "absolute top drawer," that he had never had reason to doubt her integrity, and that his opinion of her character for honesty had been consistent across all the years that he has known her. (10/18/13 RT 204-05).  Judge Walker further testified that the nature of the allegations in the case did not change his opinion of whether Dr. Hough is an honest and truthful person because the person described in those charges is "just not the Pat Hough that I've known for all these years."  (10/18/13 RT 206-07).

Despite having been fully alerted to the binding authority of *Candelaria-Gonzalez*, and presumably emboldened by the Court's ruling, the prosecutor again improperly asked this character witness to assume proof of Dr. Hough's guilt in asking if that would change his opinion of her honesty:

> Q:    And, as a judge, you would want to consider all of the evidence before forming an
>       opinion, would you not?
> A:    Well, of course.
> Q:    And so you would want to keep an open mind.
> A:    Sure.
> Q:    And so it's possible, if you heard all the evidence, that you might change your
>       opinion about whether Dr. Hough is honest or not.
> MR. SAUNDERS:  Objection, speculation, Your Honor, and foundation.
> THE COURT:  Overruled.
> A: Well, sure.
> MS. FINLEY: No further questions, Your Honor.

(10/18/13 RT 215).[5]

---

[5] Although the government phrased its question to Judge Walker differently from its question to Dr. Gruber, the effect was the same.  Because "all the evidence" could only change the witness' opinion of Dr. Hough if it proved her guilt, the question effectively asked Judge Walker to assume Dr. Hough's guilt (and he did so in responding that his opinion would change).  Indeed, this question is little different from questions that have been held to be improper in other cases.  *See, e.g.*, *United States v. Oshatz*, 912 F.2d 534, 537 (2d Cir. 1990) ("If I were to show you that Mr. Oshatz knew that the Markowitz transactions were backdated, would that change your opinion?"); *United States v. Williams*, 738 F.2d 172, 177 (7th Cir. 1984) ("[I]f you assume that it could be proven" that the defendant gave false information to the

*Bruce L. Udolf, PA*
*Broward Financial Centre, 500 East Broward Blvd., Suite 1400, Fort Lauderdale, Florida 33394*
*(866)951-9058/ budolf@udolflaw.com*

**B. The Court's Ruling Allowing the Government's Improper Questioning Was Error**

The government's questioning of Dr. Gruber and Judge Walker was flatly improper under *Candelaria-Gonzalez*.  In overruling the defense's objections to this testimony, the Court distinguished that case from the instant one because, as the Court reasoned, *Candelaria-Gonzalez* was a case involving reputation evidence rather than opinion evidence to prove good character.  However, contrary to the Court's ruling, the Eleventh Circuit has held that the guilt-assuming hypothetical is "equally inappropriate" and violative of the defendant's due process rights whether a character witness is testifying to opinion or reputation.   *Guzman*, 167 F.3d at 1352 ("Although the questions at issue in *Candelaria-Gonzalez* were posed to character witnesses who were testifying to the accused's reputation in the community, ***these questions are equally inappropriate when asked of opinion character witnesses***.") (emphasis added).  In *Guzman*, the Eleventh Circuit firmly reiterated that "[t]he government may not . . . pose hypothetical questions that assume the guilt of the accused in the very case at bar" because such questions "strike at the very heart of the presumption of innocence" that is fundamental to a fair trial.  *Id.* (internal quotations and citation omitted).

Other circuits are in accord that there is no basis for distinguishing between opinion and reputation testimony in finding the asking of guilt-assuming hypotheticals to be constitutional error.  *See e.g.*, *United States v. Mason*, 993 F.2d 406, 408-09 (4th Cir. 1993) (guilt-assuming hypothetical is improper regardless of whether character witness testifies to reputation or

---

insurance company and the police, "would that change your opinion as to his truthfulness and honesty?"); *Candelaria-Gonzalez*, 547 F.2d at 294-95 ("Assuming that a D.E.A. agent with knowledge of Mr. Ledesma's reputation for a narcotics trafficker states he had a reputation for being one of the major narcotics traffickers in the Western United States, assuming an agent like that so testified, would that that would [sic] not be inconsistent with your knowledge of him, would it?").  In *Candelaria-Gonzalez*, the convictions were reversed because "[t]he agent's testimony was raised to the status of accepted fact, and the presumption of innocence was destroyed in the process."  Similarly, the prosecutor's questions to both Dr. Gruber and Judge Walker elevated the government's disputed evidence "to the status of accepted fact" in asking if that evidence would change the witness' opinion of Dr. Hough's character.

*Bruce L. Udolf, PA*
*Broward Financial Centre, 500 East Broward Blvd., Suite 1400, Fort Lauderdale, Florida 33394*
*(866)951-9058/ budolf@udolflaw.com*

opinion); *United States v. Shwayder*, 312 F.3d 1109, 1121 (9th Cir. 2002) ("The prosecution's use of guilt-assuming hypothetical questions on cross-examination of Shwayder's [opinion] character witnesses . . . constituted error."); *Oshatz*, 912 F.2d at 539 (finding the court's precedent "quite clear in its condemnation of guilt-assuming hypothetical questions asked of lay character witnesses like friends or neighbors, whether testifying about a defendant's reputation for a character trait or expressing an opinion about such a trait"); *Williams*, 738 F.2d at 177 ("We hold that permitting this line of cross-examination [guilt-assuming hypotheticals] over objection was error, and we see no reason to treat reputation and opinion witnesses differently in this regard.") (citation omitted); *United States v. McGuire*, 744 F.2d 1197, 1204 (6th Cir. 1984) ("It would be error to allow the prosecution to ask the character witness to assume defendant's guilt of the offenses for which he is then on trial.").[6]   Those courts, like the Fifth and Eleventh Circuits, have consistently held that guilt-assuming hypotheticals impair the presumption of innocence and thus are a constitutional violation of due process.  *See, e.g., Mason*, 993 F.2d at 409 ("[I]n addition to a proper application of the rules of evidence, adherence to a basic concept of our justice system, the presumption of innocence, is not served by this line of questioning."); *Shwayder*, 312 F.3d at 1121 ("Following almost every other circuit that has addressed the question, we now hold that the use of guilt assuming hypotheticals undermines the presumption of innocence and thus violates a defendant's right to due process.") (footnote omitted); *Williams*, 738 F.2d at 177 (allowing guilt-assuming hypotheticals "is error because it assumes away the

---

[6] Although the D.C. Circuit has found a distinction between opinion and reputation character witnesses with respect to guilt-assuming hypotheticals, *see United States v. White*, 887 F.2d 267, 275 (D.C. Cir. 1989) (holding that guilt-assuming hypotheticals during cross examination of opinion character witnesses, as opposed to reputation character witnesses, is not error), the Eleventh Circuit has expressly rejected *White*, noting that the cases it cites in support of treating opinion testimony differently from reputation testimony "do not support that proposition." *Guzman*, 167 F.3d at 1352.  *See also United States v. Kellogg*, 510 F.3d 188, 195-97 (3d Cir. 2007) (finding a distinction between reputation and opinion character witnesses, while expressly declining to suggest "that guilt-assuming hypotheticals can properly be asked of opinion character witnesses in every case").

*Bruce L. Udolf, PA*
*Broward Financial Centre, 500 East Broward Blvd., Suite 1400, Fort Lauderdale, Florida 33394*
*(866)951-9058/ budolf@udolflaw.com*

presumption of innocence").

Federal Rule of Evidence 405(a) allows, on cross-examination of a character witness, inquiry into relevant specific instances of the defendant's conduct. The cross-examination of Dr. Hough's character witnesses "was neither an inquiry into specific instances testing the witnesses' knowledge nor exposure of the witnesses' bias as contemplated by the Federal Rules," but rather "allowed the prosecution to foist its theory of the case repeatedly on the jury and to force an unsuspecting witness to speculate on the effect of a possible conviction." *Williams*, 738 F.2d at 177. The Court erred in allowing the initial improper questioning of Dr. Gruber, as well as in denying the defense's request for a curative instruction and allowing the constitutional violation to be compounded with a guilt-assuming hypothetical posed to a second character witness.[7]

### C. The Error Resulting from the Improper Cross-Examination Was Not Harmless

Although the error that results from the posing of guilt-assuming hypotheticals is subject to harmless error analysis, *see Guzman*, 167 F.3d at 1352, the repeated error in this case cannot be viewed as harmless in the context of the entire trial record.

Where constitutional error is involved, reversal is required unless the court finds that the error was harmless beyond a reasonable doubt. *Chapman v. State of California*, 386 U.S. 18, 24 (1967). In cases of nonconstitutional error, reversal is required if the error resulted "in actual

---

[7] The undersigned note that defense counsel, upon doing preliminary research in the evening following Dr. Gruber's testimony and finding the *Candelaria-Gonzalez* opinion, could have simply allowed the government to repeat its improper questioning with the remaining character witnesses and thereby multiply its grounds of reversible error for appeal. Instead, defense counsel acted to preserve Dr. Hough's right to a fair trial and to avoid compounding the existing error and, with respect for the resources of the Court, sought to obtain a prompt curative instruction by immediately alerting the Court and the government of the relevant caselaw. For the reasons articulated above, we respectfully submit that the Court erred in finding C*andelaria-Gonzalez* distinguishable. We further submit that the Court erred in declining to provide a curative instruction to the jury as to Dr. Gruber's testimony on cross-examination, and in failing to prevent the government's improper cross-examination of the next character witness. The record demonstrates that Dr. Hough's counsel made a good-faith effort to avoid the very situation that now compels a new trial.

*Bruce L. Udolf, PA*
*Broward Financial Centre, 500 East Broward Blvd., Suite 1400, Fort Lauderdale, Florida 33394*
*(866)951-9058/ budolf@udolflaw.com*

prejudice because it 'had substantial and injurious effect or influence in determining the jury's verdict.'" *United States v. Lane*, 474 U.S. 438, 449 (1986) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)); *see* 28 U.S.C. § 2111 (error is harmless if it does not "affect the substantial rights of the parties"). The Eleventh Circuit has not decided which standard applies to error resulting from guilt-assuming hypothetical questions on cross-examination, but assumed *arguendo* in *Guzman* that the more stringent *Chapman* standard applied. *Guzman*, 167 F.3d at 1353. Other courts have similarly applied the constitutional harmless error standard to this issue. *See, e.g.*, *United States v. Polsinelli*, 649 F.2d 793, 797-98 (10th Cir. 1981). Because the use of guilt-assuming hypotheticals on cross-examination of character witnesses constitutes a due process violation, s*ee Shwayder*, 312 F.3d at 1121, the constitutional standard should be applied here. Whichever standard is applied, however, reversal of Dr. Hough's convictions is required by the court's repeated allowance of improper questioning that the Eleventh Circuit has held "destroy[s]" the presumption of innocence. *Candelaria-Gonzalez*, 547 F.2d at 295.

In *Guzman*, the Eleventh Circuit held the error to be harmless beyond a reasonable doubt based on two factors: (1) the "overwhelming" evidence of the defendant's guilt; and (2) the fact that the character witness refused to accept the proposed assumption or to state that her opinion would change. *Guzman*, 167 F.3d at 1353. Similar factors, as well as the issuance of curative instructions and the relatively small number of improperly questioned witnesses in relation to the number of character witnesses as a whole, have been cited in other cases in which harmless error has been found. *See, e.g.*, *Oshatz*, 912 F.2d at 541 (finding error harmless where judge gave "prompt and sufficient cautionary instructions" and evidence of guilt was "so substantial as to preclude any reasonable likelihood that the improper cross-examination contributed to the verdicts"); *United States v. Siers*, 873 F.2d 747, 749-50 (4th Cir. 1989) (finding error harmless where improper questions were asked to only two of defendant's 14 character witnesses, but

"invit[ing] the attention of the district courts and the bar to the fact that the government frequently will not be in such luck as to be able successfully to claim harmless error for cross examination of character witnesses in the manner engaged in by the government in this case"); *Williams*, 738 F.2d at 177 (finding error harmless where case did not turn on defendant's credibility); *United States v. Hewitt*, 663 F.2d 1381, 1391 (11th Cir. 1981) (finding error harmless where hypothetical question did not ask witness to assume defendant's guilt in the same matter for which he was standing trial, and witness did not alter her evaluation of defendant's reputation in response to question); *see also Shwayder*, 312 F.3d at 1121-22 (where no objection was made at trial, finding no plain error because character witnesses refused to answer improper hypothetical questions and, when they did answer, refused to modify their opinions).

*None* of the factors on which the above courts have relied to find the constitutional error resulting from guilt-assuming hypotheticals harmless applies here. To begin with, unlike *Guzman* and *Oshatz*, the evidence in this case was far from overwhelming. The government's case was highly circumstantial and depended almost entirely on Dr. Hough's signatures on documents prepared by others that she denied having read or understood. Indeed, of the 20 witnesses in the government's case-in-chief against Dr. Hough, not one had a bad word to say about her. There was no government witness who testified to the existence of an agreement to defraud the IRS; no government witness who testified what Dr. Hough was told by Dr. Fredrick, Dieter Luetolf, or Beda Singenberger about the purpose of the foreign accounts or the ownership of the funds therein; no government witness who testified that Schedule B was ever reviewed by or explained to Dr. Hough; no government witness who testified that Dr. Hough ever said anything about wanting or trying to evade taxes[8]; no government witness who testified that Dr.

---

[8] To the contrary, Dr. Hough's accountant Thomas Murtha testified that Dr. Hough was conservative and conscientious about her taxes (10/10/13 RT 55-56) and corrected her own mistake on one occasion by filing an amended return (10/10/13 RT 63-64), and school accountant David Minchenberg testified that Dr. Hough wanted to be in compliance with her tax obligations (10/11/13 RT 119-20).

*Bruce L. Udolf, PA*
*Broward Financial Centre, 500 East Broward Blvd., Suite 1400, Fort Lauderdale, Florida 33394*
*(866)951-9058/ budolf@udolflaw.com*

Hough was knowledgeable or sophisticated about banking, taxation, or financial matters; no document in which Dr. Hough (or Dr. Fredrick) made any reference to evading taxes or to the IRS[9];  no evidence that Dr. Hough ever initiated a single transaction into or out of any of the foreign accounts; and no evidence that Dr. Hough ever directed the use of any of the funds in any of the foreign accounts for her own personal benefit.  Moreover, in a case that centered on foreign bank accounts, not one of the government's 20 witnesses knew anything whatsoever about any of the accounts at issue; there was no witness from Sinco Treuhand, from Liechtenstein Landesbank, from Fortis Banque, or from Bank Alpinum, and the lone witness from UBS was a mere custodian of records who had never met Luetolf and had no knowledge about the facts of this case.  In the absence of such evidence, this case turned on Dr. Hough's state of mind with respect to the documents and accounts at issue and her credibility while testifying.  As such, unlike in *Williams*, Dr. Hough's character for honesty was the linchpin of the entire trial, and the improper questioning of her character witnesses went directly to that central issue and was grossly prejudicial.

Unlike *Guzman*, *Hewitt*, and *Shwayder*, in which the character witnesses refused to alter their opinions based on the improper hypotheticals, both Dr. Gruber and Judge Walker told the jury that their long-held positive opinions of Dr. Hough's honesty would in fact change if the government were to prove her guilt.  These concessions, repeatedly and aggressively pursued by the government, implicate the precise reason why such questions are violative of due process. *See Guzman*, 167 F.3d at 1353 ("The harm in allowing the use of this type of improper hypothetical lies in the effect of having the defendant's own character witness assume that the

---

[9] In arguing to the Court that it had proved that Luetolf and Singenberger were co-conspirators, the government claimed that Luetolf and Singenberger "are on e-mails where the discussions are had about non-disclosing to the IRS."  The Court correctly responded that no emails even mentioning the IRS or evasion of taxes had been introduced in this trial.  (10/21/13 RT 23).

*Bruce L. Udolf, PA*
*Broward Financial Centre, 500 East Broward Blvd., Suite 1400, Fort Lauderdale, Florida 33394*
*(866)951-9058/ budolf@udolflaw.com*

defendant is guilty.").  Moreover, unlike *Siers*, in which improper questions were asked to only two of 14 character witnesses, the improper hypotheticals here were posed to two out of Dr. Hough's three character witnesses – just as in *Candelaria-Gonzalez*.  Unlike *Hewitt*, the questions sought an assumption of guilt of the very charges for which Dr. Hough was on trial. Finally, unlike *Oshatz*, this Court did not give any cautionary, limiting, or curative instruction to the jury, either at the time of the questioning or at any time thereafter.

Rather, this case falls directly in line with those cases that have declined to find harmless error and have reversed convictions based solely on the improper use of guilt-assuming hypotheticals.  In *Polsinelli*, for example, the defendant stood trial on cocaine distribution and conspiracy charges.  He called three character witnesses in his defense, two of whom were asked if their opinion of the defendant's reputation would change if they became aware that he had distributed cocaine (referring to the alleged distributions for which the defendant was on trial). *Polsinelli*, 649 F.2d at 794-95.  Having found that the questioning was improper, the court further found that the error was not harmless beyond a reasonable doubt.  *Id*. at 797-98.  The court noted that the case essentially turned on the word of the defendant (who testified in his own defense) against the word of the key government witness, with no corroborating evidence of the defendant's version; as such, "the testimony of the character witnesses . . . assumed a position of greater importance than would be true in the ordinary case."  *Id*. at 798.  The character witnesses served "[t]o bolster [the defendant's] own testimony concerning his character, as well as to establish his innocence."  *Id*.  Accordingly, the improper posing of questions that "assumed as a fact that [the defendant] was guilty of the very crimes for which a jury had been impaneled to decide his guilt or innocence" was not harmless.[10]  *Id*.; *compare*, *Williams*, 738 F.2d at 177 (error

---

[10] The *Polsinelli* court also relied for its harmlessness finding on the fact that both of the improperly questioned character witnesses responded that the hypothetical fact would not change their opinions. *Polsinelli*, 649 F.2d at 794-95.  The Eleventh Circuit, however, has repeatedly made clear that it is the character witness' *acceptance* of the posed assumption, and not its rejection, that is prejudicial.  *See*

Bruce L. Udolf, PA
Broward Financial Centre, 500 East Broward Blvd., Suite 1400, Fort Lauderdale, Florida 33394
(866)951-9058/ budolf@udolflaw.com

from guilt-assuming hypotheticals found harmless where defendant did not testify and case did not depend on defendant's credibility). *See also Mason*, 993 F.2d at 409 (improper guilt-assuming hypothetical questions to two of the defendant's three character witnesses held not harmless, under nonconstitutional "reasonable likelihood" standard, where there was little direct evidence of defendant's guilt); *Candelaria-Gonzalez*, 547 F.2d at 294-95 (reversing convictions of two defendants based on guilt-assuming hypotheticals posed to two out of three character witnesses, finding that "the risk of prejudice to defendant's basic rights from such questions **requires reversal**") (emphasis added).

The guilt-assuming questions asked by the government, and twice allowed by the Court, "have no place in a criminal trial." *Candelaria-Gonzalez*, 547 F.2d at 294. In a thin circumstantial case that had as its central issue the defendant's character and credibility, the prosecutor's improper demand that Dr. Hough's character witnesses assume her guilt in front of the jury reversed the presumption of innocence and violated her due process right to a fair trial. As the above cases demonstrate, a new trial is the only proper remedy for this repeated and serious constitutional violation. *See id.* at 295 ("The convictions here are due to be reversed for the court's repeated allowance of inherently prejudicial cross-examination by the prosecutor.").

## IV.   A NEW TRIAL SHOULD BE GRANTED BECAUSE THE COURT IMPROPERLY ADMITTED ALLEGED CO-CONSPIRATOR STATEMENTS ABSENT SUBSTANTIAL INDEPENDENT EVIDENCE PROVING THE

---

*Guzman*, 167 F.3d at 1353 (finding error from guilt-assuming hypotheticals harmless because, *inter alia*, witnesses refused to accept the government's assumption and thereby arguably strengthened the defendant's case); *Hewitt*, 663 F.2d at 1391 (finding error from guilt-assuming hypothetical harmless because, *inter alia*, the hypothetical question did not cause the defendant's character witness to alter her evaluation of his reputation in the community); *see also Candelaria-Gonzalez*, 547 F.2d at 293 nn. 2, 3 (convictions reversed where one witness testified that the hypothetical fact would change his opinion, and the other stated that he did not know how to answer the question). Here, of course, both witnesses conceded that their opinion of Dr. Hough's character for honesty would (or could) change if the government proved her guilt. As the Eleventh Circuit's prior decisions make clear, the prejudice from such responses is manifest.

Bruce L. Udolf, PA
Broward Financial Centre, 500 East Broward Blvd., Suite 1400, Fort Lauderdale, Florida 33394
(866)951-9058/ budolf@udolflaw.com

### EXISTENCE OF A CONSPIRACY AND DR. HOUGH'S KNOWING AND WILLFUL PARTICIPATION IN THAT CONSPIRACY

#### A. Background

Prior to trial, Dr. Hough moved *in limine* to preclude the government from introducing alleged co-conspirator statements into evidence before it had satisfied all requirements for admissibility.  (Doc. #64).  The Court denied that motion, declining to hold an admissibility hearing on the co-conspirator statements under *United States v. James*, 590 F.2d 575 (5th Cir. 1979), but warning the government that "a failure to establish the proper predicate [for admission of the co-conspirator statements] by the conclusion of its case may result in a more drastic remedy than simply a corrective instruction."  (Doc. #73).

At the conclusion of the government's case, the Court found that the government had failed to prove even by a preponderance of the evidence that two out of the four co-conspirators identified in the indictment and named in the government's opening statement – Dieter Luetolf and Beda Singenberger – were members of the conspiracy.  Accordingly, the Court ordered all references to those individuals as co-conspirators struck from the indictment and the jury instructions.

#### B. The Court Erred in Finding That the Government Had Proved the Existence of a Tax Conspiracy Between Dr. Hough and David Fredrick By Substantial Evidence Independent of Dr. Fredrick's Hearsay Statements

A co-conspirator statement may only be admitted under Federal Rule of Evidence 801(d)(2)(E) if the government first proves by a preponderance of the evidence that:  (1) a conspiracy existed; (2) the conspiracy included the declarant and the defendant against whom the statement is offered; and (3) the particular statement to be introduced was made during the course of and in furtherance of that conspiracy.  *United States v. Dickerson*, 248 F.3d 1036, 1049 (11th Cir. 2001).  Although the district court may consider the alleged hearsay statement in determining whether the proper foundation has been laid, *see Bourjaily v. United States*, 483

U.S. 171, 179-81 (1987), the Eleventh Circuit requires that the requisite foundational facts be established by "substantial independent evidence," *i.e.*, evidence independent of the statements themselves.  *See United States v. Adkinson*, 158 F.3d 1147, 1153 (11th Cir. 1998); *United States v. McDonald*, 935 F.2d 1212, 1220 (11th Cir. 1991); *see also*, *e.g.*, *United States v. Hasner*, 340 F.3d 1261, 1275 (11th Cir. 2003) (detailing independent evidence that established existence of a conspiracy by a preponderance of the evidence, supporting introduction of co-conspirator statements); *United States v. Byrom*, 910 F.2d 725, 736-37 (11th Cir. 1990) (affirming admission of co-conspirator statement where there was "abundant independent evidence" of the conspiracy).  The *independent* evidence of the existence of the conspiracy must be at least sufficient to support submitting the existence of the conspiracy to the jury.  *McDonald*, 935 F.2d at 1220.  Moreover, such independent evidence cannot consist simply of other alleged co-conspirator statements.  *See United States v. Grassi*, 616 F.2d 1295, 1300 (5th Cir. 1980) ("Evidence submitted . . . for the purpose of proving a conspiracy must, of course, be free from hearsay objection; otherwise, a co-conspirator's hearsay might bootstrap itself into admissible evidence.").

Despite the government's habit throughout trial of loosely referencing acts and statements of Dr. Fredrick as acts and statements of the fictitious entity "Dr. Fredrick and Dr. Hough," the evidence of Dr. Hough's involvement in a conspiracy to defraud the IRS, when shorn of Dr. Fredrick's statements, was insufficient to submit the question to a jury and was therefore insufficient to support admission of Dr. Fredrick's statements in the first instance.  This is made abundantly clear by the government's own closing argument to the jury.  In support of the existence of the charged conspiracy, the government relied in its closing and rebuttal arguments on the following hearsay statements by Dr. Fredrick, among others:  (1) Dr. Fredrick's December 15, 2003 email to Luetolf stating that "leaving our funds in Nassau makes

us too vulnerable") (10/23/13 RT 18); (2) Dr. Fredrick's December 15, 2003 letter to Luetolf stating that changes in U.S. and Bahamas banking policy "put us at a disadvantage" (*id.* at 18); (3) Dr. Fredrick's December 12, 2003 email to Luetolf inquiring about "the status of SZ with regard to US account holders" and how to protect against "open disclosure" (*id.* at 18-19); (4) Dr. Fredrick's February 18, 2002 correspondence with prospective buyers Brad Anderson and Mark Van Cura, in which he identifies himself as the "sole owner" of the Saba University School of Medicine (*id.* at 20); (5) Dr. Fredrick's March 1, 2003 email to Anderson in which he expresses a preference for putting funds offshore (*id.*); (6) Dr. Fredrick's December 2003 correspondence with Jerry Schneider about the Jones Walker opinion letter (*id.* at 21-22); (7) Dr. Fredrick's correspondence with Luetolf in February 2004 about splitting the existing Fredrick/Hough account into two separate accounts (*id.* at 22), (8) Dr. Fredrick's correspondence with Luetolf in April 2005 about gifts to his family (*id.* at 23); (9) Dr. Fredrick's communications with David Minchenberg and the school auditors (*id.* at 26-27); (10) Dr. Fredrick's directions to Steven Rodger in April 2007 regarding the allocation of proceeds from the sale of the schools (*id.* at 34); (11) Dr. Fredrick's correspondence with Luetolf in June 2005 expressing concern about having his name listed on wire transfers (*id.* at 37); (12) Dr. Fredrick's correspondence with Luetolf and Singenberger in July 2005 directing that the wire for purchase of the Asheville house should come from New Vanguard (*id.*); (13) Dr. Fredrick's correspondence with Mark Rudow in 2010 about the sale of the Asheville residence (*id.* at 38); (14) Dr. Fredrick's communications with Luetolf in August 2008 about the UBS situation (*id.* at 40); (15) Dr. Fredrick's December 1, 2008 letter submitted in connection with the opening of a Saba School of Medicine Foundation bank account (*id.*); (16) Dr. Fredrick's statement to Jeffrey Gallant that he owned New Vanguard (*id.* at 121); and (17) Dr. Fredrick's February 8, 2005 email to Luetolf regarding a "plan" that Dr. Hough was in and that Dr. Fredrick was not (*id.* at

125).  Each of the above is a hearsay statement that should only have been admitted upon the government's introduction of substantial independent evidence both of the existence of a conspiracy to defraud the IRS and of Dr. Hough's knowing and willful participation in that conspiracy.

In contrast, the only "independent" evidence of Dr. Hough's involvement in the charged tax conspiracy that the government cited in its closing arguments consisted of:  (1) some "Form A" account opening documents bearing Dr. Hough's signature and identifying her as a beneficial owner, as to which the evidence established that at least one (and possibly all) was signed in blank[11], which had nothing to do with IRS requirements but were required under Swiss anti-money laundering laws, and which in any event reveal utterly nothing about Dr. Hough's purpose in opening the accounts and signing the documents (*id.* at 16-17, 23-24);  (2) Dr. Hough's July 8, 2003 email to prospective school buyers about stock issuance concerns and forming an LLC, which have nothing whatsoever to do with the charged conspiracy (*id.* at 21); (3) the letter of intent executed by Dr. Hough and Dr. Fredrick on July 7, 2003, which stated that they collectively and "directly or indirectly" held "the controlling interest in MUA/Nevis, SABA and 50% of MUA Belize (again, this has nothing to do with an alleged conspiracy to defraud the IRS) (*id.* at 20); (4) Dr. Hough's March 2004 email confirming Dr. Fredrick's request to split the existing Fredrick/Hough account into two accounts, which is devoid of any explanation of why Dr. Hough understood this was being done by Dr. Fredrick and had nothing to do with defrauding the IRS (*id.* at 22-23); (5) the purchase agreement with Equinox Capital, which Steven Rodger testified he negotiated with Dr. Fredrick, which he did not know if Dr. Hough ever read, and as to which he dealt with Dr. Hough only on her consulting agreement[12] – and

___

[11] Government's Exh. 3G; 10/9/13 RT 156.

[12] See 10/16/13 RT 14-15, 77-78, 86.

Bruce L. Udolf, PA
Broward Financial Centre, 500 East Broward Blvd., Suite 1400, Fort Lauderdale, Florida 33394
(866)951-9058/ budolf@udolflaw.com

which again reveals absolutely nothing about Dr. Hough agreeing with anyone to defraud the IRS) (*id.* at 31); (6) the guaranty executed by Dr. Fredrick and Dr. Hough in connection with the Equinox sale, which yet again has no bearing on whether Dr. Hough had the specific intention of entering into an agreement to defraud the IRS (*id.* at 32); and (7) Dr. Hough's purported statement to Thomas Murtha in 2001 or 2002 that she did not have a foreign bank account, the only evidence of which was Murtha's testimony that he "would have" asked Dr. Hough that one question in a brief interview 12 years ago and that he "believed" she answered no (while acknowledging that "I can't recall at this moment the exact conversation I had," speculating as to how he "probably would have asked the question," and conceding that it was not his practice to ask such a question of his firm's preexisting clients and that he definitely never asked whether Dr. Hough had *signature authority* over a foreign bank accounts) (*id.* at 25; 10/9/13 RT 239-40; 10/10/13 RT 44-50, 52).[13]   In addition, the government made a number of claims, wholly unsupported by any evidence introduced at trial, that "they" (*i.e.*, Dr. Fredrick *and* Dr. Hough) caused the opening of accounts for Top Fast, New Vanguard, Ample Dynamic, and MUA, as well as accounts at Fortis Banque, Liechtenstein Landesbank, and Bank Alpinum.  (10/23/13 RT 27-30, 40).    Put simply, none of the independent evidence, whether referenced in the government's closing argument or not, establishes or contributes to a finding by a preponderance of the evidence of Dr. Hough's knowing and willful involvement in any criminal conspiracy, let alone a specific conspiracy to defraud the IRS.[14]

---

[13] The government claimed in closing argument that Dr. Hough had denied to Murtha in 2009 having signature authority over a foreign bank account.  (10/23/13 RT 39).  This statement is demonstrably false, as the undisputed evidence was that Murtha never even asked Dr. Hough or Dr. Fredrick that question. (10/9/13 RT 240; 10/10/13 RT 50, 52).

[14] Dr. Hough contends that the government's evidence in its entirety, even including Dr. Fredrick's statements, was insufficient to permit any reasonable juror to find her guilty of the charged conspiracy beyond a reasonable doubt.  That argument is presented in Dr. Hough's separate motion for judgment of acquittal.

Bruce L. Udolf, PA
Broward Financial Centre, 500 East Broward Blvd., Suite 1400, Fort Lauderdale, Florida 33394
(866)951-9058/ budolf@udolflaw.com

The government's closing argument demonstrates its overwhelming reliance, in seeking to prove Dr. Hough's guilt of the conspiracy count, on out-of-court statements by Dr. Fredrick that were never joined in, adopted by, or often even known to Dr. Hough.  Disregarding those statements, however, the independent evidence of Dr. Hough's knowing and willful participation in a conspiracy to defraud the IRS was anything but "abundant."  *Byrom*, 910 F.2d at 736-37.  As such, the Court erred in allowing the government to bootstrap Dr. Fredrick's hearsay statements into the foundation for their admission.  Given the centrality of Dr. Fredrick's statements to the evidence in the case and to the government's argument for conviction, the error from improper admission of those hearsay statements cannot conceivably be held harmless.  A new trial is thus required.

## V.   A NEW TRIAL SHOULD BE GRANTED BASED ON THE CUMULATIVE EFFECT OF THE ERRORS DETAILED HEREIN

The cumulative effect of multiple errors can violate a defendant's constitutional right to a fair trial even where no single would independently warrant reversal.  *United States v. Baker*, 432 F.3d 1189, 1223 (11th Cir. 2005).  The harmlessness of cumulative error is determined by assessing whether the defendant's substantial rights were affected.  *Id.*   The undersigned respectfully submit that the cumulative effect of the errors detailed herein deprived Dr. Hough of the fair trial to which she was constitutionally entitled, and that a new trial should therefore be granted.

## VI.   A NEW TRIAL SHOULD BE GRANTED BECAUSE THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN THE VERDICT

In her contemporaneously filed Motion for Judgment of Acquittal, Dr. Hough argues that the evidence was insufficient to support a finding of guilt beyond a reasonable doubt on any of the charges.  Even should the Court deny that motion as to any count, however, it may still order a new trial if it finds that the verdicts were contrary to the weight of the evidence.  *United States*

Bruce L. Udolf, PA
Broward Financial Centre, 500 East Broward Blvd., Suite 1400, Fort Lauderdale, Florida 33394
(866)951-9058/ budolf@udolflaw.com

*v. Martinez*, 763 F.2d 1297, 1312-13 (11th Cir. 1985).  Unlike with a Rule 29 motion, "[o]n a motion for a new trial based on the weight of the evidence, the Court need not view the evidence in the light most favorable to the verdict.  It may weigh the evidence and consider the credibility of the witnesses." *Id.* at 1312.  "If the court concludes that, despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury." *Id.* (internal quotations and citation omitted); *accord*, *United States v. Cox*, 995 F.2d 1041, 1043 (11th Cir. 1993) (court may grant a new trial under Rule 33 if it finds that the evidence preponderates heavily against the verdict such that it would be a miscarriage of justice to let the verdict stand).

Although motions for new trials based on weight of the evidence are to be granted sparingly and in "exceptional cases," *Martinez*, 763 F.2d at 1313, the undersigned respectfully submit that this constitutes an exceptional case in which such relief is appropriate.  The government's case against Dr. Hough was "marked by uncertainties and discrepancies," *id.*, including the government's own expert witness radically changing her tax calculations and entire underlying theory six days into the trial.[15]  The jury's special verdict on Count Seven finding that Dr. Hough substantially understated her income for 2006, in direct contravention of the government expert's own testimony that Dr. Hough had in fact substantially **overstated** her income for that year, amply demonstrates that the jury either (1) did not understand the evidence or the Court's instructions or (2) was influenced by bias, prejudice, or some other improper source extraneous to the evidence.  In either event, the jury's verdict on Count Seven casts doubt on all of its findings and, in conjunction with the overall weakness of the government's case,

---

[15] As the Court itself noted to the government with respect to Revenue Agent Sheila Maurer's calculations, "she clearly got it wrong, it is just a matter of which wrong you want to pick."  (10/21/13 RT 19).

*Bruce L. Udolf, PA*
*Broward Financial Centre, 500 East Broward Blvd., Suite 1400, Fort Lauderdale, Florida 33394*
*(866)951-9058/ budolf@udolflaw.com*

supports the conclusion "that a serious miscarriage of justice may have occurred." *Id.* at 1312. Dr. Hough hereby incorporates by reference all of her arguments in her Rule 29 motion and asks that, should the Court determine that the evidence is sufficient in the abstract to satisfy the Rule 29 standard, it nevertheless find that the evidence preponderates heavily against the verdict such that the interest of justice warrants granting a new trial under Rule 33. *See Cox*, 995 F.2d at 1043; *Martinez*, 763 F.2d at 1312-13.

## VII.   CONCLUSION

Wherefore, for the reasons set forth herein, the undersigned respectfully request this Honorable Court grant the foregoing Motion for New Trial, and all such other and further relief deemed just and proper under the circumstances.

Dated: November 22, 2013

*Bruce L. Udolf, PA*
*Broward Financial Centre, 500 East Broward Blvd., Suite 1400, Fort Lauderdale, Florida 33394*
*(866)951-9058/ budolf@udolflaw.com*

Respectfully submitted,
*Counsel for Defendant Hough*

**BRUCE L. UDOLF, P.A**.
Broward Financial Centre
500 East Broward Blvd., Suite 1400
Fort Lauderdale, Florida 33394
Tel: (866) 951-9058/ Fax (954) 525-2134
budolf@udolflaw.com
Fla. Bar No. 0899933


By: /s/ Bruce L. Udolf

**BINGHAM MCCUTCHEN, LLP**
Suite 2050 North
1601 Cloverfield Blvd
Santa Monica, California 90404
Tel: (310) 907-1000/ Fax (310) 907-2000


By:  /s/ Nathan J. Hochman
     California Bar No. 139137
     nathan.hochman@bingham.com


By: /s/ Daniel A. Saunders
    California Bar No. 161051
    daniel.saunders@bingham.com

## CERTIFICATE OF COMPLIANCE

WE HEREBY CERTIFY that the undersigned has conferred with opposing counsel prior to the filing of this motion, that counsel has been unable to resolve the issues by agreement, and that the motion concerns matters which are not covered by the scheduling order, as directed in the Court's Criminal Scheduling Order [DE 22], at ¶ II (D).

By: /s/ Bruce L. Udolf

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing was filed electronically using the Court's CM/ECF system, on this 22nd day of November, 2013.

By: /s/ Bruce L. Udolf