# FAX

## *SABA UNIVERSITY SCHOOL OF MEDICINE*

DAVID FREDRICK, Ph.D.
President, SABA University (E-MAIL: drfredrick@saba.edu)
P.O. Box 386
Gardner, MA 01440

Telephone (978) 630-5122
Fax (978) 632-2168
E-Mail: saba@tiac.net
Web Site: www.saba.org

December 18, 2003

Jerry Schneider, CPA
Jericho, NY 11753
Fax: 516-932-6050

Dear Jerry:

Attached is a "very confidential" legal review of a recommended legal/tax structure for our medical schools, by a potential buyer. I assume this information might help us somewhere down the road, should we need to consider a new operating structure.

I will call you later today to discuss how to proceed with regard to your proposal.

Regards,

Government
Exhibit
8B

MP&S3180

8B



DEC.18.2003 2:53PM FROM : FAX NO. : Dec. 01 2003 09:37PM P5

**Attorney - Client Work Product**
**Preliminary Assessment & Draft for Discussion Purposes Only**
**MEMORANDUM**

To: [redacted]

From: Alex P. Trostorff, New Orleans
Mario A. de Castro, Miami

Date: June 20, 2003

Client/
Matter: Number is Pending

Re: Revised Overview of Acquisition of Medical Universities in Nevis, Netherlands Antilles, and Belize and U.S. Management Company

## I. Introductory Caveats and Scope

This memorandum is a revision of our June 14, 2003 memorandum. **The comments contained herein are provided with the understanding that they are subject to further thought, consideration, research, and due diligence.** Below we set forth the facts, as we now understand them after our June 16, 2003 conference call. Should our understanding of the facts not be precise, please notify us as soon as possible, as modifications to our understanding could necessarily mean that our analysis must also suffer modification.

The scope of this memorandum is limited to the facts presented concerning your contemplated asset acquisition as applied to our suggested acquisition structure for purposes of executing this transaction. The scope of this memorandum is further limited to providing you with a preliminary overview analysis of the possible United States federal income tax consequences of this transaction. While mention may be made to the laws of foreign jurisdictions in this memorandum, this is done only for informational purposes and concurrence with these comments should be sought from local counsel in these jurisdictions.

{M0005022.1} JONES, WALKER, WAECHTER, POITEVENT, CARRÈRE & DENÈGRE L.L.P.

BATON ROUGE HOUSTON LAFAYETTE MIAMI NEW ORLEANS WASHINGTON, D.C.

MP&S3181

8B.0002

Attorney - Client Work Product
Preliminary Assessment & Draft for Discussion Purposes Only

## II. Discussion

### A. Facts

1. The primary investors (the "Investors") are all U.S. individual persons for federal income tax purposes and are as follows:

- [redacted];
- [redacted]
- [redacted].

2. The Investors are planning to acquire a 75 percent equity interest in a venture consisting of four companies. This venture is currently owned by Dr. David Fredrick, MD, and his wife Dr. Pat Hough, MD.

3. One company is a Massachusetts corporation that is a subchapter S corporation for federal income tax purposes. This company is called, "EIC Inc". This company ("EIC") has approximately U.S. $1 million in assets (two buildings and some equipment). This company has a management agreement in place with the other three companies described below. The management agreement is for management and procurement services provided to the other three companies. This entity has approximately 32 employees.

4. The second company is a Foundation in the Netherlands Antilles, in Saba. It is called, "Saba University Netherlands Antilles." This entity operates as a medical school, with about 48,000 square feet of land and some 10 new buildings. The estimated valued of these assets is U.S. $ 8 million. Foundations are utilized in this jurisdiction for educational (scientific or charitable) purposes and may be subject to a special tax exemption-like treatment, provided such treatment is granted to the entity by means of a special ruling from the local finance and tax authorities. No withholding tax is applied on outbound payments from the country.

5. The third company is a for profit corporation in the West Indies (specifically on Nevis). This company is called, "The Medical University of Americas - Nevis, West Indies". This entity operates as a medical school and it is believed operates under a tax holiday. The assets in this entity are also mainly real estate valued at approximately U.S. $ 3 million. Ordinarily, entities operating a trade or business in Nevis are subject to a 37 percent income tax on Nevis source income and outbound payments from the country may be subject to a 10 percent withholding tax.

6. The fourth company is a Belize entity that operates another medical university in that country, it is called, "The Medical University of the Americas - Belize Campus". It is believed that this company operates under a tax holiday.

{M0005022.1}

Attorney - Client Work Product
Preliminary Assessment & Draft for Discussion Purposes Only

7. There may be a fifth entity that operates like a management or consulting entity in another offshore jurisdiction, which is still unknown to us. This entity holds a Swiss bank account for purposes of holding a provision to be utilized for reinvesting in this and other ventures.

8. The companies are substantially managed by their local administrators in each country.

9. The Investors plan to acquire the 75 percent interest in the business venture discussed for purchase price of U.S. $28 million.

10. The Investors have created an IBC in Nevis, called [redacted]e IBC Nevis" ("IBC").

11. The Investors are currently in search of funding for the acquisition and are in discussions with a VC firm in Texas and with another possible investor from Germany. Initially, the thought is for the funding for the acquisition to be injected in as equity.

B. Issues

1. What are our preliminary thoughts on how to best structure this acquisition?

2. What are the potential U.S. federal income tax consequences arising out of the proposed structure?

**C. Structural Step Analysis**

Under the new facts discussed in our June 16, 2003 conference call, our understanding is that the Investors will be indirectly purchasing a 75 percent equity interest in Dr. Fredrick's domestic and foreign business entities. For purposes of executing this acquisition we now recommend the following structure, two diagrams are attached for your review and consideration that following the discussion and analysis set forth in this section and in section "D".

**Step 1 -** Dr. Fredrick creates a New Holdco in the U.S. or abroad and contributes his equity interest in the three medical universities to it in return for control of New Holdco. The entity will be treated as a partnership entity for U.S. federal income tax purposes. *Creating New Holdco in the United States in the form of a limited liability company from a U.S. federal income tax reporting requirement perspective may be recommended over creating New Holdco in a foreign jurisdiction. Utilizing a U.S. entity will simplify reporting because only the entity would have to comply with the Form 5471 filing requirement. Conversely, if you utilize a foreign entity and treat it as a foreign partnership, then each U.S. partner in this case would have to comply with the filing of Form 8865 for purposes of complying with the U.S. foreign partnership compliance rules.* Attached for illustration purposes are copies of these respective U.S. tax compliance forms.

{M0005623.1}

Attorney - Client Work Product
Preliminary Assessment & Draft for Discussion Purposes Only

**Step 2** - The Investors obtain recourse financing in the amount of U.S.$ 28 million from a venture capital entity and the Investors purchase 75 percent of Dr. Fredrick's interest in New Holdco Dr. Fredrick's sale of his interest in New Holdco will trigger taxation to him in the form of capital gains tax at the reduced rate of 15 percent.

If the Investors merely contribute the funds from the recourse financing to New Holdco in return for their 75 percent equity interest the exchange would not trigger any income tax consequences and would therefore benefit from non-recognition of gain or tax-free treatment, under section 721 of the Internal Revenue Code of 1986, as amended (the "Code"). However, you have represented to us that this is not an option.

Structuring the purchase of the interest through a capital contribution followed by a dilution in Dr. Fredrick's 100 percent ownership interest, with subsequent payments made to him by means of a management or service agreement with a third offshore entity, that would be owned and controlled solely by him over a period of time, may trigger IRS scrutiny to the extent that the transaction would be characterized as a disguised sale of 75 percent of the ownership interest in New Holdco. In such an event, taxable gain would be triggered.

Finally, structuring the purchase of the interest, again, through a capital contribution followed by a dilution of Dr. Fredrick's 100 percent ownership interest and a crafting out of special allocations and distributions under the partnership's operating agreement as a means to pay him for his disposition through dilution creates complications with respect to the entity's tax accounting that may result in an economic distortion.

Therefore, upon reviewing the above alternatives, from the seller's perspective the only real option is to structure the disposition of Dr. Fredrick's ownership interest in New Holdco as ordinary sale upon which he would be taxable on any resulting gain at the rate of 15 percent.

**Step 3** - The Investors purchase 75 percent of the shares of stock in EIC, in a taxable transaction to Dr. Fredrick.

**Step 4 (Pending)** - Three new companies ("Newco 2, 3, 4") are created in foreign jurisdictions, still to be determined. These new companies would be wholly owned by each of the three university Opcos. For U.S. federal income tax purposes each of these companies would be a branch of its owner and, therefore, disregarded for federal income tax purposes. These entities would provide a treasury function to their owners.

D. Tax Analysis of Structure

1. The creation of the new entities under the new acquisition structure will occur free from any U.S. tax consequences to the Investors. In this initial phase, only the disposition of shares or

Attorney - Client Work Product
Preliminary Assessment & Draft for Discussion Purposes Only

equity interest by Dr. Fredrick to the Investors if done as a direct sale or disposition to them by him will be a taxable transaction to him. Gain on such dispositions to Dr. Fredrick should be subject to 15 percent capital gains tax.

2. New Holdco (LLC or in a foreign jurisdiction) will be benefited from partnership treatment which will mean that its owners will be enjoy one level of taxation. *Additionally, as discussed above, creating New Holdco in the United States in the form of a limited liability company from a U.S. federal income tax reporting requirement perspective may be recommended over creating New Holdco in a foreign jurisdiction.*

3. Deferral opportunities under this structure as it relates to the foreign university Opcos, which are controlled foreign corporations ("CFC"), will depend on the U.S. subpart F tax regime. For the most part, deferral on earnings and profits in the university opcos should be obtained because most of the income earned will be active trade or business income, as opposed to passive income or intercompany services income.

Subpart F income may be includible in a U.S. shareholder's income without the CFC actually making a payment or distribution to the shareholder. This inclusion of income at the U.S. shareholder level depends on the character of the income earned at the CFC level and the inclusion is limited to the U.S. shareholders pro rata share of such income and is limited the CFC's current earnings and profits. Examples of income that may be includible at the shareholder level are dividend, interest, or royalty income, as well as intercompany service income. Under this regime such income, known as subpart F income, would be includable as income to the U.S. shareholders, whether or not actually paid, as a deemed paid dividend. With cautious planning subpart F income inclusions at the Investor level should be avoided or minimized. Additionally, there are other exceptions under this regime that may be applicable to the present facts and circumstances.

The type of possible subpart F income that we would be concerned with is foreign base company income, more specifically our concern is with two types of this income: foreign personal holding company income (FPHCI) and foreign base company services income (FBCSI). Basically, FPHI consists of dividend, interest, royalties, rents, and annuities income and certain income from property transactions (the excess of gains over losses from the sale or exchange of property). A few exceptions apply here: 1) rents and royalties derived from the active conduct of a trade or business and which are derived from a person other then a related person do not fall within the parameter of FPHCI; 2) dividends and interest received from a related person which is a corporation created or organized under the laws of the same country in which the CFC is created or organized and has substantial part of is assets used in its trade or business located in this same foreign country are not included in FPHCI; and 3) rents and royalties received from a corporation that is a related person for the use of or the privilege of using property within the country under the laws of which the CFC is created or organized are not included in FPHCI.

Attorney - Client Work Product

Preliminary Assessment & Draft for Discussion Purposes Only

FBCSI consists of compensation, commissions, fees, or otherwise derived in connection with the performance of technical, managerial, engineering, architectural, scientific, skilled, industrial, commercial or other like services performed for or on behalf of any related party and performed outside of the country of the CFC's incorporation. We need to discern from the services rendered to the Opcos by EIC and Newco 2, 3, and 4 whether there is exposure to subpart F income taint.

The subpart F income rules do provide for an exception or de minimis rule which is that if foreign base company income (which includes FPHCI and FBCSI) is lesser of 5 percent of gross income or U.S. $ 1,000,000, then no part of the gross income for the taxable year shall be included as foreign base company income for purposes of calculating subpart F income, By the same token, however, if foreign base company income for the taxable year exceeds 70 percent of the taxpayer's gross income, then the entire gross income for the taxable year shall be treated as foreign base company income and a subpart F income inclusion will be triggered.

4. Another anti deferral regime that we need to consider is the passive foreign investment income (or "PFIC") regime. A PFIC does not have minimum ownership rules and is a foreign corporation that either has 75 percent or more of its gross income for the taxable year being passive income or 50 percent of more of its assets held during the taxable year or are held for the purposes of producing passive income. Passive income for purposes of the PFIC rules is foreign personal holding company income under the meaning discussed above for subpart F purposes, such as dividends, interest, rent, royalties, and certain property gains.

**D. Additional Considerations and Caveats**

1. Once the structure is in place, for purposes of administrative services, a services contractual arrangement should put in place between the EIC and the university operating companies that is priced at arm's length. Note, the Netherlands Antilles, Nevis, and Belize do not have transfer pricing or intercompany transaction legislation; nonetheless, the pricing should be set within comparable cost plus margins.

2. Lastly, while not discussed in this memorandum, if a joint venture capital partner, whether from the U.S. or abroad comes into the transaction as an equity stakeholder, it may be desirable for this partner (entity) to enter the joint venture as a partner at the New Holdco level.

3. *With respect to the names that you would utilize for the New Holdco, if in a foreign jurisdiction, and the names for the Opcos, the terms "Institute" or "Foundation" are acceptable, but you (or we) should consult with foreign counsel in the respective foreign jurisdictions to discern whether the use of such terminology is acceptable.*

4. With respect to the Nevis Opco, it is currently organized as a limited company under that country's laws. This entity appears to be an eligible entity for purposes of entity classification.

{M0005022.1}

DEC. 18. 2003 2:54PM SABA UNIVERSITY NO. 347 P. 9/9
FROM : FAX NO. : Dec. 01 2003 09:41PM P12

D. Bradford Anderson
Initial Structure Memorandum
Page: 7 of 7

Attorney - Client Work Product

Preliminary Assessment & Draft for Discussion Purposes Only

Under the current proposed structure, a "check'-the-box" election should be made on this entity and the others, if needed, to treat them as corporate entities.

5. The aforementioned analysis is ***a preliminary assessment that is in draft for form and for discussion purposes only given time constraints beyond our control and are provided with the understanding that they are subject to further thought, consideration, research, and due diligence.***

{M0005022.1}

MP&S3187

8B.0008

Step 1:
D&P create New Holdco and contribute shares in foreign Opcos. For U.S. tax purposes an election is made to treat New Holdco as a partnership entity. Negative point or complication is that structure would require each U.S. partner to file foreign partnership returns.
D&P
MVC
RD
BA
25%
25%
25%
25%
U.S. Investors (individuals)
VC FIRM
Step 2:
VC provides approximately U.S.$ 18M to MVC, RD, BA. Funds are disbursed to D&P in consideration for 75% interest in New Holdco and EIC. VC financing secured by 75% of New Holdco and EIC interests.
New Holdco
EIC S-Corp U.S.
100%
Service income for administrative services.
Nevis Opco
NetherlandsAntilles Opco
Belize Opco

1. The jurisdiction for New Holdco is not known, although likely to be U.S. limited liability company. Partners would file Form 8832 on entity to "check-the-box" and treat as partnership.
2. Opcos would be CFC's for U.S. purposes, may trigger Sub F income and deemed dividend inclusion in U.S. (i.e., to extent of current E&P) and deferral of earnings may be achieved to some degree and may get deferral on active trade or business income retained at Opcos. The U.S. shareholders or the New Holdco, should a U.S. limited liability company be used, will have reporting requirement on ownership in CFC's and inter-group transactions. If a U.S. limited liability company is utilized then reporting is done by it directly on Form 5471. If a foreign holding company is utilized and it is treated as a partnership, then each U.S. partner will be required to file foreign partnership returns.
3. Actual repatriations from Opcos may be subject to withholding income taxes for which there should be foreign tax credit relief at the U.S. level.
4. Service agreements in group, if involving U.S. should be priced at arm's-length. Local country rules in this regard for purposes of creating deductions and reducing any local tax liability, if any, should be researched (our understanding is that all 3 Opcos have benefit of tax holidays).

6/26/2003

Attorney - Client Work Product -
Draft for Discussion Purposes Only

MP&S3189

Step 1:

D&P creates New Holdco and contributes shares in foreign Opcos. For U.S. tax purposes an election is made to treat New Holdco as a partnership entity. Negative point or complication is that structure would require each U.S. partner to file foreign partnership returns.

U.S. Investors (individuals)
D&P
MVC
RD
BA
VC FIRM
25%
25%
25%
25%
New Holdco 1
EIC S-Corp U.S.
100%
Service income for administrative services.
Nevis Opco
NetherlandsAntilles Opco
Belize Opco
Newco 2

Step 2:

VC provides approximately U.S.$ 28M to MVC, RD, BA. Funds are disbursed to D&P in consideration for 75% interest in New Holdco and EIC and exchange is taxable to D&P. VC financing secured by 75% of New Holdco and EIC interests.

Resulting Structure under new facts that deal pertaining to acquisition of shares, with recap of steps

Step 3:

New Co 2 created and wholly held by Opcos for purposes of downstream payments characterized as treasury-like services to be deposited in a foreign account. Entity is treated as partnership for U.S. purposes. Alternatively, three new companies could be inserted beneath each Opco, with each being treated as a disregarded entity. This alternative would appear, as follows:

One Newco (Newco 2, 3, and 4) is dropped under each Opco

Finco/ Servco
Finco/ Servco
Finco/ Servco

6/26/2003

Attorney - Client Work Product -
Draft for Discussion Purposes Only



MP&S3190

FROM : FAX NO. : Dec. 01 2003 09:37PM P4

Step 1:

D&P create New Holdco, a U.S. LLC, and contribute shares in foreign Opcos. For U.S. tax purposes an election is made to treat New Holdco as a partnership entity. U.S. LLC files Form 5471's for CFC's.

U.S. Investors (individuals)

D&P 25%

MVC 25%

RD 25%

BA 25%

VC FIRM

Step 2:

VC provides approximately U.S.$ 28M to MVC, RD, BA. Funds are disbursed to D&P in consideration for 75% interest in New Holdco and EIC and exchange is taxable to D&P. VC financing secured by 75% of New Holdco and EIC interests.

Partners file Form 1065

Continues to file Form 1120 S

New Holdco I U.S. LLC

EIC S-Corp U.S.

Texas Delaware

Service income for administrative services.

100%

Nevis Opco

Netherlands Antilles Opco

Belize Opco

100% Finco/ Servco Newco 2

100% Finco/ Servco Newco 3

100% Finco/ Servco Newco 4

CFC's – Require Form 5471 Filing / Locally each CFC is operating active trade or business. Each foreign jurisdiction, appears, to have granted each university with a tax holiday.

Step 3:

Each Opco creates a branch or disregarded entity that is wholly owned by it. The branches are disregarded and are therefore considered to be divisions or branches of their respective Opcos. In this manner intercompany transactions between each Opco and its respective branch are generally not subject to subpart F income regime. The objective of these entities is for Opcos to utilize them for purposes of downstream payments characterized as treasury function services to be deposited in a foreign account.

6/26/2003

Attorney - Client Work Product -
Draft for Discussion Purposes Only

DEC. 18. 2003 2:55PM SABA UNIVERSITY NO. 348 P. 3/3