IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Case No. 2:13-cr-00072-FtM-JES-UAM |
| | ) |
| PATRICIA LYNN HOUGH, | ) |
| | ) |
| Defendant. | ) |

**GOVERNMENT'S RESPONSE TO DEFENDANT PATRICIA LYNN HOUGH'S MOTION FOR NEW TRIAL PURSUANT TO FED. R. CRIM. P. 33(a)**

COMES NOW the United States, by and through counsel, and responds to Defendant Patricia Lynn Hough's Motion for New Trial Pursuant to Fed. R. Crim. P. 33(a). ("Defendant's Motion"). Specifically, Defendant Hough argues that her right to a fair trial was violated by 1) "the Court's allowance of improper cross-examination of two defense character witnesses that unconstitutionally reversed the presumption of innocence and as to which Dr. Hough's request for a curative instruction to the jury was wrongly denied"; and (2) "the improper admission of hearsay statements of Dr. Hough's alleged co-conspirator, David Fredrick, in the absence of substantial and independent evidence of Dr. Hough's participation in the charged conspiracy." Defendant's Motion at p. 1. Defendant Hough also argues that her motion should be granted because "the evidence preponderated heavily against the jury's verdicts." *Id*. This motion should be denied without an evidentiary hearing on several grounds apparent from the record.

**A. STANDARD OF REVIEW FOR RULE 33(a) MOTION FOR NEW TRIAL**

A motion for a new trial made on the ground that the verdict is contrary to the weight of the evidence or contrary to the interests of justice under Federal Rule of Criminal Procedure 33 is governed by a standard "very different from a motion for judgment of acquittal notwithstanding the verdict." *United States v. Martinez*, 763 F.2d 1297, 1312 (11th Cir. 1985); *United States v.*

1

*Ramos*, 179 F.3d 1333, 1336 n.1 (11th Cir. 1999).  In ruling on a motion for new trial based on the weight of the evidence, the Court need not view the evidence in the light most favorable to the verdict.  *Martinez* at 1312  (citing *United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980)).  Rather, if the Court concludes that, "despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury." *Id*.  (quoting *Lincoln*, 630 F.2d at 1319).  However, the Court must give proper deference to the jury's factual findings.  *See United States v. Pedrick*, 181 F.3d 1264, 1267 (11th Cir. 1999).

Although "[t]he decision to grant or deny a new trial motion based on the weight of the evidence is within the sound discretion of the trial court[,] . . . [t]he court may not reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable. . . .  The evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand. . . . Motions for new trials based on weight of the evidence are not favored.  Courts are to grant them sparingly and with caution, doing so only in those really 'exceptional cases' . . . ." *Martinez* at 1312-13  (quotations and citations omitted).

B.  **FACTUAL BACKGROUND**

The government hereby incorporates by reference the factual background set forth in the Government's Response to Defendant Patricia Lynn Hough's Motion for Judgment of Acquittal Pursuant to Fed. R. Crim. P. 29(c), filed contemporaneously herewith.

10872183.1

C. **ARGUMENT**

    1. Allegedly Improper Cross-Examination

In Defendant's Motion, it is alleged that two questions asked by the government of two character witnesses called by the defense constituted impermissible guilt-assuming hypotheticals which should result in a reversal of Defendant Hough's convictions. The government disagrees.

Dr. Alan Gruber ("Dr. Gruber") was called by the defense as a character witness and testified on direct examination to the high opinion he had of Defendant Hough's honesty. 7Tr. 181-83; 186-87.[1] As part of direct examination, counsel for the defendant asked Dr. Gruber whether his opinion of Defendant Hough would "change if you were told that the government in this case was claiming that [she] took millions of dollars from the Saba Foundation, hid the money for her own use in secret Swiss bank accounts, failed to declare income from those accounts on her tax returns, and conspired with her husband and others to defraud the United States." 7Tr. 182-83. In response, Dr. Gruber testified that he would be "flabbergasted" and that is not "who she is." 7Tr. 183. Defense counsel again during direct examination asked Dr. Gruber a similar question as follows: "Again, if you were to be told the things that I told you the government is alleging in this case, specifically that she took millions of dollars from Saba Foundation accounts, put them in her own accounts, hid them in Swiss bank accounts for her own use, for her own benefit, lied about it on her tax returns, conspired with Dr. Fredrick and others to defraud the United States, if you were told that those were the allegations that the government has made in this case, would that change your opinion of Dr. Hough's character for truthfulness and honesty, yes or no?" 7Tr. 186. Again, Dr. Gruber testified that his opinion would not change because he would not believe it. 7Tr. 186-87.

---

[1] Transcripts of the trial of Defendant Hough are cited herein as "Tr." with the transcript volume preceding and the relevant page number(s) following.

In response, during cross-examination of Dr. Gruber, the government asked whether his opinion would change if it were *proven* "that Dr. Fredrick and Dr. Hough did conspire to defraud the Internal Revenue Service by not reporting the sale of the medical schools on their tax returns, because they would – would be required to do so, if that was proven, would that change your opinion?" 7Tr. 196. Defense counsel objected, stating that "'if that were proven' is an improper question at this point," although counsel did not explain what made the question improper. This Court overruled this objection; Dr. Gruber stated that he "would be very surprised" if that happened, and then stated that it would change his opinion. 7Tr. 196-97.

The following day, defense counsel raised the issue again, directing the Court's attention to *United States v. Candelaria-Gonzalez*, 547 F.2d 291 (5th Cir. 1977), which held that guilt-assuming hypothetical questions are improper in the context of a witness who testified about a defendant's reputation in the community. 8Tr. 182-83. The Court noted that Dr. Gruber testified about his personal opinion, not defendant's reputation, and overruled the objection. Nonetheless, the government did not ask that question of any other witnesses.

Defense counsel, on direct examination of its next character witness, asked retired state judge Thomas Walker whether he had an opportunity, in the forty-nine years he has known Defendant Hough, "to form an opinion as to her character for truthfulness and honesty?" 8Tr. 205. Judge Walker stated his opinion was "[t]op drawer. No hesitation. No reservation. Absolute top drawer." 8Tr. 205. Judge Walker also testified that it had been part of his job for more than three decades to "judge people's character and truthfulness." 8Tr. 205. Defense counsel then inquired whether Judge Walker had reviewed the indictment and he responded that he had not other than "a seven-word synopsis" the defense counsel gave him. 8Tr. 206. Defense counsel then asked whether his opinion of Defendant Hough's character "would change if I were

4

to tell you that the government is alleging, in this case, that Dr. Hough took millions of dollars from the foundation that ran the medical schools that she was involved with in the Caribbean; converted those monies to her own use; hid them in secret Swiss bank accounts under her name, for her own use and benefit; failed to declare that money on her tax returns; and conspired with her husband and others to defraud the United States and the Internal Revenue Service." 8Tr. 206. Judge Walker testified that the allegations did not and that he "wouldn't be here if it changed my opinion." *Id*. 206-07. Defense counsel then explored Judge Walker's opinion further, asking "[w]ell, what about the allegations that I've told you of these serious breaches and violations, and taking money, and concealing money, and failing to declare it, and conspiring to defraud the IRS, does knowing that those are the nature of the allegations, in more detail than you've known it before, change your opinion about whether she's an honest and truthful person?" 8Tr. 207. Judge Walker responded, "[n]ot in the least. It's just not the Pat Hough that I've known for all these years…" *Id*.

       In response, on cross-examination of Judge Walker, the government first asked Judge Walker about his familiarity with the charges against Defendant Hough. He admitted that he did not know much about the allegations. 8Tr. 214-15. The government then asked the following specific questions of Judge Walker.

Q     And, as a judge, you would want to consider all of the evidence before forming an opinion, would you not?

A     Well, of course.

Q     And so you would want to keep an open mind.

A     Sure.

10872183.1

Q      And so it's possible, if you heard all of the evidence, that you might change your opinion about whether Dr. Hough is honest or not." 8Tr. 215.

Defense counsel objected, offering as grounds for the objection only "speculation . . . and foundation"; defense counsel did not object on the ground that the question required the witness to assume Defendant Hough's guilt. This Court overruled the objection, and Judge Walker testified that it was possible. 8Tr. 215.

### a. There was no prejudice even if the questions were guilt-assuming

Assuming first for the sake of argument that it was error to allow one or both of the questions posed to Dr. Gruber and Judge Walker, any error was harmless.[2] A review of the trial record in this case demonstrates that defendant suffered no prejudice from the questions. First, the independent evidence of defendant's guilt was overwhelming. "Overwhelming evidence of guilt is one factor that may be considered in finding harmless error." *Guzman*, 167 F.3d at 1353. The government incorporates herein the lengthy and detailed discussion of the evidence against Defendant Hough as set forth in the Government's Response to Defendant Patricia Lynn Hough's Motion for Judgment of Acquittal Pursuant to Fed. R. Crim. P. 29(c), filed contemporaneously herewith.

---

[2] In *United States v. Chesser*, 663 F.2d 1381, 1391 (11th Cir. 1981), the Eleventh Circuit applied ordinary harmless-error analysis pursuant to Federal Rule of Criminal Procedure 52(a) to the issue of guilt-assuming hypotheticals. However, the appellate court later stated that it had not decided whether ordinary harmless-error analysis or a more stringent standard should be used to determine whether an error involving a guilt-assuming hypothetical was harmless. *United States v. Guzman*, 167 F.3d 1350, 1353 (11th Cir. 1999). Nonconstitutional errors that do not affect substantial rights must be disregarded. Fed. R. Crim. P. 52(a); *Guzman*, 167 F.3d at 1353 ("[N]onconstitutional error requires reversal only if it resulted in actual prejudice because it had substantial and injurious effect or influence in determining the jury's verdict.") (internal quotations omitted). Constitutional error must be found harmless beyond a reasonable doubt. *Id.* (citing *Chapman v. California*, 386 U.S. 18, 24 (1967)). In both cases, however, the Court should consider the entire trial record in determining whether an error was harmless. *Id.* (quoting *United States v. Hasting*, 461 U.S. 499, 509 (1983)).

10872183.1

Second, in determining whether the defendant was harmed by any alleged error, this Court can consider the length of the trial.  *United States v. Kellogg*, 510 F.3d 188, 196 (3d Cir. 2007) ("Further, because it was but one question posed to one witness during the course of a three-week trial, this is not a situation where [defendant] was unfairly prejudiced . . . ."); *United States v. Paccione*, 949 F.2d 1183, 1202 (2d Cir. 1991) ("We agree that the question was improper, but we regard this single improper question in the course of the 12–week trial as harmless error.")  Defendant here objects to only two questions posed during the course of a two-and-a-half-week trial involving more than twenty witnesses; there was no prejudice.

Third, the absence of harm is also illustrated by the fact that the jury heard other witnesses opine as to Defendant Hough's character for truthfulness and honesty.  Defendant Hough called a third character witness, Antoine Solagnier, who testified regarding his opinion of Defendant Hough's character for truthfulness and honesty and whose testimony on this point was unchallenged.  8Tr. 244-45.  Dr. Paul Dalbec, who was called by the government, testified that he knew Defendant Hough dating back to before the establishment of the medical schools and that he believed that "everything she's done was, in my opinion, honest.  I don't believe she's…up to anything illegal.  I've never witnessed it either in her personal behavior or in her professional behavior."  5Tr. 199-200.

Other positive character testimony was elicited from five additional witnesses called by the government. Charlene Varga, Defendant Hough's sister, testified she trusts her sister and did not think that her sister would ask her to do anything wrong.  4Tr 263-65.  Laura Whitley, Defendant Hough's step-daughter, testified that Defendant Hough is "[i]ncredibly intelligent. Probably one of the smartest women I've ever known, and … very professional, loving, funny…very smart, and very capable, and just, you know, an all-around very successful, driven

person." 6Tr. 161-62. Mr. Minchenberg, testified that Defendant Hough wanted to be in compliance with her taxes and she would make sure she got the information for her taxes to the right person. 4Tr. 119-120; 194. Steven Rodger, the purchaser of the schools, testified that Defendant Hough was very charitable. 6Tr. 77. Thomas Murtha, her return preparer, testified that she was conservative and conscientious about her taxes. 3Tr. 55. This substantial amount of unchallenged positive character testimony, including testimony from several of the government's own witnesses, removed any possible prejudice from the cross-examination of Dr. Gruber and Judge Walker.

Finally, this case presents none of the particular dangers that appellate courts have associated with guilt-assuming hypotheticals. For example, the courts have suggested that such questions might allow the prosecutor to "foist its theory of the case repeatedly on the jury." *United States v. Williams*, 738 F.2d 172, 177 (7th Cir. 1984). However, although defense counsel repeatedly detailed what he described as the charges against defendant during the direct examinations of Dr. Gruber and Judge Walker, the government referred to the allegations in a rather perfunctory way when cross-examining Dr. Gruber and did not refer to them at all when cross-examining Judge Walker. Some courts have expressed concern that hearing a prosecutor "repeatedly . . . assure a trial judge that he has a good faith basis for asking permitted hypothetical questions" might cause the jury to infer that "the prosecutor has evidence of guilt beyond the evidence in the record." *United States v. Oshatz*, 912 F.2d 534, 539 (2d Cir. 1990). No such assurances were made in this case; there accordingly was no danger that the jury would form the impression that the prosecutor had additional evidence of defendant's guilt.

8

Nor is this a case involving a "swearing contest" between defendant and a single key government witness. *See United States v. Page*, 808 F.2d 723, 732 (10th Cir. 1987); *Williams*, 738 F.2d at 177 (distinguishing *United States v. Polsinelli*, 649 F.2d 793, 798 (10th Cir. 1981)). Much of the evidence against Defendant Hough was in the form of documents she signed. Defendant Hough had a full opportunity to explain those documents when she testified. The jury, having had the opportunity to evaluate Defendant Hough's credibility and honesty first-hand, apparently disbelieved her explanation and convicted her. Indeed, the jury's impression of Defendant Hough based on her own testimony would carry more weight than any witness's testimony about her general character or her character for truthfulness and honesty.

### b. Even if the questions were guilt-assuming, defense counsel opened the door

The Court did not err in overruling the objection to the single question posed by the government to Dr. Gruber at issue here, nor did the alleged error prejudice defendant, because counsel for Defendant Hough opened the door to the question by asking Dr. Gruber at length, in great detail, and on two separate occasions about the effect of the allegations against Defendant Hough on his opinion of the defendant. *See United States v. Russo*, 110 F.3d 948, 953 (2d Cir. 1997) (finding that government's cross-examination of character witness was permissible because defense counsel opened the door to the issue of whether that witness knew about the charges against the defendant, and that by "departing from traditional direct examination of a character witness," defense counsel opened the door by asking the character witness "whether, in his opinion, [the defendant's] character is consistent with the charges against [the defendant] .") Here, counsel for Defendant Hough specifically asked Dr. Gruber whether the allegations against Defendant Hough changed his opinion of her character—a question that would be improper if asked by the government. Further, counsel for Defendant Hough walked through those

9

allegations in great detail on two separate occasions during the direct examination of Dr. Gruber. This opened the door to the question posed by the government in cross-examination of Dr. Gruber. *See United States v. Gopie*, 347 Fed.Appx. 495 (11th Cir. 2009) ("During cross examination, the defense opened the door to the disputed line of questioning"); *United States v. Scheigert*, 809 F.2d 1532 (11th Cir. 1987) ("Similarly, the introduction of testimony regarding defendant's use of cocaine was not error. Defendant opened the door to this testimony").

In addition, even though Dr. Gruber did eventually answer the question posed by the government, he first stated he would be very surprised, before stating that it would change his opinion. 7 Tr. 196-97. This was consistent with his testimony on direct examination, when he expressed disbelief that Hough would ever do the things posited in detail by the defense as allegations against her, stating he would be "flabbergasted" and it was "not who she is." 7Tr. 183. When counsel for the defense again detailed allegations against Defendant Hough later during direct examination, Dr. Gruber stated that knowing such allegations would not change his opinion. 7Tr 186-87. These answers resulted in a bolstering of his positive opinion as to Defendant Hough's character for honesty and truthfulness. *United States v. Shwayder*, 312 F.3d 1109, 1121 (9th Cr. 2002) (holding that guilt-assuming hypotheticals posed by the government were error, applying a plain error standard, and determining reversal was not appropriate because witnesses expressed disbelief as to the allegations posed by the government as part of the guilt-assuming hypotheticals).

### c. The question posed to Judge Walker clearly was not guilt-assuming

Furthermore, this Court did not err in overruling the objection of counsel for Defendant Hough to the question posed by the government to Judge Walker, because counsel for Defendant Hough again opened the door to the question posed by the government and because, contrary to

10

defendant's assertion (Defendant's Motion at 7), the question did not require Judge Walker to assume the guilt of Defendant Hough. "Concerns about guilt-assuming hypotheticals arise only if the questions do indeed assume the defendant's guilt." *United States v. Wilson*, 983 F.2d 221, 224 (11th Cir. 1993). The question asked by the government of Judge Walker which Defendant Hough alleges to be error, in fact, did not ask the witness to assume that the charged offenses or any specific criminal act had been proven. A guilt-assuming hypothetical is one that requires the witness to assume or accept the defendant's guilt in order to answer it. The government asked of Judge Walker "[a]nd so it's possible, if you heard all of the evidence, that you might change your opinion about whether Dr. Hough is honest or not." 8Tr. 215. Here, Judge Walker could have heard some evidence that did not persuade him of the defendant's guilt, but nonetheless changed his opinion of her character. For example, Judge Walker testified on direct that he did not think Defendant Hough spent extravagantly, that she was fiscally conservative and that he did not know her to take shortcuts or bend the rules. 8Tr. 205. However, on cross-examination, it was elicited that Judge Walker was actually unfamiliar with Defendant Hough's spending habits or personal financial situation. 8Tr. 210-211. He could therefore answer the question without assuming her guilt.

      2. <u>David Fredrick's Statements Were Properly Admitted as Co-Conspirator Statements, and the Government Presented Independent Evidence of Defendant Hough's Participation in the Conspiracy</u>

Defendant Hough claims that the Court erred in admitting statements of co-defendant David Fredrick as co-conspirator statements pursuant to Fed. R. Evid. 801(d)(2)(E). This claim is without merit. In order to establish the proper foundation for admission of a co-conspirator statement, the evidence must establish that there was a conspiracy involving the declarant and the non-offering party, and that the statement was made during the course of and in furtherance of the conspiracy. Fed. R. Evid. 801(d)(2)(E); *Bourjaily v. United States*, 483 U.S. 171, 175

11

(1987). Courts in the Eleventh Circuit apply a "liberal standard" in determining whether a statement is made in furtherance of a conspiracy. *United States v. Siegelman*, 640 F.3d 1159, 1181 (11th Cir. 2011); *United States v. Miles*, 290 F.3d 1341, 1351 (11th Cir. 2002). The statement need only be intended to further the conspiracy, it need not actually do so. *United States v. Roberts*, 14 F.3d 502, 515 (10th Cir.1993); *United States v. Maliszewski*, 161 F.3d 992, 1008 (6th Cir. 1998), *cert. denied*, 525 U.S. 1183, 1184 (1999).

In deciding whether there is sufficient proof of the existence of a conspiracy and whether the declarant and the defendant were members of the conspiracy, the court may consider the co-conspirator statement(s) which the government seeks to admit under Fed. R. Evid. 801(d)(2)(E) and independent evidence. *Bourjaily*, 483 U.S. at 179-81; *United States v. Miles*, 290 F.3d 1341, 1351 (11th Cir.2002), *cert. denied*, 537 U.S. 1089 (2002). Further, the existence of an agreement may be proven inferentially, from the actions and statements of the conspirators or from the circumstances surrounding the scheme. *Glasser v. United States*, 315 U.S. 60, 80 (1942), superseded on other grounds by statute, as recognized by *Bourjaily v. United States*, 483 U.S. 171, 177-78 (1987); *United States v. McKee*, 506 F.3d 225, 238 (3d Cir. 2007); *United States v. Onyiego*, 286 F.3d 249, 254-55 (5th Cir. 2002); *United States v. Collins*, 78 F.3d 1021, 1037 (6th Cir. 1996); *United States v. Cruz*, 981 F.2d 613, 616 (1st Cir. 1992); *United States v. Young*, 954 F.2d 614, 618-19 (10th Cir. 1992); *United States v. Penagos*, 823 F.2d 346, 348 (9th Cir. 1987); *United States v. Hoelscher*, 764 F.2d 491, 494 (8th Cir. 1985); *United States v. Mariani*, 725 F.2d 862, 865-66 (2d Cir. 1984). Participation in a conspiracy can be proven by direct or circumstantial evidence. *United States v. Cole*, 755 F.2d 748, 755 (11th Cir.1985). Because secrecy is an essential element of conspiracy, "such an agreement may be proved by circumstantial as well as direct evidence." *United States v. Burton*, 871 F.2d 1566, 1571 (11th

10872183.1

Cir. 1989).  Circumstantial evidence may also be used to prove knowledge and intent.  *United States v. Macko*, 994 F.2d 1526, 1533 (11th Cir.1993).

The government presented evidence that Defendant Hough and Fredrick were each fully aware of, and acted pursuant to, a common plan or agreement to defraud the Internal Revenue Service ("IRS") in the ascertainment of their income and tax due and owing by using undeclared bank accounts and nominee entities.  The government established that Defendant Hough and her co-conspirator, David Fredrick, agreed to defraud the IRS.  Proof of their agreement and participation in the conspiracy, as well as their knowledge of the objective of the conspiracy, was proven through documentary and testimonial evidence admitted at trial.

Documentary evidence was introduced showing the Defendant Hough and Fredrick's signatures on various documents which were necessary to accomplish the object of the conspiracy.  Specifically, the defendants created and used a host of nominee entities which concealed the true ownership of the medical schools and other assets.  *See* GX 3D, 3K, 3O, 3V, 3Z, 3DD, 6L.[3]  In addition, the defendants established foreign bank accounts in their names and in the names of these nominee entities.  Accounts were established in the names of these nominee entities at multiple financial institutions over a period of years.  The defendants signed account opening documents for many of these accounts and but for only two accounts, they were always identified as the beneficial owner of the accounts.  *See* GX 3B through 3G, 3J through 3LL and 4A through 4N.  All of these documents also are circumstantial evidence of the objective of the conspiracy, specifically to defraud the IRS, as each helped to hide the true ownership of the medical schools, thus facilitating their ability to avoid reporting the income

---

[3] GX represents "Government Exhibit".

10872183.1

earned upon the sale of the schools and the annual net profits of the schools, as well as interest, capital gains, and dividend income earned in the accounts.

The defendants separately drafted and received correspondence which demonstrated their knowledge of the object of the conspiracy. GX 3S at pp. 9 and 24, 3HH at pp. 2, 3, 20, 27, 28. The defendants participated in meetings amongst and between the defendants and Beda Singenberger and Dieter Leutolf. GX 3S at p. 24, 3HH at p. 12, 14 and 20 3KK at p. 22.

The defendants' received funds from their offshore bank accounts and used those funds for the purchase of personal assets. Together, Fredrick and Hough purchased assets and caused payments to be made to themselves for their personal benefit and to family members as gifts using funds in the undeclared foreign accounts. *See* GX 30D, p. 75 ($250,000 from New Vanguard to Defendant Hough and Fredrick's joint account); GX 30D p. 83 ($250,000 to siblings); GX30L, p. 76 ($50,000 for Cirrus plane), GX 30Q ($50,000 refund from Cirrus plane deposited into personal domestic account), GX 12E and 12F ($200,000 from Top Fast for purchase of land in Asheville, North Carolina, "next to our home."); 5Tr. p. 13. Statements made by Fredrick also establish that they did not want their individual names on transfers back into the United States. GX 3E at p. 142, 3KK at pp. 14, 21. Moreover, when it was clear that the banks in the Bahamas and Switzerland were going to begin sharing information with the IRS, Fredrick and Hough caused the bank accounts to be closed and moved to other jurisdictions outside the reach of the IRS. GX 3P at pp. 5-6, 3W at p. 183, and 3HH at p. 2. Additionally, after UBS entered into the Deferred Prosecution Agreement on February 18, 2009, Defendant Hough and Fredrick, on June 15, 2009, caused Singenberger to open bank accounts at Bank Alpinum in the names of Ample Dynamic and Top Fast; they were identified as the beneficial owners of these accounts. GX 4E, 4I and 25. The offshore bank accounts which were the source

10872183.1

of funds used to purchase personal assets were titled in nominee names, thus hiding their true ownership. GX 3E, 3N, 3CC, 4L and 4M.  Further, many of the personal assets were also purchased in nominee names, further hiding their true ownership as well.  GX 3E, p. 142, 160; 6L, 11AA, 11CC, 14B, 15D, 20D and 21A. These facts further establish the object of the conspiracy, the defendants' knowledge of the object of the conspiracy, and their knowing participation in the conspiracy.

      Defendant Hough and Fredrick both provided false information to their return preparer for preparation of their individual income tax returns.  Mr. Murtha, the return preparer for Defendant Hough and Fredrick, was asked on direct examination if, when he initially met with the defendants, he asked them if they had any foreign bank accounts.  He testified that it "would have been part of my normal interview to ask that question."  2Tr. 239.  He went on to state that he believed the defendants answered "no."  *Id*.  Mr. Murtha further explained that the question he would have asked "would be in the nature of, 'Do you have any foreign bank accounts?'"  2Tr. 240.  Mr. Murtha also testified that in 2008 he read in the newspapers about problems UBS was having and, as a result, he would have asked his clients, again, whether they had a foreign account.  2Tr. 243-44.  On cross examination, Mr. Murtha reiterated his belief that he asked Defendant Hough and Fredrick whether they had a foreign bank account:  "Well, based on the way I did my interviews, I believe I did ask them that question."  3Tr. 48.  Counsel for Defendant Hough went on to ask "[s]o are you certain that, in your first interview, where you had their prior return with boxes marked 'no,' that you would have asked them the foreign-bank question; are you certain of that?"  Mr. Murtha answered "I'm certain I would have asked that question."  3Tr. 49.  Mr. Murtha also testified that the boxes related to the foreign bank account inquiry on Schedule B of Defendant Hough and Fredrick's tax returns were checked "no" and he

15

knew that would have been asked in the interview.  3Tr. 49.  Yet the evidence presented at trial proved that Defendant Hough and Fredrick owned foreign bank accounts in their joint names, in their individual names, in the names of nominee entities and in multiple different foreign jurisdictions.  The actions of Defendant Hough and Fredrick in lying to their return preparer in combination with the evidence of their concern with changes in bank disclosure policy in the Bahamas and Switzerland evidence the object of the conspiracy, to defraud the IRS, their knowledge of the objective of the conspiracy, and their participation therein.

  Defendant Hough and Fredrick each signed and filed false and fraudulent individual income tax returns with the IRS.  While Hough and Fredrick filed tax returns that elected married filing separate status, their return preparer, Mr. Murtha, testified that he dealt with both of them and asked them if they had an offshore bank account and they answered "no" on multiple occasions.  This resulted in their failure to report that they had an interest in or signature or other financial authority over these foreign bank accounts on their individual income tax returns.  It also resulted in further falsities on the returns in that they did not report the interest, dividend and capital gain income they earned in these accounts, income diverted from the schools to the accounts, and the ultimate sale of the schools.  GX 1A through 1H and 1T through 1Y.  The filing of these false returns is further evidence of the objective of the conspiracy, to defraud the IRS, and Defendant Hough and Fredrick's knowledge of the objective and their participation in the conspiracy.

  The evidence establishes that Defendant Hough and David Fredrick took steps to further the conspiracy, both separately and together, through the creation of companies, nominee entities and bank accounts, the preparation and signing of documents and checks, lying to their tax return preparer, the filing of false tax returns, and the use of and knowledge of the use of the funds in

10872183.1

the undeclared accounts for their personal benefit.  The evidence introduced at trial proved (1) that a conspiracy existed; (2) the objective of the conspiracy, namely to defraud the Internal Revenue Service; (3) that Defendant Hough and Fredrick were members of the conspiracy; and that David Fredrick's statements were made during the course of and in furtherance of the conspiracy.

### D. CONCLUSION

Defendant Hough's Motion should be denied because 1) assuming this Court's allowance of the alleged improper cross-examination of Dr. Gruber and Judge Walker was error, it was harmless; 2) the cross-examination of Judge Walker was not error because it did not include a guilt-assuming hypothetical; 3) the cross-examination of Dr. Gruber and Judge Walker was not improper after defense counsel opened the door to the line of questioning; and 4) David Fredrick's co-conspirator statements were properly admitted because the government established by substantial and independent evidence Defendant Hough and Fredrick's knowledge of the objective of the conspiracy and their participation in the conspiracy,  Furthermore, as detailed in the contemporaneously filed response to Defendant Hough's Motion for Judgment of Acquittal, the government presented overwhelming evidence that supported the jury's verdicts and there

was no miscarriage of justice.  Therefore, the government moves the Court to deny Defendant Hough's Motion without an evidentiary hearing.

          A.  LEE BENTLEY
          Acting United States Attorney

By:   /s/ Caryn D. Finley
       CARYN D. FINLEY
       Trial Attorney, Department of Justice, Tax Division
       New York Bar No. 3953882
       2110 First Street, Suite 3-137
       Fort Myers, Florida  33901
       Telephone:  (202) 514-5051
       Facsimile:  (202) 514-0961
       E-mail: caryn.finley@usdoj.gov

By:   /s/ Margaret Leigh Kessler
       MARGARET LEIGH KESSLER
       Trial Attorney, Department of Justice, Tax Division
       2110 First Street, Suite 3-137
       Fort Myers, Florida  33901
       Telephone:  (202) 514-5193
       Facsimile:  (202) 514-9623
       Margaret.Leigh.Kessler@usdoj.gov

10872183.1

## CERTIFICATE OF SERVICE

      I hereby certify that on December 11, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of that electronic filing (NEF) to the following:

Bruce L. Udolf  
Charles Edward Falk  
Brianna L. Abrams  

      In addition, I have served copies of this filing on the following parties using email:

Nathan J. Hochman  
Daniel Saunders  

                                              /s/ Caryn D. Finley  
                                              CARYN D. FINLEY  
                                              Trial Attorney, Department of Justice,  
                                              Tax Division  
                                              New York Bar No. 3953882  
                                              2110 First Street, Suite 3-137  
                                              Fort Myers, Florida  33901  
                                              Telephone:  (239) 461-2200  
                                              Telephone:  (202) 514-5051  
                                              Facsimile:  (239) 461-2219  
                                              E-mail: caryn.finley@usdoj.gov

10872183.1