UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA,

    Plaintiff

v.

DAVID LEON FREDRICK, and
PATRICIA LYNN HOUGH

    Defendants.
_____/

Case No.  2:13-cr-00072-JES-UAM

**DEFENDANT PATRICIA LYNN HOUGH'S REPLY IN SUPPORT OF
MOTION FOR NEW TRIAL PURSUANT TO FED. R. CRIM. P. 33(a)**

COMES NOW, Defendant Patricia Lynn Hough, by and through her counsel of record, and submits her Reply in Support of Motion for a New Trial under Rule 33(a).

**I.   THE GOVERNMENT'S IMPROPER CROSS-EXAMINATION DEPRIVED DR. HOUGH OF HER DUE PROCESS RIGHTS, AND THE PREJUDICE RESULTING FROM THAT MISCONDUCT REQUIRES A NEW TRIAL**

In her motion, Dr. Hough argued that her right to a fair trial, including her fundamental right to the presumption of innocence, was violated by the Court's allowance of improper cross-examination of two of Dr. Hough's three character witnesses that unconstitutionally reversed that presumption by demanding before the jury that the witnesses assume her guilt as a proven fact. Dr. Hough provided the Court with a detailed analysis of the case law regarding the impermissibility of such guilt-assuming hypotheticals, and discussed three cases – one of which is binding authority in this Circuit – that reversed convictions under strikingly analogous factual scenarios. **Stunningly, the government's argument in response fails even to mention, let alone attempt to distinguish, a single one of those cases.** The government does not dispute that it committed misconduct that deprived Dr. Hough of her constitutional rights, but it expresses no contrition for its actions. Instead, it argues that one of the challenged questions was not guilt-assuming (never contesting that the other one plainly was), that defense counsel opened the door to the government's negation of her presumption of innocence (citing authority that fails to support this proposition), and that Dr. Hough was not prejudiced by the government's

misconduct (again, simply ignoring the cited cases that refused to find harmless error under directly parallel facts). The government further attempts to hide behind the baseless claim that the evidence of Dr. Hough's guilt presented at trial was "overwhelming."

In short, having secured guilty verdicts through any means necessary, the government now asks the Court to turn a blind eye to its repeated misconduct and to proceed to sentence Dr. Hough on unconstitutional convictions. The government's arguments do not withstand scrutiny and should be rejected. A new trial is the proper remedy and the only means at this point of safeguarding Dr. Hough's right to a fair trial.

A.  The Government's Questions Were Guilt-Assuming

The government contends that its question to Judge Walker, Dr. Hough's second character witness, was "clearly" not a guilt-assuming hypothetical.[1] (Opp. at 10-11). This argument is specious. Immediately after referencing the allegations in the indictment, the prosecutor asked Judge Walker: "And so it's possible, if you heard all the evidence, that you might change your opinion about whether Dr. Hough is honest or not." After an overruled objection[2], Judge Walker answered: "Well, sure." (10/18/13 RT 215). The prosecutor's question necessarily included within it an implied assumption of guilt: *i.e.*, it asked (and, based on his answer, was clearly understood by Judge Walker to ask) whether the witness' opinion of Dr. Hough's honesty would change if the witness heard all the evidence *and that evidence proved Dr. Hough's guilt*. Indeed, to ask whether the witness' opinion of the defendant's honesty would change if the witness heard all the evidence and that evidence proved the defendant's *innocence* would be nonsensical. Thus, when Judge Walker replied that his opinion

---

[1] The government raises no similar defense of its questioning of Dr. Alan Gruber.

[2] The government notes that defense counsel objected to this question on the grounds of "speculation" and "foundation" but not on the ground that the hypothetical question called for an assumption of Dr. Hough's guilt. (Opp. at 6; 10/18/13 RT 215). Given that defense counsel had unsuccessfully raised the objection to guilt-assuming hypotheticals immediately before calling Judge Walker as a witness and the Court had made clear in response that it would overrule any such objection with regard to an opinion character witness (10/18/13 RT 182-84), making the same objection again would have been futile, and defense counsel did not waive the objection by failing to do so. *See Webb-Edwards v. Orange County Sheriff's Office*, 525 F.3d 1013, 1030 (11th Cir. 2008) (failure to raise contemporaneous objection to improper question does not forfeit objection "where a party has made its position clear to the court previously and further objection would be futile" (internal quotations and citation omitted)).

would change, he was necessarily making the precise assumption that the prosecutor's question asked him to make – that "all the evidence" would prove that Dr. Hough had committed the offenses charged.[3]  Moreover, putting the question in context, it followed immediately after the prosecutor's reference to the allegations in the indictment, making it abundantly clear what the question was asking Judge Walker to assume "all the evidence" would show. (10/18/13 RT 215).

The government's questioning of Judge Walker was no doubt more insidiously phrased than its questioning of Dr. Gruber because defense counsel had alerted the government to the *Candelaria-Gonzalez* decision, but the intended and actual effects were the same for both witnesses. In each case, the government wrongfully had the witness abandon his deeply held positive opinions of Dr. Hough's honesty before the jury based on an unconstitutional presumption of guilt, and that was precisely what the government had sought to achieve by its question. For the government to now argue that its question to Judge Walker was not in fact a guilt-assuming hypothetical is, to use a phrase from the trial, to elevate form over substance.

B.  The Defense's Questioning Did Not Open the Door to the Government's Due Process Violations

The government further argues that, even if it posed guilt-assuming hypotheticals that unconstitutionally reversed Dr. Hough's presumption of innocence (which the government does not contest it did at least with Dr. Gruber), defense counsel opened the door by asking Dr. Gruber on direct examination whether the nature of the allegations in the indictment affected his opinion of Dr. Hough's character for truthfulness and honesty. (Opp. at 9-10). Defense counsel's question asked whether the witness' opinion was affected by the nature of the *allegations*; in so asking, defense counsel both probed the strength and reliability of the opinion and reinforced to the jury the proper application of the presumption of innocence. (10/17/13 RT

---

[3] The government rather desperately tries to claim that the question was not guilt-assuming because "all the evidence" could have changed Judge Walker's opinion of Dr. Hough's character with respect to whether she "spent extravagantly" or was "fiscally conservative." (Opp. at 11). The question, however specifically addressed the witness' "opinion about whether Dr. Hough is honest or not."

182-83, 186).[4]  The question was entirely proper and drew no objection from the government.  It certainly did not open the door for the government to flip that presumption on its head and ask the witness to assume that the government had proved Dr. Hough's guilt, a question that has consistently been found to violate due process.  *See United States v. Guzman*, 167 F.3d 1350, 1352 (11th Cir. 1999) ("[G]uilt-assuming hypotheticals strike at the very heart of the presumption of innocence which is fundamental to Anglo-Saxon concepts of fair trial." (internal brackets and quotations omitted)); *accord United States v. Shwayder*, 312 F.3d 1109, 1121 (9th Cir. 2002) ("[T]he use of guilt assuming hypotheticals undermines the presumption of innocence and thus violates a defendant's right to due process."); *United States v. Mason*, 993 F.2d 406, 409 (4th Cir. 1993) (guilt-assuming hypotheticals violate "a basic concept of our justice system, the presumption of innocence"); *United States v. Williams*, 738 F.2d 172, 177 (7th Cir. 1984) (asking character witness to assume the defendant's guilt "assumes away the presumption of innocence").  The government's cavalier approach to constitutional rights notwithstanding, there is a significant difference between asking about *allegations*, with the presumption of innocence firmly in place, and asking the witness to *assume the defendant's guilt*, which wholly negates and undermines that presumption.  Nor did the defense's questioning render inapplicable Federal Rule of Evidence 405(a), which restricts cross-examination of character witnesses to "relevant specific instances of the [defendant's] conduct."  *See Williams*, 738 F.2d at 177.

The government's reliance on *United States v. Russo*, 110 F.3d 948 (2d Cir. 1997), is misplaced.  (Opp. at 9).  In *Russo*, the Second Circuit found that defense counsel, by asking a character witness whether he believed the defendant's character was consistent with the charges against him, opened the door for questioning on cross-examination about "whether [the witness] *knew about* the charges against [the defendant] and specifically *what he knew* about those charges."  *Id.* at 953 (emphasis added).  The cross-examination asked only whether the defendant had ever told the witness about certain of his acts; there was no question that asked the witness to

---

[4] The government notes that defense counsel asked this question "on two separate occasions."  (Opp. at 9).  The question was asked a second time because Dr. Gruber's initial answer was nonresponsive.

assume the defendant's guilt. *See id.* at 951. Indeed, the *Russo* court strongly reaffirmed the Second Circuit's case law holding that "the prosecution may not cross-examine a defendant's character witness by asking the witness whether his or her opinion of the defendant would change if the defendant were guilty of the charges against him," because such hypotheticals "trench too deeply into the presumption of innocence." *Id.* at 952. Nothing in *Russo* – or in any other case cited by the government or known to the defense – suggests that one may "open the door" to depriving a criminal defendant of her due process rights.[5]

C.   The Constitutional Violation Resulting From the Government's Misconduct Was Not Harmless

The government correctly notes that the Eleventh Circuit has not decided whether the constitutional or non-constitutional harmless error standard applies to guilt-assuming hypotheticals, *see Guzman*, 167 F.3d at 1353, but offers no argument that the lesser standard should apply here.[6] (Opp. at 6 n.2). Because the government's undermining of the presumption of innocence is a violation of due process, the *Chapman* standard should apply here and Dr. Hough's convictions may be affirmed only if this Court can say that the error was harmless beyond a reasonable doubt. *See United States v. Polsinelli*, 649 F.2d 793, 797-98 (10th Cir. 1981).

If there were grounds to distinguish the cases discussed in Dr. Hough's motion that refused to find the use of guilt-assuming hypotheticals to be harmless error (one of which

---

[5] The other two cases cited by the government in support of its "opening the door" theory have nothing to do with guilt-assuming hypotheticals or any other questioning of constitutional magnitude. *See United States v. Gopie*, 347 Fed. Appx. 495, 502 (11th Cir. 2009) (defendant opened door to line of questioning that led agent-witness to vouch for government's case); *United States v. Scheigert*, 809 F.2d 1532, 1534 (11th Cir. 1987) (defendant opened door to evidence of his cocaine use by suggesting that his addition may have impaired his ability to comprehend the legality of his acts).

[6] In yet another attempt to mislead this Court, the government claims that the Eleventh Circuit "applied ordinary harmless-error analysis . . . to the issue of guilt-assuming hypotheticals" prior to *Guzman* in *United States v. Hewitt*, 663 F.2d 1381, 1391 (11th Cir. 1981) (which the government miscites as *United States v. Chesser*). (Opp. at 6 n.2). The challenged question in *Hewitt* was **not** guilt-assuming, but merely asked whether the witnesses' testimony about the defendant's reputation would change if they knew he had been indicted and arrested. *Id.* at 1390; see *id*. at 1391 ("[T]he question *did not ask the witness to assume the guilt* of Hewitt in the matter for which he was standing trial, and therefore did not violate the presumption of innocence to which Hewitt was entitled." (emphasis added)). Thus, there was no constitutional error, and ordinary harmlessness anaylsis applied.

constitutes binding authority on this Court), one may fairly assume that the government would have raised those grounds in its opposition. Yet the government's response to *United States v. Candelaria-Gonzalez*, *United States v. Mason*, *United States v. Polsinelli* is to pretend that they do not exist.[7] The reason for the government's decision not even to attempt to distinguish those cases is clear; they cannot be meaningfully distinguished.

In lieu of any effort to distinguish controlling and persuasive authority, the government argues that there was no prejudice because the evidence was "overwhelming." (Opp. at 6). The undersigned expect that the Court, having heard that evidence, will dismiss this assertion as groundless. This was an entirely circumstantial case in which the Court found that the government had failed to show the involvement of 50% of the alleged co-conspirators and in which not a single witness or document said **anything** about Dr. Hough's purported agreement and intention to defraud the IRS. Rather, the case centered on ambiguous documents (signed on at least one occasion in blank); on imputing to Dr. Hough the acts, intentions, and knowledge of her husband; and on whether the jury accepted Dr. Hough's explanation of her actions. The government is correct that this case was not a "swearing contest" between defendant and a key government witness (Opp. at 9), because there was in fact **no witness who testified contrary to Dr. Hough's testimony based on any personal, percipient knowledge**. The situation here was even *more* prejudicial: a swearing contest between Dr. Hough and vague, confusing **documents** – documents that could not be cross-examined, and the creators of which (including Dieter Luetolf and Beda Singenberger) could not be cross-examined because the government did not call any of them as witnesses. As such, Dr. Hough's credibility – which turned in large part on the jury's acceptance of her character for honesty – was likely the deciding factor in this case, and improper questioning that undermined two of the three defense witnesses' testimony about that character cannot be viewed as harmless beyond a reasonable doubt.[8]

---

[7] The government's only reference to *Candelaria-Gonzalez* is a passing mention that defense counsel cited the case in making his objection at trial. *Mason* and *Polsinelli* are mentioned nowhere in the 18-page opposition.

[8] Indeed, the government itself establishes the importance of Dr. Hough's credibility in its Rule 29 opposition, which relies extensively on the claim that the jury disbelieved Dr. Hough's testimony.

The government further contends that its misconduct was harmless because the jury heard other witnesses opine as to Dr. Hough's character. (Opp. at 7-8). It is true that the government did not repeat its constitutional violation a third time with Dr. Hough's third character witness, Antoine Solagnier, and that *government witness* Paul Dalbec testified to his belief that "everything she's done was, in my opinion, honest." The other testimony cited by the government, however, came from government witnesses who described Dr. Hough as intelligent, professional, loving, funny, capable, successful, charitable, conservative, and conscientious – none of which has anything to do with her character from honesty. The improper questioning here was directed to two out of the defense's three character witnesses – precisely the same ratio as in *Candelaria-Gonzalez*, *Polsinelli*, and *Mason*, **all of which held that reversal of the convictions was the required result**. The government's attempt to falsely inflate the denominator of character witnesses in order to minimize the import of its own misconduct should be rejected.

The government next tries to minimize prejudice by noting that Dr. Hough complains about two questions posed during the two-week trial. Yet *Candelaria-Gonzalez* and its kin make abundantly clear that one or two questions over the course of a trial can in fact infect the proceedings and require reversal if those questions undermine a fundamental constitutional protection. If the government were to ask a character witness if his opinion of the defendant would change because the defendant had invoked her *Miranda* rights or failed to testify at her trial, we expect the government would not be heard to argue that such misconduct was harmless because it was "only one question." The improper questions asked in this case went to a different, but no less fundamental, constitutional protection, and were no less deprivatory of Dr. Hough's right to a fair trial.[9]

---

[9] Once again, the government misleadingly cites to wholly inapposite case law in support of its argument. In *United States v. Kellogg*, 510 F.3d 188, 195-97 (3d Cir. 2007), the court relied on a distinction between opinion and reputation character witnesses that the Eleventh Circuit has flatly rejected. In *United States v. Paccione*, 949 F.2d 1183, 1201-02 (2d Cir. 1991), a single guilt-assuming question was asked to one of the defendant's four character witnesses in the course of a 12-week trial; moreover, the defendant did not testify at trial, making his credibility before the jury a far less significant issue.

Finally, the government notes two *additional* concerns with guilt-assuming hypotheticals (apart from reversal of the presumption of innocence) mentioned in fact-specific opinions, claims that they do not apply here, and leaps from this to the preposterous assertion that "this case presents none of the particular dangers that appellate courts have associated with guilt-assuming hypotheticals." (Opp. at 8). The government neglects to inform the Court that the two cases it cites both note that the *principal* "danger" of such hypotheticals is that they negate the presumption of innocence to which every defendant is entitled. *See United States v. Oshatz*, 912 F.2d 534, 539 (2d Cir. 1990) ("[S]uch cross-examination is [] to be prohibited because it creates too great a risk of impairing the presumption of innocence"); *Williams*, 738 F.2d at 177 ("[T]his line of questioning is error because it assumes away the presumption of innocence."). The Eleventh Circuit has focused on the same danger, which was unquestionably implicated here. *See Guzman*, 167 F.3d at 1352 (recognizing that "'guilt-assuming hypotheticals strike at the very heart of the presumption of innocence that is fundamental to Anglo-Saxon concepts of a fair trial'" (quoting *Candelaria-Gonzalez*, 547 F.2d at 294)). Moreover, the government's questioning in this case *did* "allow[] the prosecution to foist its theory of the case repeatedly on the jury and to force an unsuspecting witness to speculate on the effect of a possible conviction," *Williams*, 738 F.2d at 177; the government's theory of the case was that the evidence proved Dr. Hough's guilt, and its misconduct impermissibly allowed it to present that theory through two defense witnesses at a critical point in the trial (immediately prior to Dr. Hough's testimony).

For all of these reasons and those set forth in the motion, the constitutional error resulting from the government's improper use of guilt-assuming hypotheticals was not harmless beyond a reasonable doubt, and a new trial must be granted.

## II. THE GOVERNMENT HAS STILL FAILED TO POINT TO SUBSTANTIAL INDEPENDENT EVIDENCE SUPPORTING THE ADMISSION OF DAVID FREDRICK'S HEARSAY AS CO-CONSPIRATOR STATEMENTS

Dr. Hough's motion called on the government to specifically identify the **"substantial and independent evidence"** – *i.e.*, evidence *separate and apart from* hearsay statements of codefendant David Fredrick – that proved by a preponderance of the evidence her knowing

participation with Fredrick in a conspiracy **for the specific purpose of defrauding the IRS**, and thus supported the admission of Fredrick's hearsay as co-conspirator statements under Federal Rule of Evidence 801(d)(2)(E). *See United States v. McDonald*, 935 F.2d 1212, 1220 (11th Cir. 1991) (post-*Bourjaily*, stating that the substantial independent evidence must be "at least enough to take the question [of conspiracy] to the jury").  No doubt recognizing that the answer to that key legal question will reveal the evidence's insufficiency, the government's opposition dodges the analysis of "independent evidence" entirely.  Of the **75** trial exhibits cited in the argument on pages 13-17 of the opposition, the overwhelming majority were not written by or sent to Dr. Hough, do not contain Dr. Hough's signature, and were (according to the evidence presented at trial) never even seen by Dr. Hough.[10]  The limited exceptions consist principally of tax returns (Gov. Exh. 1A-1H) and bank account opening documents bearing Dr. Hough's signature (Gov. Exh. 3B, 3G, 3J, 3L, 3N, 3R, 3S, 3U, 3GG, 4F); these records say nothing about the purpose for which the accounts were opened or about Dr. Hough's state of mind in signing the returns, and are unquestionably not "substantial independent evidence" sufficient to take to the jury the question of Dr. Hough's knowing involvement in a conspiracy **for the specific purpose of defrauding the IRS**.

Apart from the documents, the *only* witness testimony that the government cites (among its so-called "overwhelming evidence") is that of Thomas Murtha, who had no recollection of what he actually asked Dr. Hough in a brief interview 12 years ago (other than that it had nothing to do with signature authority) but believed that he "would have" asked Dr. Hough if she had foreign bank accounts (despite conceding that it would have been against his custom and practice to ask that question of preexisting firm clients).  There is nothing remotely "substantial" about that wholly speculative and unreliable testimony.[11]  The balance of the government's argument

---

[10] The remaining documents cited by the government consist largely of Dr. Fredrick's hearsay statements, which of course have no place in an assessment of the **independent evidence** supporting those statements' admission.  *See, e.g.*, Gov. Exh. 3E p.142, 3P pp.5-6, 3HH p.2, 3KK p.14.

[11] Dr. Hough notes that this is not a Rule 29 motion.  When determining the evidentiary issue of whether a proper foundation was laid for admission of hearsay statements, there is no requirement that the Court view the foundational evidence in the light most favorable to the government.

consists of false and misleading statements attributing to Dr. Hough the acts, words, and mental state of Fredrick, as further discussed in Dr. Hough's Rule 29 reply brief.[12]

### III.  A NEW TRIAL SHOULD BE GRANTED BECAUSE THE EVIDENCE PREPONDERATES HEAVILY AGAINST THE VERDICT

Dr. Hough incorporates all arguments regarding the sufficiency of the evidence in her Rule 29 reply brief. Should the Court conclude that the deferential Rule 29 standard precludes it from granting a judgment of acquittal, Dr. Hough submits that a fair and objective evaluation of the evidence when freed from the confines of that standard demonstrates that "the evidence preponderates sufficiently heavily against the verdicts that a serious miscarriage of justice may have occurred," and a new trial should be granted. *United States v. Martinez*, 763 F.2d 1297, 1312 (11th Cir. 1985).

Dated: December 16, 2013

Respectfully submitted,

| | |
|---|---|
| **BRUCE L. UDOLF, P.A.**<br>Counsel for Defendant Hough<br>Broward Financial Centre<br>500 East Broward Blvd., Suite 1400<br>Fort Lauderdale, Florida 33394<br>Tel: (866) 951-9058/ Fax (954) 525-2134<br><br>By: /s/ Bruce L. Udolf<br>     Fla. Bar No. 0899933<br>     budolf@udolflaw.com | **BINGHAM MCCUTCHEN, LLP**<br>Counsel for Defendant Hough<br>Suite 2050 North, 1601 Cloverfield Blvd<br>Santa Monica, California 90404<br>Tel: (310) 907-1000/ Fax (310) 907-2000<br><br>By: /s/ Nathan J. Hochman<br>     California Bar No. 139137<br>     nathan.hochman@bingham.com<br><br>By: /s/ Daniel A. Saunders<br>     California Bar No. 161051<br>     Daniel.saunders@bingham.com |

---

[12] If the Court holds argument on this motion, which Dr. Hough requests, Dr. Hough asks that the Court require the government to support its written representations to the Court by identifying, for example, the precise evidence showing that **Dr. Hough** had a "concern with changes in bank disclosure policy in the Bahamas and Switzerland" (Opp. at 16), that **Dr. Hough** "caused the bank accounts to be closed and moved to other jurisdictions outside the reach of the IRS" (Opp. at 14), or that **Dr. Hough** "caused payments to be made . . . to family members as gifts using funds in the undeclared foreign accounts" (Opp. at 14). Dr. Hough predicts that the silence in the courtroom will be deafening.

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing was filed electronically using the Court's CM/ECF system, on this 16th day of December, 2013.

By: /s/ Bruce L. Udolf