UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

Case No. 2:13-cr-00072-JES-UAM

UNITED STATES OF AMERICA,

    Plaintiff

v.

DAVID LEON FREDERICK, and
PATRICIA LYNN HOUGH

    Defendants.

_____/

**DEFENDANT PATRICIA LYNN HOUGH'S REPLY IN SUPPORT OF MOTION FOR JUDGMENT OF ACQUITTAL PURSUANT TO FED. R. CRIM. P. 29(c)**

COMES NOW, Defendant Patricia Lynn Hough, by and through her counsel of record, and submits her Reply in Support of Motion for Judgment of Acquittal under Rule 29(c).

**I.   INTRODUCTION**

The government's strategy at trial was clear. In the absence of *a single witness* (out of the 20 presented by the government) who would say anything bad about Dr. Hough, and in the absence of any direct evidence of her knowing participation in a conspiracy to defraud the IRS, the government created a wholly fictitious, collective consciousness entity consisting of Dr. Hough and absent codefendant David Fredrick, and then proceeded to misleadingly argue to the jury (without any evidentiary support) that everything said by, done by, intended by, and known to Fredrick was equally said by, done by, intended by, and known to Dr. Hough. The purported existence of this Hough/Fredrick collective underlay virtually all of the government's closing argument, which over and over again claimed that "Dr. Hough and Dr. Fredrick" (or simply "they") engaged in certain actions when in fact the only evidence that had been introduced of such actions related to Fredrick alone.

The government persists in this strategy now. Throughout its opposition, the government fudges and obfuscates when directly called on to identify the precise evidence against *Dr. Hough* in support of a particular element of an offense. The government loosely asserts at least **66 times** in its brief that certain statements were made or actions undertaken jointly by "Hough and

Fredrick," but an examination of the testimony and documents that the government cites (when it bothers to cite any) demonstrates the utter falsity of those claims.[1] The reason for the government's tactic is clear: if it were to focus, as this Rule 29 motion requires it to focus, solely on the evidence introduced at trial of *Dr. Hough's* acts and mental state, the paucity of the government's proof would become abundantly clear. The government's bad-faith effort to impute to Dr. Hough (without supporting evidence) the actions, words, deeds, knowledge, and mental state of Fredrick was unfortunately sufficient to mislead the jury into convicting Dr. Hough based on woefully insufficient evidence; it should not be sufficient now to defend those wrongful convictions before this Court.

The Rule 29 standard requires the Court to accept all reasonable inferences in favor of the verdict. It does not require the Court to engage in speculation, or to approve speculation in which the jury engaged at the government's urging. *See United States v. Mendez*, 528 F.3d 811, 814 (11th Cir. 2008) ("When the government relies on circumstantial evidence, reasonable inferences, not mere speculation, must support the conviction."). Yet a critical examination of the evidence presented at trial conclusively demonstrates that the jury's verdict *must have* rested on speculation, because the government failed to produce any direct or circumstantial *evidence* in support of essential facts that the jury was required to find for conviction. Nothing in the government's oversize opposition brief suggests otherwise; indeed, the government has **completely ignored** the most significant arguments raised in Dr. Hough's motion regarding the specific failures of proof. As with the government's failure to distinguish or even mention the key cases cited in Dr. Hough's Rule 33 motion for a new trial, the government's silence here speaks volumes.

---

[1] The page limitation on this reply brief precludes an item-by-item correction of the government's blatant misrepresentations of the evidence, which include (by way of example only) claims that "Hough and Fredrick" caused the Round Hill land to be purchased by Laura Whitley (Opp. at 6), that "Hough and Fredrick" created and used a host of nominee entities (Opp. at 12), and that "Hough and Fredrick" caused payments to be made to family members as gifts using funds in the undeclared accounts (Opp. at 13-14) – all actions in which the evidence showed Dr. Hough did not participate. If the Court holds argument on this motion, which Dr. Hough requests, Dr. Hough asks that the Court require the government to support each of its written representations to the Court regarding the actions of "Hough and Fredrick" by identifying the **specific testimony or document** that supports that representation.

## II.     COUNT ONE

To prove a *Klein* conspiracy, the government was required to prove a "common agreement" with the specific purpose of violating the law by defrauding the IRS, "established by evidence of actual knowledge by each participant." *United States v. Kottwitz*, 614 F.3d 1241, 1265 (11th Cir.), *opinion vacated in other part on rehearing*, 627 F.3d 1383 (11th Cir. 2010). "A conspiracy conviction cannot stand without evidence showing a meeting of the minds to commit the illegal act. . . . Evidence of a conspiracy or that a defendant acted in a way that would have furthered a conspiracy *if there had been one* is insufficient; there must also be independent evidence that the defendants knew of the conspiracy in progress and knowingly and voluntarily joined it." *Id*. (internal quotations and citations omitted) (emphasis in original). Moreover, "[i]f the conspiracy evidence is circumstantial, it must warrant a jury finding that the conspirators operated with a *common design with unity of purpose* to impede the IRS based on reasonable inferences, and not mere speculation." *Id*. (internal quotations and citations omitted) (emphasis in original).

Here, the government does not dispute that its purported proof of the charged conspiracy was entirely circumstantial.[2] Yet in its 29-page opposition, the government fails to identify a single piece of evidence capable of supporting beyond a reasonable doubt an inference that Dr. Hough had the **specific intent to defraud the IRS** and knowingly entered into an agreement with Fredrick to achieve that end. *See Ingram v. United States*, 360 U.S. 672, 680 (1959) (to prove conspiratorial intent, evidence of knowledge must be clear and unequivocal, and cannot consist of "piling inference upon inference"). Instead, the government continues its pattern of making broad, sweeping proclamations about the "overwhelming" evidence, while presumably hoping that the Court does not look too closely or ask any questions.[3]     The government's

---

[2] Even the testimony of Thomas Murtha, which emerges in the government's opposition as the centerpiece of its "overwhelming" evidence (at least based on how many times it is referenced), was circumstantial. Murtha did not testify to what question he asked and what Dr. Hough answered, which would have been direct evidence. Rather, Murtha's testimony required the jury to infer that he asked Dr. Hough about foreign bank accounts based on his stated belief that he "would have" asked such a question during the routine interview that took place 11 or 12 years earlier.

[3] As just one example of the government's dissembling, the government asserts that "[d]efendant Hough and Fredrick separately drafted and received correspondence which demonstrated their knowledge of the

attempts to fall back on the deferential Rule 29 standard are equally unavailing, as this is not a question of credibility; a reasonable juror could believe every one of the government's 20 witnesses and still have no basis for finding beyond a reasonable doubt that Dr. Hough entered into an agreement with the specific criminal purpose of defrauding the IRS.

As explained in Dr. Hough's motion, the only **non-speculative, evidence-based** explanation for the creation of offshore accounts and foreign entities – and, more importantly, of Dr. Hough's understanding of the reason behind those actions – was asset protection. This was testified to not only by Dr. Hough but by *government witness* Dr. Paul Dalbec, who testified without contradiction that he and the other members of the Board specifically authorized Fredrick to move the Saba Foundation's funds into protected offshore accounts in the names of other entities in order to protect them from being seized in response to litigation. The government cites no document or witness that stated otherwise. Rather, the government relies on (1) the testimony of Thomas Murtha, which, even if one draws the inferences that he asked what he thought he would have asked and that Dr. Hough answered the way he thought she would have answered, is ultimately consistent with Dr. Hough's understanding that the accounts (over which Murtha admitted he never asked if she had signature authority) belonged to the Foundation and not to her; and (2) a series of documents, including Form As, that say nothing about taxes or the IRS and do not distinguish between a purpose of asset protection and a purpose of tax evasion. Here, there was no witness that contradicted Dr. Hough's testimony, nor was there any document that had anything to do with the IRS. In the absence of any other evidence of an agreement and intent **on Dr. Hough's part** to evade taxes and defraud the IRS, the conspiracy conviction cannot stand.[4]  *See United States v. Adkinson*, 158 F.3d 1147, 1159

---

object of the conspiracy" (Opp. at 13) – a statement that, if it were true, would conclusively dispose of this Rule 29 motion as it pertains to Count One. Yet the government, despite providing specific transcript and exhibit cites elsewhere in its brief, supports this dramatic claim with a loose and vague "*See supra*" cite, leaving one to curiously search through the preceding 12 pages to find precisely where such correspondence "separately drafted and received" by Dr. Hough and demonstrating her knowledge of the object of the conspiracy to defraud the IRS is referenced. One searches in vain; the correspondence is not referenced or cited elsewhere, because it does not exist.

[4] The government also argues that the jury disbelieved Dr. Hough's testimony and that such disbelief itself constituted substantive evidence of the object of the conspiracy. (Opp. at 11-12). In each of the

(11th Cir. 1998) (reversing Klein conspiracy convictions where government's case was predicated on circumstantial evidence and there was no "substantial evidence that the defendants both agreed to and intended to impede the IRS"; such proof must be based on "reasonable inferences and not mere speculation"); *United States v. Pritchett,* 908 F.2d 816, 821-22 (11th Cir.1990) (reversing *Klein* conspiracy convictions where efforts at concealment of income were reasonably explainable in terms other than motivation to evade taxes and "[n]o statements of co-conspirators manifesting a desire to evade taxes were presented").[5]

### III. COUNT SEVEN

With respect to Count Seven, the government's opposition does not even acknowledge that Agent Maurer's expert report, revised six days into trial, stated explicitly that Dr. Hough substantially **overreported** her 2006 total income by $13,729 rather than substantially underreporting it as charged. To avoid conceding this unquestionable failure to meet its burden, the government attempts to mislead the Court as it misled the jury. The government argues that Agent Maurer, despite testifying that she could not be sure of any numbers outside of those in her report, concluded that (i) Dr. Hough owned 50% of the medical schools; (ii) the schools had "net profits" in 2006; and (iii) 50% of the net profits – of which Agent Maurer could not and did not even provide a ballpark estimate – was reportable on Dr. Hough's return 2006 return. (Opp. at 19). On each level, the government's arguments are unavailing.

First, Dr. Hough did not own the medical schools. MUA was a for-profit corporation in which Dr. Hough owned no shares after 2003 when she transferred her shares to Dr. Fredrick, as

---

cases cited by the government, however, the prosecution presented independent evidence that fully contradicted the defendant's testimony and that the jury apparently accepted in deciding that the defendant's testimony was false. In this case, as discussed herein, the government presented **no evidence** showing Dr. Hough's agreement and intent to defraud the IRS. The government has cited no authority for the proposition that any defendant who takes the stand at trial automatically loses her Rule 29 motion even if the government utterly fails in its own burden of proof.

[5] The government separately failed to prove beyond a reasonable doubt an overt act in furtherance of the conspiracy that occurred within the statute of limitations. With respect to the purchases of assets and gifts to family members, Agent Maurer testified that those acts played no role in her calculation of tax due and owing, and thus they cannot have been in furtherance of a conspiracy to evade taxes. The only remaining acts are the filing of false tax returns; because those returns were not proved beyond a reasonable doubt to be false as set forth herein, they too cannot have furthered the charged conspiracy.

acknowledged by the government. (Opp. at 5; Gov. Exh. 7C). And as elaborated in Dr. Hough's motion and established by undisputed evidence, the Saba School of Medicine Foundation was a non-profit Netherlands-Antilles foundation that by definition could not be owned by any person.[6]

Second, to prove the schools had "net profits" in 2006, the only documents on which the government relies are the 2006 audited financial statements for the Saba School of Medicine Foundation (Gov. Exh. 9N p.5) and MUA (Gov. Exh. 9B p.5).[7] The reliance on each is completely misplaced. A review of those 2006 financial statements, particularly the Statements of Activities and Net Assets referenced by the government in the Saba Foundation financial statement and the Statement of Operations referenced by the government in the MUA financial statement, fails to disclose anywhere on either financial statement an amount for "net profits."[8] Thus, neither Agent Maurer nor the jury could have viewed these financial statements and determined that the Saba Foundation and MUA had "net profits" for 2006.

Third, since there were no "net profits" generated by the schools, there were none to distribute to Dr. Hough. Even assuming hypothetically (and contrary to the evidence) that Dr. Hough owned half of the Saba Foundation and MUA[9] and that there were "net profits" accrued

---

[6] As support for its continued stubborn insistence that Dr. Hough owned what could not be owned, the government relies principally on the 2003 documents relating to the attempted sale of the schools. (Opp. at 23-24). As explained on pp. 21-22 of Dr. Hough's motion, the documents signed by Dr. Hough do not evidence ownership but rather ownership *or* control, and Mario de Castro's opinion letter was based on no due diligence, did not even include the correct name of the Saba Foundation, and was approved, reviewed, or even seen by Dr. Hough.

[7] The government references other exhibits on which Agent Maurer supposedly relied to show that the schools were "profitable," but those documents have nothing to do with the alleged "net profits" for the schools in 2006. (Opp. at 19; Gov. Exh. 7EE (**2004** MUA financial statement), 8C (**2004** Saba Foundation financial statement), 8Q (**2005** Saba Foundation financial statement), 8AA (**2005** MUA financial statement), 6B (**2002** letter from Dr. Fredrick re proposed sale to Huntington Institute).

[8] Defense expert Luis Rivera explained that the auditors who prepared the Saba Foundation's audited 2006 financial statement, after reviewing all the documentation and speaking to the principals, used the analysis appropriate for a non-profit operating foundation rather than for a corporation. (10/22/13 RT 186-89). That analysis does not contain any calculation of "net profits" since a non-profit foundation by definition has no "net profits." (*Id.* at 189). For MUA, the auditors never computed "net profits."

[9] Because it is undisputed that Dr. Hough owned no shares of MUA in 2006 (having transferred them to Fredrick in 2003) (Opp. at 5), even if MUA had "net profits" in 2006 – for which there was no evidence in the record – those "net profits" would have been distributed to Dr. Fredrick and reported on his separate tax return, not to Dr. Hough and reported on her tax return.

by both schools, there was absolutely no evidence that those "net profits" were, in fact, distributed to Dr. Hough. Absent evidence of an actual distribution, the law dictates that such "net profits" would not have been deemed distributed to Dr. Hough by the mere fact that the corporate entities accrued them. *See Commissioner v. Gordon*, 391 U.S. 83, 90 n.5 (1968) ("Earnings are not taxed to the shareholder when they accrue to the corporation, but instead when they are passed to shareholders individually through dividends.").

Because the government failed to prove a substantial understatement of Dr. Hough's total income for 2006 beyond a reasonable doubt, Dr. Hough must be acquitted of Count Seven.[10]

## IV.   COUNTS SIX THROUGH NINE

### A.   Schedule B

In her motion, Dr. Hough pointed out that the question on line 7a of Schedule B, Part III (which she was convicted of having knowingly answered falsely on her 2005, 2007 and 2008 returns) expressly incorporates "page B-2 exceptions" and that it is impossible to determine whether a "No" answer to that question is true or false without knowing what those exceptions were. Absent such evidence in any trial exhibit or testimony, the jury had absolutely no basis on which to determine whether the foreign accounts at issue fell within any of those exceptions, and therefore it would be impossible for any reasonable juror to determine beyond a reasonable doubt that Dr. Hough's answers on line 7a were false – and, equally importantly, that Dr. Hough knew those answers were false at the time she signed her returns. Dr. Hough further argued that the reference to unspecified exceptions not identified anywhere within the tax forms (a deficiency that the IRS has since recognized and corrected) rendered the question on line 7a so ambiguous that no reasonable juror could find that Dr. Hough's response was knowingly and willfully false.

The government's opposition never addresses these crucial arguments, instead trying to deflect the Court's attention to irrelevant issues. The first such issue is the prefatory language in

---

[10] Contrary to the government's assertion, Dr. Hough has never argued that the government needs to show a tax deficiency. (Opp. at 18-19). The government, however, does need to prove that Dr. Hough knowingly made a false statement by substantially understating her total income on line 22 of her 2006 Form 1040. The government's own evidence contradicted that claim and showed a substantial overstatement of income.

Schedule B, Part III that states:  "You must complete this part if you (a) had over $1,500 of taxable interest or ordinary dividends; or (b) had a foreign account . . . ."  The government claims that the "had a foreign account" language is similar to the question Mr. Murtha "would have asked" Dr. Hough in the initial 2001/2002 interview, that *that* question is not unclear or ambiguous, and that Dr. Hough answered that "initial threshold question" falsely.  (Opp. at 21-22).  The problem with that argument is that the false statements charged in Counts Six, Eight, and Nine were **not** the answers to the question "do you have a foreign bank account" – which is asked nowhere on Schedule B, as the government's purported "initial threshold question" is not a question at all but an instruction – but the answers to the specific question in line 7a that included the unidentified "page B-2 exceptions."  The government chose the precise question and answer to charge as false statements, and cannot now justify the jury's baseless verdicts by claiming that Dr. Hough gave a false answer to an entirely different, uncharged question.

   The second deflection is the government's statement that Dr. Hough knew that she was a beneficial owner of a foreign account and its income because she signed UBS account opening documents for the Patricia Hough account.  (Opp. at 22-23; Gov. Exh. 3R).  Putting aside that there was no evidence Dr. Hough ever read these UBS documents or had them explained to her before she signed them (and all the evidence was to the contrary), Dr. Hough being the beneficial owner of a foreign account has absolutely nothing to do with whether the "page B-2 exceptions" applied or Dr. Hough's knowledge of their application.  Indeed, line 7a contemplates that a taxpayer may be an owner of a foreign account yet still be able to answer "No" if one of the "page B-2 exceptions" applies.

   The third deflection is the government's attempt to blame Dr. Hough for its failure to introduce any evidence of the "page B-2 exceptions" because she supposedly did not tell Mr. Murtha about her foreign account, which would have resulted in him looking up the exceptions to properly fill out the form.  (Opp. at 21-22).  How does Mr. Murtha's lack of knowledge of the "page B-2 exceptions" and failure to explain them to Dr. Hough prove Dr. Hough's knowledge of these exceptions?  It is irrelevant why Mr. Murtha failed to provide Dr. Hough with any

information concerning the "page B-2 exceptions"; the fact remains that they were never defined, either to Dr. Hough or to the jury.

There was nothing in the prefatory language (or "threshold question") that somehow superseded the precise language of line 7a such that the government had to prove *only* that Dr. Hough had a foreign account and *not* that the "page B-2 exceptions" did not apply. Even if Dr. Hough "had a foreign account" in any of the charged years, her line 7a answer "No" would be truthful if any of the "page B-2 exceptions" applied. Since there was **no evidence** introduced as to what the "page B-2 exceptions" were in any year, the jury had no basis whatsoever to conclude beyond a reasonable doubt that the exceptions did not apply, that Dr. Hough's answers on line 7a were therefore false, or that Dr. Hough had actual knowledge that the answers were false at the time she signed her tax returns. Consequently, all convictions based on line 7a of Schedule B must be vacated.

B.   Substantial Underreporting of Income

Perhaps nowhere in the government's two opposition briefs is its ostrich mentality more evident than in its complete failure to respond to Dr. Hough's arguments regarding the specific facts that the government had to prove beyond a reasonable doubt before the jury could conclude that Dr. Hough knew she was substantially underreporting her taxable interest, ordinary dividends, and capital gains for a particular year. (Motion at 19-30). The government's response to the argument that there was no evidence that Dr. Hough owned New Vanguard or Top Fast? Ignore it.[11] The government's response to the undisputed fact that David Minchenberg advised Dr. Hough that gains in foreign accounts are not reportable as long as the funds remain offshore, thereby negating the willfulness element? Ignore it.[12] The government's response to the fact that there was no evidence that Dr. Hough received bank statements, was aware of the basis and

---

[11] Instead, the government cites evidence that it claims (wrongly) establishes Dr. Hough's ownership of the Saba Foundation and MUA, and then throws in (without citation to any evidence) that the same analysis applies to "the other nominee entities." (Opp. at 23-26).

[12] Instead, the government claims that Mr. Murtha and Agent Maurer both believed the income was reportable (Opp. at 26-27), but cites no evidence that either of them ever communicated that to Dr. Hough (which would have been particularly difficult in Agent Maurer's case since they never met).

sales price for each asset, or otherwise had **actual knowledge** of whether any interest, dividends or capital gains were earned at all? Ignore it.[13] The government's failure to address these key arguments constitutes an effective concession to each of the failures of proof detailed therein.[14]

V.     CONCLUSION

For the foregoing reasons and those set forth in Dr. Hough's motion, the rare remedy of a post-verdict judgment of acquittal on all counts, as sanctioned by Rule 29(b), is called for here.

Dated: December 16, 2013.

Respectfully submitted,

| | |
|---|---|
| **BRUCE L. UDOLF, P.A.** | **BINGHAM MCCUTCHEN, LLP** |
| Counsel for Defendant Hough | Counsel for Defendant Hough |
| Broward Financial Centre | Suite 2050 North, 1601 Cloverfield Blvd |
| 500 East Broward Blvd., Suite 1400 | Santa Monica, California 90404 |
| Fort Lauderdale, Florida 33394 | Tel: (310) 907-1000/ Fax (310) 907-2000 |
| Tel: (866) 951-9058/ Fax (954) 525-2134 | |
| | By:  /s/ Nathan J. Hochman |
| By: /s/ Bruce L. Udolf |       California Bar No. 139137 |
|       Fla. Bar No. 0899933 |       nathan.hochman@bingham.com |
|       budolf@udolflaw.com | By: /s/ Daniel A. Saunders |
| |       California Bar No. 161051 |
| |       Daniel.saunders@bingham.com |

---

[13] The government's utterly nonresponsive argument is that Dr. Hough "was aware that these accounts were investment accounts intended to earn money." Of course, the fact that an account was *intended* to earn money is not proof that the owner knew that it *did* in any particular year. For all Dr. Hough knew, those accounts generated negative total income each year (as Agent Maurer concluded they did in 2006), leading to her overreporting her total income rather than underreporting it. The point is that the record is devoid of any direct or circumstantial evidence establishing Dr. Hough's actual knowledge of any interest, dividends or capital gains earned by the foreign accounts.

[14] The government ends its opposition brief with two final false assertions. First, the government states that Fredrick's February 2004 email to Luetolf requesting a split of the Fredrick/Hough account, with which Dr. Hough concurred in March 2004, is "[a] critical piece of evidence demonstrating knowledge of not only the income earned in the accounts, but of the object of the conspiracy." (Opp. at 27-28). The government fails to explain how that email demonstrates either, presumably for the simple reason that it contains no discussion about either income earned by the accounts or defrauding the IRS. Second, the government claims that Dr. Hough's assertion that there was no evidence she knew the funds used to make any purchases came from the New Vanguard or Top Fast accounts (Motion at 24 n.19) is "wholly false" because of a November 2008 Fredrick email on which she was copied stating that $200,000 was being wired from "our overseas bank" for the purchase of the Asheville land. (Opp. at 28). That email contains no reference to either the New Vanguard or Top Fast overseas account (the only accounts on which Agent Maurer relied for her 2008 income adjustment calculations), and there was no evidence that Dr. Hough participated in or directed the $200,000 wire transfer.

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing was filed electronically using the Court's CM/ECF system, on this 16th day of December, 2013.

By: /s/ Bruce L. Udolf