IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Case No. 2:13-cr-00072-FtM-JES-UAM |
| | ) | |
| PATRICIA LYNN HOUGH, | ) | |
| | ) | |
| Defendant. | ) | |

## GOVERNMENT'S SENTENCING MEMORANDUM

COMES NOW the United States, by and through counsel, in accordance with 18 USC §3553(a) and the United States Sentencing Commission, Guidelines Manual ("Guidelines" or "USSG") §6A1.2 (Nov. 2013), and files this Sentencing Memorandum.  The United States submits that the Probation Officer correctly calculated the Sentencing Guidelines level to be 28, which results in a 78 to 97 months Guidelines range, and that the Court should impose a sentence within that range.  Additionally, the United States requests that this Court order as a part of the sentence (1) restitution in the amount $15,518,382, corresponding to the tax loss for the conviction on Count 1 of the indictment, and (2) payment of costs of prosecution in the amount of $42,732.27.

## I.    BACKGROUND[1]

On October 24, 2013, Defendant Hough was found guilty of Counts 1, 6, 7, 8, and 9 of the Indictment.  Dkt. #114.  On February 21, 2014, this Court granted the defendant's Motion for Judgment of Acquittal pursuant to Rule 29(c) as to Count 7 and vacated the jury's verdict as to that Count.  Dkt. #157.

---

[1] The government incorporates Paragraphs 7 through 45 of the Presentence Report ("PSR") and its Response to Defendant Hough's Motion for Judgment of Acquittal Pursuant to Fed. R. Crim. P. 29(c) (Dkt. #144) herein, as they provide thorough recitations of all the relevant facts, evidence and testimony of this case.

1

## II.   OBJECTIONS AND COMMENTS TO THE PRESENTENCE REPORT[2] ("PSR")

The government's only objection to the PSR is to Paragraph 115.  *See* PSR ¶ 116.  The government objects to a sentence below the advisory guideline range.  *See infra.*

Defendant Hough presented extensive objections to the Offense Conduct section of the draft PSR.  PSR ¶¶ 7-45.  Those general objections were founded upon the false premise that Defendant Hough is innocent of the crimes of which she was charged and convicted.  At the conclusion of trial, Defendant Hough was convicted of conspiracy to defraud the Internal Revenue Service ("IRS") (Count 1) and four counts of filing false individual income tax returns for 2005, 2006, 2007 and 2008 (Counts 6-9).  However, the Court later granted Defendant Hough's Motion for Judgment of Acquittal as to Count 7.  *See* Dkt. #157.

The Court's Order rendered Defendant Hough's objections to the PSR moot.  In its ruling, the Court stated "[i]t is the Court's view that the verdicts of guilty are not against the weight of the evidence.  Having heard the evidence and making independent credibility determinations, the Court fully agrees with the guilty verdicts in this case."  Dkt. #157 at page 9.  Defendant Hough's general objections, by their very nature, improperly ask this Court to call into question the guilty verdict in this case.  "A district court cannot use the post-trial sentencing process to call a jury's verdict into question."  *See United States v. Schlaen*, 300 F.3d 1313, 1318 (11th Cir. 2002), *quoting United States v. Costales*, 5 F.3d 480, 488 (11th Cir. 1993).

Defendant's objections related to a "wholly fictitious, single-minded entity[3] entitled 'Hough and Fredrick'" and that the PSR should be specific and accurate in identifying the acts

---

[2] The government incorporates by reference its March 20, 2014 Response to Defendant's Objections to Draft PSR, which was attached to the final PSR issued on April 8, 2014.  Dkt. #159.  In addition, the government reserves the right to respond to any objections made by Defendant Hough to the final PSR or any additional sentencing arguments made after the filing of this pleading.

2

she performed, improperly urges this Court to call into question the guilty verdict in this case, but more importantly ignores the fact that Defendant Hough was convicted of conspiracy and the basic underpinnings of conspiracy law.   Parties to a conspiracy may be liable for acts committed by a co-conspirator during the course of and in furtherance of the conspiracy, even if the party is not aware of or does not participate in that act.  *See Pinkerton v. United States*, 328 U.S. 640, 647 (1946); *United States v. Schlei*, 122 F.3d 944, 968 (11th Cir. 1997), *citing United States v. Mothersill*, 87 F.3d 1214, 1218 (11th Cir. 1996); *United States v. Hansen*, 262 F.3d 1217, 1246 (11th Cir. 2001).  Defendant Hough was convicted of conspiring with Defendant Fredrick to defraud the IRS.  Therefore, acts of Fredrick during the course of and in furtherance of the conspiracy are in fact attributable to Defendant Hough as they were co-conspirators.

Defendant Hough, since 2001, has resided at a home in Englewood, Florida.  In December 2013, the home was sold for $2.2 million.  PSR ¶¶ 75 and 92.  Following the sale of the property, Defendant Hough wired the entire proceeds of the sale – $1,585,745.76 – to the "Saba School of Medicine Foundation Guatemala." *See* Exhibit 1.  On December 2, 2013, Defendant Hough wrote her real estate attorney "[p]lease accept this letter as **our** authorization to wire transfer the sum of One Million Five Hundred Eight Five Thousand Seven Hundred Forty Five Dollars and 76/100 ($1,585,745.76), **our** net proceeds from [sic] of [], Englewood, Florida 34223, to satisfy un-recorded debt/liens on the subject property to" a bank account in the

---

(… continued)

[3] Defendant Hough objects to the use of "Hough and Fredrick" as a single-minded entity, yet when Defendant Hough wired transferred more than $1.5 million to the Foundation on December 2, 2013, she used the word "our" to describe the net proceeds and the authorization.  Defendant Hough also signed the document on behalf of Defendant Fredrick pursuant to a power of attorney.  The conduct proven at trial and Defendant Hough's post-conviction actions corroborate and again prove that she and Fredrick acted in concert on behalf of the other during the course of the conspiracy.  In fact, the government would assert that the conspiracy is still ongoing based upon this recent wire transfer.

11326565.1

name of Saba School of Medicine.  *Id.* (emphasis added).  The letter was signed by Patricia

Hough, individually, and as power of attorney for Fredrick.  *Id.*

Defendant Hough did not provide any further explanation or evidence to Probation to

document what the "un-recorded debt/liens" on the subject property are[4].  It is astonishing that

Defendant Hough would conduct this transfer in a manner that mimics she and Fredrick's prior

acts taken to further the conspiracy – creating bogus obligations using nominee entities in order

to hide income and assets from the IRS.[5]  Even if there were documentary proof of these

"unrecorded debt/liens", Defendant Hough owns and controls the Foundation.  Therefore, she is

in reality "borrowing" money from herself and there is no basis to conclude that this was a

legitimate loan.  Defendant Hough's transfer of more than $1.5 million, only one month after her

conviction and prior to sentencing, removed significant assets from the reach of both the Court

and the IRS which could have been used to satisfy any potential restitution obligation, her

outstanding tax liabilities, or other fines/costs which might be imposed by this Court.

## III.     GUIDELINES CALCULATION

Following the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220, 264

(2005), the Sentencing Guidelines are now advisory, though "the district court remains obliged

to 'consult' and 'take into account' the Guidelines in sentencing" and to make an accurate

guidelines calculation.  *United States v. Crawford*, 407 F.3d 1174, 1178-79 (11th Cir. 2005).

---

[4] The government questions what lender would loan more than $1.5 million to a borrower without terms or security, thus further establishing that this is nothing more than an obstructive transfer.
[5] The government submits that in light of Defendant Hough's transfer of more than $1.5 million to the Foundation after her conviction, a sentence of imprisonment is necessary for specific deterrence.

4

A. *The Advisory Guidelines Were Properly Calculated*

    1. <u>Tax Loss</u>

The burden of proof at sentencing is a preponderance of the evidence standard. *United States v. Dabbs*, 134 F.3d 1071, 1081 (11th Cir. 1998). The tax loss, including relevant conduct, is $15,518,382. PSR ¶ 45 and Government Exhibit 2.

Section 2T1.1(a) and 2T1.9 are the Guidelines applicable to conspiracy to impede, impair obstruct or defeat tax in violation of 18 USC §371 and filing false tax returns in violation of 26 USC §7206(1). Both sections refer the sentencing court to Section 2T4.1 for a determination of the base offense level. Section 2T4.1 links the offense level to tax loss. Based on a tax loss of $15,518,382 for 2003 through 2008, Defendant Hough's base offense level is a 26. USSG §2T4.1(K); PSR ¶ 51.

In calculating the tax loss attributable to a defendant, the Court should consider all relevant conduct as defined in USSG §1B1.3(a)(1)(A) and (2). Relevant conduct for tax loss is determined from the reasonably foreseeable conduct of all co-actors, not just the defendant's own conduct. *United States v. Bradley*, 644 F.3d 1213, 1296 (11th Cir. 2011). In addition, the Guidelines clearly provide that in determining the total tax loss attributable to the offense "all conduct violating the tax laws should be considered as part of the same course of conduct or common scheme or plan unless the evidence demonstrates that the conduct is clearly unrelated." USSG §2T1.1, Commentary (n2).

At a sentencing hearing, the court may consider information, including reliable hearsay, regardless of the information's admissibility at trial, provided that there are sufficient indicia of reliability to support its accuracy. *United States v. Ghertler*, 605 F.3d 1256, 1269 (11th Cir. 2010) and USSG § 6A1.3. Furthermore, conduct that was not charged in the indictment, that

11326565.1

was not found by the jury, and that was not admitted by the defendant, may also be considered as relevant conduct, so long as it is proven by a preponderance of the evidence. *Id.*

Because the burden of proof at sentencing is different than at trial, the Guidelines also allow for the inclusion of acquitted conduct in the determination of the Guidelines range. "[A] jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proven by a preponderance of the evidence." *United States v. Watts,* 519 US 148, 157 (1997); *United States v. Campbell*, 491 F.3d 1306, 1314 (11th Cir. 2007) (affirming the district court's inclusion of acquitted conduct when calculating the Guidelines range in a tax case); *United States v. Faust*, 456 F.3d 1342 (11th Cir. 2006); USSG §6A1.3, comment. (Background).

Although the Court found that the evidence was insufficient to prove Defendant Hough's guilt of Count 7 beyond a reasonable doubt, the evidence the government has presented herein as well as the expected testimony of Revenue Agent Maurer at sentencing far exceeds the lower evidentiary standard of proof by a preponderance of the evidence. Therefore, the government submits that the total tax loss related to Counts 1 and 6-9 of the Indictment should be included in calculating the tax loss pursuant to USSG § 2T4.1.

2. Sophisticated Means Enhancement

An additional two level enhancement is properly included under USSG §2T1.1(b)(2) for sophisticated means. *See* PSR ¶ 52. As Application Note 5 to USSG §2T1.1(b)(2) states:

> 'Sophisticated means' means especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense. Conduct such as hiding assets or transactions, or both, *through the use of fictitious entities, corporate shells, or offshore financial accounts* ordinarily indicates sophisticated means.

11326565.1

(emphasis added).  In this case, Defendant Hough used fictitious entities and corporate shells including the Saba University School of Medicine Foundation, New Vanguard, Top Fast, Ample Dynamic, Round Hill Project Holding Company, and others, and offshore financial accounts, to conceal her 1) ownership and control over the medical schools, 2) financial interest in and signature authority over the offshore accounts, 3) the profits of the medical schools, 4) the ownership of substantial real and personal property, and 5) all of the income generated from the offshore accounts.

## IV.      SENTENCING FACTORS UNDER 18 USC §3553(a)

The Court must consider all of the sentencing considerations set forth in 18 U.S.C. §3553(a).  Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.  18 U.S.C. § 3553(a).  A thorough consideration of all of the sentencing factors set forth in 18 U.S.C. § 3553(a) suggests that the most appropriate sentence is one within the advisory Guidelines range of 78-97 months.

11326565.1

A. ***Nature and Circumstance of the Offense***

Defendant Hough hid millions of dollars in secret offshore accounts for at least eight years, used at least five different nominee entities, in some cases with nominee directors and signatories, to conceal her ownership and income from the IRS, lied to the government and her return preparer every year between 2001 and 2008 about the existence of the offshore accounts, and conspired with her husband to underreport their income, in total more than $15 million in taxes for just 2003 through 2008 owed by Defendants Hough and Fredrick.  Her crimes were deliberate and calculated – the very sort that most need to be deterred.  Defendant Hough's crimes dwarf the vast majority of tax crimes, both in the timeframe over which the fraud stretched and in the total harm to the US Treasury, including those for which lesser defendants are sent to prison.

"Tax offenses, in and of themselves, are serious offenses; however, a greater tax loss is obviously more harmful to the treasury and more serious than a smaller one with otherwise similar characteristics."  USSG §2T1.1, comment. (backg'd).  The tax loss in this case, $15,518,382, is a very significant amount, and is the type of loss that the United States Sentencing Commission believes is a serious offense.

Criminal tax prosecutions require the government to commit significant investigative and prosecutorial resources.  Tax crimes involving offshore assets are particularly difficult for the United States to detect and investigate, as other countries do not have the same type of tax reporting requirements as do domestic banks and financial institutions.  Indeed, in countries like Switzerland, banking secrecy laws forbid banks from disclosing any information about an account holder except in narrow circumstances.  Estimates of the value of lost tax revenue based

11326565.1

on offshore individual income tax evasion range from $23 billion to $100 billion each year.[6]
Clearly, tax fraud using offshore financial accounts is a serious offense.

On February 18, 2009, UBS AG entered into a deferred prosecution agreement with the
United States Department of Justice.  *United States v. UBS AG*, 09-CR-60033 (S.D. FL), Doc.
20.  In order to further conceal their income and assets from the IRS, they caused their assets to
be moved from UBS to other offshore financial institutions and opened additional offshore
financial accounts at Bank Alpinum.  *See* Government Trial Exhibits (GXE) 4E and 4I (Bank
Alpinum Account Opening Documents for Ample Dynamic Trading and Top Fast Finance Ltd.
dated June 15, 2009 identifying Defendant Hough and Fredrick as beneficial owners).

Defendant Hough's long-running and repetitive conduct coupled with the size of the tax
loss, are aggravating factors.  Defendant Hough was well positioned and capable of paying the
more than $15 million in taxes that she and Fredrick owed.  Instead, she made a conscious effort,
year after year, to file false tax returns which failed to report her interest and dividend income
earned in the offshore financial accounts, the existence of the offshore financial accounts, the
profits from the schools, and in 2007, the sale of the schools.

**B.  *History and Characteristics of the Defendant*[7]**

There is nothing in Defendant Hough's upbringing or background that excuse or justify,
much less explain, her criminal conduct.  No personal or economic circumstances compelled her
to commit the offense.  Although leading an otherwise law abiding existence, Defendant Hough
engaged in a multi-year conspiracy to defraud the IRS.  Defendant Hough, by her own

---

[6] Gravelle, Jane, "Tax Havens: International Tax Avoidance and Evasion," Congressional Research Service Report
for Congress, Jan. 23, 2013, at 23-24, *available at* http://www.fas.org/sgp/crs/misc/R40623.pdf.
[7] The government recognizes that Defendant Hough does not have a criminal history.  However, given her recent
transfer of $1.5 million to the Foundation in Guatemala, the government cannot confidently state that she is unlikely
to reoffend.  Her lack of criminal history should not result in much, if any, departure from the Guidelines range.

11326565.1

admission, is an intelligent, well-educated individual who filed her tax returns separately from her husband and dealt directly with her return preparer by compiling the necessary information to prepare her tax return.

While Defendant Hough may not come from a privileged upbringing, she is extraordinarily well educated, having obtained not only her Bachelor of Arts degree, but also a Master of Social Work, a Doctorate Degree in Sociology, and her medical degree. *See* PSR ¶¶ 83, 84, 85, 86. She is also the recipient of numerous academic honors and awards. *See* PSR ¶ 89. Defendant Hough has a very successful professional background, including her employment as Director of Accreditation for the medical schools, Senior Physician with the Florida Department of Health, and positions supervising medical students and teaching. *See* PSR ¶¶ 90. In fact, Defendant Hough's adult professional life has included every advantage both in terms of education and financial reward. Yet, she wanted more and sought to avoid paying her fair share.

The government does not dispute that Defendant Hough has made charitable donations, either monetary or through her time, to a number of different causes. However, charity does not excuse her failure to report between 2003 and 2008 at least $60 million in income from the operation and sale of her and her husband's schools and from interest and dividend income earned in the offshore financial bank accounts. In fact, the government submits that Defendant Hough's failure to pay over $15 million in taxes between just 2003 and 2008 is what has allowed her to be so charitable, both with her time and with her money.

According to the Guidelines, "[c]ivic, charitable, or public service; employment-related contributions; and similar prior good works are not ordinarily relevant in determining whether a departure is warranted." USSG §5H1.11. Several Circuits have noted that, while charitable works may be considered as a §3553(a) factor despite the policy statement disfavoring such a

10

departure, the "charitable works must be exceptional before they will support a more-lenient sentence." *United States v. Repking*, 467 F.3d 1091, 1095-96 (7th Cir. 2006) (vacating as unreasonable a one-day sentence given when the court departed downwards from the advisory Guidelines range of 41 to 51 months' imprisonment based on defendant's prior charitable works and repayment of restitution).   Additionally, as the Third Circuit has explained, "[w]hether good works qualify as exceptional is evaluated with reference to the offender's wealth and status in life" and that "more is expected of high-level business executives who enjoy sufficient income and community status so that they have the opportunities to engage in charitable and benevolent activities." *United States v. Cooper*, 394 F.3d 172, 176-77 (3d Cir. 2005) (quotations omitted).

Further, the Third Circuit instructed that "we must be mindful that individuals who donate large sums because they can should not gain an advantage over those who do not make such donations because they cannot." *Id*. at 177 (quotation omitted).  "Wealthy people commonly make gifts to charity.  They are to be commended for doing so but should not be allowed to treat charity as a get-out-of jail card." *United States v. Vrdolyak*, 593 F.3d 676, 682 (7th Cir. 2010) (holding that the sentencing court should have given weight to the defendant's wealth when evaluating his charitable contributions).

While most of the letters in support of Defendant Hough are no doubt heartfelt and genuine with respect to each individuals' own experiences with Defendant Hough, it is clear that none of these individuals have any real insight or knowledge into what Defendant Hough's particular role was in the conduct for which she was convicted or her personal finances.  The government would note though that several of the letter-writers, including her own sister, describe the Foundation as being hers.  *See* Dkt. #150-1 at p. 8-9, Letter of Diane Baker ("Pat also engaged with that organization and helped arrange project and financial support for Predisan

11

through a foundation that I believe she had established."); Dkt. # 154-1 at p. 18, Letter of

William C. Heymann ("I am aware that she also made at least annual trips to Central America

working with patients in her Foundation."); *Id*. at p. 36-37, Letter of Charlene Varga ("She has a

charitable foundation in Guatemala…").

C.   ***The Need to Reflect the Seriousness of the Offense, to Promote Respect for the Law,
and to Provide Just Punishment for the Offense***

A Guidelines sentence will reflect the seriousness of the offense and promote respect for

the law.  Defendant Hough carried on a multi-year conspiracy that robbed the US Treasury of

more than $15 million.

The government submits that the tax loss of $15 million is actually understated as it only

accounts for taxes from 2003 through 2008.  Defendant Hough has owned and operated the

medical schools from the late 1990s and no taxes have ever been paid on any of the schools'

profits.  This decades' long scheme to defraud the IRS is a serious violation of the tax laws.

Defendant Hough's crimes were neither impulsive nor isolated but required sophisticated

transactions, coordination with foreign bankers, annual lies to the federal government, and by her

own admissions, trips to Switzerland.  Defendant Hough made calculated decisions to cheat, over

and over again, despite being asked by her professional return preparer whether she had an

offshore bank account.

Moreover, while the government did not argue for an obstruction enhancement pursuant

to USSG §3C1.1, the government submits that Defendant Hough's wholly incredible testimony

and her post-conviction wire transfer are relevant to the Court's imposition of a Guidelines

sentence.  Defendant Hough's tale of asset protection and "caretaking" of the Foundation's assets

should be considered by the Court in its analysis of the seriousness of the offense.  *See* Trial

12

Transcript October 22, 2014, page 33-34.  The jury rejected this tale by returning their guilty verdict and this Court should consider it as well in imposing a Guidelines sentence.

**D.  *The Need to Afford Adequate Deterrence***

As a result of the significant resources required to mount a criminal tax prosecution, criminal tax prosecutions are rare.  The introductory commentary to the section of the Guidelines dealing with tax crimes notes that, "[b]ecause of the limited number of criminal tax prosecutions relative to the estimated incidence of such violations, deterring others from violating the tax laws is a primary consideration underlying these guidelines."  USSG §2T (intro comment.).  Where the incidence of prosecution is lower, the level of punishment must be higher to obtain the same level of deterrence.  *See generally*, Louis Kaplow and Steven Shavell, Fairness Versus Welfare, 114 Harv. L. Rev. 961, 1225-1303 (2001).

Furthermore, evading taxation by hiding money offshore is a quintessentially lucrative and difficult-to-detect activity, which is precisely when the need for general deterrence is most compelling.  *See United States v. Heffernan*, 43 F.3d 1144, 1149 (7th Cir. 1994) ("Considerations of (general) deterrence argue for punishing more heavily those offenses that either are lucrative or are difficult to detect and punish, since both attributes go to increase the expected benefits of a crime and hence the punishment required to deter it.");  *see also United States v. Hassebrock*, 663 F.3d 906, 922 (7th Cir. 2011) (affirming as reasonable a within-Guidelines 32 month sentence for a tax evader when the district court explained that "a sentence of probation would not promote respect for the law, but encourage people to flaunt it"); *United States v. Peppel* 707 F.3d 627, 637 (6th Cir. 2013); *United States v. Amico*, 416 F.3d 163, 169 (2d Cir. 2005); *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) (holding that a seven-day sentence in a $1.3 billion securities fraud case "utterly fails to afford adequate

11326565.1

deterrence" and "not only fails to serve the purposes of §3553, but even worse, undermines those purposes"). Thus, in order to provide adequate general deterrence, the sentence in complex tax crimes such as the one committed by Defendant Hough must be significant. The punishment must also be more significant when the benefits to those committing the crimes are more significant. The sentence recommended by the Guidelines is significant enough to deter would-be tax cheats who might otherwise choose to gamble that if they hide funds in offshore bank accounts they will not be caught.

General deterrence is an essential means of minimizing the ever-increasing amount of money estimated to be lost each year through tax fraud. The United States tax system relies on voluntary compliance. A recent IRS study estimates that only 83.1% of individuals are compliant, leaving a yearly tax gap of over $385 billion dollars in unreported and uncollected taxes.[8] "IRS Releases New Tax Gap Estimate; Compliance Rates Remain Statistically Unchanged from Previous Study," Jan 6, 2012; s*ee also United States v. Gardellini*, 545 F.3d 1089, 1097 (D.C. Cir. 2008). "Studies have shown that salient examples of tax-enforcement actions against specific taxpayers, especially those that involve criminal sanctions, have a significant and positive deterrent effect." Joshua D. Blank, *In Defense of Individual Tax Privacy*, 61 Emory L.J. 265, 322 (2011-2012).

These studies emphasize the impact that noncompliance with the tax code has on the US Treasury and the deterrent impact prison sentences have on other potential tax scofflaws. Hundreds of billions of dollars are lost annually because people like Defendant Hough choose to shirk their responsibilities as American taxpayers. Widespread noncompliance with the Internal Revenue Code is an ongoing problem that merits every court's consideration when sentencing

---

[8] Available at http://www.irs.gov/uac/IRS-Releases-New-Tax-Gap-Estimates;-Compliance-Rates-Remain-Statistically-Unchanged-From-Previous-Study.

11326565.1

defendants for committing tax offenses.  Severe sentences must be given in cases such as this so that others are forewarned of the consequences for engaging in such complex tax crimes.

Indeed, the Fourth Circuit has explicitly endorsed the importance of incarcerating tax scofflaws as a means of general deterrence:

> Given the nature and number of tax evasion offenses as compared to the relatively infrequent prosecution of those offenses, we believe that the Commission's focus on incarceration as a means of third-party deterrence is wise.  The vast majority of such crimes go unpunished, if not undetected.  Without a real possibility of imprisonment, there would be little incentive for a wavering would-be evader to choose the straight-and-narrow over the wayward path.

*United States v. Engle*, 592 F3.d 495, 502 (4th 2010).  "[D]eterrence is a primary consideration in choosing the appropriate sentence for any tax crime, newsworthy or not."  *United States v. Gardellini*, 545 F.3d 1089, 1098 (D.C. Cir. 2008) (dissent, Williams J.).  The government cannot ensure compliance with the Internal Revenue Code if the general public believes there are no repercussions for failing to comply with tax laws and regulations.  Sentencing Defendant Hough to a significant term of incarceration will send a message to others that systematic efforts to cheat on one's taxes will be met with harsh punishment.

### E.  *The Need to Avoid Unwarranted Sentencing Disparities*

Approximately 100 criminal cases[9] have resulted from the government's offshore Swiss Bank program.  There have been approximately 60 guilty pleas and sentences and a limited number of trials.[10]  *See* "Update on the Department of Justice's and Internal Revenue Service's

---

[9] Included in this number are the indictments of numerous offshore bankers who are, at this time, outside the reach of the United States, including Beda Singenberger.

[10] *United States v. Kerr et al.*, 11-CR-02385 (D. Ariz.) (Two defendants sentenced to 10 months in prison after the Court found tax loss to be $0.); *United States v. Ahuja*, 11-CR-135 (E.D. Wisc.) (Three years probation, though the government calculated the Guidelines range to be 41-51 months.  The government has filed a protective notice of appeal.); *United States v. Simon*, 727 F.3d 682 (7th Cir. 2013) (sentenced to 72 months in prison); *United States v.* (continued...)

11326565.1

Criminal and Civil International Enforcement Program: Don't Let the Statistics on Sentencing Fool You," Steven Toscher, Esq., February 10, 2014.

Each case turns on independent and unique facts; Defendant Hough's case differs significantly from those who received lesser sentences.   The need to avoid unwarranted sentencing disparities applies "among defendants with similar records who have been found guilty of similar criminal conduct."   18 USC §3553(a)(6); *see also United States v. Martin*, 455 F.3d 1227, 1241 (6th Cir. 2006).   Defendant Hough's case is most analogous to *United States v. Mauricio Cohen Assor and Leon Cohen Levy*, 10-CR-60159 (S.D. FL).   In the *Cohen* case, the Cohens, a father and son, were convicted after a month-long trial, of conspiring to defraud the IRS and filing false tax returns.   The evidence at trial established that the defendants used nominees and shell companies formed in tax haven jurisdictions, including the Bahamas, the British Virgin Islands, Panama, Liechtenstein, and Switzerland, to conceal their assets and income from the IRS.   The Cohens were the developers and owners of several residential hotels with locations throughout the world.   In 2000, the defendants sold their New York hotel and generated $33 million in proceeds which they directed to be transferred to their offshore bank account in Switzerland; this bank account was in the name of a Panamanian company.   The income earned from the sale of the hotel was never reported on the Cohens' tax returns.   *See* Government's Sentencing Memorandum and Response to Defendants' Objection to the Pre-sentence Investigation Report, 10-CR-60159 (S.D. FL 2011) Doc. No. 224.   The tax loss in the *Cohen* case exceeded $10 million.   In addition to enhancements not applicable herein, the court applied a two-level increase for sophisticated means and sentenced each defendant to ten years in

---

(… continued)
*Cohen, et al*., 10-CR-60159 (S.D. FL) (10 years); *United States v. Desai*, 11-CR-846 (N.D. Cal.) (sentencing pending).

11326565.1

prison.  The government submits that Defendant Hough's conduct and Guidelines range is most comparable to the Cohens and her sentence should be as well.

The government acknowledges that a number of defendants convicted of crimes related to their failure to report foreign bank accounts were given probationary terms.  However, in the vast majority of those cases, the defendants are not similarly situated to Defendant Hough because: 1) the undeclared account balance and/or the tax loss was much lower than Defendant Hough's; 2) the defendant, unlike Defendant Hough, cooperated with the government and provided information about their foreign bank, bankers, and/or asset managers; 3) the defendant pleaded guilty and accepted responsibility for his/her conduct; and/or 4) the defendant's advanced age was a mitigating factor.

For nearly all of the cases discussed in Defendant's Objections to the Draft PSR, the tax loss was either lower than Defendant Hough's tax loss, or there was no tax loss at all.  *See, e.g., United States v. Igor Olenicoff*[11], 07-CR-227 (C.D. CA), Doc. 11 at 8 (plea agreement contains a Guidelines range of 6, based on no tax loss under USSG § 2T1.1(a)(2)); *United States v. Jules Robbins*, 10-CR-333 (S.D. NY), Doc. 10 (no tax loss); *United States v. Paul Zabczuk*, 10-CR-60112 (S.D. FL), Doc. 19 (tax loss of $217,597); *United States v. John McCarthy*, 09-CR-784 (C.D. CA), Doc. 5 (tax loss between $200,000 and $400,000).

Additionally, in at least five[12] of the eleven cases discussed in Defendant's Objections to the Draft PSR, the government recommended a reduction under USSG § 5K1.1 due to the

---

[11] The *Olenicoff* case is also an outlier because Olenicoff was charged in 2007 and sentenced in early 2008, prior to the discovery of the scope and depth of the scheme to evade taxes perpetrated by UBS AG and its customers.  Because the scheme was largely unknown, unlike most other offshore defendants, Olenicoff's Guidelines range did not include a two-level enhancement for sophisticated means.  *See* Doc. 11 at 8.

[12] For the following cases, neither the plea agreement nor any sentencing memoranda are part of the publicly-available documents on PACER, so it is unknown whether or not motions were made pursuant to U.S.S.G. § 5K1.1: *United States v. Jules Robbins*, 10-CR-333 (S.D. NY); *United States v. Ernest Vogliano*, 10-CR-327 (S.D. NY) and *United States v. Jeffrey Chatfield*, 10-CR-4546 (S.D. CA).

substantial cooperation of the defendant.[13]   In these cases, defendants provided information about the banks that held their undeclared accounts, as well as the bankers and independent asset managers who assisted them in opening and maintaining the undeclared accounts.  Defendant Hough has not provided any such information.

Additionally, Defendant Hough's review of offshore cases fails to reflect: (1) the Guidelines ranges of the defendants, (2) the amount of tax loss, and (3) whether or not the government moved for a sentencing reduction under USSG § 5K1.1.  Therefore, it is impossible to tell from her review whether or not any comparison between those defendants and Defendant Hough would be warranted.  The detailed information contained herein, establishes that Defendant Hough is not similarly situated to any of the defendants described in her Objections to the Draft PSR, because she did not plead guilty, did not cooperate against any other targets or defendants, did not pay an FBAR penalty, and in nearly every case, Defendant Hough caused a tax loss in excess of those reviewed.

Finally, Defendant Hough's review of cases involving unreported offshore accounts fails to include those defendants who did receive terms of incarceration.[14]   There are even a number

---

[13] *See, e.g., United States v. Stephen Rubenstein*, 09-cr-60611 (S.D. FL), Doc. 51 (government recommended a 33% reduction in the defendant's Guidelines range of 18-24 months); *United States v. John McCarthy*, 09-CR-784 (C.D. CA), Docs. 5, 32 (government made a sealed filing requesting a departure under § 5K1.1 from the Guidelines range of 24-30 months); *United States v. Juergen Homann*, 09-CR-724 (D. NJ), Docs. 4, 23 (government filed motion for downward departure under § 5K1.1 from Guidelines range of 30-37 months); *United States v. Paul Zabczuk*, 10-CR-60112 (S.D. FL), Doc. 29 (government's § 5K1.1 motion recommending a 33% reduction in the defendant's Guidelines range of 24-30 months); *United States v. Andrew Silva*, 10-CR-00044 (E.D. VA), Docs. 13, 14 (government moved under § 5K1.1 for a 50% reduction in the defendant's Guidelines range of 6-12 months).

[14] *See, e.g., United States v. David P. Alan*, 10-CR-160 (W.D. PA), Docs. 1, 64 (sentencing defendant to 21 months' imprisonment following a guilty plea to one count of tax evasion based on defendant's diversion of pre-tax income to an undeclared account in Nevis); *United States v. Arthur Allen Ferdig*, 09-CR-348 (C.D. CA), Docs. 24, 37, 43 (sentencing defendant to 18 months' imprisonment following a guilty plea to tax evasion based on defendant's diversion of corporate income to an undeclared account in Dominica, causing a tax loss of $148,000); *United States v. Mauricio Cohen Assor et al.*, 10-CR-60159 (S.D. FL), Docs. 224, 240, 241  (defendants each sentenced to 120 months' incarceration following a jury verdict of guilty on a number of tax charges and conspiracy, including charges based on defendants' concealment of assets and income in offshore entities and undeclared foreign bank (continued...)

18

of defendants who pleaded guilty to charges related to undeclared foreign bank accounts that

were sentenced to terms of imprisonment, including the following defendants:

- *United States v. Peter Troost*, 13-CR-185 (N.D. IL): Defendant pleaded guilty to one count of tax evasion in violation of 26 USC § 7201 in connection with his failure to report income from foreign bank accounts on his tax returns.  Doc. 12.  According to the plea agreement, the high balance of the accounts was $6,500,943, and the total tax loss, including relevant conduct, was $1,039,343.  Doc. 12 at 6-7.  Troost was sentenced to a term of imprisonment of one year and one day.  Doc. 19.

- *United States v. Berg*, 12-CR-877 (N.D. CA): Defendant pleaded guilty to one count of failure to file an FBAR in violation of 31 USC § 5324 in connection with his failure to report foreign bank accounts.  Doc. 15.  According to court documents, the total tax loss, including relevant conduct was $270,757 and Berg paid an FBAR penalty of $287,896, representing 50% of the high balance of the accounts.  Doc. 8.  The government filed a motion under USSG 5K1.1 based on Berg's cooperation and Berg was sentenced to a term of imprisonment of one year and one day.  Doc. 15 and 24.

- *United States v. Frederico Hernandez*, 10-CR-334 (S.D. NY): Defendant pleaded guilty to five counts of filing false tax returns, in violation of 26 USC § 7206(1), in connection with his failure to report income from foreign bank accounts on his tax returns.  Doc. 11 at 7.  According to the government's sentencing memo, the high balance of the accounts was approximately $8.8 million, and the tax loss, including relevant conduct, was $510,193.  Doc. 11 at 3-4.   Hernandez was sentenced to a term of imprisonment of one year and one day.  Doc. 12.

- *United States v. Richard Werdiger*, 10-CR-325 (S.D. NY).  Defendant pleaded guilty to one count of conspiracy, in violation of 18 USC § 371, and two counts of filing a false tax return, in violation of 26 U.S.C. § 7206(1), in connection with his failure to report income from his undeclared accounts on his tax returns.  Doc. 30.  According to the indictment, the highest account balance was $7,134,230, and according to a Department of Justice press release, the tax loss was "nearly $400,000."   Doc. 2.  Defendant was sentenced to a term of incarceration of one year and one day.  Doc. 30.

- *United States v. Jack Barouh*, 10-CR-20034 (S.D. FL): Defendant pleaded guilty to one count of filing a false tax return in violation of 26 USC § 7206(1) based on his failure to report income from his foreign accounts.  Doc. 6.  According to the plea agreement statement of facts, the highest account balance was $10,017,613,

(… continued)

accounts, causing a tax loss of over $10 million for each defendant); *United States v. Jeffrey Chernick*, 09-CR-60182 (S.D. FL), Docs. 23, 27 (sentenced to 10 months' imprisonment following a guilty plea to filing a false tax return).

11326565.1

and the tax loss, including relevant conduct, was $736,269.  Doc. 7 at 3-4.  The government filed a motion under USSG § 5K1.1 based on defendant's cooperation, and defendant was sentenced to 10 months' imprisonment.  Docs. 18, 31.

- *United States v. Sean and Nadia Roberts*, 11-CR-199 (E.D. CA): Defendants pleaded guilty to one count of filing a false tax return in violation of 26 USC § 7206(1) based on their failure to report income from their foreign accounts.  Docs. 6 and 7.  According to the plea agreement statement of facts, the tax loss was $709,675.  *Id.*  The government filed a motion under USSG §5K1.1 based on defendants' cooperation, and defendants were sentenced to a year and a day in prison.  Docs. 52, 58 and 59.

The above list is not exhaustive, as other defendants who failed to report their undeclared foreign accounts have also received sentences of incarceration.  Additionally, when seeking to avoid unwarranted sentencing disparities, the Court should look not only at other cases involving offshore tax fraud, but should also look to tax fraud cases generally.  After all, defendant is no different than any other tax cheat; her fraud is just on a much larger scale.[15]

## V.   THE CONTINUED IMPORTANCE OF THE SENTENCING GUIDELINES[16]

The government's recommendation of a within-guideline sentence is based in part on the fact that such a sentence properly reflects the accumulated wisdom and expertise of the Sentencing Commission, and serves the vital goal of uniformity and fairness in sentencing. While, to be sure, "[i]n accord with 18 USC § 3553(a), the Guidelines, formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence," *Kimbrough v. United States*, 128 S. Ct. 558, 564 (2007), it remains the case that "the Commission fills an important institutional role: It has the capacity courts lack to 'base its

---

[15] IRS statistics for the first quarter of 2014 reflect 861 sentences with an average sentence of 43 months.  *See* http://www.irs.gov/uac/Current-Fiscal-Year-Statistics.  The United States Sentencing Commission reports that in 2012 the average (mean) term of imprisonment was 23 months and the median term of imprisonment was 18 months.  *See* United States Sentencing Commission 2012 Sourcebook, Table 14, and Figure E, at http://www.ussc.gov/Research-and-Statistics/annual_Reports_and_Sourcebboks/2012/Table14.pdf.

[16] Pursuant to 18 USC §3553(a)(5), this Court should consider the Guidelines and policy statements issued by the Sentencing Commission in fashioning an appropriate sentence.

11326565.1

determinations on empirical data and national experience, guided by a professional staff with appropriate expertise.'" Id. at 574 (*quoting United States v. Pruitt*, 502 F.3d 1154, 1171 (10th Cir. 2007) (McConnell, J, concurring)).

Thus, the Supreme Court stated: "We have accordingly recognized that, in the ordinary case, the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Kimbrough*, at 574 (*quoting Rita v. United States*, 127 S. Ct. 2456, 2465 (2007)).  Although the United States recognizes that the Guidelines are merely advisory, in the present case the Guidelines do consider all of the important, and aggravating, facts of this case and recommend a sentence that incorporates all of the sentencing factors identified by Congress.

By imposing a Guidelines sentence, the Court would adequately consider the policy statements of the United States Sentencing Commission.  Moreover, the imposition of a Guidelines sentence is the most appropriate way to assure that the punishment of this defendant does not exhibit unwarranted disparity from the sentences of others involved in the same conduct.  The Guidelines are perhaps the best tool to "avoid excessive sentencing disparities," and "to promote uniformity in the sentencing process." *United States v. Booker*, 543 U.S. 543 U.S. 220, 263 (2005).

## VI.     RESTITUTION AND COSTS OF PROSECUTION

Pursuant to 18 USC §3663A, the government requests that the Court order restitution in the amount of $15,518,382 as a separate and independent part of the sentence.  *See* PSR ¶¶ 109-111; USSG §5E1.1; *United States v. Turner*, 718 F.3d 226, 235-36 (3d Cir. 2013).  The government also requests that the Court order, as required by statute, costs of prosecution in the amount of $42,732.27.  *See* PSR ¶ 107; USSG §5E.1(2)(c)(3).

11326565.1

## VII.   CONCLUSION

Defendant Hough's long running tax fraud scheme cheated the government out of at least $15 million in taxes.  She hid millions of dollars in secret offshore accounts for at least eight years, used at least five different nominee entities to hide her interest in real property, personal property and her ownership of the medical schools, concealed her income from the IRS, and lied to the government and her return preparer about the existence of the offshore accounts.  Her crimes were intentional, willful and methodical and were not your run-of-the-mill tax fraud.  For the foregoing reasons, the government asks this Court to sentence Defendant Hough to a term of imprisonment within the PSR recommended Guidelines range.

LEE BENTLEY

Acting United States Attorney

By:    /s/ Caryn D. Finley
CARYN D. FINLEY
Trial Attorney, Department of Justice, Tax Division
New York Bar No. 3953882
2110 First Street, Suite 3-137
Fort Myers, Florida  33901
Telephone:  (202) 514-5051
Facsimile:  (202) 514-0961
E-mail: caryn.finley@usdoj.gov

By:    /s/ Margaret Leigh Kessler
MARGARET LEIGH KESSLER
Trial Attorney, Department of Justice, Tax Division
2110 First Street, Suite 3-137
Fort Myers, Florida  33901
Telephone:  (202) 514-5193
Facsimile:  (202) 514-9623
Margaret.Leigh.Kessler@usdoj.gov

22

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 14, 2014, I electronically filed the foregoing with the Clerk

of Court using the CM/ECF system, which will send a notification of that electronic filing (NEF)

to the following:

Bruce L. Udolf

In addition, I have served copies of this filing on the following parties using email:

Nathan J. Hochman
Daniel Saunders

<div style="margin-left:50%">

/s/ Caryn D. Finley
CARYN D. FINLEY
Trial Attorney, Department of Justice,
Tax Division
New York Bar No. 3953882
2110 First Street, Suite 3-137
Fort Myers, Florida  33901
Telephone:  (239) 461-2200
Telephone:  (202) 514-5051
Facsimile:  (239) 461-2219
E-mail: caryn.finley@usdoj.gov

</div>

11326565.1