IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Case No. 2:13-cr-00072-FtM-JES-CM |
| | ) | |
| PATRICIA LYNN HOUGH, | ) | |
| | ) | |
| Defendant. | ) | |

## GOVERNMENT'S RESPONSE TO DEFENDANT HOUGH'S MEMORANDUM IN AID OF SENTENCING

COMES NOW the United States, by and through counsel, and files this Response to Defendant Patricia Lynn Hough's Memorandum in Aid of Sentencing ("Defendant's Memorandum").  Dkt. #164.

"Because economic and fraud-based crimes are 'more rational, cool, and calculated than sudden crimes of passion or opportunity,' these crimes are 'prime candidate[s] for general deterrence.'" *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) *citing* Stephanos Bibas, White–Collar Plea Bargaining and Sentencing After Booker, 47 Wm. & Mary L.Rev. 721, 724 (2005).  Sentencing Defendant Hough to twelve months' home detention and 1000 hours of community service for her $15 million tax fraud would send a message "that would-be white-collar criminals stand to lose little more than a portion of their ill-gotten gains and practically none of their liberty." *Id*.

A.  Defendant Hough's Age and Medical Issues

Defendant Hough is hardly elderly, infirmed, or suffering from serious health issues that cannot be appropriately treated by the Bureau of Prisons ("BOP").  *See* USSG §5H1.1.  BOP "provides essential medical, dental, and mental health (psychiatric) services in a manner consistent with accepted community standards for a correctional environment."   Bureau of

1

Prisons website, http://www.bop.gov/inmates/custody_and_care/medical_care.jsp.   Ironically, these same health and age issues do not appear to impair Defendant Hough's ability to travel internationally ministering to the poor or in carrying out her day to day employment.   Defendant Hough's health issues and age are not outside the ordinary problems that many defendants have and do not rise to the level of extraordinary.

     B.   Offshore Voluntary Disclosure Program

     On March 26, 2009[1], the IRS announced the Offshore Voluntary Disclosure Initiative ("OVDI") program, which allowed taxpayers with previously undisclosed offshore bank accounts to come forward and voluntarily disclose those accounts to the IRS.   The creation of the OVDI program was extensively covered in the media, including in the New York Times and Wall Street Journal.[2]   The original deadline for taxpayers to enter the OVDI program was September 23, 2009.

     Just one day prior to the deadline, on September 22, 2009, Defendant Hough attempted to enter the OVDI; she was rejected for timeliness.   Defendant Hough argues that her attempt to enter the voluntary disclosure program is a mitigating factor.   The Guidelines Manual contains a policy statement on when a departure from the Guidelines may be warranted based on a voluntary disclosure:

> If the defendant voluntarily discloses to authorities the existence of, and accepts responsibility for, the offense prior to the discovery of such offense, *and if such offense was unlikely to have been discovered otherwise,* a downward departure may be warranted. For example, a downward departure under this section might be

---

[1] *See* "Statement from IRS Commissioner Doug Schulman on Offshore Income," dated March 26, 2009, at *http://www.irs.gov/uac/Statement-from-IRS-Commissioner-Doug-Shulman-on-Offshore-Income.*
[2] *See, e.g.,* Lynnley Browning, "The I.R.S. Will Lower Penalties for Some Offshore Tax Evaders," *New York Times*, March 27, 2009, Page B3; Kevin McCoy, "IRS: Offshore Account? Tell Us Now, Reduced Penalties Apply, But Only for Six Months," *USA Today*, March 27, 2009, Money Section; Evan Perez and Tom Herman, "IRS Cuts Penalties to Lure Tax Evaders," *Wall Street Journal*, March 27, 2009, Page A3.

11362234.1

> considered where a defendant, motivated by remorse, discloses an offense that might otherwise have remained undiscovered.  *This provision does not apply where the motivating factor is the defendant's knowledge that discovery of the offense is likely or imminent*…

USSG §5K2.16 (emphasis added).  A downward departure for voluntary disclosure is "specifically limited to disclosures made prior to the discovery of an offense."  *United States v. Roberts*, 313 F.3d 1050, 1055 (8th Cir. 2002); *see also United States v. Besler*, 86 F.3d 745, 757 (7th Cir. 1996) (explaining that a requirement for a downward departure is that the defendant must have disclosed the offense "prior to the discovery of the offense.")

Defendant Hough was certainly aware, based on the news reports as well as the August 29, 2008 notation in the UBS records noting Fredrick called Luetolf to ask about "the situation with UBS", that UBS and its clients might have issues with the United States government.  *See* Government Exhibit ("GX") 3W at p. 183.  In February 2009, UBS entered into a deferred prosecution agreement with the United States and indicated that taxpayer names would be disclosed.  *See* GX 25.

Yet, in April 2009, after the IRS Commissioner's announcement, Defendant Hough filed a false 2008 individual income tax return which failed to disclose her offshore financial accounts as well as the income earned in these accounts, despite being asked again by her return preparer, Thomas Murtha, whether she had an offshore bank account.  *See* GX 1H and 2Tr. 243-44.  On June 15, 2009, Singenberger opened two bank accounts at Bank Alpinum in the name of Ample Dynamic and Top Fast on which Defendants Hough and Fredrick were identified as the beneficial owners; funds from Fredrick and Hough's UBS accounts were transferred to these accounts.  *See* GX 4E and 4I.  Defendant Hough's conduct leading up to her last minute attempt to file a voluntary disclosure are not consistent with the guidance in the Guidelines and the Court should reject the request of the departure.

3

C.  FBAR Penalty and Other Collateral Consequences

This Court should not be swayed by the potential for an FBAR penalty; the imposition and amount of such a civil penalty at this point in time is speculative.[3]  "[I]n almost every fraud case a jail term" impacts a defendant's ability to pay restitution or fines."  *United States v. Martin*, 455 F.3d 1227, 1241 (note 10) (11th Cir. 2006).  As the Eleventh Circuit noted in *United States v. Crisp*, 454 F.3d 1285 (11th Cir. 2006)

> [T]he more loss a defendant has caused, the greater will be the amount of restitution due, and the greater the incentive for a court that places the need for restitution above all else to shorten the sentence in order to increase the time for the defendant to earn money to pay restitution. Therefore, the more loss a criminal inflicts, the shorter his sentence. That approach cannot be deemed reasonable.

*Id*. at 1291.

Any ultimate and speculative civil penalty does not provide just punishment for Defendant Hough's serious pattern of conduct, as justice is not served when those that are able to pay penalties avoid any further criminal consequences.  Judge Adalberto Jordan, Southern District of Florida, explained that a defendant who failed to report his undeclared account should be sentenced to a term of incarceration:

> I understand that [the defendant] is going to have to pay, or has paid, significant tax penalties on the civil side, because his offenses occurred with regards to overseas accounts.
>
> And so, although that is certainly a factor that I would take into account, it can't be one that simply calls for a probationary sentence.  If that were the case, then an individual who had committed tax fraud, but still had the means to be able to pay civil penalties, could simply say 'I've done what I was supposed to do, I've been punished monetarily on the civil side, so I shouldn't

---

[3] While the FBAR penalty may be relevant in offshore cases ending in a guilty plea, it is irrelevant here where Defendant Hough did not plead guilty, has not paid any FBAR penalty, and was not charged with or convicted of any Title 31 violations.  The imposition of any potential FBAR penalty is a purely civil matter.

4

> serve any time in prison.' That's not the way things should work
> either.

*United States v. Jack Barouh*, 10-CR-20034, Doc. 27 at 26 (defendant pleaded guilty to filing a false 2007 tax return with a tax loss, including relevant conduct, of $736,269. Defendant was sentenced to 10 months' incarceration).

Furthermore, Defendant Hough's argument that home detention is appropriate because of the collateral consequences including the loss of her medical license and embarrassment cannot be squared with legal precedent. Any embarrassment Defendant Hough might feel as the result of her conviction is not part of her punishment. *United States v. Repking*, 467 F.3d 1091, 1096 (7th Cir. 2006) (per curiam) (observing that "the social stigma of being a convicted felon" is a "normal incident [] of committing bank fraud"); *United States v. Peppel*, 707 F.3d 627, 636, 641 (6th Cir. 2013) (rejecting the argument that "criminals  with privileged backgrounds," who are more likely to suffer "humiliation before [their] community, neighbors, and friends," are "more entitled to lenience that those who have nothing left to lose"); *see also United States v. Stefonek*, 179 F.3d 1030, 1038 (7th Cir. 1999) ("Criminals who have the education and training that enables people to make a decent living without resorting to crime are more rather than less culpable than their desperately poor and deprived brethren in crime.").

D.  General Deterrence and Unwarranted Disparities

The government's recommendation of 78-97 months is not excessive but reflects how the Sentencing Commission perceives Defendant Hough's egregious and long-running tax fraud compared to other criminal conduct and how the Commission would use the Sentencing Guidelines to determine an appropriate sentence. The need to avoid unwarranted sentencing disparities applies "among defendants with similar records *who have been found guilty of similar criminal conduct*." 18 USC § 3553(a)(6) (emphasis added); *see also United States v. Martin*,

5

455 F.3d 1227, 1241 (11th Cir. 2006) (holding that a co-schemer's acquittal was irrelevant for sentencing purposes, as that co-schemer "is not valid comparator for § 3553(a)(6) purposes"). Defendant Hough is comparable to only one case listed in her Sentencing Memorandum, *Ahuja*, and that is solely because he was also convicted after trial.   S*ee* Defendant's Memorandum at pages 34-40.  The tax loss as argued by the government at sentencing was more than $700,000. The numerous other defendants are not comparable because Defendant Hough did not plead guilty, did not cooperate against others, and did notpay an FBAR penalty.[4]

For example, Defendant Hough highlights the probationary sentence given to defendant Mary Estelle Curran.  However, Ms. Curran is not similarly situated to Defendant Hough.  First, Ms. Curran was a housewife with no financial or business experience who inherited an undeclared account, not an accomplished medical doctor who built two medical schools from the ground up and traveled to Switzerland to set up offshore bank accounts.  *United States v. Mary Estelle Curran*, 12-CR-80206 (S.D. FL), Doc. 33 at 9-11.  The sentencing Court specifically remarked on this distinction, stating "[t]his case is totally out of the scope of all [the government's other] case[s] where people are skimming, were trying to hide funds.  I mean, this was an inheritance over there, and I think a lot of reasonable people would think you don't have to report this."  Doc. 41 at 14.

Secondly, Ms. Curran was 79 years old and suffered from various health problems.  Doc. 33 at 20.  Third, unlike Defendant Hough, Ms. Curran cooperated with the government.  *Id*. at 1. Fourth, based on those factors, the government did not oppose a term of probation for Ms.

---

[4] Almost half of the probationary sentences discussed in Defendant Hough's Sentencing Memorandum were in cases where the defendant received a motion under §5K1.1.  Some defendants who received §5K1.1 motions were still sent to prison.  *See, e.g., United States v. Jeffrey Chernick*, 09-CR-60182 (S.D. FL) (docket Nos. 23, 27) (12 months); *United States v. Jack Barouh*, 10-CR-20034 (S.D. FL) (docket nos. 18, 31 (10 months); *United States v. Christopher Berg*, 12-CR-877 (N.D. CA) (docket nos. 15, 24 (12 months).

11362234.1

Curran.  Doc. 41 at 13.  Ms. Curran is not remotely similarly situated to Defendant Hough, and any disparity between her sentence and Defendant Hough's sentence would be warranted.

The only cases which the Court should look to for comparison purposes are other defendants who were convicted after trial, with tax losses and fact patterns that are comparable. *See* Government's Sentencing Memorandum, Dkt. #162 at pages 15-16, fn. 10.

## CONCLUSION

A sentence of twelve months home detention and 1000 hours of community service is substantively unreasonable.  Defendant Hough has provided no reasonable basis for this Court to sentence her to anything but a term of imprisonment consistent with the Guidelines range of 78 – 97 months as calculated in the PSR.

<div style="margin-left:40%;">

LEE BENTLEY
Acting United States Attorney


By:     /s/ Caryn D. Finley
        CARYN D. FINLEY
        Trial Attorney, Department of Justice, Tax
        Division
        New York Bar No. 3953882
        2110 First Street, Suite 3-137
        Fort Myers, Florida  33901
        Telephone:  (202) 514-5051
        Facsimile:  (202) 514-0961
        E-mail: caryn.finley@usdoj.gov


By:     /s/ Margaret Leigh Kessler
        MARGARET LEIGH KESSLER
        Trial Attorney, Department of Justice, Tax
        Division
        2110 First Street, Suite 3-137
        Fort Myers, Florida  33901
        Telephone:  (202) 514-5193
        Facsimile:  (202) 514-9623
        Margaret.Leigh.Kessler@usdoj.gov

</div>

11362234.1

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on April 19, 2014, I electronically filed the foregoing with the Clerk

of Court using the CM/ECF system, which will send a notification of that electronic filing (NEF)

to the following:

Bruce L. Udolf
Nathan J. Hochman
Daniel Saunders

/s/ Caryn D. Finley
CARYN D. FINLEY
Trial Attorney, Department of Justice,
Tax Division
New York Bar No. 3953882
2110 First Street, Suite 3-137
Fort Myers, Florida  33901
Telephone:  (239) 461-2200
Telephone:  (202) 514-5051
Facsimile:  (239) 461-2219
E-mail: caryn.finley@usdoj.gov

11362234.1