IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 2:13-cr-00072-FtM-JES-CM |
| ) | |
| PATRICIA LYNN HOUGH, ) | |
| ) | |
| Defendant. ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT HOUGH'S PROPOSED CORRECTIONS TO "OFFENSE COUNDUCT" SECTION OF PRESENTENCE REPORT[1]**

COMES NOW the United States, by and through counsel, and responds to Defendant Hough's Proposed Corrections to "Offense Conduct" Section of Presentence Report ("Proposed Corrections"). Dkt. #177. The government questions the need for the Proposed Corrections given Defendant Hough's prior written objections to the draft Presentence Report ("PSR"), Response to Government's Sentencing Memorandum (Dkt. #163), the arguments by counsel in court on April 21, 2014, and the arguments set forth in Defendant Hough's Rule 29 motion (Dkt. #138). However, given the filing, the government incorporates its previous responses to all of these pleadings and arguments, and again responds to Defendant's arguments, which are not supported by the record or the jury's verdict.[2] In fact, Defendant Hough does not cite to a single trial exhibit or transcript citation in support of these Proposed Corrections.

Generally, Defendant Hough's Proposed Corrections leave the incorrect impression that Luetolf and Singenberger were independent actors who opened bank accounts, created nominee entities, and identified beneficial owners of their volition. While Singenberger may have

---

[1] Defendant Hough represents that the pleading "set[s] forth paragraphs 7 through 44 of the presentence report in their entirety..." Given time constraints, the government has not cross-referenced the pleading with the final PSR to be sure that it was accurately transcribed.
[2] The government, in this pleading, only responds to Defendant Hough's specific "corrections".

1

literally filled out forms, he was paid to be a nominee Director by Defendants Hough and Fredrick to do just that and had a power of attorney to act on their behalf.  GX 3E at pages 19, 42-44; GX 3EE at page 4; and GX 4A at page 19.

Furthermore, many of the Proposed Corrections eliminate Defendant Hough's name and maintain Fredrick, yet the same circumstantial evidence supports her involvement in the transaction and that of Defendant Fredrick.  In many instances, the proof is circumstantial, i.e.: Defendants Fredrick and Hough owned the Saba Foundation or New Vanguard or any of the other nominee entities, and there is no email or correspondence to establish which of them initiated a wire.  Circumstantially, Luetolf and/or Singenberger could not have acted without direction from one or both of the Defendants since they were the owners and/or signatories on each of the accounts.  *See* Government's Response to Defendant's Motion for Judgment of Acquittal Pursuant to Rule 29 (Dkt. #144); 10/9/2013 Trial Transcript at pages 207-208 (Futterknecht testified that a client advisor could be fired for trading without permission from the client).

**Paragraphs 7 and 8**:

The government objects to the proposed corrections.  With respect to many of Defendant Hough's arguments at the April 21, 2014 hearing and contained in the Proposed Corrections, Defendant Hough fails to correctly apply the concept of substance over form.  "The fundamental premise underlying the Internal Revenue Code is that taxation is based upon a transaction's substance rather than its form."  *Gregory v. Helvering*, 293 US 465, 469 (1935); *Frank Lyon Co. v. United States*, 435 US 561, 573 (1978) ("[t]he Court has never regarded the simple expedient of drawing up papers as controlling for tax purposes when the objective economic realities are to the contrary.").  The government proved that Defendant Hough owned all of the undeclared

accounts, including those in the name of the Saba Foundation and MUA.  The jury heard testimony from both David Minchenberg and RA Maurer concerning the concept of "Substance over Form."  10/11/2013 Trial Transcript at pages 84-85; GX 7K.  RA Maurer testified that "[s]ubstance over form means that you can't just fill out papers, or form, and disguise what is really underneath the … what the real underlying transaction is."  10/17/2013 Trial Transcript at page 128.  While there was testimony at trial that, in form, no individual can own a Netherlands Antilles Foundation, all of the evidence introduced at trial proved that, in substance, Defendant Hough and Fredrick actually owned the Saba Foundation and MUA, as well as the other nominee entities.

**Paragraph 9**:

The government objects to the removal of the language that Hough and Fredrick "owned the Saba Foundation."  With respect to the ownership of the Saba Foundation, please refer to the government's response regarding Paragraphs 7 and 8.

The government objects to the addition of language that Defendant Hough served on the Board of Directors and Board of Trustees "in the early 1990s" because Defendant Hough signed a document on behalf of the Board of Trustees in May 2006.  *See* GX 11MM at page 1; GX 4C at pages 112-113 (in order to open the Saba Foundation account at Liechtenstein Landesbank, documents were provided that listed Defendant Hough as a board member of the Saba Foundation.  The document is dated 2006.

The government objects to the addition of language that Hough and Fredrick were "listed by Luetolf as" the beneficial owners of the Saba Foundation account.  Defendants Hough and Fredrick were identified as the beneficial owners on the Form A for the undeclared account at

3

UBS in the name of the Saba Foundation and Defendants Hough and Fredrick both signed this document.  *See* GX 3U at page 1.

**Paragraph 10**:

The government objects to inclusion of language that Hough and Fredrick were "listed by Luetolf as" the beneficial owners of the MUA account at UBS.  Defendants Hough and Fredrick were identified as the beneficial owners on the Form A for the undeclared account at UBS in the name of MUA, and Defendant Fredrick signed this document.  *See* GX 3Y at page 1.  Further, Defendant Hough was aware that these documents were being filled out as she was copied on an email concerning them.  In that email, Defendant Fredrick says that he is "waiting for Pat to return to get her to sign the Account Opening, Auth Signatures, Waiver…"  *See* GX 3KK at page 24-25.

**Paragraph 13**:

As the government argued at the April 21, 2014 hearing, there is no evidence as to the name the account at SG Hambros Bank was formally titled in.  The evidence, does however show that Defendants Hough and Fredrick instructed SG Hambros Bank in the Bahamas to "close **our** account" and instructed the bank to transfer the funds to UBS in Switzerland.  The account at UBS into which those funds were deposited was in the name of Ample Dynamic.  *See* GX 3P at page 6 (emphasis added); *see also* GX 3P at page 5 and GX 3P at page 16 ("Account used to receive assets resulting from closure of account with SG Hambros Bahamas, the money being funneled on to the personal account of the beneficial owners."); GX 3HH at page 35 and 3KK at page 47.  Based on the evidence at trial, the government recommends that the sentence read: "Hough and Fredrick owned an undeclared foreign account at SG Hambros Bank and UBS in the Bahamas."

11386234.1

The government objects to the removal of the language "When the Bahamas entered into an information exchange agreement, Hough and". As argued in the government's Response to Defendant Hough's Objections to Presentence Report and Response to Government's Sentencing Memorandum (Dkt. #167) at page 1, the communications detailed above coincided with a tax information sharing agreement entered into by the Bahamas and the United States which went into effect on January 1, 2004. *See* Exhibit 1.

Defendant Hough also testified at trial that she met with Dieter Luetolf to provide him with the documents which ultimately resulted in the opening of the accounts at UBS. *See* 10/21/13 Trial Transcript at pages 117-121. Therefore, the government objects to the proposed revision by Defendant Hough at the end of Paragraph 13 because her meeting and opening of accounts helped to accomplish the transfer of Defendants Hough and Fredrick's accounts to UBS in Switzerland. *See* 10/21/2013 Trial Transcript at pages 117-20.

**Paragraph 14**:

The government objects to Defendant Hough's proposed corrections to this paragraph. Defendants Hough and Fredrick were identified as the beneficial owners of the undeclared account at UBS in the name of MTA, and Defendants Fredrick and Hough both signed this document identifying themselves as the beneficial owners. *See* GX 3J at page 1. Therefore, this paragraph is correct as written.

**Paragraph 15**:

The government objects to Defendant Hough's proposed corrections to this paragraph. Defendants Hough and Fredrick were identified as the beneficial owners of the undeclared account at UBS in the name of Apex Consultants, and Defendants Fredrick and Hough both signed this document. *See* GX 3N at page 1. Therefore, this paragraph is correct as written.

11386234.1

**Paragraph 16**:

The government does not object to the addition of "identified by Singenberger", but would note that Singenberger was acting under a duty to properly report information to UBS pursuant to the contractual relationship between Sinco and UBS as well as Swiss law, and as a paid nominee director. 10/9/2013 Trial Transcript at pages 66-68; GX 3E at pages 19, 42-44; GX 3EE at page 4, GX 4A at page 19.

The government objects to the addition of "beginning in early 2007." According to the Annual Return of Medical University of the Americas, on January 1, 2006, New Vanguard held 20,000 shares of MUA. *See* GX 11F. Therefore, this paragraph is correct as written.

**Paragraph 17**:

The government does not object to the addition of "identified by Singenberger", but would note that Singenberger had a duty to properly report as previously discussed. *See* Paragraph 16.

**Paragraph 18**:

The government does not object to the addition of "identified by Singenberger", but would note that Singenberger had a duty to properly report as previously discussed. *See* Paragraph 16.

**Paragraph 20**:

The government objects to Defendant Hough's proposed corrections and incorporates its arguments under Paragraphs 9 and 13.

**Paragraph 21**:

The government objects to Defendant Hough's assertion that Singenberger created Hong Kong nominee entities for "the Saba Foundation," namely New Vanguard and Top Fast. The

government incorporates its discussion, *supra*, regarding Paragraphs 7 and 8 and specifically the law regarding substance over form.  Further, Defendant Hough's assertion that Singenberger created New Vanguard and Top Fast for the Saba Foundation presumably relies on Defendant Hough's testimony that these nominees were created for asset protection and that she acted as a "caretaker" for the schools.  The jury necessarily rejected this assertion by Defendant Hough in convicting her.

      The government objects to Defendant's assertion that only Fredrick caused Singenberger to open undeclared foreign accounts in the name of New Vanguard and Top Fast.  Defendant Hough testified at trial that she met, along with Defendant Fredrick, with Singenberger in Boston to discuss additional entities and alleged asset protection.  *See* 10/21/2013 Trial Transcript at pages 171-177 184-185 and 271-274.  Additionally, she was aware that these accounts were opened as she authorized the transfer of assets from her and Defendant Fredrick's individual accounts at UBS to the New Vanguard account at UBS.  *See* GX 3KK at page 31 and GX 3S at page 9.

      The government objects to the assertion that "Luetolf opened an undeclared foreign account in the name of MUA and identified Hough and Fredrick as the owner of the assets."  In 2005, Defendants Hough and Fredrick opened an undeclared foreign account in the name of MUA, and Fredrick identified himself and Hough as the beneficial owners of the assets.  *See* GX 3Y at page 1.  Defendant Hough was also a signatory on the account.  *See Id*. at page 12.

      The government objects to the proposed correction that only Fredrick caused Singenberger to open an undeclared foreign account in the name of the nominee entity Ample Dynamic.  *See supra* at page 2.

The government does not object to the addition of "identified by Singenberger", but would note that Singenberger had a duty to properly report as previously discussed. *See* Paragraph 16.

**Paragraph 22**:

The government objects to Defendant Hough's proposed corrections and incorporates its arguments on page 2 *supra*.

**Paragraph 23**:

The government objects to Defendant Hough's proposed corrections. There is no evidence that the Board of Directors of the Saba Foundation and MUA attempted to sell the medical schools; Defendants Hough and Fredrick were the only individuals involved in the potential sale to the Huntington Institute in 2002 and 2003. *See* GX 6C through 6I. Furthermore, Defendant Hough was involved with this potential sale, including signing the Letters of Intent and emailing and meeting with the potential buyers. *See* GX 6D, 6F, 6H, and 6I.

**Paragraph 24**:

The government objects to Defendant Hough's proposed corrections. Defendant Hough executed Asset Management and Portfolio Asset Management Agreements for many of the accounts. The Agreements provided UBS with a discretionary mandate to invest and manage the assets in their undeclared foreign accounts. Defendant Hough authorized trades in the accounts when she opened the accounts by virtue of signing these documents. S*ee* GX 3GG at pages 14 and 19; GX 3R at pages 15 and 20; GX3U at pages 17, 22, and 28.

Furthermore, Defendant Hough was fully aware both that the funds were invested in the account and that they were being used for asset purchases. For example, on February 8, 2005,

Defendant Fredrick emailed Luetolf and stated "Pat said you wanted to tell me about a plan that she was in that I was not…you are not going to let her make more money than me, are you?!" Luetolf responded that Defendant Hough was referring to the double currency investment which Defendant Fredrick was already investing in.  *See* GX 3KK at page 13 and GX 3S at page 24.

Defendant Hough was copied on numerous emails from Defendant Fredrick concerning transfers and purchases.  *See* GX 3E at page 160 ("I believe when we spoke with Beda, we determined that the wire for the house we are buying should come from our Hong Kong company (New Vanguard).  The amount and wire instructions are listed below…"); GX 3E at page 203 ("With interest rates rising and everything else very unstable, I am considering taking all the funds in all our accounts, and putting them into a simple interest bearing account."); GX 3HH at page 3 (Email from Fredrick to Luetolf: "I just spoke to Pat and she agrees that we should move 5.0 to the Enhanced Return Managed Portfolio."); GX 3HH at page 11 (letter signed by Defendant Hough authorizing management of $3 million in an Absolute Return Portfolio Defensive); GX 3HH at pages 20, 27 (email from Defendant Hough confirming split of joint account); GX 3HH at page 28 (email from Defendant Hough stating "[w]e typed an additional statement authorizing the removal of his name from the original account."); GX 3HH at pages 30 and 31 (typed and signed documents authorizing removal of Defendant Fredrick from joint account).

The jury's verdict, particularly on the §7206(1) counts, supports the statement that the various accounts earned interest, dividend, and capital gains income for Hough and Fredrick which was not reported on Hough and Fredrick's Forms 1040.

There was no evidence presented that any of the $5 million transferred as part of the "China project" was ever transferred back to the Saba Foundation.  Further, Katherine Yates told

investigators that she did not remember if the schools were investing in China or if they were to spend $5 million in China. *See* Exhibit 2, MOI of Kathryn Yates dated September 10, 2013. The documentation was prepared by Singenberger in order to substantiate the $5 million payment when Jeffrey Gallant questioned the basis for the transfer during the 2006 audit. *See* GX 9Q and 9P.

**Paragraph 25**:

The government objects to Defendant Hough's proposed corrections. Fredrick and Hough both made real estate and other asset purchases using funds from the undeclared foreign accounts; many of these assets were purchased in the name of Fredrick and Hough's LLC, Lynn, Leon, Lyon Group, of which Fredrick and Hough were the 50-50 owners. *See* GX 3E at page 160; GX 12E (email from Defendant Hough re: purchase of land next to "our home" in Asheville, NC); GX 24A.

With respect to the Sarasota condo, Singenberger, at Hough and Fredrick's direction, *see supra*, caused UBS to transfer $850,000 from the Top Fast account to an attorney's escrow account for payment of the condo. *See* GX 3MM at page 117 and GX 3FF at page 303. The condo was purchased in the name of Lynn, Leon, Lyon Group.

**Paragraph 27**:

The government objects to Defendant Hough's proposed corrections. Defendant Fredrick emailed Luetolf, Singenberger, and Hough questioning the procedure for having money transferred now that Singenberger was involved. The email stated that Defendant Fredrick believes that when they spoke with Singenberger, "the wire for the house we are buying should come from our Hong Kong company (New Vanguard)." The email then directs Luetolf to wire $1,140,000 to a trust account in the United States. *See* GX 3E at page 160. Defendants Fredrick

11386234.1

and Hough bought this house in the name of their joint LLC, Lynn, Leon, Lyon Group. *See* GX 14A. Additionally, Defendant Hough testified that she though the money for the home was a loan from Saba, admitting that at the very least she knew the funds for the purchase came from Saba. *See* 10/21/2013 Trial Transcript at pages 252-254.

**Paragraph 28:**

The government does not object to changing the date from "late 2007" to "early 2008." The government does object to the proposed correction adding Rudow's testimony. Defendant Hough was involved with the Asheville, NC property purchase, including emailing Rudow to question when they were going to receive the deed of trust, *see* GX 12D, and to inform Rudow that she and Defendant Fredrick had "put down an offer on some land next to our home on Patton Mountain Rd. in the name of our LLC." *See* GX 12E.

As to the objections that Defendants Hough and Fredrick "allegedly sold" their Asheville residence to Aldunatec and that Montenegro signed as the "alleged Trustee", the evidence at trial established that Defendants Hough and Fredrick were the owners of the Foundation. Further, testimony from Rudow showed that Rudow had no contact with Montenegro and that all contact concerning the seller came through Defendant Fredrick. *See* 10/21/2013 Trial Transcript at pages 21-27. Moreover, there were numerous documents that showed Montenegro's signature. *See* GX 12K at page 4; GX 12L at page 3; GX 12M at page 2; GX 12N at pages 2-3; GX 16C at page 1 and GX 20D. Based on all of this, the jury could conclude that Montenegro was nothing more than a rubber stamp.

**Paragraph 29:**

The government has no objection to Defendant Hough's proposed correction.

**Paragraph 31**:

The government objects to Defendant Hough's proposed correction.  *See* argument *supra* concerning ownership of the undeclared account in the name of New Vanguard, Ample Dynamic and the Saba Foundation.

**Paragraph 32**:

The government objects to Defendant Hought's proposed corrections.  The jury's verdict supports the fact that Defendants Fredrick and Hough owned the Saba Foundation and MUA and that while there may have been a Board resolution "authorizing" the sale, it was, based on all of the evidence presented at trial, Defendant Hough and Fredrick's decision to sell the medical schools.  *See also* Response regarding Paragraphs 7 and 8 *supra*.

**Paragraph 35**:

The government objects to Defendant Hough's proposed corrections.  *See* Government's Notice re: Portion of Transcripts Relevant to Defendant's Present Report Objections ("Notice") (Dkt. # 176).

**Paragraph 37**:

The government objects to Defendant Hough's proposed corrections.  *See* argument *supra* concerning ownership of Saba Foundation and New Vanguard.

**Paragraphs 38-44**:

The government objects to the removal of Paragraphs 38-44 and submits that they are an accurate recitation of the offense conduct.  Specifically, the government incorporates its response concerning paragraph 38 from its Notice (Dkt. #147).

11386234.1

**Paragraph 40:**

The government objects to Defendant Hough's proposed corrections. Mr. Minchenberg testified that during the audit, questions arose about the business structure of the schools. The auditors, Mr.Minchenberg, and Defendant Fredrick were involved with those discussions. 10/11/2013 Trial Transcript at page 49. He further testified that he was asked to provide advice about the structure at the direction of Defendant Fredrick and the accountants, Schneider & Associates. *Id*. at page 50. Mr. Minchenberg explained that in seeking advice on the sale and exit strategy, Defendant Fredrick came up with the 50/50 breakdown for ownership of the potential for-profit entity and that Defendant Fredrick never told him that Defendant Hough would not have an ownership interest in it. *Id*. at page 58.

Mr. Minchenberg testified that he was not an expert in international law, international tax or the preparation of Forms 5471. *See* 10/11/2013 Trial Transcript at pages 57, 68, 73, 75, 125. Mr. Minchenberg testified that he prepared the Forms 5471 for Defendant Hough to file with their personal income tax returns. *Id*. at page 68.

**Paragraphs 42 and 43**

The government objects to Defendant Hough's proposed corrections to paragraphs 42 and 43. Mr. Minchenberg testified that he discussed the Forms 5471 with Defendant Hough in writing and once in person and collected information from "both Dr. Fredrick and Dr. Hough" for the preparation of the Forms. 10/11/2013 Trial Transcript at pages 67 – 68. Mr. Minchenberg further testified that he sent the checklist concerning the requirements for Forms 5471 to both Defendants Hough and Fredrick, *id*. at page 69, and informed Defendant Hough by email that these Forms needed to be filed. *See* GX 7Q; GX 7S; and 10/11/2013 Trial Transcript

at pages 74-77 (Minchenberg recommended that he and Defendants Fredrick and Hough sit down to discuss the issues and Defendant Hough responded that it was not urgent).

In addition, the government incorporates its argument *supra* concerning substance over form.  What Mr. Minchenberg believed about the ownership of the Saba Foundation was based only on incomplete information provided by Defendants Hough and Fredrick, and his opinion was not informed by all of the facts presented at trial.  Therefore, the government objects to inclusion of this proposed correction.

                LEE BENTLEY
                Acting United States Attorney


By:    /s/ Caryn D. Finley
        CARYN D. FINLEY
        MARGARET LEIGH KESSLER
        Trial Attorneys, Department of Justice, Tax Division
        New York Bar No. 3953882
        2110 First Street, Suite 3-137
        Fort Myers, Florida  33901
        Telephone:  (202) 514-5051
        Facsimile:  (202) 514-0961
        E-mail: caryn.finley@usdoj.gov
        Margaret.Leigh.Kessler@usdoj.gov

11386234.1

**CERTIFICATE OF SERVICE**

      I hereby certify that on April 28, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of that electronic filing (NEF) to the following:

Bruce L. Udolf  
Nathan J. Hochman  
Daniel Saunders

                                           /s/ Caryn D. Finley  
                                           CARYN D. FINLEY  
                                           Trial Attorney, Department of Justice,  
                                           Tax Division  
                                           New York Bar No. 3953882  
                                           2110 First Street, Suite 3-137  
                                           Fort Myers, Florida  33901  
                                           Telephone:  (239) 461-2200  
                                           Telephone:  (202) 514-5051  
                                           Facsimile:  (239) 461-2219  
                                           E-mail: caryn.finley@usdoj.gov

11386234.1