UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

Case No.  2:13-cr-00072-JES-UAM

UNITED STATES OF AMERICA,

    Plaintiff

v.

DAVID LEON FREDERICK, and
PATRICIA LYNN HOUGH

    Defendants.

_____/

**DEFENDANT PATRICIA LYNN HOUGH'S REPLY IN OPPOSITION TO THE GOVERNMENT'S RESPONSE TO MOTION FOR BAIL PENDING APPEAL**

COMES NOW, Defendant Patricia Lynn Hough, by and through her counsel of record, and submits this Reply in Opposition to the Defendant's Motion for Bail Pending Appeal (DE 204), and in support therof states as follows:

**A.**    **Dr. Hough is Not a Flight Risk[1]**

The government's belated contention that Dr. Hough is a flight risk is disingenuous in light of the government's own prior conduct.  If the government **truly** believed that the 67-year-old, first-time offender Dr. Hough will choose to abandon her beloved family and her entire known life and live the rest of her days as a hunted fugitive in order to escape an effective 18-month jail sentence, after having been a model supervisee throughout the pendency of this case (and even after the government and the Probation Officer recommended a sentence of 6 to 8 years in prison), then the government would have sought immediate remand at the time of sentencing.  Instead, the government made no such request and did not oppose allowing Dr. Hough to self-surrender; the government did not even ask that Dr. Hough be placed on electronic monitoring prior to her self-surrender date until the Court suggested it.  The clear and convincing evidence that Dr. Hough is not a flight risk is provided by her own consistent actions during the nearly five-year history of this investigation and prosecution, which stand in stark contrast to

---

[1] The government does not argue in its opposition that Dr. Hough poses any danger to the community.

A/76191974.3/3325070-0000366042

those of her estranged husband and co-defendant David Fredrick. Dr. Hough has never given this Court reason to distrust her, and the government's wholly unsupported claim that she is a flight risk should be rejected.[2]

### B. The Appeal Will Raise a Number of Substantial Questions

In simply cutting and pasting its oppositions to Dr. Hough's post-trial Rule 29 and Rule 33 motions into its opposition to the "substantial question" section of this motion for bail pending appeal, the government has entirely missed the mark, for the legal issues here are separate and distinct from those raised in the prior motions. The issue here is **not** whether the government should or will prevail on appeal, nor whether this Court erred in its rulings, nor even whether the Court gives credence to the defendant's position. *See Herzog v. United States*, 75 S. Ct. 349, 351 (1955) (to find that no "substantial question" has been raised, "[i]t is not enough that [the Court is] unimpressed" with the argument). As the Eleventh Circuit and other courts have recognized, such a standard would render the bail-on-appeal statute a practical nullity, as few district courts would conclude that they had erred and not rectify that error through their rulings on post-trial motions. *See United States v. Giancola*, 754 F.2d 898, 900 (11th Cir. 1985). Rather, the only issues the Court must now decide are: (1) whether the record in this case demonstrates that **a single** "significant issue exists that merits appellate review," *United States v. Hicks*, 611 F. Supp. 497, 499 (S.D. Fl. 1985) – *i.e.*, an issue that goes beyond being not frivolous and could, based on "reason commanding respect," "a technical argument," or an appeal to precedent (or the lack of precedent), be decided the other way, *Herzog*, 75 S. Ct. at 351; and (2) whether, **assuming** that such issue is decided favorably to Dr. Hough, she would likely be

---

[2] The government suggests that Dr. Hough should be detained because "the circumstances of her husband's flight from justice has [sic] never been fully explained." (Opp. at 3). It is not Dr. Hough's responsibility to explain those circumstances, which she cannot do in any event. The government's callous attempt to punish Dr. Hough for the conduct of her husband, who abandoned her to face these charges alone, merits no further response.

The government also states that it views Dr. Hough's sale of her Florida residence and transfer of the proceeds to the Saba Foundation as "obstructive conduct." As made clear by Dr. Hough's counsel at the sentencing hearing, that transfer was made on the advice of counsel as repayment for legitimate debts incurred for the purchase of the Sarasota property and for advancement of legal fees.

entitled to reversal, an order for a new trial, or a reduced sentence shorter than the expected duration of the appeal process. *Giancola*, 754 F.2d at 901; *see United States v. Powell*, 761 F.2d 1234 (8th Cir. 1985).

Dr. Hough is fully aware that this Court has already rejected the arguments she raises as substantial issues on appeal. That is the case for every defendant who is granted bail pending appeal, and it is completely irrelevant to the Court's determination on this motion. In repeating verbatim its arguments from the post-trial motions in an effort to convince this Court that it did not err, the government fails to address the only **pertinent** question here, which is whether there exists any contrary argument "that might possibly prevail." *Herzog*, 75 S. Ct. at 351.

1. Sufficiency of the Evidence

For example, the question as to sufficiency of the evidence is not whether this Court is now prepared to change its mind, grant judgments of acquittal, and thereby render moot this motion for bail pending appeal, but whether there are legitimate arguments on appeal that the government's proof was lacking on one or more elements of the offenses of conviction. Such arguments unquestionably exist here.[3]

---

[3] Although this Court has previously concluded that the evidence was sufficient to support Dr. Hough's convictions; it has never found that evidence to be "overwhelming" as the government contends, nor is there any basis to so describe the evidence in this case. Indeed, if the evidence were in fact so "overwhelming," then presumably the government would not find it necessary to continue to misrepresent that evidence to the Court in support of its arguments. *See, e.g.*, Opp. at 4 (falsely claiming that Dr. Hough, "together" with Fredrick, "caused payments to be made to family members using funds in the undeclared accounts"); Opp. at 8 (falsely claiming that Dr. Hough "caused the bank accounts [in the Bahamas and Switzerland] to be closed and moved to other jurisdictions outside the reach of the IRS"); Opp. at 6 (falsely stating that "Hough and Fredrick separately drafted and received correspondence which demonstrated their knowledge of the object of the conspiracy"). The last of these misrepresentations is particularly egregious because it has previously been called to the government's attention when it was made verbatim in the government's opposition to Dr. Hough's Rule 29 motion. In her reply brief on that motion, Dr. Hough pointed out that the government, despite providing specific transcript and exhibit cites elsewhere in its brief, had supported this particular dramatic claim with a loose and vague "*See supra*" cite, leaving one to curiously search through the government's brief to find precisely where such correspondence "separately drafted and received" by Dr. Hough and demonstrating her knowledge of the object of the conspiracy to defraud the IRS had been referenced. As Dr. Hough then noted, that search was in vain; the correspondence was not referenced or cited elsewhere, because it does not exist. (Reply on Rule 29 Motion (CR 147) at 3-4 n.3). Yet the government has seen fit to include in its current opposition a wholesale cut-and-paste of the offending sentence, complete with its misleading "*See supra*" cite, thereby demonstrating its continued indifference to the accuracy of its representations to this Court.

With respect to Counts Six, Eight, and Nine, the government does not dispute that it presented **absolutely no evidence** of the "page B-2 exceptions" that are expressly incorporated into question 7a on Part III of Schedule B, which Dr. Hough was convicted of answering falsely. It is certainly debatable on appeal whether, in the complete absence of such evidence, a jury could properly find beyond a reasonable doubt that Dr. Hough's answer to question 7a was false (or that Dr. Hough had actual knowledge that the answers were false at the time she signed her tax returns), as her "No" answers would undeniably have been truthful had her accounts fallen within any of the referenced exceptions.[4]  Dr. Hough is unaware of controlling precedent on this issue.  *See Giancola*, 754 F.2d at 900 ("substantial issue" includes one "not yet decided by controlling precedent").  Were this issue to be decided favorably to Dr. Hough on appeal, all convictions based on line 7a of Schedule B would be vacated.

As for the alternative substantial-understatement-of-income basis for the convictions on Counts Six, Eight, and Nine, it is fairly arguable on appeal whether there was sufficient evidence to prove beyond a reasonable doubt that Dr. Hough **knew** she was substantially underreporting her taxable interest, ordinary dividends, and capital gains for a particular year.  The government ignores the fact that – as admitted by its own expert Sheila Maurer during the sentencing hearing – there was **no evidence**, direct or circumstantial, that Dr. Hough received bank statements, was aware of the basis and sales price for each asset, or otherwise had any knowledge of whether any interest, dividends or capital gains were earned at all.  In an attempt to compensate for the lack of such critical evidence of an **intentional** violation of a **known** legal duty, as required for

---

[4] The government incorrectly focuses on the prefatory language in Schedule B, Part III that states: "You must complete this part if you a) had over $1,500 of taxable interest or ordinary dividends; or (b) had a foreign account . . . ." (Opp. at 10).  That language is not an "initial threshold question," as the government claims (*id.*), but simply an instruction.  Moreover, it is not the portion of Schedule B that Dr. Hough was charged with and convicted of answering falsely in Counts Six, Eight, and Nine, and there is nothing in the the prefatory language that somehow supersedes the precise language of line 7a such that the government had to prove *only* that Dr. Hough had a foreign account and *not* that the "page B-2 exceptions" did not apply.  Nor is evidence that Dr. Hough "knew she was the beneficial owner for U.S. tax purposes of an undeclared foreign account in her name" (*id.* at 11) of any relevance to whether the "page B-2 exceptions" applied or to Dr. Hough's knowledge of their application.  Indeed, line 7a contemplates that a taxpayer may be an owner of a foreign account yet still be able to answer "No" if one of the "page B-2 exceptions" applies.

conviction, the government argues that Dr. Hough "was aware that these accounts were investment accounts intended to earn money." Of course, the fact that an account was *intended* to earn money is not proof that the owner knew that it *did* in any particular year. For all Dr. Hough knew, those accounts generated negative total income each year (as Ms. Maurer concluded they did in 2006), leading to her overreporting her total income rather than underreporting it.[5] Moreover, the government **completely ignores** what is perhaps the most pertinent evidence relating to the willfulness element: that CPA David Minchenberg, the government's own star witness, **advised Dr. Hough in writing that gains in foreign accounts are not reportable as long as the funds remain offshore**. In light of the complete absence of any evidence of Dr. Hough's actual knowledge of income earned by the foreign accounts, as well as the professional advice of Minchenberg that any such income is not taxable unless it is repatriated, Dr. Hough's challenge to the sufficiency of the evidence on essential elements of Counts Six, Eight, and Nine could reasonably be decided the other way on appeal; moreover, should Dr. Hough prevail, reversal of those convictions would be required.

Finally, with regard to the conspiracy charge, nothing in the government's opposition removes from the realm of reasonable debate the question of whether there was sufficient evidence to prove beyond a reasonable doubt that Dr. Hough knowingly entered into an agreement with Fredrick **with the specific intent to defraud the IRS**. In the absence of any witness who testified to Dr. Hough's intent to defraud the IRS or any document evidencing a tax evasion purpose on Dr. Hough's part, a substantial issue exists as to whether the government went beyond proving the existence of a conspiracy (which is insufficient for conviction) to prove beyond a reasonable doubt **the precise conspiratorial object charged in the indictment**. *See United States v. Adkinson*, 158 F.3d 1147, 1159 (11th Cir. 1998) (reversing *Klein* conspiracy

---

[5] The government states that Fredrick's February 2004 email to Dieter Luetolf requesting a split of the Fredrick/Hough account, with which Dr. Hough concurred in March 2004, is "[a] critical piece of evidence demonstrating knowledge of not only the income earned in the accounts, but of the object of the conspiracy." (Opp. at 13). The government fails to explain how that email demonstrates either, presumably for the simple reason that it contains no discussion whatsoever about income earned by the accounts or defrauding the IRS.

convictions where government's case was predicated on circumstantial evidence and there was no "substantial evidence that the defendants both agreed to and intended to impede the IRS"; such proof must be based on "reasonable inferences and not mere speculation"). As with the substantive counts, reversal is certain if this issue is decided in Dr. Hough's favor.

2. Prosecutorial Misconduct

In response to Dr. Hough's argument that a substantial issue is raised by the Court's allowance of improper cross-examination of two of her three character witnesses that unconstitutionally reversed her presumption of innocence, the government again has simply cut and pasted its opposition to Dr. Hough's motion for new trial, never addressing the critical question of whether there is precedent or a school of thought that could lead to a different outcome on appeal. Most significantly, the government fails to address, let alone to distinguish, the three cases cited by Dr. Hough – including one (*Candelaria-Gonzalez*) that is binding authority in this Circuit – that have **reversed convictions** under strikingly analogous factual scenarios (each involving guilt-assuming hypotheticals posed to two out of three character witnesses in a circumstantial case that depended to a large extent on the testifying defendant's credibility). The government further argues that any error was harmless, but ignores the cases cited by Dr. Hough that refused to find harmless error under directly parallel facts. Dr. Hough's citation of precedential authority in which this issue **has been** decided the other way meets her burden of demonstrating that it **could be** decided the other way, and that it is therefore a substantial issue on appeal. Nevertheless, Dr. Hough responds briefly here to the government's arguments, and incorporates her more detailed responses in her Rule 33 reply brief.

Although this Court previously found that any error was harmless, that finding is not compelled by the case law.[6] The evidence in this case was not "overwhelming," but entirely

---

[6] In yet another misleading argument, the government claims that the Eleventh Circuit "applied ordinary harmless-error analysis . . . to the issue of guilt-assuming hypotheticals" prior to *Guzman* in *United States v. Hewitt*, 663 F.2d 1381, 1391 (11th Cir. 1981) (which the government miscites as *United States v. Chesser*). (Opp. at 19 n.4). The challenged question in *Hewitt* was **not** guilt-assuming, but merely asked whether the witnesses' testimony about the defendant's reputation would change if they knew he had been indicted and arrested. *Id.* at 1390; see *id*. at 1391 ("[T]he question *did not ask the witness to assume the guilt* of Hewitt in the matter for which he was standing trial, and therefore did not violate the

circumstantial; it centered on ambiguous documents (signed on at least one occasion in blank), on imputing to Dr. Hough the acts, intentions, and knowledge of her husband, and on whether the jury accepted Dr. Hough's explanation of her actions.  The government is correct that this case was not a "swearing contest" between defendant and a key government witness (Opp. at 21), because there was in fact **no witness who testified contrary to Dr. Hough's testimony based on any personal, percipient knowledge**.  The situation here was even *more* prejudicial: a swearing contest between Dr. Hough and vague, confusing **documents** – documents that could not be cross-examined, and the creators of which (including Dieter Luetolf and Beda Singenberger) could not be cross-examined because the government did not call any of them as witnesses.  As such, Dr. Hough's credibility – which turned in large part on the jury's acceptance of her character for honesty – was a critical factor in this case.

The government notes that Dr. Hough complains about two questions posed during the two-week trial.  (Opp. at 19-20).  Yet *Candelaria-Gonzalez* and its kin make abundantly clear that one or two questions over the course of a trial can in fact infect the proceedings and require reversal if those questions undermine a fundamental constitutional protection.[7]

The government further contends that its misconduct was harmless because the jury heard other witnesses opine as to Dr. Hough's character.  (Opp. at 20-21).  It is true that the government did not repeat its constitutional violation a third time with Dr. Hough's third character witness, Antoine Solagnier, and that *government witness* Paul Dalbec testified to his belief that "everything she's done was, in my opinion, honest."  The other testimony cited by the government, however, came from government witnesses who described Dr. Hough as intelligent, professional, loving, funny, capable, successful, charitable, conservative, and conscientious –

---

presumption of innocence to which Hewitt was entitled." (emphasis added)).  Thus, there was no constitutional error, and ordinary harmlessness anaylsis applied.

[7] Once again, the government misleadingly cites to wholly inapposite case law in support of its argument.  In *United States v. Kellogg*, 510 F.3d 188, 195-97  (3d Cir. 2007), the court relied on a distinction between opinion and reputation character witnesses that the Eleventh Circuit has flatly rejected.  In *United States v. Paccione*, 949 F.2d 1183, 1201-02 (2d Cir. 1991), a single guilt-assuming question was asked to one of the defendant's four character witnesses in the course of a 12-week trial; moreover, the defendant did not testify at trial, making his credibility before the jury a far less significant issue.

none of which has anything to do with her character for honesty. The improper questioning here was directed to two out of the defense's three character witnesses – precisely the same ratio as in *Candelaria-Gonzalez*, *Polsinelli*, and *Mason*, **all of which held that reversal of the convictions was the required result**.

The government also notes two *additional* concerns with guilt-assuming hypotheticals (apart from reversal of the presumption of innocence) mentioned in fact-specific opinions, claims that they do not apply here, and leaps from this to the preposterous assertion that "this case presents none of the particular dangers that appellate courts have associated with guilt-assuming hypotheticals." (Opp. at 21). The government neglects to inform the Court that the two cases it cites both note that the *principal* "danger" of such hypotheticals is that they negate the presumption of innocence to which every defendant is entitled. *See United States v. Oshatz*, 912 F.2d 534, 539 (2d Cir. 1990) ("[S]uch cross-examination is [] to be prohibited because it creates too great a risk of impairing the presumption of innocence"); *United States v. Williams*, 738 F.2d 172, 177 (7th Cir. 1984) ("[T]his line of questioning is error because it assumes away the presumption of innocence."). The Eleventh Circuit has focused on the same danger, which was unquestionably implicated here. *See Guzman*, 167 F.3d at 1352 (recognizing that "'guilt-assuming hypotheticals strike at the very heart of the presumption of innocence that is fundamental to Anglo-Saxon concepts of a fair trial'" (quoting *Candelaria-Gonzalez*, 547 F.2d at 294)).

Finally, the government's claim that defense counsel opened the door to a violation of Dr. Hough's fundamental constitutional rights is specious. (Opp. at 17). Defense counsel asked the witnesses, without objection, whether the witness' opinion was affected by the nature of the allegations. (10/17/13 RT 182-83, 186). That entirely proper question both probed the strength and reliability of the opinion and reinforced to the jury the proper application of the presumption of innocence; it did not open the door for the government to flip that presumption on its head and ask the witness to assume that the government had proved Dr. Hough's guilt, a question that has consistently been found to violate due process. The government's reliance on *United States v. Russo*,

110 F.3d 948 (2d Cir. 1997), is misplaced. In *Russo*, the Second Circuit found that defense counsel, by asking a character witness whether he believed the defendant's character was consistent with the charges against him, opened the door for questioning on cross-examination about "whether [the witness] knew about the charges against [the defendant] and specifically what he knew about those charges." *Id.* at 953 (emphasis added). The cross-examination asked only whether the defendant had ever told the witness about certain of his acts; there was no question that asked the witness to assume the defendant's guilt. *See id.* at 951. Indeed, the *Russo* court strongly reaffirmed the Second Circuit's case law holding that "the prosecution may not cross-examine a defendant's character witness by asking the witness whether his or her opinion of the defendant would change if the defendant were guilty of the charges against him," because such hypotheticals "trench too deeply into the presumption of innocence." *Id.* at 952. Nothing in *Russo* – or in any other case cited by the government or known to the defense – suggests that one may "open the door" to depriving a criminal defendant of her due process rights.

3.   Tax Loss Calculation

The government does not even attempt to defend the erroneous "partnership" theory on which this Court rested its tax loss calculation, implicitly concurring that this unbriefed and unargued theory that was based on a misreading of the applicable regulations, was unsupported by **any** evidence in the record, and will almost certainly result in a remand for resentencing. Instead, the government argues that the substantial question of tax loss is not likely to result in a sentence less than the expected duration of the appeal process. (Opp. at 23-24). This, however, is pure speculation on the government's part. The Court granted a substantial variance from the "starting point" of a 78-97 month guideline range to reach a sentence of 24 months. Had that guidelines "starting point" – one of the factors that the Court was required to consider under 18 U.S.C. § 3553(a) – been substantially lower, it is reasonable to believe that the Court's ultimate sentencing determination might also have been lower. Moreover, the government fails to acknowledge that a substantial issue exists not only with respect to the inclusion in the tax loss calculation of purported "net profits" from the medical schools, but also as to the inclusion of other income items (interest, dividends, and capital gains) of which Ms. Maurer conceded at the

sentencing hearing that she was aware of **no** evidence of Dr. Hough's knowledge. In the absence of such evidence, there is a reasonable argument on appeal that the **criminal** tax loss proved by the government at sentencing was zero. Dr. Hough respectfully submits that it is highly unlikely that this Court would have imposed a 24-month sentence if the advisory guideline range were 0-6 months.

C.   Conclusion

It is a rare 12-day jury trial followed by a four-day sentencing hearing that will not produce a single issue that legitimately merits appellate review. This is not that rare case. For the reasons set forth herein and in Dr. Hough's motion, the undersigned respectfully request this Honorable Court grant bail pending appeal and continue Dr. Hough on the existing conditions of her release.

Dated: May 30, 2014

Respectfully submitted,

| **BRUCE L. UDOLF, P.A.** | **BINGHAM MCCUTCHEN, LLP** |
|---|---|
| Counsel for Defendant Hough | Counsel for Defendant Hough |
| Broward Financial Centre | Suite 2050 North, 1601 Cloverfield Blvd. |
| 500 East Broward Blvd., Suite 1400 | Santa Monica, California 90404 |
| Fort Lauderdale, Florida 33394 | Tel: (310) 907-1000/ Fax (310) 907-2000 |
| Tel: (866) 951-9058/ Fax (954) 525-2134 | |
| | By: /s/ Nathan J. Hochman |
| By: /s/ Bruce L. Udolf | California Bar No. 139137 |
| Fla. Bar No. 0899933 | nathan.hochman@bingham.com |
| budolf@udolflaw.com | By: /s/ Daniel A. Saunders |
| | California Bar No. 161051 |
| | daniel.saunders@bingham.com |

**CERTIFICATE OF SERVICE**

WE HEREBY CERTIFY that a true and correct copy of the foregoing was filed electronically using the Court's CM/ECF system, on this 30th day of May, 2014.

By: /s/ Bruce L. Udolf