IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 2:13-cr-00072-FtM-JES |
| ) | |
| PATRICIA LYNN HOUGH, ) | |
| ) | |
| Defendant. ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT PATRICIA LYNN HOUGH'S MOTION FOR ENLARGEMENT OF TIME IN WHICH TO RESPOND TO GOVERNMENT'S NOTICE RE: TAX LOSS AMOUNT ELECTION AND DEMAND FOR DISCOVERY**

COMES NOW the United States, by and through counsel, and files this Response to Defendant's Motion for Enlargement of Time.

The government's tax loss election is straightforward – "[t]he government does not intend to argue the partnership theory and will subtract the taxes owed on the Saba Foundation and Medical University of the America's ("MUA") annual profits from 2003 until they were sold in April 2007." Dkt. #233, Government's Notice re: Tax Loss Election. The government will rely on the testimony and exhibits already presented at trial and sentencing by Revenue Agent Sheila Maurer, including the amounts of taxable interest, capital gain or loss, and ordinary dividends contained in the previously admitted sentencing exhibits. *See* Exhibit 1, Government's Sentencing Exhibits #1 and #2 (truncated). The updated Revenue Agent Report ("RAR") is merely a mathematical computation based on already admitted and litigated numbers.[1]

---

[1] As noticed in the government's election, as soon as the RAR is completed, which should be shortly, the government will provide it to the Court and the defendant. *See* Dkt. #233, fn. 1. The government's estimate of "between $6 and $7 million" comes from a comparison of the tax loss proven at trial and that proven at sentencing. *Compare*, Exhibit 2, Trial Exhibits 30I and 30K *with* Exhibit 1. Other than the inclusion of the profits from the schools, which are now being

(continued...)

Moreover, as detailed in our Notice, the Eleventh Circuit upheld these numbers and did not remand for further findings on these particular numbers. *See* Government's Notice re: Tax Loss, Dkt. #233; *United States v. Patricia Hough*, 803 F.3d 1181 (11th Cir. 2015), 2015 WL 5234702, *12 (Sept. 9, 2015).

The defendant appears to misread the Eleventh Circuit's ruling in footnote 7. On appeal, the government argued, as an alternative, that the Eleventh Circuit could "affirm Hough's sentence even if the district court erred in concluding that the Saba Foundation and MUA were properly treated as partnerships." *Hough,* 2015 WL 5234702 at * 14. Specifically, the government argued that applying the default Guidelines rate of 28% to only the income that Hough and Fredrick personally received from the sale of the schools, through their nominee entities, would yield a tax loss of approximately $10 million.[2] The Eleventh Circuit's responded to this argument in footnote 7. The court of appeals rejected the government's default-rate argument, holding that because the government had put forth a "reasonably ascertainable" tax loss at sentencing, proving a tax loss associated with the sale of the schools of $5,529,135, the government could not revert back to the 28% default tax rate. *See Hough,* 2015 WL 5234702 at * 14. This entire discussion was about the tax loss *only* from the sale of the schools; the

---

(…continued)
removed, the sentencing RARs included the interest income and dividend income from 2003 and 2004 and a recalculated capital gain on the sale of the school based on a higher basis.

[2] *See* Brief for the Appellee, Case No. 14-12156, 2015 WL 301693, at pages 55-56 ("Moreover, even if the district court had accepted Hough's argument that the Saba Foundation was a corporation for federal tax purposes, the court's Guidelines calculation would still be correct. The court specifically found that the 'New Vanguard' nominee accounts belonged to Hough and Fredrick, not to the Foundation. When the schools were sold, almost all of the revenue — approximately $36 million — was diverted to these nominee accounts. This diversion, using the default rate of 28%, would yield a tax loss of about $10 million, still well within the $7 million – $20 million range found by the district court." (citation omitted)).

$5,529,135 is just one part of the overall tax loss, and does not preclude the government from arguing a tax loss in excess of this amount as a result of the interest income, dividend income and capital gains income.

The government does not believe that, given these representations and the prior litigation, the defendant needs additional time to respond to the government's tax loss election. At trial and sentencing, the defendant did not dispute the amounts of the taxable interest, capital gains, or ordinary dividends earned in the accounts. The defendant did dispute 1) ownership of the Saba Foundation, MUA, and the other nominee entities, including New Vanguard and Top Fast; and 2) to whom the income should be taxable. The Eleventh Circuit and this Court rejected the defendant's arguments:

> The evidence showed that [the defendant] and Fredrick owned two successful medical schools in the Caribbean and made millions of dollars from operating and then selling them. The evidence also showed that, instead of reporting and paying taxes on any of that money, the couple followed "a common design" to hide it in multiple offshore accounts…They created a foreign entity (New Vanguard), opened two accounts in the name of that entity at two different banks (LLB and Fortis), and deposited into each account half of the $36 million that the sale generated. There was plenty of circumstantial evidence showing that Hough and Fredrick agreed to hide millions of dollars from the IRS.

*Hough*, 2015 WL 5234702 at *5, s*ee also,* Dkt. #185, Notice Regarding Court's Sentencing Determinations, at page 9 ("The evidence the Court found credible establishes by at least a preponderance of the evidence that Singenberger opened the New Vanguard and Top Fast accounts for Hough and Fredrick, and that the entities were created for the benefit of Hough and Fredrick, not the Saba Foundation."). The time for disputing either the ownership or the underlying numbers, especially in light of the Eleventh Circuit's ruling, has passed.

13377178.1

The government does not oppose giving the defendant an additional week if she needs more time to draft her response, since the government received an additional week to file its Notice. However, the government respectfully moves this Court to deny defendant's Motion for Enlargement of Time if the basis for additional time is the government's purported failure to provide discovery.

              LEE BENTLEY
              United States Attorney

      By: /s/ Caryn Finley
          CARYN FINLEY
          Assistant Chief, Department of Justice, Tax Division
          New York Bar No. 3953882
          2110 First Street, Suite 3-137
          Fort Myers, Florida 33901
          Telephone: (202) 514-5051
          Facsimile: (202) 514-0961
          E-mail: caryn.finley@usdoj.gov

**CERTIFICATE OF SERVICE**

      I hereby certify that on December 1, 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of that electronic filing (NEF) to the following:

Bruce L. Udolf
Nathan J. Hochman
Daniel Saunders

          /s/ Caryn Finley
          CARYN FINLEY
          Assistant Chief, Department of Justice,
          Tax Division
          New York Bar No. 3953882
          2110 First Street, Suite 3-137
          Fort Myers, Florida  33901
          Telephone:  (239) 461-2200
          Telephone:  (202) 514-5051
          Facsimile:  (239) 461-2219
          E-mail: caryn.finley@usdoj.gov

13377178.1